# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

VIRAL KOTHARI, Individually and on behalf
of all other similarly situated,

        Plaintiff,

    v.

HARBOR DIVERSIFIED, INC., CHRISTINE
R. DEISTER, and LIAM MACKAY,

        Defendants.

Case No. 1:24-cv-00556-WCG

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

---

| | |
|---|---|
| John L. Kirtley | Jason de Bretteville |
| David R. Konkel | Wesley Horton |
| GODFREY & KAHN S.C. | STRADLING YOCCA CARLSON & RAUTH LLP |
| 833 E. Michigan St., Suite 1800 | 660 Newport Center Drive, Suite 1600 |
| Milwaukee, Wisconsin 53202 | Newport Beach, CA 92660 |
| Telephone: (414) 273-3500 | Telephone: (949) 725-4000 |
| Facsimile: (414) 273-5198 | Facsimile: (949) 725-4100 |

*Counsel for Defendants*

June 7, 2024

4864-0764-8707v6/101468-0015

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

HEIGHTENED PLEADING STANDARD FOR FEDERAL SECURITIES CLAIMS..............3

ALLEGATIONS OF THE COMPLAINT.....................................................................................4

ARGUMENT....................................................................................................................8

I.    Plaintiff Makes No Attempt to Plead Falsity With Particularity ......................................8

II.   Plaintiff Makes No Attempt to Plead Scienter With Particularity ...................................9

      A.   The Complaint alleges no facts supporting an inference of scienter ...................9

      B.   The Complaint's factual allegations tend to negate any inference of scienter ...11

CONCLUSION................................................................................................................14

4864-0764-8707v6/101468-0015

# TABLE OF AUTHORITIES

**Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3rd Cir. 1999) ................................................................................................. 10

*In re Allscripts, Inc. Sec. Litig.*,
2001 LEXIS 8897 (N.D. Ill. 2001) ......................................................................................... 11

*Appvion, Inc. v. Bluth*,
2022 U.S. Dist. LEXIS 161343 (E.D. Wisc. 2022) .................................................................. 1, 3

*Arazie Alizadeh v. Tellabs, Inc.*,
2015 U.S. Dist. LEXIS 15553 (N.D. Ill. 2015) ...................................................................... 10

A*shcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................. 2

*In re Bally Total Fitness Securities Litig.*,
2006 U.S. Dist. LEXIS 93986 (N.D. Ill. 2006) ...................................................................... 11

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008).................................................................................... 12

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2012 U.S. Dist. LEXIS 41305 (N.D. Ill. 2012) ........................................................................ 9

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020) .................................................................................... 8

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ...................................................................................... 2

*City of Livonia Emp. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ............................................................................................... 4, 9

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ............................................................................................ 10, 12

*Espy v. J2 Glob., Inc.*,
2024 U.S. App. LEXIS 9487 (9th Cir. 2024)............................................................................ 4

*Fulton Cnty. Emp. Ret. Sys. v. MGIC Inv. Corp.*,
675 F.3d 1047 (7th Cir. 2012) ............................................................................................... 13

*Goldberg v. Household Bank, F.S.B.*,
890 F.2d 965 (7th Cir. 1989) ............................................................................................. 2, 10

4864-0764-8707v6/101468-0015

*In re Harley-Davidson, Inc. Securities Litigation*,
660 F. Supp. 2d 969 (E.D. Wis. 2009) ................................................................................ 1

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ............................................................................................. 10

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 ........................................................................................................... 12

*In re Jiangbo Pharma., Inc., Sec. Litig.*,
884 F. Supp. 2d 1243 (S.D. Fla. 2012) .......................................................................... 11, 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) .............................................................................................. 3, 8

*In re Mela Sciences Sec. Litig.*,
2012 U.S. Dist. LEXIS 144150 (S.D.N.Y. 2012)) ........................................................... 13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006).............................................................................................................. 3

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)........................................................................................... 12, 13

*Pension Trust Fund For Operating Eng. v. Kohl's Corp.*,
266 F. Supp. 3d 1154 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018)................................ 1

*In re PetroChina Co.*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015) ................................................................................. 9

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
673 F. Supp. 2d 718 (S.D. Ind. 2009)................................................................................. 13

*Roth v. OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) ............................................................................... 2, 10

*Stark Trading & Shepherd Invs. Int'l, Ltd. v. Falconbridge Ltd.*,
2008 U.S. Dist. LEXIS 2677 (E.D. Wis. 2008), aff'd 552 F.3d 568 (7th Cir. 2009) .................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................................... 3

*Turquoise Hill Res. Ltd. Sec. Litig.*,
962 F.3d 405 (9th Cir. 2020)............................................................................................. 11

**Statutes**

15 U.S.C. § 78u-4(b)(1)-(2) ............................................................................................... 3

4864-0764-8707v6/101468-0015

Private Securities Litigation Reform Act of 1995 ................................................................................. 1

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ................................................................................ 2, 3, 10

Federal Rule of Civil Procedure 8(a) ................................................................................ 2

Federal Rule of Civil Procedure 12(b)(6) ................................................................................ 2

Securities Exchange Act of 1934 Rule 10b-5 ................................................................................ 3, 14

iv

**INTRODUCTION**

Plaintiff has brought precisely the sort of strike suit that Congress, in enacting the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), directed courts to weed out on a motion to dismiss. Harbor Diversified, Inc. ("Harbor" or the "Company") recently disclosed that it intends to restate its financial results because of certain technical adjustments to its accounting for a single, disputed contract. Plaintiff immediately rushed to the courthouse—before Harbor even published the restatement—and filed a patently frivolous complaint (the "Complaint"). In seeking to convert the anticipated restatement into proof of securities fraud, Plaintiff makes only conclusory allegations that fail at the gate.

The Complaint is drafted as though the Reform Act does not exist. Plaintiff does not even attempt to satisfy his heightened burden by pleading facts giving rise to a "strong inference" that the individual defendants acted with fraudulent intent or "scienter." *See Pension Trust Fund For Operating Eng. v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1157-58 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018); *In re Harley-Davidson, Inc. Securities Litigation*, 660 F. Supp. 2d 969, 1003 (E.D. Wis. 2009). These "exacting pleading requirements" are among the control measures Congress included in the Reform Act in order "to stem the filing of frivolous federal securities lawsuits." *Appvion, Inc. v. Bluth*, 2022 U.S. Dist. LEXIS 161343, at *9 (E.D. Wisc. 2022) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). Yet the Complaint fails to cite even one of the typical sources or facts that plaintiffs ordinarily rely upon in attempting to plead securities fraud with the particularity required by the Reform Act:

- The Complaint does not cite a single confidential witness, internal Harbor document, or insider stock sale, much less any such evidence supporting a strong inference that any individual defendant knew, or was consciously reckless in not knowing, about the Company's technical accounting error.

- Plaintiff does not allege that Harbor's external auditor (Grant Thornton) told any Harbor employee, much less any individual defendant, about any error in the Company's accounting, or any material weakness in Harbor's internal controls, or

1

issued anything other than a series of clean audit reports stating that the Company's accounting controls were functioning properly.

- The Complaint does not allege any government enforcement action regarding Harbor's accounting, investor disclosures, or anticipated restatement.

In place of facts, Plaintiff merely points at the anticipated restatement and speculates that Harbor and two of its executives must have previously known, or must have been consciously reckless in not knowing, that Harbor was not accounting for the disputed contract in accordance with Generally Accepted Accounting Principles ("GAAP"). This conclusory allegation does not even begin to allege a viable claim. "Restatements of earnings are common," *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir. 1989), and "mere allegations of GAAP violations [or] the restatement of income . . . are not sufficient to demonstrate that those who made the statements committed securities fraud," *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 797 (N.D. Ill. 2007). Indeed, courts have long recognized that violations of accounting standards "do[] not support a strong, or even a *weak*, inference of scienter." *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (emphasis added).

That is why courts routinely dismiss cases involving restatements where plaintiffs have not pled facts giving rise to a "strong inference" that an individual defendant knew about, or was consciously reckless in ignoring, the errors that caused those restatements. *See, e.g., Kohl's Corp.*, 266 F. Supp. 3d at 1157-58; *In re Harley-Davidson, Inc*, 660 F. Supp. 2d at 1003. Plaintiff's allegations are even more conclusory than those dismissed in the above-cited cases. The Complaint does not allege a single fact indicating that either individual defendant knew of, or consciously ignored, the technical error in Harbor's accounting. Indeed, even if Congress had not enacted the Reform Act, Plaintiff's "labels and conclusions" and "formulaic recitation of the elements" would still fall short of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and 9(b). A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should therefore dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

2

**HEIGHTENED PLEADING STANDARD FOR FEDERAL SECURITIES CLAIMS**

A securities fraud complaint under Section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the Reform Act. *See Kohl's Corp.*, 266 F. Supp. 3d at 1157 ("Section 10(b) claims sound in fraud, and the rules of procedure require particularized pleading in fraud cases."). To state a claim under Section 10(b) a plaintiff must adequately plead that: (1) defendants made a false statement or omission; (2) of material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which plaintiff justifiably relied; and (6) the false statement or omission proximately caused the plaintiff's damages. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006).

As the Supreme Court has emphasized, "[p]rivate securities fraud actions . . . , if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to law." *Tellabs*, 551 U.S. at 313. Thus, "Congress enacted the [Reform Act] as a check against abusive litigation in private securities fraud actions." *Harley-Davidson*, 660 F. Supp. 2d at 983. The Reform Act was intended to curtail "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent' [that] had become rampant in recent years." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006).

The Reform Act's "effort to deter or at least quickly dispose of those suits whose nuisance value outweighs their merits place[s] special burdens on plaintiffs seeking to bring federal securities fraud class actions." *Id.* at 82. Those "special burdens" include heightened pleading requirements "insisting that securities fraud complaints . . . 'state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind [i.e., scienter].'" *Id.* at 81-82 (emphasis added); *see* 15 U.S.C. § 78u-4(b)(1)-(2); *Kohl's Corp.*, 266 F. Supp. 3d at 1157; *Appvion*, 2022 U.S. Dist. LEXIS 161343 at *9 ("The Reform Act requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud.").

3

A "strong inference" of scienter "'must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Harley-Davidson*, 660 F. Supp. 2d at 994 (quoting *Tellabs*, 551 U.S. at 314). To make such a determination, the Court must "weigh the strength of the plaintiffs' inferences in comparison to plausible nonculpable explanations for the defendants' conduct." *Id.* The "'required state of mind' is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Id.* at 994 (quoting *Higginbotham*, 495 F.3d at 756). In order to plead deliberate recklessness under the Reform Act, Plaintiff must plead particularized facts showing both a false statement and an "*extreme departure* from the standards of ordinary care . . . that the danger was either *known* to the defendant or so obvious that the defendant *must have been aware* of it." *City of Livonia Emp. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013) (quotation omitted) (emphasis added); *see Espy v. J2 Glob., Inc.*, 2024 U.S. App. LEXIS 9487 (9th Cir. 2024) ("Deliberate recklessness is a higher standard than mere recklessness.").

**ALLEGATIONS OF THE COMPLAINT[1]**

Harbor is a non-operating holding company whose business consists of the ownership of a group of entities, including Air Wisconsin Airlines LLC ("Air Wisconsin"), a regional carrier that provides passenger service to major airlines under contracts called "capacity purchase agreements." Compl. ¶ 7; Ex.[2] 1 (Harbor's Form 10-Q (May 9, 2022)) at 7. As Harbor's public filings made clear, Harbor's business is dependent on the performance of Air Wisconsin. Ex. 1 at 7. Christine R. Deister is Harbor's CEO, and Liam Mackay is CFO of Air Wisconsin (together, the "Individual Defendants," and with Harbor "Defendants").

---

[1] The following facts are drawn solely from the Complaint, "documents incorporated therein by reference[,] and those matters of which a court may take judicial notice." *Harley-Davidson*, 660 F. Supp. 2d at 973. For purposes of this motion only, Defendants assume the truth of Plaintiffs' factual allegations to the extent they are well pled and not conclusory or speculative.

[2] All five exhibits cited herein consist of SEC filings incorporated by the Complaint, from the Declaration of Wesley Horton, dated June 7, 2024, submitted in support of this motion.

4

For part of the class period (May 10, 2022 through March 29, 2024, Compl. ¶ 1) (the "Class Period"), United Airlines was Air Wisconsin's "sole airline partner," pursuant to the terms of a February 2017 capacity purchase agreement (the "United Agreement"). Ex. 1 at 7. Under the terms of the United Agreement, "[a]ll of Air Wisconsin's flights are operated as United Express [flights]." *Id*. at 19. The Company described its operating revenue during the United Agreement's effective period as almost entirely dependent on the United Agreement. *Id*.

The Company previously disclosed the existence of a contractual dispute between Air Wisconsin and United Airlines "with respect to certain recurring amounts owed to Air Wisconsin by United" and warned that the "outcome cannot be predicted." *Id*. at 19. As of "March 31, 2022, the amount in dispute was approximately $9.4 million," and the Company told investors that it had "recognized all disputed amounts through March 31, 2022 in the consolidated financial statements." *Id*. The Company continued to describe that dispute and the related revenue recognition to investors throughout the Class Period. For instance, in its 10-Q for the second quarter of 2022, the Company disclosed that "[a]s of June 30, 2022, the aggregate amount in dispute was approximately $19,571,000." Ex. 2 (Harbor's Form 10-Q (Aug. 10, 2022)) at 18.

When the Company filed its Form 10-Q for the third quarter of 2022, it again warned that "Air Wisconsin and United are in the early stages of arbitration, [and] Air Wisconsin cannot, with any degree of certainty, estimate the likely outcome of the arbitration including any potential award of the disputed amounts." Ex. 3 (Harbor's Form 10-Q (Nov. 21, 2022)) at 25. The Company also disclosed that it had "recognized all disputed amounts through September 30, 2022" (*Id.*), and paid taxes on those amounts. Notably, during this period, Harbor repurchased 7,664,033 shares of its common stock. *Id*. at 22, 33 ("During the nine months ended September 30, 2022, our cash flows used . . . $10.7 million to repurchase shares of our common stock.").

In connection with the Company's 2022 annual report, Harbor's external auditor, Grant Thornton, issued a clean audit opinion stating that the Company's "financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2022, and 2021, and the results of its operations and its cash flows for each of the two years in the period

ended December 31, 2022, in conformity with [GAAP]." Ex. 4 (Harbor's Form 10-K (December 31, 2022) at 44, Compl. ¶ 31. In that opinion, Grant Thornton notes that the proper treatment of revenue in connection with the United Agreement involved "especially challenging, subjective, or complex judgments." Grant Thornton then summarized the audit procedures it used to confirm the correct application of GAAP to that revenue, including:

- Gaining an "understanding of the relevant facts and circumstances related to matters in dispute, United's appeals with respect to amounts in dispute, Air Wisconsin's position and counterclaims, and the status of the related arbitration;"

- Reviewing "the relevant transaction and legal documents, including the [United Agreement] and related amendments, United's arbitration notice, Air Wisconsin's answer and counterclaims, and other letters between Air Wisconsin and United in connection with the ongoing dispute;"

- "[E]valuating responses to inquiry letters sent to internal and external legal counsel for additional information related to the dispute" and "the reasonableness of management's conclusions regarding the collectability of the disputed United receivables;" and,

- "[A]ssessing the sufficiency of management's disclosures related to the disputed United receivables and related arbitration, including [the fact that] United's intent to meet its payment obligations is largely dependent upon the resolution of arbitration and that the disputed receivables may not be collectable."

Ex. 4 at 45-46.

Ultimately, in February 2024, the arbitrators "denied Air Wisconsin's claims that United owed it amounts under the United [CPA]." Ex. 5 (Harbor's Form 8-K (Mar. 29, 2024)) at 2. Following this development, "the Company commenced an analysis of the complex accounting treatment leading to the recognition of the Disputed Amounts in revenue and interest income in light of the unexpected outcome of the arbitration." *Id.*; Compl. ¶ 53. The analysis was not an easy

one, and required "extensive discussions between Company management and Grant Thornton, as well as consultation between management and additional accounting and legal advisors." *Id.*

Three days after those extensive discussions concluded, on March 29, 2024, the Company disclosed that "(i) its prior determination as to the amount of the disputed revenue and interest income under the United Agreement was inconsistent with the guidance in ASC 606, resulting in an accounting error as that concept is defined in the accounting guidance, and (ii) its financial statements for the Non-Reliance Periods should be restated" to remove "the related receivables from United." *Id.* The Company noted the fact that "remov[al] of the receivables from United" will allow the Company to "file amended tax returns and seek reimbursement of certain tax payments made based on the previously recognized revenue." *Id.* In addition, the Company disclosed that "the restatement is not expected to have an adverse effect on the Company's operations or business plan" and "will not have any impact on the Company's cash and cash equivalents, restricted cash or marketable securities balances." *Id.* Nonetheless, in light of the technical accounting error, "the Company's management concluded that it did not maintain effective internal control over financial reporting and disclosure controls and procedures for the Non-Reliance Periods." *Id.*

Just weeks after this announcement, without even waiting for the restatement to issue, Plaintiff filed his Complaint. In his Complaint, Plaintiff broadly asserts two categories of misstatements based on nothing more than the March 29, 2024 announcement. Plaintiff copies and pastes the Company's Consolidated Statements of Operations from the Company's public disclosures for Q1 2022 (Compl. ¶ 19), Q2 2022 (*id.* ¶ 24), Q3 2022 (*id.* ¶ 29), FY 2022 (*id.* ¶ 34), Q1 2023 (*id.* ¶ 39), Q2 2023 (*id.* ¶ 44), Q3 2023 (*id.* ¶ 49). He then declares that "[t]he figures . . . were materially misstated as a result of improper revenue recognition." *Id.* at ¶¶ 20, 25, 30, 35, 40, 45, 50. Plaintiff does not identify which figures were misstated, to what extent, or facts indicating why they are incorrect under GAAP. Plaintiff also copies and pastes Sarbanes-Oxley certifications regarding the efficacy of the Company's internal controls from the same public filings discussed above. Compl. ¶¶ 17, 22, 27, 32, 37, 42, 47. He then declares that the certifications were misleading

7

"because the Company lacked adequate internal controls." *Id*. at ¶¶ 18, 23, 28, 33, 38, 43, 48. Plaintiff provides no facts regarding (i) the state of the Company's internal controls, the nature of any inadequacy, (ii) how any inadequacy contributed to any accounting error, or (ii) the knowledge of anyone at the Company regarding any accounting error or whatever deficiency allowed the accounting error to be made.

**ARGUMENT**

Plaintiff does not even attempt to plead a securities fraud claim. The Complaint points to nothing more than the Company's disclosure of a mistake by the Company's accounting staff and its external auditor in the application of complex accounting principles to anticipated revenue from a disputed contract. It should be dismissed.

## I. Plaintiff Makes No Attempt to Plead Falsity With Particularity

To plead a false statement of material fact, a plaintiff must "specify each statement that is allegedly misleading, the reasons why it is so, and, if based on information and belief, what specific facts support that information and belief." *Makor*, 437 F.3d at 595 (citing 15 U.S.C. § 78u-4(b)(1)). Doing so here should be a straightforward exercise, given that the Company has disclosed that there are "misstatements" in its financial reporting. (Ex. 5). Nonetheless, by relying on entirely conclusory assertions, Plaintiff manages to fall well short of his burden.

Plaintiff copies tables from the Company's Consolidated Statements of Operations and declares them to be "materially misstated as a result of improper revenue recognition." *See, e.g.*, Compl ¶¶ 19-20. Plaintiff does not identify which figures were misstated, to what extent, or why any figure is incorrect under GAAP, but instead "cites a dozen paragraphs and leaves it to [the Court] to pick out the allegedly false statements." *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1059 (E.D. Wis. 2020) This is plainly deficient. *Id.*; *C.f. Makor*, 437 F.3d at 593 (requiring Plaintiff to identify each "specific statement that is allegedly misleading").

Plaintiff also copies certifications stating that the Company's "disclosure controls and procedures were effective at the reasonable assurance level," declares them to be false "because

8

the Company lacked adequate internal controls." Compl. ¶¶ 17-18. But Plaintiff provides no *facts* regarding the state of the Company's internal controls that might begin to establish the falsity of the certifications. *See, e.g.*, *In re PetroChina Co.*, 120 F. Supp. 3d 340, 358-59 (S.D.N.Y. 2015) (Noting failure to plead any facts pertaining to the Company's internal structure for internal controls); *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 U.S. Dist. LEXIS 41305, *24 (N.D. Ill. 2012) (conclusory statements by company insider insufficient to plead falsity). In addition, it is unclear how the certifications could be materially false or misleading in light of Harbor's concurrent disclosures entitled "Limitations on Effectiveness of Controls" noting, among other warnings, that "[o]ur management, including [the Individual Defendants], does not expect that our disclosure controls and procedures, or our system of internal control over financial reporting, will prevent or detect all errors." *See, e.g.*, Ex. 1 at 27-28. Plaintiff thus fails to plead a single materially false statement as required by the Reform Act.

## II. Plaintiff Makes No Attempt to Plead Scienter With Particularity

As the Seventh Circuit has recognized, "[w]ithout a motive to commit securities fraud, businessmen are unlikely to commit it." *City of Livonia*, 711 F.3d at 758 (affirming dismissal of securities class action). Plaintiff, however, does not present any theory of motive, much less plead particularized facts as to the knowledge or state of mind of either Ms. Deister or Mr. Mackay. *See* Compl. ¶ 12, 69-70. That ends the inquiry because "the plaintiff[] must create a strong inference of scienter as to each individual defendant." *Kohl's*, 266 F. Supp. 3d at 1165 (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

### A. The Complaint alleges no facts supporting an inference of scienter

None of the factual allegations in the Complaint support an inference of scienter. Plaintiff cannot rely on his speculative assertion "that defendants must have been aware of the misstatement based on their positions within the company." *In re Harley Davidson*, 660 F. Supp. 2d at 995 (quotation omitted); *cf.* Compl. ¶ 76 ("Because of their senior positions, [the Individual

9

Defendants] knew the adverse non-public information about the Company's business practice.") Indeed, "allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which courts, on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3rd Cir. 1999) (citing cases).

Nor can Plaintiff rely on the Individual Defendants' alleged participation in drafting or signing public disclosures. *See* Compl. ¶ 12, 69-70. As courts in the Seventh Circuit have repeatedly recognized, "signature[s] on the SEC filings and Sarbanes Oxley certifications" do "not suffice to allege scienter without allegations that . . . [the defendants were] . . . aware of the material weaknesses in [the company's] internal controls over financial reporting at the time [they] signed those statements or that such weaknesses were obvious." *Roth*, 527 F. Supp. 2d at 804. Rather, "Plaintiff must state with particularity facts—known to the speaker at the time—that render the statement false or misleading." *Arazie Alizadeh v. Tellabs, Inc.*, 2015 U.S. Dist. LEXIS 15553, at *21 (N.D. Ill. 2015). This Plaintiff simply does not do.

Plaintiff also cannot rely on the anticipated restatement. "[M]ere allegations of GAAP violations, the restatement of income, or statements regarding the internal controls of a company that are later proven to be false, are not sufficient to demonstrate that those who made the statements committed securities fraud." *Roth*, 527 F. Supp. 2d at 797. That is because "[r]estatements of earnings are common," *Goldberg*, 890 F.2d at 967, and "a large column of big numbers need not add up to fraud," *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ($4 billion financial restatement did not support inference of scienter). Courts therefore routinely dismiss securities fraud complaints filed in response to financial restatements where, as here, the plaintiff has failed to allege specific facts giving rise to a strong inference of scienter.

For example, in *Higginbotham*, the company and certain officers were sued for securities fraud after the company "announced that it would restate the preceding three years' earnings in order to correct errors created by fraud at its subsidiary in Brazil." *Higginbotham v. Baxter Int'l,*

4864-0764-8707v6/101468-0015

*Inc.*, 495 F.3d 753, 755 (7th Cir. 2007). The court affirmed dismissal for failure to allege scienter because the complaint offered "very little reason to infer knowledge (or reckless indifference)" prior to the date of the last alleged misstatement. *Id*. at 758. Similarly, in *In re Bally Total Fitness Securities Litigation*, the defendant "filed a restatement that comprehensively restated its financial results for 2000, 2001, 2002, and 2003." 2006 U.S. Dist. LEXIS 93986, at *11 (N.D. Ill. 2006). Because "even a very large restatement is not itself evidence of scienter," the district court dismissed plaintiffs' securities fraud claims, finding that "plaintiffs ha[d] failed to allege particularized facts sufficient to give rise to a strong inference that any of the defendants acted with the requisite intent or recklessness." *Id*. at *24, *41. The same is true here, only more so.

As in *Kohl's*, the accounting rules Harbor allegedly misapplied are "complex and technical," and Plaintiff has "not alleged with sufficient particularity why or how senior executives at [Harbor] would have been so familiar with those rules so as to see a problem in the company's accounting before their auditors did." 266 F.3d at 1167; *see* Ex. 4 at 45-46. "[I]t is difficult to build inferences of scienter upon accounting errors because such errors often involve complex calculations about which reasonable people can differ in opinion." *In re Allscripts, Inc. Sec. Litig.*, 2001 LEXIS 8897, at *31-*32 (N.D. Ill. 2001); *see In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 LEXIS 174096, at *19 (S.D.N.Y. 2014) ("The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published, particularly when the error was a matter of judgment."). Plaintiff ignores this difficulty and cites no facts—no confidential-witness statements, no communications, no meetings, no terminations, no insider stock sales, no auditor concerns or other evidence—supporting any inference, much less a strong inference, that Ms. Deister or Mr. Mackay knew, or was deliberately reckless in not knowing, about the Company's technical accounting error at the time any purported misstatement was made.

**B. The Complaint's factual allegations tend to negate any inference of scienter**

Without any theory of motive, or any evidence demonstrating that an Individual Defendant made knowingly false or consciously reckless disclosures about Harbor's accounting, the only available inference from Plaintiff's allegations is that Harbor's accounting staff and external

4864-0764-8707v6/101468-0015

auditor had difficulty applying complex accounting standards to the United Agreement, and made a mistake. That is not fraud. Even worse, the Complaint cites and relies upon public disclosures that affirmatively negate any inference of scienter.

*First*, Plaintiff implicitly claims that Defendants booked and paid taxes on $52.3 million of revenue they *knew* would never come in. That theory is both factually unfounded and "has no basis in logic or common experience." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 407 (9th Cir. 2020). "People sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud." *Dileo*, 901 F.2d at 629. Accordingly, "[o]ne who believes that another has behaved irrationally has to make a strong case." *Id*. Here, the evidence cited by the Complaint not only fails to make a strong case, it repeatedly negates Plaintiff's proffered inference.

*Second*, to the extent Plaintiff merely claims that Defendants knowingly got the accounting wrong (*e.g.*, prematurely recognized the disputed receivables), that theory is equally untenable. Harbor not only received a clean audit opinion, that opinion specifically addresses and validates the especially challenging, subjective, and complex accounting for the disputed receivables. *See* Ex. 4 at 44-46. This supports the inference that the Individual Defendants were previously "unaware" of the alleged accounting error. *In re Jiangbo Pharma., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1263 (S.D. Fla. 2012); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 349 n.63 (D.N.J. 2007 ("[A] 'clean' audit provides certain grounds for Defendants' placid state of mind and advocates against [an] inference of scienter."). Moreover, the "complaint does not include allegations that the company's auditors alerted [the Individual Defendants], or anyone else at [Harbor] to errors in the company's [] accounting before the review that ultimately led to the [anticipated] restatement." *Kohl's*, 266 F.3d at 1167. Courts regularly point to the absence of such an allegation in dismissing securities fraud complaints. *Id.*; *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (no scienter where "outside auditor[s] did not question [the company's] accounting practices").

12

*Third*, managements' efforts to investigate, rectify and disclose the technical accounting error further negate any inference of scienter and suggest that the Defendants were acting in good faith. *See* Compl. ¶ 53. "If the defendants possessed a fraudulent intent and arguably were aware of any errors, . . . the most reasonable response from the defendants would have been silence." *Stark Trading & Shepherd Invs. Int'l, Ltd. v. Falconbridge Ltd.*, 2008 U.S. Dist. LEXIS 2677, at *28 (E.D. Wis. 2008), aff'd 552 F.3d 568 (7th Cir. 2009). But the Individual Defendants were not silent. To the contrary, Plaintiff alleges that "management," including the Individual Defendants, committed (Compl. ¶¶ 17, 22, 27, 32, 37, 42, 47), and then investigated and disclosed (*id*. ¶ 53), their own fraud. That theory also "has no basis in logic" and "allegations that are not plausible do not create a strong inference of scienter." *Endologix*, 962 F.3d at 407.

*Fourth*, Defendants used $10.7 million to repurchase 7,664,033 of the Company's shares in the period when the price of Harbor's stock supposedly was inflated by Defendants' own fraud. *See* Ex. 3 at 22, 33. Such extensive "[s]tock repurchase programs actually *negate* a finding of scienter, [because] it would have made no sense to purchase the stock if defendants knew the prices to be inflated." *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 749 (S.D. Ind. 2009) (quotation omitted) (emphasis in original). Indeed, "[i]t is well settled that such an action—*i.e.*, the purchase of additional company shares during the class period—is inconsistent with an intent to commit fraud." *In re Mela Sciences Sec. Litig.*, 2012 U.S. Dist. LEXIS 144150, at *15 (S.D.N.Y. 2012)).

In sum, Plaintiff's allegations do not even support "the proposition that [the Individual Defendants] *should* have seen the looming problem," which would constitute "negligence rather than the state of mind required for fraud." *Fulton Cnty. Emp. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1050 (7th Cir. 2012) (emphasis in original). Rather, the only compelling inference to be drawn is an innocent one: Harbor's accounting staff and external auditor erred in applying a particularly vexing accounting standard, and the Individual Defendants sought to disclose and rectify the error as soon as they learned of it. Because Plaintiff "fail[s] to establish the primary liability of an individual defendant, the alleged misconduct is not imputable to [Harbor]." *Harley-*

*Davidson*, 660 F. Supp. 2d at 1003. And, because the plaintiff "fail[s] to state a claim under Section 10(b) or Rule 10b-5 as discussed above, there can be no liability under Section 20(a)." *Kohl's*, 266 F. Supp. 3d at 1169 (*citing Pugh*, 521 F.3d at 693). The Complaint thus entirely fails.

## CONCLUSION

As in *Harley-Davidson* and *Kohl's*, Plaintiffs have not pled particularized facts giving rise to a strong inference that the Individual Defendants knew of, or consciously ignored, the technical errors in Harbor's accounting or any associated controls deficiency. The only available inference is that the Individual Defendants sought to rectify those errors any related control weakness as soon as they learned of them. Thus, this Court should dismiss the Complaint.

Dated this 7th day of June, 2024.

By: */s/ David R. Konkel*
    John L. Kirtley
    State Bar No. 1011577
    David R. Konkel
    State Bar No. 1097244
    GODFREY & KAHN, S.C.
    833 East Michigan Street, Suite 1800
    Milwaukee, WI 53202-5615
    Phone:  414-273-3500
    Fax:  414-273-5198
    Email:  jkirtley@gklaw.com
    Email:  dkonkel@gklaw.com

    Jason de Brettville (*application for admission forthcoming*)
    Wesley Horton (*application for admission forthcoming*)
    STRADLING YOCCA CARLSON & RAUTH LLP
    660 Newport Center Drive, Suite 1600
    Newport Beach, CA 92660
    Phone:  949-725-4000
    Fax:  949-725-4100
    Email:  jdebretteville@stradlinglaw.com
    Email:  whorton@stradlinglaw.com

    *Attorneys for Defendants Harbor Diversified, Inc., Christine R. Deister, and Liam Mackay*

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 7, 2024, I electronically filed the aforementioned document with the Clerk of Court using the Court's CM/ECF system, which will electronically send notification to counsel of record.

Dated this 7th day of June, 2024.

By: */s/ David R. Konkel*
John L. Kirtley
State Bar No. 1011577
David R. Konkel
State Bar No. 1097244
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: jkirtley@gklaw.com
Email: dkonkel@gklaw.com

Jason de Brettville (*application for admission forthcoming*)
Wesley Horton (*application for admission forthcoming*)
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Fax: 949-725-4100
Email: jdebretteville@stradlinglaw.com
Email: whorton@stradlinglaw.com

*Attorneys for Defendants Harbor Diversified, Inc., Christine R. Deister, and Liam Mackay*

4864-0764-8707v6/101468-0015