**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

VIRAL KOTHARI, Individually and on behalf
of all others similarly situated,

Case No. 1:24-cv-00556-WCG

Plaintiff,

v.

HARBOR DIVERSIFIED, INC., CHRISTINE
R. DEISTER, and LIAM MACKAY,

Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 E. Michigan St., Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON &
RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

July 12, 2024

**TABLE OF CONTENTS**

                                                                                   **PAGE**

INTRODUCTION ...........................................................................................................1

ARGUMENT.................................................................................................................1

      A.      Kothari Cannot Defend the Contents of His Frivolous Complaint.......................1

      B.      The Reform Act Was Meant to Deter the Filing of Frivolous Complaints ..........3

           1.      The Reform Act's Purposes.............................................................3

           2.      The Reform Act's Procedures .........................................................4

      C.      The Reform Act Prohibits Kothari's Use of a Placeholder Complaint.................6

      D.      The Motion to Dismiss is Not Premature .............................................................7

CONCLUSION..............................................................................................................10

**Table of Authorities**

**Page(s)**

**Cases**

*Advanced Battery Techs., Inc. v. Bagell*,
781 F.3d 638 (2d Cir. 2015) ...............................................................................................2

*In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010) ...........................................................................6, 7, 8

*Auto. Indus. Pension Trust Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012)................................................................................................7

*In re Bally Total Fitness Securities Litigation*,
2006 U.S. Dist. LEXIS 93986 (N.D. Ill. 2006) ...............................................................2

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2013 U.S. Dist. LEXIS 45053 (N.D. Ill. 2013) ...........................................................7, 10

*Casey v. Windmere-Durable Holdings, Inc., et al.*,
No. 98-2273-CV, Dkt. No. 17 (S.D. Fla. 1998)................................................................9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...........................................................................................4, 5

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3rd Cir. 2005).............................................................................................4

*In re Champion Enters. Secs. Litig.*,
145 F. Supp. 2d 871 (E.D. Mich 2001) ............................................................................6

*City of Livonia Employees' Ret. Sys. v. Boeing Co.*,
306 F.R.D. 175 (N.D. Il. 2014)......................................................................................3, 6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................................2

*Gumm v. Molinaroli*,
2016 WL 6680462 (E.D. Wis.).........................................................................................8

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ..........................................................................................3, 6

*Mei Pang v. Levitt*,
No. 1:22cv1191 (W.D. Tex. filed Jan. 14, 2022) .............................................................2

*Oscar Private Equity Investments v. Allegiance Telecom, Inc., et al.*,
2004 WL 524943 (N.D. Tex. 2004) ..................................................................................9

iii

*Podraza v. Whiting*,
790 F.3d 828 (8th Cir. 2015) ...................................................................................... 2

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008). (Opp .)......................................................................... 8

*Ravens v. Iftikar*,
174 F.R.D. 651 (N.D. Cal. 1997)................................................................................ 5

*Retired Chi. Police Ass'n v. Firemen's Annuity & Benefit Fund of Chi.*,
145 F.3d 929 (7th Cir. 1998) ...................................................................................... 7

*Spiegal v. Tenfold Corp., et al.*,
No. 00-652, Dkt. No. 36 (D. Utah 2001) .................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................. 1, 4

*Thornton v. Wahl*,
787 F.2d 1151 (7th Cir. 1986) .................................................................................. 10

*Valdes v. Kandi Techs. Grp., Inc.*, 2024
2024 LEXIS 58238 (E.D.N.Y. 2024)......................................................................... 2

*Valerius v. Geraghty*
2010 U.S. Dist. LEXIS 161540 (E.D. Pa. 2010) ............................................... 1, 9, 10

*Walling v. Generac Holdings Inc. et al.*,
No. 2:24CV00240, Dkt. No. 5 .................................................................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................ 5

15 U.S.C. § 78u-4(b)(3)(A)............................................................................................ 3, 7

Private Securities Litigation Reform Act of 1995 ..........................................................*passim*

Sarbanes-Oxley Act ........................................................................................................... 2

Securities Exchange Act Section 10(b)............................................................................... 2

**Other Authorities**

Federal Rule of Civil Procedure 15(a) ............................................................................... 9

Local Rule 7(j)(2) .............................................................................................................. 9

Rule 11 ............................................................................................................................... 7

## INTRODUCTION

Kothari's cursory opposition essentially concedes that his complaint fails to state a claim. Rather than defend its contents, he asserts that the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA") implicitly authorizes his filing of, and continuing reliance on, a defective complaint until such time as he or some other investor may secure lead plaintiff status, and that this renders Defendants' motion to dismiss "premature." (Opp. at 1.) Thus, as Kothari would have it, he could have filed a complaint consisting of nothing more than a caption page. That argument is at odds with the basic requirements of the Federal Rules of Civil Procedure and the Reform Act. Kothari is not entitled to defer conducting a reasonable investigation and drafting particularized allegations until some distant date. The Court should reject Kothari's cynical tactics.

## ARGUMENT

Following Harbor's announcement of bad news, Kothari raced to the courthouse and filed a skeletal complaint that does not even attempt to plead a viable claim. In so doing, Kothari cast aside heightened pleading requirements meant to effectuate the Reform Act's essential purpose of curtailing the filing of frivolous complaints. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 328 (2007) ("[T]he purpose of [the Reform Act's pleading requirements] is to screen out frivolous complaints."). In his opposition, Kothari asserts that "the PSLRA, case authorities, and practice" preclude any attack on his complaint while he attempts to secure lead plaintiff status, and until such time as he or some other lead plaintiff sees fit to amend his complaint in some unspecified manner, at some unspecified date. (Opp. at 4.) That is wrong. "[S]taying consideration of Defendants' Motions to Dismiss would undermine—rather than further—the goals of the PSLRA." *Valerius v. Geraghty* 2010 U.S. Dist. LEXIS 161540, *3-*4 (E.D. Pa. 2010).

### A.     Kothari Cannot Defend the Contents of His Frivolous Complaint

Kothari's complaint is not a viable pleading. Other than a single footnote containing a string citation to a handful of inapposite cases, he does not claim otherwise. (*See* Opp. at 1 n.1.) His complaint is not viable because it ignores the strictures of the Reform Act, which "insists that

1

securities fraud complaints 'specify' each misleading statement . . . and that they 'state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind [i.e., scienter].'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u-4(b)(1), (2)) (emphasis added). In particular, Kothari's complaint ignores the fact that Section 10(b) of the Securities Exchange Act of 1034, under which he brings his complaint, "prohibit[s] fraud, not accounting malpractice," and that "allegations of GAAP violations are insufficient to state a securities fraud claim unless coupled with evidence of corresponding fraudulent intent." *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015). The cases on this point are legion. *See, e.g.*, *Advanced Battery Techs., Inc. v. Bagell*, 781 F.3d 638 (2d Cir. 2015) ("Mere allegations of GAAP violations or accounting irregularities, or even a lack of due diligence, will not state a securities fraud claim absent evidence of corresponding fraudulent intent.").

Kothari's opposition, like his complaint, identifies no facts supporting the most fundamental element of his claim—that Defendants knew, or were reckless in not knowing, that Harbor's accounting misapplied highly technical principles to a disputed contract. Instead, Kothari again points to the individual defendants' positions in the Company and the "magnitude of the error[,]" and asserts that they must have been aware of the technical accounting issue (*See* Compl. ¶ 76; Opp at 1 n.1)—a boilerplate formulation held to be deficient in dozens of decisions spanning decades, including numerous cases brought by Kothari's own counsel. *See, e.g., Valdes v. Kandi Techs. Grp., Inc.*, 2024 LEXIS 58238, *23 (E.D.N.Y. 2024) (rejecting the claim that individual defendants must have known about the alleged fraud "because, as officers, they were tasked with ensuring [the Company's] compliance with GAAP and financial reporting requirements"); *Mei Pang v. Levitt*, 2023 LEXIS 227786, *43 (W.D. Tex. 2023) (rejecting the assertion "that defendants must have been aware of the misstatement based on their positions within the company" and reliance on "the fact that Defendants executed a statutorily-required Sarbanes-Oxley Act ('SOX') certification"); *In re Bally Total Fitness Securities Litigation,* 2006 U.S. Dist. LEXIS 93986, at *11 (N.D. Ill. 2006) ("[E]ven a very large restatement is not itself evidence of

2

scienter."). Kothari's complaint is not a good faith attempt to satisfy the Reform Act's heightened pleading requirements.

Kothari may prefer to avoid incurring the cost and expense of conducting an "elaborate" pre-complaint investigation and drafting a detailed complaint until he is certain that he will serve as lead plaintiff and that his counsel will have access to a substantial fee award. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008); *see* Opp. at 4 ("[T]his approach comport[s] with the PSLRA[.]"). But that pre-filing effort is exactly the burden that the Reform Act places on plaintiffs in order to protect defendants from the effects of baseless litigation. The statutory objective is to prevent factually baseless lawsuits from ever being filed. Kothari's effort to skirt the rules demonstrates that he is focused solely on securing control of the putative class and extracting an extortionate settlement, not the merits of his claim. Kothari is precisely the kind of plaintiff, and this is exactly the type of action, that the Reform Act is designed to deter.

**B.       The Reform Act Was Meant to Deter the Filing of Frivolous Complaints**

Kothari's suggestion that the Reform Act grants Kothari the right to file and rely upon a placeholder complaint that does not satisfy the Reform Act's own pleading requirements is absurd, on its face. The Reform Act clearly states, "In any private action arising under this chapter, the court *shall*, on the motion of any defendant, dismiss the complaint if the [pleading] requirements…are not met." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added). The rationale for these "pleading requirements includes the fact that the mere filing of a broad, class action securities complaint is a market relevant event for any reputable company." *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-181 (N.D. Il. 2014). Kothari may not, for the sake of his own convenience, cast these threshold requirements aside and harm the company, executives and shareholders that the Reform Act is designed to protect.

**1.       The Reform Act's Purposes**

During the Clinton administration, securities class actions fell under heavy criticism based, in part, on concerns that plaintiffs were imposing undue costs on innocent parties by alleging a stock price drop after the disclosure of disappointing news, labeling it "fraud," and thereby

3

extracting unreasonable settlements at the expense of innocent shareholders—*i.e.*, precisely what Kothari is attempting to do here. *See* 1 Litigating Securities Class Actions § 1.01 (2024). Congress addressed these concerns in the Reform Act which, *inter alia*, requires that plaintiffs plead "with particularity" facts supporting allegations of falsity and a "strong inference" of scienter, stays discovery until the complaint survives a motion to dismiss, and establishes procedures for the selection of a lead plaintiff based primarily on which has the largest financial interest. Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995).

Prior practice involved judicial appointment of the lead plaintiff on a "first to file" basis. This incentivized a rush by plaintiffs' lawyers to initiate securities class actions by filing a complaint before any other plaintiff's counsel was able to do so—often referred to as a "race to the courthouse." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). This method of establishing class leadership encouraged the use of figurehead plaintiffs, with lawyers acting as the true motivating force. Further, plaintiffs' attorneys were abusing the process by filing meritless claims that might nevertheless have settlement value, just as Kothari has done here.

In these "baseless and extortionate lawsuits[,] innocent parties are often forced to pay exorbitant 'settlements'. … [and] [i]nvestors always are the ultimate losers." Reform Act. H.R. Rep. No. 104-369, at 31–32 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 730–31. Congress recognized this problem and passed the Reform Act, intending "to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs*, 551 U.S. at 322. Congress sought to accomplish these twin goals by, among other reforms, creating mechanisms that would eliminate the "race to the courthouse." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 196 (3rd Cir. 2005).

### 2. The Reform Act's Procedures

The Reform Act's process for appointing lead plaintiffs was intended to be a "sea change from the prior race-to-the-courthouse system, where lead counsel have historically chosen the lead plaintiff rather than vice versa." *Id*. at 192 (quoting *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 274 (3rd Cir. 2001)). It begins with the filing of a complaint. As Kothari notes, upon such a filing,

the Reform Act requires the plaintiff to publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the pendency of the action and the fact that "any member of the purported class may move the court to serve as lead plaintiff" within 60 days. 15 U.S.C. § 78u-4(a)(3)(A)(i). Korthari points to this "cascade of deadlines" as somehow protecting a frivolous complaint from dismissal until after appointment of a lead plaintiff. (Opp. at 2-3.) That argument ignores the actual language of the Reform Act, and the fact that these procedures are an important innovation from prior practice meant to deter, not encourage, the filing of frivolous complaints.

As noted above, prior practice created incentives for unscrupulous lawyers to obtain control of securities class actions by quickly filing bare bones complaints after news causing a decline in the price of a security. The requirement to plead fraud with particularity, together with the 60-day notice period, is intended to eliminate these incentives. The particularized complaint is meant, in part, to inform other investors about the nature of the alleged fraud, and the 60-day period after notice affords institutional investors the opportunity to consider the merits of that claim and decide whether to seek a leadership role. *See* 1 Litigating Securities Class Actions § 1.02 (2024) ("The 60-day notice period provides institutions the time to conduct any such processes prior to determining to seek lead plaintiff status.").

The Reform Act's procedures are thus intended to "promote the goal of attracting institutional investors, and discourage opportunistic lawsuits by shareholders with a tiny position in the security which is the subject of the litigation." *In re Cavanaugh*, 306 F.3d at 729; *see Ravens v. Iftikar*, 174 F.R.D. 651, 653-54 (N.D. Cal. 1997) (Congress's "overriding" goal was to "transfer primary control of private securities litigation from lawyers to investors" and "displace figurehead plaintiffs with real investors."). That purpose is frustrated completely if a shareholder is allowed to go through the lead plaintiff process based on a provisional complaint that lacks the factual particularity necessary for institutional investors to evaluate the supposed merits of the claim.

### C.     The Reform Act Prohibits Kothari's Use of a Placeholder Complaint

Kothari asks the Court to exempt his complaint from the Reform Act's heightened pleading requirements by refusing to entertain any motion to dismiss until such time as he (or some other investor) may secure lead plaintiff status on the basis of his deficient complaint, and then file an "operative" complaint. (Opp at 4.) That new complaint may or may not contain any substantive amendments—Kothari makes no such promises. This request to treat the complaint as a mere placeholder cannot be reconciled with the Reform Act, which is meant "to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis . . .[and] [t]o make it easier for innocent defendants to get cases against them dismissed early in the process." *In re Champion Enters. Secs. Litig.*, 145 F. Supp. 2d 871, 874 (E.D. Mich 2001) (quoting Conference Report to H.R. 1058/S. 240 (1995)).

Kothari's demand that the Court insulate his complaint from attack ignores the fact that the "mere filing" of a securities fraud complaint imposes a host of costs on innocent defendants, including the retention of counsel to defend themselves against the accusations of fraud, implementation of a document hold, increased insurance premiums, and reputational harm. *City of Livonia.*, 306 F.R.D. at 180-18; *see also In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 266 (S.D.N.Y. 2010) ("[U]pon the filing of the Original Complaint, the defendants were forced to retain counsel and conduct an initial investigation into the allegations contained in the Original Complaint in preparation for defending the lawsuit."). Congress recognized this problem, and passed the Reform Act in order to discourage the *filing* of frivolous complaints that inflict these harms.

As noted above, to accomplish that goal, the Reform Act imposes far more stringent pleading and pre-filing investigative burdens than in other contexts, and clarifies what is required to *initiate* a securities fraud action in good faith. "Because the Reform Act requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct elaborate *pre-complaint* investigations." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d at 711 (emphasis added). The Reform Act thus "leaves a plaintiff's counsel with a

greater than usual burden of investigation *before* filing a securities fraud complaint" because the legislature "deliberately raised the *entry bar . . .* through the PSLRA's heightened pleading standards[.]"*Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (emphasis added). "Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation. They must conduct a reasonable investigation of the facts necessary to support their claims." *Retired Chi. Police Ass'n v. Firemen's Annuity & Benefit Fund of Chi.*, 145 F.3d 929, 934 (7th Cir. 1998)

Kothari would have this Court throw these threshold requirements out the window by treating his complaint as a mere placeholder, and allow him to defer any attempt at compliance with the Reform Act until long after the filing of his complaint, upon some uncertain date, months or even years from now. Nothing in the Reform Act is consistent with that approach. The Reform Act required that Kothari investigate thoroughly before filing his complaint, not after, and that he make a good faith attempt to plead a viable claim now, not at some later date. *See Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2013 U.S. Dist. LEXIS 45053, at \*38 (N.D. Ill. 2013) (Concluding that plaintiffs "filed this lawsuit before conducting a proper *presuit* investigation" and that plaintiffs improperly used a 60-day period for amendment to "conduct an investigation that it should have conducted *before* filing this lawsuit") (emphasis added); *In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d at 266 ("Plaintiff's counsel have identified no authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA."). Kothari's filing of a placeholder or provisional complaint cannot be reconciled with the Reform Act.

### D. The Motion to Dismiss is Not Premature

Neither the Reform Act nor common "practice" can be read as allowing Kothari to force Defendants to silently suffer the injuries attendant to a public, frivolous accusation of fraud for months or years. Opp. at 4;*Cf.* 15 U.S.C. § 78u-4(b)(3)(A) ("[T]he court *shall*, on the motion of any defendant, dismiss the complaint if the [pleading] requirements…are not met."). It is true, as

reflected in some of the cases cited by Kothari, that securities fraud plaintiffs often propose schedules that defer the defendants' obligation to file a responsive pleading until such time as the court designates the lead plaintiff and lead counsel—and even then only after the filing of a consolidated complaint, often another 60 to 90 days on top of the 60-day notice period. It also is true that Defendants sometimes "play ball" and agree to such a leisurely schedule in the hope of ultimately securing a dismissal that binds an entire class. But none of this means that the Reform Act allows, much less *entitles*, Kothari to initiate a securities fraud class action by filing a conclusory complaint, publish a defamatory notice of that defective filing to the putative class, and prevent the Court from considering a motion to dismiss filed by injured defendants who have no interest in playing Kothari's game until he, or some other investor, secures lead status.

The Reform Act certainly imposes no obligation on Defendants, or the Court, to agree to a briefing schedule that subverts the Reform Act, and leaves the specter of widely published fraud claims hanging over Defendants' heads for months or years. Defendants' motion to dismiss made it clear that they had no interest in "playing ball" with Kothari, and gave him the opportunity to withdraw his pleading and attempt to file a viable initial complaint. Kothari did not avail himself of that opportunity, and instead claims the right to continue litigating on the basis of a patently frivolous complaint—without even a vague promise of any material amendment. But the initial complaint, not some future complaint, is the key to the courthouse door. *See In re Austl. & N.Z. Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d at 266 ("The initial complaint is the vehicle that invokes a court's jurisdiction and sets the litigation in motion.").

None of Kothari's cited cases are instructive, much less speak to a different conclusion. His first string citation includes only one published case from this circuit, *Pugh v. Trib. Co.*, 521 F.3d 686, 692 (7th Cir. 2008). (Opp at 3.) *Pugh* merely indicates that, where multiple complaints have been filed, the lead plaintiff may file a consolidated complaint. Here, only Kothari has filed a complaint. Kothari also cites the unpublished decision in *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 WL 6680462 (E.D. Wis.), and eight other unpublished cases while failing to attach the

8

relevant orders in violation of Local Rule 7(j)(2)[1], or even provide a docket entry—forcing the Court to hunt for any potentially relevant order. None of these cases addresses the proper timing of a motion to dismiss in securities fraud class action. *See, e.g., Walling v. Generac Holdings Inc. et al.*, No. 2:24CV00240, Dkt. No. 5[2] (E.D. Wis.) (motion to dismiss filed pursuant to a *stipulated* briefing schedule). Kothari thus fails to identify any helpful cases from within the 7th Circuit.

Kothari's second string citation, in a footnote, to a compendium of unpublished decisions from outside the 7th Circuit is equally unavailing. He again violates Local Rule 7(j)(2), and again fails to provide a docket entry in five instances. (Opp at 3 n.2.) Even worse, contrary to his representation to the Court, not one of these cases is in "accord" with Kothari's position. (*Id.*) The first case is an outlier decision denying a motion to dismiss because the plaintiff still had a right to amend under Federal Rule of Civil Procedure 15(a)—a right that Kothari let expire. *See Oscar Private Equity Investments v. Allegiance Telecom, Inc., et al.*, 2004 WL 524943 (N.D. Tex. 2004). Several of the cited cases deal with the filing of multiple complaints by competing plaintiffs, which led the courts to consider motions to dismiss after the filing of a consolidated complaint— circumstances that are absent here. *See, e.g., Spiegal v. Tenfold Corp., et al.*, No. 00-652, Dkt. No. 36 (D. Utah 2001). Others merely involve stipulated briefing schedules. *See, e.g., Casey v. Windmere-Durable Holdings, Inc., et al.*, No. 98-2273-CV, Dkt. No. 17 (S.D. Fla. 1998). None suggests that this Court should ignore Defendants' motion to dismiss so that Kothari or some other lead plaintiff can defer conducting a reasonable inquiry and pleading particularized facts until some distant date.

Notably, Kothari ignores instructive decisions from cited jurisdictions that actually discuss and reject his argument. For example, in *Valerius v. Geraghty*, the court rejected a nearly identical argument that the court should "defer ruling on any motion to dismiss" until after appointment of

---

[1] L.R. 7(j)(2) ("If a party cites an unreported opinion, decision, order, judgment or other written disposition that is not available in a publicly accessible electronic database, the party must file and serve a copy of that opinion, decision, order, judgment, or other written disposition.").

[2] Defendants have inserted a reference to a docket entry that appears to be the basis of Kothari's citation.

9

the lead plaintiff. 2010 U.S. Dist. LEXIS 161540 at *3-*4. In so ruling, the court noted the lack of any provision in the Reform Act authorizing such a deferral, and went on to note:

> In addition, Plaintiffs' contention that the "interests of efficiency and the orderly administration of this case militate in favor of postponing the motions to dismiss" is belied by the circumstances presented. Since Plaintiffs issued their press release to members of the purported class on February 4th, not a single class member has moved to serve as lead plaintiff. Nor have Plaintiffs Valerius and Maffia moved to consolidate their respective Complaints. In these circumstances, staying consideration of Defendants' Motions to Dismiss would undermine—rather than further—the goals of the PSLRA. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (the PSLRA was enacted "to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis").

*Id.* *4. The circumstances here are even less favorable to Kothari because no other shareholder has filed a complaint.

In sum, Kothari's "shoot first, aim later" approach is anathema to the Reform Act and the Federal Rules of Civil Procedure. *Boca Raton*, 2013 U.S. Dist. LEXIS 45053, at *39 (condemning plaintiff's failure to investigate before filing original complaint); *see also Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) ("It is not acceptable to make an assertion . . . and hope that it will turn out to be true."). His reliance on a frivolous complaint to secure immediate and inexpensive access to status as lead plaintiff—while providing minimal information to potential lead plaintiff rivals—should not be allowed to go forward.

## CONCLUSION

Kothari's reliance on a patently defective complaint until such time as he may secure lead plaintiff status is at odds with the Reform Act. His tactics turn the Reform Act on its head and improperly impose costs on Defendants by exploiting legal process in a manner explicitly prohibited by the Reform Act. The Court should dismiss Kothari's complaint.

10

Dated this 12th day of July, 2024.

By: */s/ David R. Konkel*

<table>
<tr><td>Jason de Bretteville (<em>application for admission forthcoming</em>)<br>Wesley Horton (<em>application for admission forthcoming</em>)<br>STRADLING YOCCA CARLSON & RAUTH LLP<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA 92660<br>Phone: 949-725-4000<br>Fax: 949-725-4100<br>Email: jdebretteville@stradlinglaw.com<br>Email: whorton@stradlinglaw.com</td><td>John L. Kirtley<br>State Bar No. 1011577<br>David R. Konkel<br>State Bar No. 1097244<br>GODFREY & KAHN, S.C.<br>833 East Michigan Street, Suite 1800<br>Milwaukee, WI 53202-5615<br>Phone: 414-273-3500<br>Fax: 414-273-5198<br>Email: jkirtley@gklaw.com<br>Email: dkonkel@gklaw.com</td></tr>
</table>

*Attorneys for Defendants Harbor Diversified, Inc., Christine R. Deister, and Liam Mackay*

11

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on Phillip Kim, Kothari's counsel of record via email, on July 12, 2024:

Phillip Kim
The Rosen Law Firm
275 Madison Ave - 40th Fl
New York, NY 10016
212-686-1060
Fax: 212-202-3827
Email: philkim@rosenlegal.com

*Attorneys for Plaintiff Viral Kothari*

/s/ Wesley Horton
Wesley Horton
of Stradling Yocca Carlson & Rauth LLP

*Attorney for Defendants*

12