# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

JON ARNE TOFT, individually and on behalf
of all others similarly situated,

          Plaintiff,

   v.

HARBOR DIVERSIFIED, INC., CHRISTINE
R. DEISTER, and LIAM MACKAY,

          Defendants.

Case No. 1:24-cv-00556-WCG

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER RULE 11

---

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 E. Michigan St., Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

July 18, 2024

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

THE REFORM ACT ................................................................................................................3

LEGAL STANDARD................................................................................................................4

ARGUMENT.............................................................................................................................6

     A.     TRL Knowingly Filed a Defective Complaint.........................................................6

     B.     TRL Made Obvious Factual Misrepresentations to the Court.............................8

     C.     TRL Filed The Complaint For An Improper Purpose ......................................10

     D.     TRL Violated 28 U.S.C. § 1927 ........................................................................13

     E.     Monetary Sanctions Are Warranted...................................................................14

CONCLUSION.......................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Battery Techs., Inc. v. Bagell*,
781 F.3d 638 (2d Cir. 2015) ................................................................................................7

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011) ..................................................................................9

*In re Australia and New Zealand Banking Grp. Lim. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010) ................................................................................13

*Auto. Indus. Pension Trust Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012) ..........................................................................................5, 10

*Beal v. Armstrong*,
2023 U.S. Dist. LEXIS 177807 (W.D. Wisc. 2023) ..........................................................10

*Binghamton Masonic Temple, Inc. v. Bares*,
168 F.R.D. 121 (N.D.N.Y. 1996) ......................................................................................11

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2013 U.S. Dist. LEXIS 45053 (N.D. Ill. 2013) ...........................................................10, 13

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991)............................................................................................................5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ..............................................................................................3

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3rd Cir. 2005) ..............................................................................................4

*City of Livonia Employees' Ret. Sys. v. Boeing Co.*,
306 F.R.D. 175 (N.D. Il. 2014)......................................................................................2, 10

*In re Comshare, Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ..............................................................................................7

*Dal Pozzo v. Basic Mach. Co., Inc.*,
463 F.3d 609 (7th Cir. 2006) ..............................................................................................6

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*,
802 F.2d 247 (7th Cir. 1986) ..............................................................................................1

*Dronsejko v. Thornton*,
632 F.3d 658 (10th Cir. 2011) ............................................................................................7

ii

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ........................................................................................ 7

*Fabriko Acquisition Corp. v. Prokos*,
  536 F.3d 605 (7th Cir. 2008) ...................................................................................... 14

*Ferris, Baker Watts, Inc. v. Ernst & Young, LLP*,
  395 F.3d 851 (8th Cir. 2005) ........................................................................................ 7

*Fletcher v. Doig*,
  2022 WL 18027447 (N.D. Ill. 2022) ..................................................................... 13, 14

*Frantz v. United States Powerlifting Federation*,
  836 F.2d 1063 (7th Cir. 1987) ...................................................................................... 5

*Fries v. Helsper*,
  146 F.3d 452 (7th Cir. 1998) ........................................................................................ 6

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) .................................................................................... 7

*In re Gold Res. Corp. Sec. Litig.*,
  776 F.3d 1103 (10th Cir. 2015) .................................................................................... 7

*In re Hale*,
  511 B.R. 870 (W.D. Mich. Bankr. 2014) .................................................................... 10

*Handal v. Tenet Fintech Grp. Inc.*
  2023 U.S. Dist. LEXIS 170679 (E.D.N.Y. 2023) ........................................................ 9

*Hays v. Sony Corp. of America*,
  847 F.2d 412, 418 (7th Cir. 1988) ................................................................................ 2

*Henderson v. BJ's Rest.*,
  2020 U.S. Dist. LEXIS 64700 (D.N.M. 2020) ........................................................... 10

*In re iAnthus Capital Holdings, Inc.*,
  2021 U.S. Dist. LEXIS 163858 (S.D.N.Y. 2021) ........................................................ 9

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ............................................................................... 7

*Jimenez v. Madison Area Tech. College*,
  321 F.3d 652 (7th Cir. 2003) ...................................................................................... 14

*Jolly Group, Ltd. v. Medline Indus., Inc.*,
  435 F.3d 717 (7th Cir. 2006) ...................................................................................... 13

*Katz v. Household Int'l, Inc.*,
  91 F.3d 1036 (7th Cir. 1996) .................................................................................... 4, 5

Case 1:24-cv-00556-WCG   Filed 07/18/24   Page 4 of 23   Document 31

*Lightspeed Media Corp. v. Smith*,
   761 F.3d 699 (7th Cir. 2014) ...................................................................................... 13

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ........................................................................... 2, 5, 10, 11

*Mei Pang v. Levitt*,
   2023 U.S. Dist. LEXIS 227786 (W.D. Tex. 2022) .......................................... 7, 8, 11, 12

*In re Meier*,
   223 F.R.D. 514 (W.D. Wis. 2004) .............................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ........................................................................................................ 7

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2005) ......................................................................................... 3

*Nw. Biotherpeutics, Inc. v. Canaccord Genuity LLC*,
   2023 U.S. Dist. LEXIS 231046 (S.D.N.Y. 2023) ........................................................ 9

*Podraza v. Whiting*,
   790 F.3d 828 (8th Cir. 2015) ....................................................................................... 7

*S. Pac. Shipping Co., Ltd. v. Redi-Fresh Prod., Inc.*
   2014 U.S. Dist. LEXIS 170246 (S.D.N.Y. 2014) ...................................................... 10

*Senese v. Chicago Area I.B. of T. Pension Fund*,
   237 F.3d 819 (7th Cir. 2001) ....................................................................................... 5

*Szabo Food Serv., Inc. v. Canteen Corp.*,
   823 F.2d 1073 (7th Cir. 1987) ..................................................................................... 5

*In re TCI Ltd.*,
   769 F.2d 441 (7th Cir. 1985) ................................................................................. 6, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................. 2, 4, 6

*Thornton v. Wahl*,
   787 F.2d 1151 (7th Cir. 1986) .............................................................................. 13, 15

*Valdes v. Kandi Techs. Grp., Inc.*,
   2024 U.S. Dist. LEXIS 58238 (E.D.N.Y. 2024) .......................................................... 7

*Vollmer v. Selden*,
   350 F.3d 656 (7th Cir. 2003) ..................................................................................... 11

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) .......................................................................................... 8

iv

*In re Xcelera.com Sec. Litig.*,
  430 F.3d 503 (1st Cir. 2005)..................................................................................................9

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ...............................................................................................7

*Zausa v. Zausa*,
  2018 WL 1101984 (N.D. Ind. 2018) ...................................................................................14

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194 (11th Cir. 2001) ............................................................................................7

**Statutes**

15 U.S.C. §§ 77z-1(a)(3)...................................................................................................2, 11

15 U.S.C. § 78u-4(a)(3)(A)(i) ..........................................................................................4, 12

28 U.S.C. § 1927 ...................................................................................................... 1, 6, 13, 14

Private Securities Litigation Reform Act of 1995 .........................................................*passim*

Reform Act.......................................................................................................................... 3

Sarbanes-Oxley Act ............................................................................................................ 8

Securities Exchange Act Section 10(b).............................................................................. 7

**Other Authorities**

Federal Rules of Civil Procedure Rule 11 .......................................................................*passim*

v

**INTRODUCTION**

"Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts." *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 255-56 (7th Cir. 1986) ("The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt."). Harbor Diversified, Inc. ("Harbor" or the "Company"), Christine R. Deister, and Liam MacKay (with Harbor "Defendants") respectfully request that this Court enter an order finding that Viral Kothari ("Kothari") and his counsel, The Rosen Law Firm ("TRL"), filed a complaint that was not grounded in fact or law in violation of Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, and award sanctions sufficient to deter such abuses in the future, including the attorneys' fees and costs Defendants incurred since Kothari's filing of his complaint.

Following Harbor's announcement of negative corporate news relating to the misapplication of a highly technical accounting rule, Kothari and TRL rushed to the courthouse to file a complaint and reserve their spot in line for a potential securities class action. Not knowing if the Court would ultimately appoint them as lead plaintiff and lead counsel, they decided to forgo the expense and delay of investigating whether facts sufficient to plead a securities fraud claim could be found. Instead, they filed a "placeholder" complaint that does not even attempt to plead a viable claim. That skeletal pleading consists of nothing more than Harbor's own disclosure of the bad news and a bald allegation of fraud. Kothari thus publicly accused Defendants of fraud without undertaking any investigation, much less the reasonable one required by law.

In casting aside the duties imposed upon them by Rule 11 and the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA"), Kothari and TRL not only filed a patently deficient complaint, they made obvious misrepresentations to this Court. For example, Kothari alleged that Harbor regularly disseminated "press releases via major newswire services"

1

during the class period. But Harbor has not issued a press release for more than ten years. Kothari also alleged that "analysts employed by major brokerage firms . . . wrote reports [covering Harbor] that were widely distributed and publicly available." But no such analyst reports were issued during the Class Period, if ever. This conduct cannot be reconciled with Rule 11.

By forgoing any meaningful investigation, asserting legally frivolous claims, and making factual misrepresentations to the Court, Kothari and TRL violated the essential purpose of Rule 11, which is to force attorneys to make inquiries before they file a paper in court. *See Hays v. Sony Corp. of America,* 847 F.2d 412, 418 (7th Cir. 1988) (discussing Rule 11 duty of reasonable inquiry before filing suit). Moreover, "[b]ecause the Reform Act requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct *elaborate* pre-complaint investigations." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008) (emphasis added). Kothari and TRL completely ignored these heightened requirements.

"The reason for these requirements includes the fact that the mere filing of a broad, class action securities complaint is a market relevant event for any reputable company." *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-181 (N.D. Il. 2014). The filing of a frivolous securities fraud complaint imposes a host of direct costs on innocent defendants, including the retention of counsel to defend themselves against the baseless accusations of fraud, implementation of a document hold, increased insurance premiums, and reputational harm. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions, . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law."). Indeed, the Reform Act required that Kothari "widely" publish his defamatory complaint to Harbor's shareholders. *See* 15 U.S.C. §§ 77z-1(a)(3)(A); 78u-4(a)(3)(A). Kothari and TRL, in violating Rule 11, thus imposed significant, foreseeable costs on Harbor, its executives, and its current shareholders.

The Reform Act was designed to prevent the use of placeholder complaints as a sort of low-cost lottery ticket redeemable after conclusion of the lead plaintiff appointment process. Fortunately, the

Court has the power to correct this abuse. Rule 11 required Kothari and TRL to conduct a reasonable investigation and to have a legal and factual basis for their claims before filing suit. Kothari and TRL failed to do so, and they should be sanctioned accordingly.

## THE REFORM ACT

In the 1980s and early 1990s, securities class actions fell under heavy criticism based, in part, on concerns that plaintiffs with minimal financial interests were able to survive motions to dismiss simply by pleading a stock price drop after the disclosure of disappointing news, impose excessive costs on defendants, and thereby extract unreasonable settlements at the expense of current shareholders. Congress addressed these concerns in the Reform Act which, *inter alia*, requires that plaintiffs plead "with particularity" facts supporting allegations of falsity and a "strong inference" of scienter, stays all discovery until a complaint survives any motions to dismiss, and establishes procedures for courts to select lead plaintiffs based primarily on which plaintiff has the largest financial interest in each case. *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995).

Prior practice involved the appointment of a lead plaintiff on a "first to file" basis. This incentivized a rush to initiate securities class actions by filing a complaint before any other plaintiff's counsel was able to do so—often referred to as a "race to the courthouse." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 131 n.2 (2d Cir. 2005). This method of establishing leadership encouraged the use of figurehead lead plaintiffs, with class counsel acting as the real motivating force in bringing the case. Further, plaintiffs' attorneys were abusing the process by filing claims of marginal merit that might nevertheless have settlement value.

Congress recognized that in these "baseless and extortionate lawsuits[,] innocent parties are often forced to pay exorbitant 'settlements'. … [and] [i]nvestors always are the ultimate losers[,]"so it passed the Reform Act. H.R. Rep. No. 104-369, at 31–32 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 730–31. The Reform Act's "twin goals" were "to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious

claims." *Tellabs*, 551 U.S. at 322. Congress sought to accomplish these goals by, among other reforms, creating a procedural mechanism that would eliminate the "race to the courthouse." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 196 (3rd Cir. 2005).

The Reform Act's process for appointing lead plaintiffs was intended to be a "sea change from the prior race-to-the-courthouse system, where lead counsel have historically chosen the lead plaintiff rather than vice versa." *Id*. at 192 (quoting *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 274 (3rd Cir. 2001). It begins with the filing of a securities class action complaint. Upon such a filing, the Reform Act requires the plaintiff to publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the pendency of the action and the fact that "any member of the purported class may move the court to serve as lead plaintiff" within the next 60 days. 15 U.S.C. § 78u-4(a)(3)(A)(i).

The notice requirement is an important innovation from prior practice. Whereas earlier practice created incentives for *lawyers* to obtain control of securities class actions by filing complaints quickly after news causing declines in the price of a given security, the 60-day notice period attempts to do away with these incentives and, instead allows *institutional investors* the opportunity to consider the merits of the claim, to assess their financial interests, and decide whether to seek to play a leadership role in any given action. That purpose is frustrated where, as here, the initial complaint is so deficient as to say nothing about the potential merits of the claim.

## LEGAL STANDARD

Rule 11 forbids attorneys from making representations to a court unless they have personally determined that the *factual* allegations they are making are well-founded. In particular, Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney. . .certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b); *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1038 (7th Cir. 1996) (upholding district court's imposition of sanctions in securities litigation on the ground that neither of plaintiff's theories "was

4

reasonably grounded in fact or law"); *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1068 (7th Cir. 1987) (under Rule 11, a court "must ask" itself "whether the side filing the pleading knew enough at the time" to certify that its allegations were "well grounded in fact").

Rule 11 also prohibits *legally* frivolous pleadings, and requires that attorneys certify that their "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see Katz*, 91 F.3d at 1038. Rule 11 thus imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and . . . the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987) (same).

Notably, application of the Reform Act imposes far more stringent pleading and pre-filing investigative burdens than apply in other contexts, and in so doing provides clarity with respect to what is required to plead a securities fraud claim in good faith. *Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (The Reform Act "leaves a plaintiff's counsel with a greater than usual burden of investigation before filing a securities fraud complaint" because the legislature "deliberately raised the entry bar to discovery both through the PSLRA's heightened pleading standards and by other measures."); *accord Tellabs*, 513 F.3d at 711. These heightened pleading and investigative requirements help effectuate the Reform Act's essential purpose of curtailing the filing of baseless securities lawsuits— requirements of which TRL is well aware.

"Rule 11 authorizes a district court to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims." *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001). Provided the sanctions are designed to deter the improper conduct at issue, courts have "significant discretion" in determining what sanctions to impose. *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998). Sanctions may include monetary penalties,

5

including "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Attorneys who file unsupported pleadings also violate 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." If an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Section 1927 imposes an ongoing duty on attorneys to ensure that the facts and the law support their arguments. The statute does not require a "finding of malice or ill will." *Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006).

## ARGUMENT

As set forth in Defendants' pending motion to dismiss, Kothari's woefully inadequate complaint failed to state a claim under the well-established standards of the Reform Act. (*See* Dkt. No. 8.) By signing the complaint and executing the required certification, TRL and Kothari represented that they conducted a reasonable inquiry prior to asserting their claims and that their claims were well grounded in fact and law. *See* Fed. R. Civ. P. 11(b). Their patently defective complaint—which makes no attempt to plead a legally viable claim and includes blatant factual misrepresentations—makes clear that their representations were knowingly false. Sanctions are the appropriate and necessary remedy.

### A.    TRL Knowingly Filed a Defective Complaint

Congress enacted the Reform Act in 1995 "[a]s a check against abusive litigation by private parties." *Tellabs*, 551 U.S. at 313. One of the control measures Congress included in the Reform Act is a heightened pleading requirement. *Id.* The strictures of the Reform Act "insist[ing] that securities fraud complaints state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind [i.e., scienter]" are now well known. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (emphasis added). It is equally

6

well established that Section 10(b) of the Securities Exchange Act of 1034, under which the complaint was brought, "prohibit[s] fraud, not accounting malpractice," and that "allegations of GAAP violations are insufficient to state a securities fraud claim unless coupled with evidence of corresponding fraudulent intent." *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015). The cases on this point are legion. *See, e.g.*, *Advanced Battery Techs., Inc. v. Bagell*, 781 F.3d 638 (2d Cir. 2015) ("Mere allegations of GAAP violations or accounting irregularities, or even a lack of due diligence, will not state a securities fraud absent evidence of corresponding fraudulent intent.").[1] Kothari's counsel prides themselves on filing dozens of lawsuits alleging violations of Section 10(b) each year, and knows these requirements well.[2]

Yet, TRL alleged no facts supporting the most fundamental element of Kothari's claim— that Defendants knew, or were reckless in not knowing, that Harbor's accounting misapplied highly technical accounting principles to a disputed contract. Instead, TRL simply pointed to the individual defendants' senior positions in the Company and asserted that they must have been aware of the technical accounting issue (*See* Compl. ¶ 76)—a formulation held to be legally deficient in dozens of decisions spanning decades, including cases brought by TRL. *See, e.g., Valdes v. Kandi Techs. Grp., Inc.*, 2024 LEXIS 58238, *23 (E.D.N.Y. 2024) (rejecting TRL's claim that individual defendants must have known about the alleged fraud "because, as officers, they were tasked with ensuring [the Company's] compliance with GAAP and financial reporting requirements"); *Mei Pang v. Levitt*, 2023 LEXIS 227786, *43 (W.D. Tex. 2023) (rejecting TRL's assertion "that defendants must have been aware of the misstatement based on their positions within the company" and reliance on "the fact that Defendants executed a statutorily-required Sarbanes-Oxley Act ('SOX') certification").

---

[1] *See also In re Gold Res. Corp. Sec. Litig.,* 776 F.3d 1103 (10th Cir. 2015); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 887 (4th Cir. 2014); *Dronsejko v. Thornton*, 632 F.3d 658, 669 (10th Cir. 2011); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1269 (11th Cir. 2006); *Ferris, Baker Watts, Inc. v. Ernst & Young, LLP*, 395 F.3d 851, 855 (8th Cir. 2005); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1209 (11th Cir. 2001); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 352 (D.N.J. 2007).

[2] *See* www.rosenlegal.com/news/rosen-law-firm-ranked-no-2-in-number-of-2021-securities-class-action-settlements-by-iss.

In making their allegations, TRL completely ignored decades of law applying the Reform Act, including TRL's own experience in prior cases, and failed to offer *any* of the sources of proof that plaintiffs typically rely upon in attempting to satisfy their obligation to plead scienter with particularity. *See* Mot. to Dismiss at 1-2 (the complaint does not cite any confidential witnesses, internal documents, insider stock sales, auditor concerns, or government actions). At the same time, TRL and Kothari ignored abundant facts that contradict Kothari's conclusory scienter allegations. *Id. at* 12-13. Their frivolous pleading, on its face, is a violation of Rule 11(b)(2). Moreover, it indicates that they also violated Rule 11(b) by conducting little or no prefiling investigation—a dereliction confirmed by the fact that their complaint makes blatant factual misrepresentations to the Court.

## B. TRL Made Obvious Factual Misrepresentations to the Court

TRL describes itself as "The Most Trusted Name in Securities Class Action Law Firms," and it undeniably is responsible for a large quantity of filings.[3] TRL's familiarity with the PSLRA and Rule 11 makes its flippant filing worse. It knows better than to cut and paste boilerplate from prior complaints without checking the veracity of those allegations. But that is exactly what it did here. A simple pre-filing internet search would have revealed the falsity of four core assertions in the complaint, each of which was necessary to Kothari's attempt to plead reliance via a fraud-on-the-market theory. *See Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017). Instead, TLR made blatant factual misrepresentations to the Court.

*First*, Kothari alleges that Harbor "communicated with investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services." (Compl. ¶ 62.) But Kothari does not identify any press releases because none exist—the Company has not issued a press release for more than ten years.

*Second*, Kothari asserts that Harbor "was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly

---

[3] www.rosenlegal.com; see *The Business of Securities Class Action Lawyering*, 99 Ind. L.J. 775, 798 (2024) ("The Rosen Law Firm achieves such high earnings by filing a lot of cases.")

available." (*Id*.) But Kothari does not identify any analyst reports because none exist—the Company has not been covered by any brokerage firm analyst, much less a major one, for at least ten years, if ever.

*Third*, Kothari alleges that the Company's stock "traded with moderate to heavy volume during the Class Period." (*Id.*) But Kothari does not identify the actual trading volume, because the average daily trading volume was less than 0.12% of the total outstanding shares[4]—far below "the 1% or 2% figures suggested by several courts as the benchmark for supporting a presumption of efficiency." *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514 (1st Cir. 2005).

*Fourth*, Kothari alleges that Harbor made use of "the national securities exchange." (*Id.* ¶ 5.) Kothari then contradicts his own assertion by claiming that the Company's shares actually trade "on the OTC Market[,]" and that "the Company's securities met the requirements for listing, and were listed and actively traded on the OTC, an efficient market[.]" (*Id.* ¶ 62.) But almost none of this true. Harbor does not make use of "the national securities exchange." The over-the-counter market is not a "national securities exchange[,]" over-the-counter securities are not "listed" on an exchange, and there are no "requirements for listing" on the over-the-counter market. *See In re iAnthus Capital Holdings, Inc.*, 2021 LEXIS 163858, at *5 (S.D.N.Y. 2021); *Handal v. Tenet Fintech Grp. Inc.*, 2023 LEXIS 170679, *3 (E.D.N.Y. 2023).[5] Harbor's securities certainly do not meet any such non-existent "requirements for listing" and are not "listed on the OTC market." Worst of all, the over-the-counter market is not "an efficient market." *Nw. Biotherpeutics, Inc. v. Canaccord Genuity LLC*, 2023 U.S. Dist. LEXIS 231046, at *95 (S.D.N.Y. 2023); *see also Handal*, 2023 LEXIS 170679, at *50; *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011).

TRL's disdain for Rule 11(b) and the Reform Act is on full display here. Any reasonable inquiry would have revealed the truth. But TRL and Kothari could not be bothered to determine the veracity of their representations to the Court, and should be sanctioned accordingly. *See, e.g.,*

---

[4] Based on publicly available data from www.finance.yahoo.com and the SEC filings cited in the complaint.
[5] *See generally* www.finra.org/investors/insights/over-the-counter-equities-trading.

9

*City of Livonia*, 306 F.R.D. at 182-83 (awarding Rule 11 sanctions because "[t]he information turned out to be blatantly false, and if counsel had made any attempt to verify the information, they would have easily discovered this"); *Henderson v. BJ's Rest.*, 2020 LEXIS 64700, at *15 (D.N.M. 2020) (holding that Plaintiff "failed to make a reasonable inquiry . . . such as conducting an internet search"); *S. Pac. Shipping Co., Ltd. v. Redi-Fresh Prod., Inc.* 2014 LEXIS 170246, at *27 (S.D.N.Y. 2014) (imposing Rule 11 sanctions where "[a]ny objectively reasonable inquiry into the law, even a simple Google search" disproved plaintiff's theory); *In re Hale*, 511 B.R. 870, 881 (W.D. Mich. Bankr. 2014) (counsel failed to make a reasonable inquiry where an internet search disproved their allegations).

### C. TRL Filed The Complaint For An Improper Purpose

TRL's cynical "file first, investigate later" tactic is an affront to Rule 11 and the fundamental purposes of the Reform Act. *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2013 U.S. Dist. LEXIS 45053, at *38 (N.D. Ill. 2013) (concluding that plaintiffs "filed this lawsuit before conducting a proper presuit investigation" and that plaintiffs used the 60-day period for amendment to "conduct an investigation that it should have conducted before filing this lawsuit"); *See Tellabs*, 513 F.3d at 711 ("[b]ecause the Reform Act requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct elaborate pre-complaint investigations"); *Textron,* 682 F.3d at 40 (the Reform Act "leaves a plaintiff's counsel with a greater than usual burden of investigation before filing a securities fraud complaint"). Rule 11 and the Reform Act required that Kothari and TRL investigate thoroughly before filing their complaint, not after, and the plainly deficient contents of their complaint prove that they failed to do so.

Worse still, that failure was purposeful. When it comes to Rule 11 obligations, "[a]n empty head but a pure heart is no defense." *Beal v. Armstrong*, 2023 LEXIS 177807, at *30 (W.D. Wisc. 2023) (citing *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 885 (7th Cir. 2017)). While "a judge can sanction a litigant for filing a frivolous suit or claim regardless of the motives for such filing," *Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003), Rule 11 also provides an

10

independent ground on which to sanction parties who file pleadings for an "improper purpose," Fed. R. Civ. P. 11(b)(1). *See, e.g., Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 128 (N.D.N.Y. 1996) (awarding Rule 11 sanctions because "in light of the circumstances surrounding their submission, this Court finds that the Plaintiffs' claims were filed for the improper purpose of harassing the Defendants").

Here TRL's head was not empty, and its heart was not pure. TRL could not serve as lead counsel, and thereby gain access to a substantial fee award in the event of a settlement or a judgment against the Company, without the filing of a complaint and issuance of the requisite notice. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). But TRL did not want to incur the cost and expense of conducting an "elaborate pre-complaint investigation" and drafting a detailed complaint until it was certain it would serve as lead counsel. *Tellabs*, 513 F.3d at 711. So, instead of complying with Rule 11 and the Reform Act, it filed a patently frivolous pleading.

This not the first time TRL has employed this tactic. To the contrary, TRL's business model depends on this abuse. That model consists of avoiding investment in an "elaborate" pre-suit investigation unless and until TRL secures status as lead counsel and, along with such status, the promise of a substantial fee award. *Tellabs Inc.*, 513 F.3d at 711. TRL accomplishes this objective, in nearly every case it files, by convincing defendants to stipulate to a briefing schedule that delays the filing of any motion to dismiss until *after* the court has appointed the lead plaintiff, and *after* the lead plaintiff has filed an amended complaint. *See, e.g.*, *Mei Pang v. Levitt*, No. 1:22cv1191, ECF Nos. 12, 13 (W.D. Tex. filed Jan. 14, 2022) ("Defendants shall not be required to answer, move against, or otherwise respond to the Complaint at this time . . . [w]ithin 14 days after the Court's appointment of a lead plaintiff pursuant to the PSLRA, the Court-appointed lead plaintiff and Defendants shall confer regarding, and submit to the Court for approval, a proposed schedule for the filing or designation of an operative complaint and for Defendants' responses thereto.").

Under this model, the plaintiff initiates a securities class action by filing a "placeholder" complaint that consists of little more than boilerplate allegations, and publishes a notice to the putative class in accordance with the Reform Act. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). This triggers

a 60-day deadline for other putative class members to file a motion requesting to be designated as lead plaintiff. *See id.*, at 78u-4(a)(3)(A)(i)(II). The designation of the lead plaintiff then triggers a distant deadline for the filing of an amended complaint (often 60 to 90 days), which, in turn, finally results in deadlines for the defendants to file their motion to dismiss. This process often takes as long as one or two years from the filing of the initial, frivolous complaint, depending on how long it takes the court to appoint the lead plaintiff and lead counsel.

Defendants, for their part, often "play ball" and begrudgingly agree to such a leisurely schedule—both for the inherent benefit of delay and in hope of ultimately securing a dismissal that binds an entire class rather than an individual plaintiff. But these tactics cannot be reconciled with the requirements of Rule 11 or the essential purpose of the Reform Act. The Reform Act protects defendants by enhancing, not diminishing, a plaintiff's obligations under Rule 11. Filing a frivolous complaint to gain immediate and inexpensive access to status as lead plaintiff and lead counsel—and provide minimal information to potential lead plaintiff rivals—is not a proper purpose. It turns the Reform Act on its head, and improperly imposes costs on defendants by exploiting the legal process in a manner prohibited by Rule 11 and the Reform Act.

In this case, by filing their motion to dismiss and serving the instant motion, Defendants made it clear that they had no interest in "playing ball" with TRL's subversion of the Reform Act, and gave Kothari and TRL the opportunity to withdraw their pleading. Kothari and TRL did not avail themselves of that safe harbor and instead chose to continue in their cavalier disregard of their obligations. But the initial complaint, not some future amended complaint, is the key to the courthouse door. Neither Rule 11 nor the Reform Act allows plaintiffs to publicly accuse companies and executives of fraud while deferring a reasonable inquiry, and the pleading of a viable claim, until some later date. *See Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) ("It is not acceptable to make an assertion . . . and hope that it will turn out to be true."); *Boca Raton*, 2013 U.S. Dist. LEXIS 45053, at *39 (condemning plaintiff's "shoot first, aim later" failure to investigate before filing original complaint); *In re Australia and New Zealand Banking Grp. Lim. Sec. Litig.*, 712 F. Supp. 2d 255, 266-67 (S.D.N.Y. 2010) ("Plaintiff's counsel have identified no

12

authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA."). Judicial intervention is required, and sanctions are the appropriate remedy.

### D. TRL Violated 28 U.S.C. § 1927

TRL's conduct also violates 28 U.S.C. § 1927. The statute provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. §1927. Section 1927 permits courts to levy sanctions against an attorney who has "acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice," or where a claim is "without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014). TRL acted "unreasonably and vexatiously" within the meaning of Section 1927 by knowingly filing a complaint without legal and factual justification and persisting in its efforts to litigate based on that frivolous pleading. *In re TCI Ltd.*, 769 F.2d at 445 ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.").

Once Defendants notified TRL of these deficiencies by means of the motion to dismiss, TRL's failure to dismiss the action violated Section 1927 and its ongoing requirement that attorneys "dismiss claims that are no longer viable." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (affirming award of sanctions under 28 U.S.C. § 1927). TRL's ongoing attempt to cause this Court to needlessly expend resources on the lead plaintiff and lead counsel selection process on the basis of a frivolous complaint is both inherently unreasonable and patently vexatious. Because it is "objectively unreasonable" for TRL to have brought and to continue litigating claims against Defendants in the absence of any facts that support the strong inference of scienter required by the PSLRA, much less on the basis of blatantly false facts supporting Kothari's claim of reliance, sanctions are appropriate under the statute. *Fletcher v.*

13

*Doig*, 2022 WL 18027447, at \*10 (N.D. Ill. 2022) (awarding sanctions where counsel "continued litigating even after it had become objectively unreasonable to do so").

### E.    Monetary Sanctions Are Warranted

Rule 11 gives lawyers and clients who file frivolous complaints a safe harbor protection against Rule 11 liability if they withdraw their complaint within 21 days of receiving a Rule 11 motion. Defendants served the instant motion on Kothari more than 21 days before filing the motion, in compliance with Fed. R. Civ. P. 11(c)(2). Kothari and TRL did not avail themselves of that safe harbor. Courts routinely sanction plaintiffs and their counsel under Rule 11 in similar circumstances. *See, e.g., Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) (affirming Rule 11 sanctions because a lawyer "continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out"); *Zausa v. Zausa*, 2018 WL 1101984, at \*2 (N.D. Ind. 2018) (granting Rule 11 sanctions where lawsuit was either filed without adequate investigation "or . . . for an improper purpose (specifically to harass [defendant] and increase [defendant's] litigation costs"), *aff'd*, 754 F. App'x 427 (7th Cir. 2018); *In re Meier*, 223 F.R.D. 514, 519 (W.D. Wis. 2004) (imposing Rule 11 sanctions against a party for "persist[ing] in his claims" after the other side "directed [his] attention to" the claims' flaws).

When, as here, the sanctionable conduct under Rule 11 is the same as the conduct that violates Section 1927, the Court may impose the full sanctions amount on both the party and counsel. *See Fletcher*, 2022 WL 18027447, at \*13 (awarding sanctions under Rule 11 and Section 1927 and holding plaintiffs and counsel jointly and severally liable); *see also Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003) ("Under Rule 11(c), a district court may impose sanctions on a party or her counsel (or both), for failing to comply with Rule 11(b)."); *Thornton*, 787 F.2d at 1154 (imposing sanctions on both the party and counsel).

Under Rule 11, monetary sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *see also* 28 U.S.C. § 1927 ("Any attorney . . . may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

incurred because of such conduct."). Because the violation at issue here is wrongfully initiating litigation, it would be appropriate for a sanctions order to mandate that TLR and Kothari repay the attorney's fees and costs Defendants incurred in defending against this specious lawsuit, including the cost of this motion.

## CONCLUSION

Kothari and TRL privileged their own economics over compliance with Rule 11 and the Reform Act, at the expense of Harbor's current shareholders. They should be held to account for their cynical calculus. The Court should therefore impose sanctions on Kothari and TRL, jointly and severally, under Rule 11 and Section 1927, for (i) failing to perform a reasonable pre-suit investigation, (ii) filing a patently deficient complaint, (iii) submitting a complaint with obvious factual misrepresentations to the Court, (iv) filing a complaint for an improper purpose, and (v) refusing to withdraw their frivolous complaint within the safe harbor period following notice of this Rule 11 motion.

Dated this 18th day of July, 2024.

By:   **s/ David R. Konkel**            
John L. Kirtley
State Bar No. 1011577
David R. Konkel
State Bar No. 1097244
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: jkirtley@gklaw.com
Email: dkonkel@gklaw.com

Jason de Bretteville (*application for admission forthcoming)*
Wesley Horton (*application for admission forthcoming)*
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Fax: 949-725-4100
Email: jdebretteville@stradlinglaw.com
Email: whorton@stradlinglaw.com

*Attorneys for Defendants Harbor Diversified, Inc., Christine R. Deister, and Liam Mackay*

16

<strong><u>CERTIFICATE OF SERVICE</u></strong>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served on Phillip Kim, Kothari's counsel of record via email, on July 18, 2024:

Phillip Kim
The Rosen Law Firm
275 Madison Ave - 40th Fl
New York, NY 10016
212-686-1060
Fax: 212-202-3827
Email: philkim@rosenlegal.com

*Attorneys for Plaintiff Viral Kothari*

/s/ Wesley Horton
Wesley Horton
of Stradling Yocca Carlson & Rauth LLP

*Attorney for Defendants*

31413772

17