| | |
|---|---|
| JON ARNE TOFT, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, and LIAM MACKAY<br><br>   Defendants, | Case No. 1:24-cv-00556-WCG<br><br>**OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

I.    Procedural History ............................................................................................................. 2

II.    Rule 11 Sanctions Are Not Warranted............................................................................... 4

    A.    Legal Standard ........................................................................................................... 4

    B.    The Court Should Review Rule 11 Compliance at the Final Adjudication of this Action ... .......................................................................................................................................... 5

    C.    The Complaint States a Claim; It is Not Frivolous............................................................. 6

    D.    The Complaint was Not Filed for an Improper Purpose.................................................... 11

    E.    Plaintiff Counsel's Pre-filing Investigation was Adequate................................................. 12

    F.    Plaintiff and Counsel Acted in Good Faith........................................................................ 12

    G.    The Cases Defendants Cite are Irrelevant to the Facts Here ........................................... 15

    H.    Immaterial Factual Errors in the Complaint do not Warrant Rule 11 Sanctions .............. 17

III.    RLF Did Not Violate 28 U.S.C. §1927............................................................................ 19

IV.    Monetary Sanctions are Not Warranted........................................................................... 21

V.    Conclusion ....................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y. 2008)............................................................................ 7

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
623 F. Supp. 3d 470 (E.D. Pa. 2022) ............................................................................ 18

*Allison v. Oak Street Health, Inc.*,
1:22-CV-00149 (N.D. Ill.) ............................................................................................ 13

*Autumn Partners v. Remec, Inc.*,
No. 04-cv-1948 (S.D. Cal. Nov. 12, 2004) .................................................................. 14

*Bettis v. Envision Healthcare Corporation*,
3:17-CV-01112 (M.D. Tenn.) ....................................................................................... 14

*Birnbaum v. General Electric Company*,
1:19-CV-01013 (S.D.N.Y.).......................................................................................... 14

*Boca Raton Firefighters' and Police Pension Fund v. DrVry, Inc.*,
2014 WL 1847833 (N.D. Ill. May 8, 2014) ........................................................... 15, 16

*Burbige et al v. ATI Physical Therapy, Inc.*,
1:21-CV-04349 (N.D. Ill.) ............................................................................................ 13

*Casey v. Windmere-Durable Holdings, Inc.*,
Case No. 98-CV-2273 (S.D. Fla. Dec. 9, 1998) .......................................................... 14

*Chalverus v. Pegasystems, Inc.*,
59 F. Supp. 2d 226 (D. Mass. 1999) ............................................................................ 10

*Chandler v. Ulta Beauty, Inc.*,
1:18-CV-01577 (N.D. Ill.) ............................................................................................ 13

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020)...................................................................... 8, 9

*City of Fort Lauderdale General Employees' Retirement System, et. al. v. VeriSign, Inc.*,
1:13-CV-00060 (E.D.Va)............................................................................................. 14

Case 1:24-cv-00556-WCG    Filed 08/16/24    Page 3 of 30    Document 34

*Construction Workers Pension Trust Fund -- Lake County and Vicinity v. Navistar International Corporation*,
   1:13-CV-02111 (N.D. Ill.) ...................................................................................................... 13

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019) ................................................................................................ 6

*CTC Imports & Exports v. Nigerian Petroleum Corp.*,
   739 F. Supp. 966 (E.D. Pa. 1990) ...................................................................................... 20

*Davis v. SPSS, Inc.*,
   385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................................................... 7

*Divane v. Krull Elec. Co.*,
   200 F.3d 1020 (7th Cir. 1999) ............................................................................................ 22

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................ 11

*Fishoff v. Coty, Inc.*,
   2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ....................................................................... 11

*Frantz v. U.S. Powerlifting Fed'n*,
   836 F.2d 1063 (7th Cir. 1987) ............................................................................................ 21

*Goldfinger v. Journal Commc'ns Inc.*,
   2015 WL 13034986 (E.D. Wis. Aug. 4, 2015) ..................................................................... 4

*Gumm v. Molinaroli*,
   2:16-CV-01093 (E.D. Wis.) ................................................................................................ 13

*Gumm v. Molinaroli*,
   2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) ................................................................... 13

*Gurary v. Winehouse*,
   235 F.3d 792 (2d Cir. 2000) .......................................................................................... 5, 11

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*,
   9 F.3d 1263 (7th Cir. 1993) ........................................................................................... 5, 11

*Hartmarx Corp. v. Abboud*,
   326 F.3d 862 (7th Cir. 2003) .......................................................................................... 4, 5

*Hedick v. Kraft Heinz Company*,
   2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...................................................................... 8

Case 1:24-cv-00556-WCG    Filed 08/16/24    Page 4 of 30    Document 34

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................................ 7

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)........................................................................ 16, 17

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) ............................................................................. 8

*In re Enron Corp. Sec.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ............................................................................. 18

*In re Groupon, Inc. Sec. Litig.*,
2013 WL 12284524 (N.D. Ill. Sept. 18, 2013) ............................................................... 10

*In re Groupon, Inc. Sec. Litig.*,
2015 WL 1043321 (N.D. Ill. Mar. 5, 2015)..................................................................... 17

*In re Resideo Technologies, Inc. Securities Litigation*,
0:19-cv-02863 (D. Minn.)................................................................................................ 14

*In re REV Group, Inc. Securities Litigation*,
2:18-cv-01268 (E.D. Wis.)............................................................................................... 13

*In re Shopko Sec. Litig.*,
2002 WL 32003318 (E.D. Wis. Nov. 5, 2002) .................................................................. 9

*IUE-CWA Local 901 v. Spark Energy Gas LLC*,
2021 WL 3124354 (N.D. Ind. July 23, 2021)................................................................... 5

*Janssen v. Reschke*,
2020 WL 6044284 , fn. 2 (N.D. Ill. Oct. 13. 2020) .......................................................... 7

*Johnson v. Tellabs, Inc.*,
02-cv-04356 (N.D. Ill.) .................................................................................................... 15

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
435 F.3d 717 (7th Cir. 2006) ........................................................................................... 21

*Kotsilieris v. Chalmers*,
966 F.2d 1181 (7th Cir. 1992) ......................................................................................... 20

*Luna v. Carbonite, Inc.*,
1:19-cv-11662 (D. Mass.)................................................................................................. 14

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ......................................................................................... 15

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
  935 F.3d 573 (7th Cir. 2019) ......................................................................................... 11

*Mars Steel Corp. v. Cont'l Bank N.A.*,
  880 F.2d 928 (7th Cir. 1989) ......................................................................................... 11

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
  120 F.R.D. 53 (N.D. Ill. 1988)....................................................................................... 19

*Matrixx Initiatives, Inc. v. Siracusano,*
  563 U.S. 27 (2011)............................................................................................................ 6

*Mei Pang v. Levitt*,
  No. 1:22-cv-1191 (W.D. Tex. Jan. 14, 2022) ............................................................... 14

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*,
  8 F.3d 441 (7th Cir. 1993) ............................................................................................. 19

*Moeck v. Pleasant Valley Sch. Dist.*,
  844 F.3d 387 (3d Cir. 2016)............................................................................................. 5

*Moriarty ex rel. Loc. Union No. 727, I.B.T.,*
  *Pension Tr., & the Teamsters Loc. Union No. 727 Health & Welfare Tr. v. Svec*,
  429 F.3d 710 (7th Cir. 2005) ......................................................................................... 19

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.,*
  *et al.*, 2004 WL 524943 (N.D. Tex. March 17, 2004) ................................................... 14

*Outley v. City of Chicago*,
  648 F. Supp. 3d 996 (N.D. Ill. 2022) ............................................................................ 11

*Pac. Dunlop Holdings, Inc. v. Barosh*,
  22 F.3d 113 (7th Cir. 1994) ........................................................................................ 5, 20

*Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) ......................................................................................... 11

*Plumbers & Pipefitters Local Union No, 630 Pension Annuity Trust Fund v. Kenexa Corp.*,
  No. 09-CV-2642 (E.D. Pa.) ........................................................................................... 14

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ....................................................................................... 10

v

*Public Employees' Retirement System of Mississippi v. Roadrunner Transportation Systems Inc.*,
2:17-CV-00144 ............................................................................................ 13

*Public Employees' Retirement Us. of Mississippi v. TreeHouse Foods, Inc.*,
2020 WL 919249 (N.D. Ill. Feb. 26, 2020) ........................................... 18, 19

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) ..................................................................... 13

*Reed v. Great Lakes Companies, Inc.*,
330 F.3d 931 (7th Cir. 2003) ..................................................................... 17

*Ross v. City of Waukegan*,
5 F.3d 1084 (7th Cir. 1993) .................................................................. 21, 22

*Shanaphy v. Kohls Corporation*,
2:22-CV-01016 (E.D. Wis.) ........................................................................ 13

*Singh v. Curry*,
69 F.3d 540 (7th Cir. 1995) ....................................................................... 11

*Spiegal, et al. v. Tenfold Corp.*,
No. 00-CV-652 (D. Utah Jan. 3, 2001) ...................................................... 14

*Szabo Food Serv., Inc. v. Canteen Corp.*,
823 F.2d 1073 (7th Cir. 1987) ..................................................................... 5

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ....................................................................... 18

*Tellabs v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007) .................................................................................... 8

*Thompson v. Duke*,
940 F.2d 192 (7th Cir. 1991) ....................................................................... 4

*Valdes v. Kandi Techs. Grp. Inc.*,
2024 WL 1348697 (S.D.N.Y. March 29, 2024) .......................................... 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009) ........................................................ 10

*Walling v. Generac Holdings Inc.*,
2:24-CV-00240 (E.D. Wis.) ........................................................................ 13

Case 1:24-cv-00556-WCG    Filed 08/16/24    Page 7 of 30    Document 34

**Statutes**

15 U.S.C. § 78u–4 .................................................................................................... *passim*

28 U.S.C. §1927 ....................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 11 .................................................................................................... *passim*

Fed. R. Civ. P. 15(1)(B) ................................................................................................ 11

**Regulations**

17 C.F.R. § 210.4-01(a)(1) ............................................................................................... 7

## INTRODUCTION

The crux of Defendants' motion is that Plaintiff Viral Kothari ("Plaintiff" or "Kothari") and Plaintiff's counsel, The Rosen Law Firm., P.A. ("RLF") should be sanctioned under Fed. R. Civ. P. 11 and 28 U.S.C. §1927 because the Complaint (Dkt. No. 1) is frivolous and brought for an improper purpose.

These arguments are without merit. Defendants, referencing their motion to dismiss, argue that the Complaint is frivolous because it fails to plead two of the six elements of Plaintiff's Section 10(b) claim of the Securities Exchange Act of 1934 ("Exchange Act") — falsity and scienter. Putting aside the case authorities that hold that the failure of a complaint to state a claim is not grounds for sanctions, the Complaint adequately pleads falsity because Harbor Diversified, Inc. (the "Company" or "Harbor") admitted that $52.3 million in revenue recognized from a purchase agreement between a Company subsidiary and United Airlines, Inc. ("United") had to be restated due to an accounting error. The Company also admitted that its internal controls were not adequate as a result. It is well settled that a financial restatement is sufficient to allege falsity as to the financial statements. Likewise, when a company admits its internal controls are not adequate, that is sufficient to show that the company's statements about internal controls are false.

As to scienter, a holistic review of the facts alleged in the Complaint and the matters to which the Court can take judicial notice create a strong inference that Defendants were aware that the $52.3 million revenue should not be recognized. During the Class Period, Defendants were aware of a dispute with United that ultimately caused the Company to issue two notices of termination. The dispute and termination called into question the collectability of revenue under the United agreement. Revenue cannot be recognized when collectability is not assured. Defendants acknowledge they were aware of the dispute and termination because they admitted

1

so during the Class Period.  Even if these circumstances were not sufficient to adequately allege scienter, it is no basis for sanctions.  Plaintiff's counsel conducted a reasonable investigation under the circumstances.

Defendants next argue that the Complaint was filed for the improper purpose of somehow securing a settlement on an otherwise frivolous complaint.  This argument is without merit.  The Private Securities Litigation Reform Act of 1995 ("PSLRA") eliminated the "race to the courthouse" by determining leadership not through the first-filed rule but through the Lead Plaintiff process.  The PSLRA implemented a discovery stay so that scrupulous plaintiffs could no longer file frivolous cases and use the threat and expense of discovery to secure a settlement.  With the discovery stay, defendants are not required to respond to the initial complaint and will only need to respond to the operative complaint filed by a Lead Plaintiff.  The PSLRA created a uniform procedure where litigants can obtain a ruling binding on the putative class in a straight-forward process.  Plaintiff and Plaintiff's counsel followed the same procedures that courts in this District and around the nation follow.  Therefore, Plaintiff's and Plaintiff Counsel's conduct was both objectively and subjectively reasonable.

Defendants' motion should be denied.

## I.    Procedural History

Plaintiff Viral Kothari filed this securities fraud class action through his attorneys, RLF, on May 7, 2024, against Harbor, Christine R. Deister, and Liam Mackay (collectively, "Defendants") asserting violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  That same day, RLF issued a PSLRA early notice advising class members of the pendency of the action and the July 8, 2024, deadline for class members to seek lead plaintiff status. Dkt. No. 12-1.

2

On June 7, 2024, Defendants filed a motion to dismiss the Complaint on only two grounds, that it fails to plead (i) falsity and (ii) scienter. Dkt. No. 7. On June 27, 2024, Defendants served their Rule 11 motion on Plaintiff's counsel. On June 28, 2024, Plaintiff filed an opposition to Defendants' motion to dismiss asking the Court to deny it without prejudice as premature given that the Court had not yet appointed a Lead Plaintiff, who would be the appropriate person to file the operative complaint on behalf of all class members. Dkt. No. 11.

On July 8, 2024, two lead plaintiff motions were filed, one by Mr. Kothari (Dkt. No. 13) and another by Mr. Jon Arne Toft. Dkt. No. 16. On July 10, 2024, Mr. Kothari withdrew his lead plaintiff motion because Mr. Toft had a larger financial interest, and was therefore the presumptive lead plaintiff under the PSLRA. Dkt. No. 20.

On July 11, 2024, the Court appointed Mr. Toft as Lead Plaintiff and approved Pomerantz LLP as Lead Counsel (the "Lead Plaintiff Order"). Dkt. No. 23. The Court also held in abeyance Defendants' motion to dismiss for 60 days, to allow Lead Plaintiff Toft to file an amended complaint as he requested, and permit Defendants to move to dismiss that amended complaint. Lead Plaintiff Toft has until September 10, 2024, to file the amended complaint. *Id.*

Despite the Lead Plaintiff Order, on July 11, 2024, Defendants filed a reply in support of their motion to dismiss (Dkt. No. 24) and the following day, Defendants requested that the Court reconsider its Lead Plaintiff Order. Dkt. No. 25. On July 18, 2024, the Court denied Defendants' request for reconsideration, explaining that even if Mr. Kothari's complaint would be dismissed, "Defendants concede that investors like the appointed lead plaintiff would remain free 'to initiate a case in good faith after conducting the required pre-suit investigation.'" Dkt. No. 29 at 2. Therefore, the Court denied reconsideration in the interest of efficiency and saving judicial resources.

3

On July 18, 2024, Defendants filed the instant Rule 11 motion. Dkt. No. 30.

## II. Rule 11 Sanctions Are Not Warranted

### A. Legal Standard

The PSLRA does not alter the substantive standards for finding a Rule 11 violation. The PSLRA directs courts to conduct a Rule 11 inquiry "upon final adjudication of the action." 15 U.S.C. § 78u-4(c)(1). The PSLRA functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry and whether and how to sanction a party if a violation is found. *Goldfinger v. Journal Commc'ns Inc.*, 2015 WL 13034986, at *2 (E.D. Wis. Aug. 4, 2015) ("Rule 11 standard review is therefore the same as the PSLRA standard of review.") (referencing *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866 (7th Cir. 2003)).

Rule 11 provides, *inter alia*, that papers filed with the Court:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1-4).

The Court is to employ a "objectively reasonable standard" in assessing whether there is a violation of Rule 11. *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991). "There must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'"); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint

4

is 'well grounded in fact'." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). A Court should not impose Rule 11 sanctions because "plaintiff's case proved to be weak, plaintiffs' counsel should not be reprimanded for trying to protect their clients' interest. The court will not impose sanctions on a party for merely losing its case on the pleadings." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1267 (7th Cir. 1993).

"'Rule 11 motions … should not be employed … to test the sufficiency or efficacy of the allegations in the pleadings; other motions are available for those purposes." *IUE-CWA Local 901 v. Spark Energy Gas LLC*, 2021 WL 3124354, at * 4 (N.D. Ind. July 23, 2021) (quoting Fed.R.Civ.P. 11 Adv. Comm. Notes 1993)). Similarly, factual issues identified in a Rule 11 motion, are best resolved at summary judgment or trial. *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016). In considering Rule 11 sanctions in a PSLRA case, a court should examine whether an amendment could cure the alleged deficiencies of which defendants complained. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

Rule 11 sanctions "are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp.*, 326 F.3d at 868 (quoting *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)).

### B. The Court Should Review Rule 11 Compliance at the Final Adjudication of this Action

The PSLRA provides that the Court is to conduct a Rule 11 review "upon final adjudication of the action." 15 U.S.C. § 78u-4(c)(1). Defendants' sanctions motion is based on the argument that the Complaint is frivolous, and that Plaintiff should have abandoned this case. However, an amended complaint is anticipated to be filed by Lead Plaintiff to supersede Plaintiff's complaint, and the Court has not issued any rulings yet as to the sufficiency of the Complaint. *See* Dkt. No.

5

29. Therefore, the Court should reserve ruling on Defendants' sanction motion until the final adjudication of this action.

### C. The Complaint States a Claim; It is Not Frivolous

The Complaint states a claim and is not frivolous. The elements of a securities claim under Section 10(b) of the Exchange Act and Rule 10b-5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011). Defendants moved to dismiss on the first two elements—falsity and scienter. *See* Dkt. No. 8 at 8-14. Defendants did not move, and thus effectively conceded, that Plaintiff adequately alleged the other elements of the claim.

While Defendants make conclusory allegations that Plaintiff did not conduct a reasonable investigation into the facts and that the Complaint was filed for an improper purpose, they offer no basis for such conclusions. Instead, Defendants' motion is based on the purported inability of the Complaint to state a claim as set forth in their motion to dismiss. *See* Defendants' Rule 11 Brief, Dkt. No. 31 "Def. Br.") at 6. Defendants' motion to dismiss and Rule 11 motion cite only two bases for dismissal: falsity and scienter. Def. Br. at 6-7; Defendants Motion to Dismiss Brief, Dkt. No. 8 at 8-14. These arguments are without merit.

<u>Falsity</u>: To adequately allege falsity under Rule 9(b) and the PSLRA, a plaintiff must identify: (i) the false statement; (ii) when it was made; (iii) by whom; and (iii) why it is false. *See Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) ("To satisfy Rule 9(b)'s particularity standard, a complaint must 'state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal quotation omitted). The

6

Complaint does that and much more. The alleged securities fraud is based on Harbor's restatement of its financial statements, in which it admitted that it had violated accounting principles and wrongly recognized $52.3 million of revenue. Dkt. No. 1, Complaint ("Compl.") ¶¶52-55. The Complaint identifies the specific false financial statements (*id.,* at ¶¶16, 19, 21, 24, 26, 29, 31, 34, 36, 39, 41, 44, 46, 49), when they were made (*id.,* at ¶¶16, 21, 26, 31, 36, 41, 46), who signed them (*id.,* at ¶¶16, 21, 26, 31, 36, 41, 46), and explained exactly why they were false (*id.,* at ¶¶20, 25, 30, 35, 40, 45, 50, 51).

The Financial Accounting Standards Board (FASB)[1] defines a restatement as a revision of a previously issued financial statement to correct an error. SFASB 154, Accounting Standards Codification 250. Restatements are required when it is determined that a previous statement contains a "material" inaccuracy. *Id.*; *see also,* U.S. Securities and Exchange Commission ("SEC") Regulation S-X, 17 C.F.R. § 210.4-01(a)(1) (financial statements filed with the SEC that are not prepared in compliance with Generally Accepted Accounting Principles ("GAAP") are presumed to be misleading and inaccurate). A complaint adequately alleges false financial statements where, as here, the defendant company restates its financial statements. *See e.g., In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[the] fact that financial results were restated is sufficient basis for pleading that those statements were false when made"); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008) (same); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005) (finding that a company's subsequent restatement of its financial statements to be evidence of the statements'

---

[1] Courts routinely take judicial notice of applicable accounting rules and regulations in considering the sufficiency of a complaint. *See Janssen v. Reschke*, 2020 WL 6044284, at * 3 , fn. 2 (N.D. Ill. Oct. 13. 2020) (citing cases).

7

falsity); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001) ("the mere fact that the statements were restated at all supports such an inference [of falsity]").

Plaintiff also alleges that the Company's statements about its internal controls were false. *See* Compl., ¶¶18, 23, 27, 32, 37, 42, and 47. Plaintiff adequately identifies the statements based on the Company's admissions that its internal controls were in fact weak due to the facts and circumstances that caused the restatement. *Id.* Plaintiff's internal control allegations were well grounded in fact and law. *See Hedick v. Kraft Heinz Company*, 2021 WL 3566602, at * 7 (N.D. Ill. Aug. 11, 2021) ("Kraft Heinz's SEC filings during the Class Period certified that Kraft Heinz's internal controls were effective and provided reasonable assurances regarding the reliability of the Company's financial reports. Kraft Heinz later admitted that its internal controls were deficient and had material weaknesses… That is enough to satisfy the falsity requirement at this stage.") (internal references omitted).

Scienter: To adequately allege scienter, a complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). "Misstatements or omissions made with reckless disregard of a substantial risk of falsity are also made with scienter." *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1055 (E.D. Wis. 2020). In assessing whether a complaint gives to a strong inference of scienter, the Court must accept the allegations in the complaint as true and consider other sources such as items subject to judicial notice. *Id.,* (citing *Tellabs v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007)). The Court must also weigh plausible competing inferences of culpability and non-culpability. *Tellabs*, 551 U.S. at 323-34. "The inference favoring the plaintiff's claim 'need not be irrefutable, ... of the 'smoking-gun' genre, or even the most plausible of competing inferences.'" *A.O. Smith Corp.*, 468 F. Supp.3d at 1056 (quoting *Tellabs*, 551 U.S.

at 324.)). Rather, the plaintiff's complaint survives if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.*

Here, the allegations in the Complaint and the matters that the Court can take judicial notice of support a strong inference of scienter. Defendants improperly recognized revenue from the purchase agreement with United that was in dispute and terminated by the Company. In the restatement announcement, the Company admitted that it improperly recognized $52.3 million in revenue in violation of Accounting Standards Codification Topic 606, Revenue from Contracts with Customer ("ASC 606"). Compl., ¶53. The Company's internal revenue recognition policy also purported to comply with Generally Accepted Accounting Principles. While the Company did not explain specifically how it violated ASC 606 (*Id.*), the revenue should not have been recognized based on the simple and known fact that United and the Company had a dispute regarding the amounts owed to the Company. *See* Declaration of Phillip Kim ("Kim Decl."), filed herewith, at Ex. 1 (10-Q and 10-K excerpts Harbor issued during the Class Period.).[2]

In December 2022 and February 2023, the Company served notices terminating the United agreement. *See* Kim Decl., Ex 1, at 9. Under ASC 606, revenue cannot be recognized unless, among other things, "[i]t is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer…" *See* ASC 606, Kim Decl., Ex. 2, at 4 ("ASC 606"). "In evaluating whether collectability of an amount of consideration is probable, an entity shall consider only the **customer's [United's] ability and intention to pay that amount of consideration when it is**

---

[2] Courts routinely take judicial notice of SEC filings referenced in a complaint in assessing the sufficiency of a complaint. *See In re Shopko Sec. Litig.*, 2002 WL 32003318, at * 2 (E.D. Wis. Nov. 5, 2002) (citing numerous cases).

**due**. …" (emphasis added.). ASC 606-10-25-1. Because Defendants knew that the United agreement was in dispute and subsequently terminated, they could not recognize the disputed revenue under ASC 606. Defendants knew the United agreement was in dispute and terminated because they admitted to it during the Class Period. *See* Kim Decl., Ex. 1. *See e.g., In re Groupon, Inc. Sec. Litig.*, 2013 WL 12284524, at * 2 (N.D. Ill. Sept. 18, 2013) (finding scienter adequately alleged to improper revenue recognition claim based on defendants' position within company, and their access to truthful information about the revenue); *see also, Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 234-35 (D. Mass. 1999) (explaining that courts have held that violation of a company's own internal revenue recognition policy supports an inference of scienter) (citing *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996) (denying summary judgment on scienter issue because the defendant allegedly violated GAAP and its own revenue recognition policies)).

Additionally, Defendants admitted that their prior statements about the adequacy of Harbor's internal controls were false as a result. Compl., ¶53. These internal controls were specifically evaluated by Defendants Deister and Mackay (*id.,* at ¶¶16-17, 21-22, 26-27, 31-32, 36-37), which they later admitted to be false when made as a result of the restatement. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (holding that scienter requirement was met where GAAP violations led to restatement and individual defendants were aware of "weak internal controls"). [3]

---

[3] Defendants cite *Valdes v. Kandi Techs. Grp. Inc.*, 2024 WL 1348697, at * 7 (S.D.N.Y. March 29, 2024) claiming that the court rejected RLF's arguments of scienter based on an officer being tasked with ensuring the company's compliance with accounting rules. RLF did not commence the *Valdes* action nor file any pleadings in that case. RLF and its client sought, but were not appointed, a leadership position in *Valdes. See* Valdes Docket. Dkt. Nos. 1, 48, 60. Additionally, *Valdes* is distinguishable, as that case involved an allegation first reported by a short seller, that defendants failed to disclose related party transactions under accounting rules, even though there was no accompanying allegations of a restatement. *Id.*, at * 9, fn. 8 ("Plaintiffs never allege that Kandi issued restatements conceding that it misreported related party transactions, even after

10

Even if the Complaint did not adequately allege a strong inference of scienter (and it does), that a plaintiff fails to allege scienter on his, her, or its first attempt does not warrant Rule 11 sanctions. *See Singh v. Curry*, 69 F.3d 540 (7th Cir. 1995) (Rule 11 "[s]anctions are not appropriate merely because a claim failed"); *Kemper Fin. Servs., Inc.*, 9 F.3d at 1267 (same). "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003))[4]; *Fishoff v. Coty, Inc.*, 2010 WL 305358, at * 2 (S.D.N.Y. Jan. 25, 2010) (refusing to sanction investor due to his failure to properly allege scienter, as it is the most difficult aspect of a securities fraud claim); *see, also Gurary*, 235 F.3d at 801, 802 (holding that since it was possible that plaintiff could amend his complaint to allege the specificity required by the PSRLA, sanctions were not warranted under Rule 11).

### D.     The Complaint was Not Filed for an Improper Purpose

Defendants make the baseless assertion that Plaintiff and Plaintiff's counsel filed the Complaint for an improper purpose. "Whether a filing was presented for an improper purpose is a subjective inquiry." *Outley v. City of Chicago*, 648 F. Supp. 3d 996, 1019 (N.D. Ill. 2022) (citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 583 (7th Cir. 2019) and *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (*en banc*)).

Defendants fail to identify *any* purpose for the Complaint other than to recover the decline in value of shareholders' investment in Harbor stock – a patently proper purpose. That Plaintiff's counsel is working on a contingency fee basis and will not be paid unless there is a successful

---

publication of the Hindenburg Report. In fact, Plaintiffs acknowledge that Kandi expressly denied the allegations contained in the report.").

[4] Additionally, there is nothing wrong with responding to a motion to dismiss with an amended complaint. *See* Fed. R. Civ. P. 15(1)(B).

recovery in the action, is not an improper purpose. Defendants cite no case to the contrary. Indeed, were it so, all contingency fee cases would be brought for an improper purpose.

### E. Plaintiff Counsel's Pre-filing Investigation was Adequate

RLF conducted an adequate investigation into the facts and law prior to filing the Complaint. Counsel reviewed and analyzed, among other things, the Company's SEC filings, public statements about the Company, the Company's restatement, and applicable accounting rules and guidance. Kim Decl., ¶5. Plaintiff's counsel determined sufficient facts existed for securities fraud claims. Among other things, Plaintiff's counsel determined that given that the Company admitted it overstated revenue by $52.3 million based on an "accounting error" and issued admittedly false internal control statements—the falsity element would be satisfied. *Id.* Plaintiff's counsel also believed that the scienter element could be met given the nature of the restatement and the totality of circumstances, particularly given the fact that Defendants were aware of the disputed United agreement and as such were on notice of problem with collectability—prohibiting Defendants from recognizing the revenue they did. *Id.* Plaintiff's counsel believed that there would be further evidentiary support for these facts after further investigation or discovery. *Id.*

### F. Plaintiff and Counsel Acted in Good Faith

Plaintiff and his counsel acted in good faith. As discussed above, Harbor's restatement of its financial statements whereby it eliminated $52.3 million of revenue from a ***knowingly*** disputed contract, standing alone, is sufficient factual predicate for a securities fraud claim.

That RLF and Defendants expected that the Complaint would be amended following appointment of a lead plaintiff, and the completion of further investigation does not evidence bad faith. Rather, it shows that Defendants' premature motion to dismiss was filed in bad faith, as all parties knew the complaint would be amended by the lead plaintiff, and that their motion to dismiss

12

the initial complaint was improper.[5] *See e.g., Walling v. Generac Holdings Inc., et al*, 2:24-CV-00240 (E.D. Wis.) (accepting motion to dismiss briefing after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); *In re REV Group, Inc. Securities Litigation*, 2:18-cv-01268 (E.D. Wis.) (court permitting response deadline until after lead plaintiff motions resolved and the parties entered a schedule for an amended complaint); *Shanaphy v. Kohls Corporation, et al.,* 2:22-CV-01016 (E.D. Wis.) (same); *Duncan v. Joy Global Inc., et al.,* 2:16-CV-01229 (E.D. Wis.) (deciding motion to dismiss after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); *Gumm et al v. Molinaroli, et al.*, 2:16-CV-01093 (E.D. Wis.) (same); *Public Employees' Retirement System of Mississippi et al v. Roadrunner Transportation Systems Inc., et al.*, 2:17-CV-00144 (E.D. Wis.) (same); *see also, Allison v. Oak Street Health, Inc., et al.*, 1:22-CV-00149 (N.D. Ill.) (same); *Chandler v. Ulta Beauty, Inc., et al.*, 1:18-CV-01577 (N.D. Ill.) (same); *Burbige et al v. ATI Physical Therapy, Inc.*, 1:21-CV-04349 (N.D. Ill.) (same); *Construction Workers Pension Trust Fund -- Lake County and Vicinity v. Navistar International Corporation et al*, 1:13-CV-02111 (N.D. Ill.) (same); *Pugh v. Trib. Co.*, 521 F.3d 686, 692 (7th Cir. 2008) ("Pursuant to the Private Securities Litigation Reform

---

[5] The filing of a securities class action complaint triggers a cascade of deadlines under the PSLRA: (1) the plaintiffs have twenty days to publish a notice of the action informing class members of the deadline to file a motion to serve as lead plaintiff (§ 78u–4(a)(3)(A)(i)); (2) potential class members then have sixty days from the date of the notice to file lead plaintiff motions with the court (§ 78u–4(a)(3)(A)(i)(II)); and finally (3) within ninety days of the date of the notice, the court must consider any motions filed and appoint a lead plaintiff (§ 78u–4(a)(3)(B)(i))." *Gumm v. Molinaroli*, 2016 WL 6680462, at *2 (E.D. Wis. Nov. 14, 2016). Here, the PSLRA early notice was issued on May 7, 2024. (Dkt. No. 12-1). Lead Plaintiff motions were due on July 8, 2024. 15 U.S.C. § 78u–4(a)(3)(A). Under the PSLRA, the Lead Plaintiff has the authority act on behalf and bind the putative class. 15 U.S.C. § 78u–4(a)(3)(B). Any putative class member can make a lead plaintiff motion in response to the notice. *Id.* The PSLRA also contemplates that when related actions are filed during the 60-day notice period, they should be consolidated prior to a court's consideration of Lead Plaintiff motions. *Id.* Discovery is stayed upon the filing of a motion to dismiss. 15 U.S.C. § 78u–4(b)(3)(B).

Act of 1995 (PSLRA), the court appointed a lead plaintiff and lead counsel in the securities case. At that point, an amended consolidated class action complaint was filed.")[6]

This procedure makes sense, because it provides litigants an outcome on a pleading that has binding or preclusive effect on behalf of the putative class. At the same time, all discovery is stayed and Defendants are not required to respond to the initial complaint. Resources are conserved until the operative complaint is filed by the lead plaintiff.[7]

At the same time, the lead plaintiff will conduct additional and more in-depth investigations to file a more fulsome amended complaint. Indeed, filed herewith is a table of cases from 2023

---

[6] Courts in other Circuits are in accord. Fifth Circuit: *Oscar Private Equity Investments v. Allegiance Telecom, Inc., et al*., 2004 WL 524943 (N.D. Tex. March 17, 2004) (denying defendants' motion to dismiss filed prior to appointment of lead plaintiff and lead plaintiff counsel as moot because plaintiff entitled to amend complaint); Tenth Circuit: *Spiegal, et al. v. Tenfold Corp., et al.*, No. 00-CV-652 (Dkt. No. 36) (D. Utah Jan. 3, 2001) (denying defendants' motions to dismiss as a "waste of judicial resources" because a lead plaintiff had yet to be appointed); Eleventh Circuit: *Casey v. Windmere-Durable Holdings, Inc., et al*., Case No. 98-CV-2273(Dkt. Nos. 15, 17) (S.D. Fla. Dec. 9, 1998) (holding that no response to the defendant's motion to dismiss would be required until after the conclusion of the lead plaintiff process); Fourth Circuit: *City of Fort Lauderdale General Employees' Retirement System, et. al. v. VeriSign, Inc. et al.*, 1:13-CV-00060 (E.D.Va) (same); Ninth Circuit: *Autumn Partners v. Remec, Inc.,* No. 04-cv-1948 (Dkt. No. 20) (S.D. Cal. Nov. 12, 2004) (removing defendants' motions to dismiss three related actions off the calendar and deferring a decision on the pending motions to dismiss until the lead plaintiff(s) and lead counsel were determined by the court); Third Circuit: *Plumbers & Pipefitters Local Union No, 630 Pension Annuity Trust Fund v. Kenexa Corp., et al.*, No. 09-CV-2642 (Dkt. No. 25) (E.D. Pa.) (deciding motion to dismiss after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); First Circuit: *Luna v. Carbonite, Inc., et al*., 1:19-cv-11662 (Dkt. No. 30) (D. Mass.) Second Circuit: *Birnbaum v. General Electric Company et al*, 1:19-CV-01013 (Dkt. No. 62) (S.D.N.Y.) (same); Sixth Circuit: *Bettis v. Envision Healthcare Corporation et al.*, 3:17-CV-01112 (Dkt. No. 28) (M.D. Tenn.) (same); Eighth Circuit: *In re Resideo Technologies, Inc. Securities Litigation*, 0:19-cv-02863 (Dkt. No. 16) (D. Minn.)

[7] Defendants cite *Mei Pang v. Levitt,* No. 1:22-cv-1191 (Dkt. Nos. 12, 13) (W.D. Tex. Jan. 14, 2022) as an example of a case RLF filed a case and agreed to the standard PSLRA procedure. Def. Br. at 11. This is false. The *Pang* action was commenced by a different law firm and the standard stipulation was signed by that law firm. RLF became involved in the *Pang* action by making a lead plaintiff motion later on behalf of a different plaintiff. *See* Dkt. Nos. 1, 12, 17.

14

showing that amended complaints filed by lead plaintiffs are substantially lengthier and more detailed. *See* Kim Decl., Ex. 3.[8]

RLF followed these well-accepted authorities and procedures—making its conduct in this regard objectively and subjectively reasonable. Contrary to Defendants' assertion, neither RLF nor any other law firm in the plaintiffs' securities bar has an incentive to file a frivolous complaint in order to secure a position as lead counsel. The PSLRA put an end to the "race to the courthouse." Before the PSLRA, litigants raced to be the first to file lawsuits in order to take control of securities litigation. As there was no discovery stay, some litigants then leveraged the threat of expensive discovery to secure settlements in otherwise frivolous cases. Now, none of this is possible under the PSLRA. All class members are afforded the right to make a motion to be appointed as lead plaintiff within sixty days following mandatory public notice of the pendency of the class action. Moreover, since discovery is stayed until the Court sustains a complaint, no leverage to extract a settlement through the threat of expensive discovery exists. Defendants' entire theory of improper motive is wrong on its face.

### G.      The Cases Defendants Cite are Irrelevant to the Facts Here

A plaintiff runs afoul of Rule 11 when the record demonstrates that the initial complaint had no basis and that the same counsel and plaintiff continue to file successive complaints. Defendants cite *Boca Raton Firefighters' and Police Pension Fund v. DrVry, Inc.*, 2014 WL 1847833 (N.D. Ill. May 8, 2014), but there, the same law firm and same plaintiff filed the initial complaint based on a "curious" theory, and then filed two amended complaints where the theory

---

[8] Defendants cite *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008) to suggest that it raised the bar on what is required for an initial complaint in a PSLRA case. Def. Br. at 2, Dkt. No. 31. However, the initial complaint in *Tellabs* was only 27 pages, whereas the first amended complaint was 68 pages and the second amended complaint was 81 pages. *Johnson, et al. v. Tellabs, Inc. et al.*, 02-cv-04356 (N.D. Ill.), Dkt. Nos. 1, 40, 63.

of the case from the initial complaint was completely overhauled and where plaintiff never alleged that "defendants misstated its financial results." *Id.*, at * 3. The initial complaint had a section entitled "Defendants' False and Misleading Statements Issued During the Class Period," however most of the statements cited under that section were actually truthful statements. *Id.* Only two statements were alleged to be false, the first being a statement regarding the company's longstanding commitment to comply with recruiter compensation regulations. *Id.*, at * 4. This allegation was based on a *qui tam* suit filed by a company employee who worked for the company *four years* before the class period as well as another *qui tam* case involving a *different* for-profit education company. *Id.* The second statement, about the company's commitment to high quality programs and services and favorable enrollment trends, was alleged to be false due to purported improper and deceptive recruiting and financial aid lending practices—which was not supported by any reasonable basis. *Id.* Here, the allegations are based on a material financial restatement and Defendants' admission of their knowledge of the disputed United agreement.

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255 (S.D.N.Y. 2010), is distinguishable. The entire theory of the initial complaint was based on a false allegation that "[i]n March 2007, in a series of internal emails, executives of ANZ recognized that Opes was in financial difficulties and that as a result, ANZ's loans to Opes Prime would be in jeopardy. Nevertheless, no public disclosure was made by ANZ." *Id.*, at 260. In the amended complaint, plaintiff's counsel omitted this allegation and recrafted a new theory. *Id.*, at 261-62. The court held that the allegation was objectively unreasonable and violated Rule 11 because: there was no evidence any emails exchanged in 2007; plaintiff's counsel effectively conceded that no such emails exist; and the allegation was central to the entire theory of the initial complaint and

16

the class period was keyed from the date of the non-existent internal emails. *Id.,* at 264-65. Here, evidence of the restatement and knowledge of the disputed contract is unquestionable.

Lastly, unlike Defendants' cases, the absence of an improper purpose is demonstrated by the fact that RLF has never been sanctioned under Rule 11. *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 936 (7th Cir. 2003) (Recidivism is a relevant factor a court should consider in assessing sanctions).

### H. Immaterial Factual Errors in the Complaint do not Warrant Rule 11 Sanctions

Defendants point to three purported factual errors in the Complaint to support their motion for sanctions. These purported errors relate to ***immaterial*** allegations as to whether Harbor stock traded in an efficient market. These allegations were that: Harbor disseminated press releases in the media; that its stock was actively traded on a national exchange; and that financial analysts followed the Company. Def. Br. at 1-2. These allegations concern the "fraud on the market" presumption of reliance. These allegations are immaterial to the sufficiency of the Complaint, as shown by the fact that Defendants' motion to dismiss does not assert that the Complaint fails to adequately allege reliance or market efficiency.

Moreover, Defendants misstate the facts. Analysts did issue research reports about Harbor during the Class Period. There were at least 18 reports issued by research firms. *See* Kim Decl., Ex. 4. Defendants' assertion that the trading volume allegations are inaccurate is similarly misplaced. Defendants cite that the "average daily trading volume was less than 0.12% of the total outstanding shares" and thus it does not support a presumption of efficiency. Def. Br. at 9. However, Defendants are incorrectly calculating trading volume; the applicable factor is "average weekly trading volume," not daily. *See In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321 at * 3 (N.D. Ill. Mar. 5, 2015) ("In *Cammer,* the court identified the following factors to evaluate when

17

considering whether a stock trades in an efficient market: (1) average weekly trading volume during the class period"); *Public Employees' Retirement Us. of Mississippi v. TreeHouse Foods, Inc.*, 2020 WL 919249, at * 4 (N.D. Ill. Feb. 26, 2020) (same). The average weekly trading volume of Harbor stock applied as a percentage of the outstanding share float is 1.04% (*see,* Kim Decl., Ex. 5) – this supports market efficiency. *See In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 750 (S.D. Tex. 2006) ("weekly turnover of one % of a security's float would justify a substantial presumption" of market efficiency).

The Complaint, in at least five places, accurately alleges that Harbor stock is traded on the OTC market. Compl., ¶¶8, 56, 57, 62. The only reference to a "national securities exchange" is in the jurisdictional allegations – alleging that Defendants' misconduct involved the use of interstate commerce. *Id.,* ¶ 5. The OTC market, while not a major national exchange, certainly qualifies as involving interstate commerce. And Defendants do not move to dismiss on this basis. As such, their criticism is baseless.

Defendants are correct that Harbor itself did not issue press releases. These inadvertent factual errors, however, are not outcome determinative on the question of market efficiency. The essence of an efficient market is a price impact—the cause-and-effect relationship between unexpected news and market price. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 207 (2d Cir. 2008). On the face of the Complaint, Plaintiff alleged price impact based on the corrective disclosure on March 29, 2024, when the Company announced the restatement that caused the price of Harbor stock to fall 14.25%. Compl. ¶54; *See, Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 491 (E.D. Pa. 2022) (at the class certification stage, explaining that "price impact can be measured solely by the decline in price at the time of the corrective disclosure.").

18

These inadvertent factual errors do not undermine reliance. *See Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 451 (7th Cir. 1993) (Even a "glaring" factual error that should have been discovered, did not warrant sanctions as it did not undermine the legal theory). Indeed, Defendants did not move to dismiss on reliance. Nor did Defendants move to dismiss the Complaint on loss causation, which is a more precise question of causation than the broader concept of price impact. In any event, issues related to efficient market and the fraud on the market presumption of reliance are class certification issues subject to expert discovery. *See e.g., Treehouse Foods*, 2020 WL 919249, at *4 * 5.

**III.    RLF Did Not Violate 28 U.S.C. §1927**

28 U.S.C. §1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. This language has been consistently interpreted as mandating a higher standard for the imposition of sanctions than Rule 11. Unlike Rule 11, Section 1927 requires a finding of bad faith or vexatiousness on the part of counsel. *See e.g.*, *Moriarty ex rel. Loc. Union No. 727, I.B.T. Pension Tr., & the Teamsters Loc. Union No. 727 Health & Welfare Tr. v. Svec*, 429 F.3d 710, 722 (7th Cir. 2005) ("sanctions may only be awarded under 28 U.S.C. § 1927 against an individual who has demonstrated subjective or objective bad faith") (internal quotations omitted); *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 120 F.R.D. 53, 57 (N.D. Ill. 1988*), aff'd sub nom. Mars Steel Corp.*, 880 F.2d 928 (finding a Rule 11 violation but no Section 1927 violation because counsel's actions were not shown to be in bad faith). As such, with exceptions not

19

applicable here,[9] where the Court determines that counsel has not violated Rule 11, it must therefore follow that counsel has not run afoul of Section 1927.

With that in mind, Plaintiff incorporates herein all arguments as to the Rule 11 motion. Because Defendants argue that Section 1927 sanctions are warranted for the same conduct complained of in their Rule 11 motion, the motion under Section 1927 - which carries a higher burden - should be denied for the same reasons. As discussed at length *supra*, Rule 11 sanctions are not proper here, thereby obviating the issue of Section 1927 sanctions.

To the extent that the Court reaches the question of Section 1927 sanctions, they are not warranted here. "Section 1927 sanctions should only be awarded when an attorney 'unreasonably and vexatiously' multiplies the proceedings." *Barosh*, 22 F.3d at 120 (quoting 28 U.S.C. § 1927). "'Vexatious' conduct involves either subjective or objective bad faith." *Id.* (citing *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)). Here, Plaintiff's counsel's conduct is not "unreasonably and vexatiously" multiplying the proceeding; in fact, it is not multiplying the proceedings at all. As this Court has repeatedly explained to Defendants, it is holding the motion to dismiss in abeyance until the Lead Plaintiff files an amended complaint. Dkt. Nos. 23 & 29. Plaintiff's counsel, in not taking any action as to its Complaint, has simply abided by this Court's order. Moreover, as explained above, Plaintiff's counsel has been proceeding with this case in accordance with the procedures of cases of this type that have been widely accepted. As such, the conduct of Plaintiff's counsel cannot be considered to have extended the proceedings, in a vexatious manner or otherwise.

---

[9] *E.g.* Where counsel cannot be sanctioned under Rule 11 because they are not a signatory to the relevant papers, but have nevertheless committed sanctionable conduct. *See CTC Imports & Exports v. Nigerian Petroleum Corp.*, 739 F. Supp. 966 (E.D. Pa. 1990), *aff'd in part, remanded in part,* 951 F.2d 573 (3d Cir. 1991). Another example would be where the motion under Rule 11 is untimely, but the conduct is otherwise sanctionable.

Rather, it is Defendants' who have insisted on departing from well established procedures in the orderly resolution of the securities class actions under the PSRLA. Defendants filed their premature motion to dismiss knowing that the Complaint would be superseded by the operative complaint filed by the Lead Plaintiff. Defendants then sought reconsideration of the same based on the same arguments the Court had previously rejected. A review of the few cases Defendants cited in support of their argument for Section 1927 sanctions reveals that, to the extent that the cases are applicable, they are far more pertinent to Defendants' conduct than that of Plaintiff's counsel. For example, in *Jolly Grp., Ltd. v. Medline Indus., Inc.,* the Court sanctioned counsel for wasting its time with motions after the pertinent issue had already been decided, writing that "prudence should have counseled that by filing additional motions aimed at changing facts and responding to the court's conclusions, he was pursuing a path that was unsound." 435 F.3d 717, 721 (7th Cir. 2006).

## IV. Monetary Sanctions are Not Warranted

In levying sanctions under Rule 11, this Court is granted great discretion as to its form or severity, as "the court may impose a penalty as light as a censure and as heavy as is justified." *Frantz v. U.S. Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir. 1987). The plain text of Section 1927 likewise affords the Court leeway in its form of sanction: "Any attorney… who so multiplies the proceedings in any case unreasonably and vexatiously *may be* required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (emphasis added) *See also Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993). Here, because Plaintiff's counsel has violated neither Rule 11 nor Section 1927, there is no basis for any form of sanctions, including monetary sanctions.

21

To the extent that such a violation could be found, however, the resulting sanction should take the form of a censure, because "the deterrent purpose of the rule should be served by impos[ing] a sanction that fits the inappropriate conduct." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999) (internal citations omitted). Here, because Defendants would have to respond to the forthcoming amended complaint regardless, Plaintiff has not caused them to expend any additional resources.[10] Monetary sanctions would therefore be inappropriate. In addition, because "the power to impose costs under § 1927 should be exercised only in instances of a serious and studied disregard for the orderly processes of justice," the levying of sanctions on Plaintiff's counsel under Section 1927 would be equally inappropriate. *City of Waukegan*, 5 F.3d at 1089 (citations omitted).

## V.      Conclusion

For the foregoing reasons, Defendants' motion should be denied.

Dated: August 16, 2024                                      Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff Viral Kothari*

---

[10] In so ordering, the Court noted that "even if Defendants' motion to dismiss would be granted, Plaintiff would be given leave to amend… Moreover, Defendants concede that investors like the appointed lead plaintiff would remain free 'to initiate a case in good faith after conducting the required pre-suit investigation.'" Dkt. No. 29 at 2.

22