## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

VIRAL KOTHARI, Individually and on behalf
of all others similarly situated,

                  Plaintiff,

     v.

HARBOR DIVERSIFIED, INC., CHRISTINE
R. DEISTER, and LIAM MACKAY,

                  Defendants.

Case No. 1:24-cv-00556-WCG

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER RULE 11

---

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 E. Michigan St., Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON &
RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

August 30, 2024

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................2

    A.    Kothari Filed A Placeholder Complaint To Avoid The Pre-Suit Expense Of Complying With The Reform Act .......................................................3

    B.    Kothari's Placeholder Tactic Inflicts Judicially Recognized Harms ...................5

    C.    The Reform Act Does Not Authorize Placeholder Complaints...........................5

    D.    Allegations Of A Restatement Are Not Allegations Of Fraud ...........................7

        1.    Kothari Must Plead Facts Supporting A Strong Inference of Scienter.....7

        2.    Kothari Pleads No Facts Supporting Any Inference of Scienter .............8

        3.    Kothari's Conclusory Allegations Cannot Stand In Place of Facts ........10

    E.    Reasonable Investigation Would Have Revealed False Fraud Allegations........11

    F.    Kothari's Failure to Investigate Resulted in False Market Efficiency Allegations .................................................................................................13

    G.    Defendant's Motion To Dismiss Was Not Premature .......................................15

CONCLUSION...................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3rd Cir. 1999) ...............................................................................10

*Appvion, Inc. v. Bluth*,
2022 U.S. Dist. LEXIS 161343 (E.D. Wisc. 2022) ...............................................11

*Arazie Alizadeh v. Tellabs, Inc.*,
2015 U.S. Dist. LEXIS 15553 (N.D. Ill. 2015) .....................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................10

*ATSI Communics., Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)...............................................................................2, 6, 7

*In re Austl. & N.Z. Banking Group Ltd. Sec. Litig.*,
712 F. Supp. 2d at 266 ...........................................................................................4, 5

*Auto. Indus. Pension Trust Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012)........................................................................................3

*In re Bally Total Fitness Sec. Litig.*,
2006 U.S. Dist. LEXIS 93986 (N.D. Ill. 2006) ....................................................4, 8

*In re Bausch & Lomb, Inc. Sec. Litig.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008).....................................................................10

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2013 U.S. Dist. LEXIS 45053 (N.D. Ill. 2013) .........................................................4

*Borsellino v. Goldman Sachs Group, Inc.*,
477 F.3d 502 (7th Cir. 2007) .....................................................................................1

*In re Champion Enters. Sec. Litig.*,
145 F. Supp. 2d 871 (E.D. Mich 2001)....................................................................15

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008).................................................................7, 9, 10

*City of Livonia Emp. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...............................................................................5, 7, 8

Case 1:24-cv-00556-WCG     Filed 08/30/24     Page 3 of 22     Document 36

*DiLeo v. Ernst & Young,*
901 F.2d 624 (7th Cir. 1990) ........................................................................................7

*Espy v. J2 Glob., Inc.,*
2024 U.S. App. LEXIS 9487 (9th Cir. 2024) ..............................................................7

*Goldberg v. Household Bank, F.S.B.,*
890 F.2d 965 (7th Cir. 1989) ........................................................................................7

*In re Harley-Davidson, Inc. Sec. Litig.,*
660 F. Supp. 2d 969 (E.D. Wisc. 2009)............................................................ *passim*

*In re Intelligroup Sec. Litig.,*
527 F. Supp. 2d 262 (D.N.J. 2007) ..............................................................................13

*Makor Issues & Rights, Ltd. v. Tellabs Inc.,*
513 F.3d 702 (7th Cir. 2008) .....................................................................................1, 3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
547 U.S. 71 (2006)......................................................................................................6, 11

*Miller v. Champion Enters., Inc.,*
346 F.3d 660 (6th Cir. 2003) ........................................................................................2

*Pension Trust Fund for Operating Eng's v. Kohl's Corp.,*
266 F. Supp. 3d 1154 (E.D. Wisc. 2017)......................................................................8

*Perelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,*
631 F.3d 436 (7th Cir. 2011) ........................................................................................3

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.,*
89 F. Supp. 3d 602 (S.D.N.Y. 2015)............................................................................9

*Podraza v. Whiting,*
790 F.3d 828 (8th Cir. 2015) ........................................................................................8

*Ret. Sys. v. Boeing Co.,*
306 F.R.D. 175 (N.D. Il. 2014)....................................................................................1

*Retired Chi. Police Ass'n v. Firemen's Annuity & Benefit Fund of Chi.,*
145 F.3d 929 (7th Cir. 1998) ........................................................................................3

*Roth v. OfficeMax, Inc.,*
527 F. Supp. 2d 791 (N.D. Ill. 2007) ......................................................................7, 11

*Schleicher v. Wendt,*
529 F. Supp. 2d 959 (S.D. Ind. 2007) ..........................................................................1

iii

*Straub v. Liveperson, Inc.*,
    No. 1:23-cv-03078, ECF No. 1 (E.D.N.Y. filed April 24, 2023) ...........................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................................11

*Thompson v. RelationServe Media, Inc.*,
    610 F.3d 628 (11th Cir 2010) ...................................................................................2, 6

*Thornton v. Wahl*,
    787 F.2d 1151 (7th Cir. 1986) ......................................................................................3

*Valerius v. Geraghty*,
    2010 U.S. Dist. LEXIS 161540 (E.D. Pa. 2010) .......................................................15

**Statutes**

15 U.S.C.§ 78u-4(c)(1) ........................................................................................................6

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

Sarbanes-Oxley Act ............................................................................................................11

Securities Exchange Act of 1934 Section 10(b) ............................................................7, 8

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)........................................................................................................10

Fed. R. Civ. P. 9(b) ............................................................................................................10

Fed. R. Civ. P. 11 .................................................................................................... *passim*

iv

## INTRODUCTION

Viral Kothari ("Kothari") filed a placeholder complaint (the "Complaint") accusing Harbor Diversified, Inc. ("Harbor" or the "Company"), Christine R. Deister, and Liam MacKay (with Harbor "Defendants") of fraud. That placeholder merely recounts the disclosure of an anticipated restatement based on accounting error. It does not, as required by Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA"), plead a single fact indicating fraudulent intent on the part of any individual. Kothari's lawyer admits doing nothing to investigate his client's claims other than "review[] details of Harbor's [anticipated] restatement, including Harbor's [SEC filings] and stock price movements." Kim Decl., ¶6. That is not the "elaborate pre-complaint investigation[]" required by the Reform Act. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008). Worse still, Kothari's lawyer admits that he regularly defers conducting the requisite "in-depth investigations" and drafting of a "fulsome complaint" until after selection of the lead plaintiff in order to ensure that his "[r]esources are conserved[.]" Opp. at 14. These tactics are prohibited by the Reform Act and Rule 11.

Congress passed the "Reform Act" to stop abusive actions in which "issuers of securities would be sued based on little more than a significant drop in their stock prices after announcing bad news." *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 969 (S.D. Ind. 2007), *citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). That is precisely what Kothari and his counsel did. They ignored the Reform Act in order to reduce their economic risk and in so doing harmed Defendants. "The reason for [the Reform Act's pleading] requirements includes the fact that the mere filing of a broad, class action securities complaint is a market relevant event for any reputable company." *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-181 (N.D. Il. 2014) "This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

1

Kothari imagines that the Reform Act allowed him to defer compliance with Rule 11 until after the Court's designation of the lead plaintiff and the filing of an amended complaint—but the opposite is true. "The PSLRA does not grant a get-out-of-jail-free card—one nonfrivolous complaint does not immunize the earlier filing of frivolous complaints." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 664 (11th Cir 2010). Moreover, "[t]he express congressional purpose of the PSLRA's sanctions provision was to increase the frequency of Rule 11 sanctions in securities litigation and thus tilt the balance toward greater deterrence of frivolous securities fraud claims." *ATSI Communics., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009). The Reform Act and Rule 11 thus plainly prohibit Kothari's use of a skeletal placeholder complaint as a key to the federal securities-fraud class action apparatus.

Kothari's stated preference for avoiding the expense of conducting a pre-suit investigation and drafting a "fulsome" complaint until he knows he will be lead plaintiff is not a defense, it is a confession. This leaves Kothari defending his use of a placeholder complaint on the ground that his counsel and others have gotten away with it before. But the frequency of a wrong does not make it right. Persistent flouting of the Reform Act and Rule 11 only highlights the need for enforcement. Kothari and his counsel represented that they conducted a reasonable inquiry prior to asserting their claims and that their claims were well grounded in fact and law. *See* Fed. R. Civ. P. 11(b). Those representations were false. Sanctions are the appropriate and necessary remedy.

## ARGUMENT

> The [Reform Act's] pleading requirement is more than simply a line the plaintiffs must cross to get to discovery; it is the heart of the [Reform Act]. This stringent requirement operates to discourage baseless suits altogether. It evinces Congress's acknowledgment of the burden an allegation of securities fraud places on the innocent defendant even without discovery.

*Miller v. Champion Enters.,* Inc., 346 F.3d 660, 691 (6th Cir. 2003).

Kothari's file first, amend later tactic is an affront to the Reform Act. The sole purpose of that tactic is to fatten the wallets of his attorneys by reducing upfront costs, at the expense of the innocent people Congress sought to protect by prohibiting such practices. His tactic can only

2

succeed where defendants and courts find it convenient to look the other way. Service of the instant motion informed Kothari that Defendants had no interest in playing his game, and gave him the chance to dismiss his placeholder complaint. He had a legal obligation to do so. Instead, he opposed the motion to dismiss and applied to be lead plaintiff, all on the basis of a frivolous pleading. The Court should award sanctions sufficient to deter such abuses in the future.

### A. Kothari Filed A Placeholder Complaint To Avoid The Pre-Suit Expense Of Complying With The Reform Act

To accomplish its goals, the Reform Act imposes far more stringent pleading and pre-filing investigative burdens than in any other context, and clarifies what is required to initiate a securities fraud class action in good faith. "Because the Reform Act requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct *elaborate pre-complaint investigations*." *Tellabs Inc.*, 513 F.3d at 711 (emphasis added). "The particularity requirement ensures that plaintiffs do their homework *before* filing suit and protects defendants from baseless suits that tarnish reputations." *Perelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011) (emphasis added).

The Reform Act thus "leaves a plaintiff's counsel with a greater than usual burden of investigation *before* filing a securities fraud complaint" because the legislature "deliberately raised the *entry bar* . . . through the PSLRA's heightened pleading standards[.]" *Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (emphasis added). "Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation. They must conduct a reasonable investigation of the facts necessary to support their claims." *Retired Chi. Police Ass'n v. Firemen's Annuity & Benefit Fund of Chi.*, 145 F.3d 929, 934 (7th Cir. 1998); *see Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) ("It is not acceptable to make an assertion . . . and hope that it will turn out to be true.").

Kothari now asks this Court to discard these threshold requirements with respect to his "initial" complaint. Nothing in the Reform Act is consistent with that approach. The Reform Act required that Kothari thoroughly investigate before filing his complaint, not after, and that he make

3

a good faith attempt to plead a viable claim from the start. *See Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2013 U.S. Dist. LEXIS 45053, at *38 (N.D. Ill. 2013) (Plaintiffs "filed this lawsuit before conducting a proper presuit investigation" and that plaintiffs improperly used a 60-day period for amendment to "conduct an investigation that it should have conducted before filing this lawsuit"); *In re Austl. & N.Z. Banking Group Ltd. Sec. Litig.*, 712 F. Supp. 2d at 266 ("Plaintiff's counsel have identified no authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the PSLRA."). Kothari's effort to skirt the rules demonstrates that he was focused solely on securing control of the putative class and extracting a settlement, not the merits of his claim. Kothari is precisely the kind of plaintiff, and this is exactly the type of action, that the Reform Act and Rule 11 are designed to prevent.

Kothari's counsel admits that his "investigation" consisted of little more than reading the Company's disclosure of an anticipated restatement. Opp at. 12; Kim Decl., ¶6. This alone establishes a violation of Rule 11. Kothari's subsequent reliance on the mere fact of "bad news" is plainly deficient because it is well-established that even an actual restatement does not provide a basis for an inference of scienter. *See, e.g., In re Bally Total Fitness Sec. Litig.*, 2006 U.S. Dist. LEXIS 93986, at *11 (N.D. Ill. 2006) ("[E]ven a very large restatement is not itself evidence of scienter."). In trying to justify this conduct, Kothari's counsel admits that he filed his placeholder on the assumption that Kothari, or some other lead plaintiff, would investigate and amend after securing lead status, thereby allowing him conserve his "resources" at the outset. Opp. at 14.

As noted in Defendants' opening brief, Kothari's lawyers could not apply to serve as lead counsel, and thereby gain access to a substantial fee award, without the filing of a complaint. *See* Mot. at 11. But Kothari did not want to incur the cost of conducting the required pre-complaint investigation and drafting detailed factual allegations until they were certain that they would lead the class and have access to that fee award. So, he abandoned any *pre*-suit attempt to comply with the Reform Act or Rule 11. Kothari denies none of this, and admits that Kothari's tactic is designed

to ensure that their "[r]esources are conserved until the operative complaint is filed by the lead plaintiff[.]" Opp at 14. He repeatedly states that he expected to get away with this practice, unchallenged by Defendants, because he assumed "that the Complaint would be amended following appointment of a lead plaintiff, and the completion of further investigation," *i.e.*, before any motion to dismiss could be heard. Opp. at 12, 14.

These admissions are damning. Kothari's investigatory and pleading burdens are *pre*-filing burdens, not *post*-filing burdens. The Reform Act placed these burdens on Kothari and his counsel to protect Defendants from a baseless fraud allegation, which is a harmful "market relevant event for any reputable company." *Livonia*, 306 F.R.D. at 180-181. The Reform Act is designed to protect companies and individuals from the damage caused by the filing of an initial complaint by plaintiffs who have no facts supporting a strong inference of scienter. Nothing in the Reform Act limits its application to an amended complaint filed by a lead plaintiff.

**B.      Kothari's Placeholder Tactic Inflicts Judicially Recognized Harms**

In demanding that the Court insulate his placeholder complaint from scrutiny under Rule 11 until someone else can investigate and amend, Kothari ignores the goals of the Reform Act. He also ignores the fact that the mere filing of his securities fraud complaint imposed a host of ongoing costs on Defendants. These harms include the retention of counsel to defend themselves against the accusations of fraud, implementation of a document hold, increased insurance premiums, and reputational harm. *Id*; *see In re Austl. & N.Z. Banking Group*, 712 F. Supp. 2d at 266 ("[U]pon the filing of the Original Complaint, the defendants were forced to retain counsel and conduct an initial investigation into the allegations contained in the Original Complaint in preparation for defending the lawsuit."). Congress's objective was not just to ensure that strike suits are eventually dismissed, it was to protect defendants from material harms by deterring plaintiffs from *filing* baseless claims.

**C.      The Reform Act Does Not Authorize Placeholder Complaints**

The Reform Act is meant "to deter or at least quickly dispose of those suits whose nuisance value outweighs their merits . . . and place[s] special burdens on plaintiffs seeking to bring federal

securities fraud class actions." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006). Kothari's tactics turn the Reform Act on its head by transforming pre-filing obligations into post-filing obligations, and preventing defendants from quickly disposing of his baseless fraud complaint. Kothari now asks this Court to make matters worse by deferring consideration of this motion until the lead plaintiff has an opportunity to accomplish what Kothari should have already done. Opp at 4. But even the filing of a successful amended complaint would not cure Kothari's long-perfected Rule 11 violations—it would merely underscore the deficiencies in Kothari's pre-filing investigation and placeholder complaint.

The Reform Act "does not grant a get-out-of-jail-free card—one nonfrivolous complaint does not immunize the earlier filing of frivolous complaints." *Thompson*, 610 F.3d at 664. To the contrary, "[b]ecause Congress extended [Rule 11] to 'any' complaint, when a plaintiff files multiple complaints, each must be scrutinized." *Id.* Kothari's violation of Rule 11 was complete when he filed his placeholder, and no later than when he failed to dismiss his complaint during Rule 11's 21-day safe-harbor. His involvement as a plaintiff in this case is over. There is no practical reason for deferring the imposition of sanctions, and doing so would undermine the Reform Act.

Kothari admits that "[t]he PSLRA does not alter the substantive standards for finding a Rule 11 violation." Opp at 4. Rather, because Congress was deeply concerned about frivolous securities actions, and wanted to "increase the frequency of Rule 11 sanctions in securities litigation," it mandated that courts conduct a Rule 11 inquiry. *ATSI Communics.*, 579 F.3d at 152; 15 U.S.C.§ 78u-4(c)(1). As Kothari concedes, this provision "functions merely to reduce courts' discretion in choosing *whether* to conduct the Rule 11 inquiry and whether and how to sanction a party if a violation is found." Opp at 4 (emphasis added). Kothari nonetheless reads this language as suggesting that Rule 11 motions must wait until the end of the case. He is wrong:

> By directing a district court to make findings upon final adjudication of the action, 15 U.S.C. § 78u-4(c)(1), the statute might discourage the filing of prompt Rule 11 motions, allowing lawyers to dither, or even wait on purpose in order to increase costs that can be shifted onto sanctioned counsel. Such a delay would waste judicial

6

resources, and impose unfair burdens. Nothing in the PSLRA prevents an adversary from filing a Rule 11 motion at an earlier point in the litigation, before heavy costs have accrued.

*ATSI Communs.*, 579 F.3d at 154-155. The time for corrective action is now.

### D. Allegations Of A Restatement Are Not Allegations Of Fraud

Kothari's placeholder complaint is patently frivolous. It merely points to the fact of bad news: an anticipated restatement resulting from an accounting error. He alleges no facts speaking to scienter. His pleading is particularly defective because "[r]estatements of earnings are common," *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir. 1989), and "mere allegations of GAAP violations [or] the restatement of income . . . are not sufficient to demonstrate that those who made the statements committed securities fraud," *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 797 (N.D. Ill. 2007). Even "a large column of big numbers need not add up to fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ($4 billion restatement does not support inference of scienter). Indeed, "it is well settled that the mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter." *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008).

### 1. Kothari Must Plead Facts Supporting A Strong Inference of Scienter

To state a claim for an accounting fraud under Section 10(b) of the Securities Exchange Act of 1934, Kothari had to plead facts giving rise to a *strong* inference that an individual defendant knew or acted in reckless disregard of the accounting error. In order to plead deliberate recklessness, much less intentional conduct, Kothari had to plead particularized facts showing an "*extreme departure* from the standards of ordinary care . . . that the danger was either *known* to the defendant or so obvious that the defendant *must have been aware* of it." *City of Livonia Emp. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013) (quotation omitted) (emphasis added); *see Espy v. J2 Glob., Inc.*, 2024 U.S. App. LEXIS 9487 (9th Cir. 2024) ("Deliberate recklessness is a higher standard than mere recklessness."). Kothari made no attempt to comply with these pleading requirements, and pointed only to the fact of the anticipated restatement. In so doing, he completely ignored settled law, including the fact that Section 10(b)

7

"prohibit[s] fraud, not accounting malpractice," and that "allegations of GAAP violations are insufficient to state a securities fraud claim unless coupled with evidence of corresponding fraudulent intent." *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015); *see In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 LEXIS 174096, at *19 (S.D.N.Y. 2014) ("The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published, particularly when the error was a matter of judgment.").

Courts routinely dismiss cases involving restatements where plaintiffs have not pled *sufficient* facts giving rise to a "strong inference" that an individual defendant knew about, or was deliberately reckless in ignoring, the errors that caused those restatements—much less where, as here, the plaintiff has pled no facts whatsoever. *See, e.g., Kohl's Corp.*, 266 F. Supp. 3d 1154, 1157-58 (E.D. Wisc. 2017); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1003 (E.D. Wisc. 2009). The cases on this point are legion. For example, in *Higginbotham v. Baxter International, Inc.*, the company and certain officers were sued for securities fraud after the company "announced that it would restate the preceding three years' earnings in order to correct errors created by fraud at its subsidiary in Brazil." 495 F.3d 753, 755 (7th Cir. 2007). The court affirmed dismissal because the complaint offered "very little reason to infer knowledge (or reckless indifference)" prior to the last misstatement. *Id*. at 758. Similarly, in *In re Bally Total Fitness Securities Litigation*, the defendant "filed a restatement that comprehensively restated its financial results for 2000, 2001, 2002, and 2003." 2006 U.S. Dist. LEXIS 93986, at *11 (N.D. Ill. 2006). Because "even a very large restatement is not itself evidence of scienter," the district court dismissed the claims, finding that "plaintiffs ha[d] failed to allege particularized facts sufficient to give rise to a strong inference that any of the defendants acted with the requisite intent or recklessness." *Id*. at *24, *41.

### 2. Kothari Pleads No Facts Supporting Any Inference of Scienter

The same is true here, only more so. Kothari pled *no facts* beyond the anticipated restatement itself. Notably, Kothari's own counsel has litigated multiple cases in which courts

rejected the plaintiff's reliance on a restatement as evidence of scienter, including cases that explicitly noted this "well settled" principal. *See, e.g., Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618 (S.D.N.Y. 2015) ("GAAP violations, accounting irregularities, and the issuance of a restatement, 'standing alone, are insufficient to state a securities fraud claim.' *Novak*, 216 F.3d at 309; *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) ('[I]t is well settled that mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter.').") Yet the allegations in Kothari's placeholder are far more conclusory than those dismissed as deficient in the above-cited cases.

Kothari's placeholder fails to cite even one of the sources that securities-fraud plaintiffs ordinarily rely upon in attempting to adequately plead scienter, much less a single fact that might support an inference that any individual defendant knew, or was consciously reckless in not knowing, about Harbor's technical accounting error. It describes no confidential witness statements, no communications, no meetings, no terminations, no insider stock sales, no auditor concerns or other facts supporting any inference, much less a strong inference, that any defendant knew or was deliberately reckless in not knowing about the Company's technical accounting error. These gaps are particularly glaring as "it is difficult to build inferences of scienter upon accounting errors because such errors often involve complex calculations about which reasonable people can differ in opinion." *In re Allscripts, Inc. Sec. Litig.*, 2001 LEXIS 8897, at \*31-\*32 (N.D. Ill. 2001).

Despite knowing these difficulties, Kothari's counsel did not allege any facts indicating "why or how senior executives at [Harbor] would have been so familiar with those rules so as to see a problem in the company's accounting before their auditors did." *Kohl's*, 266 F.3d at 1167; *see* Ex. 4 (Harbor's Form 10-K (December 31, 2022)[1] at 45-46. Kothari did not, for example, allege "that the company's auditors alerted [individual defendants], or anyone else at [the company] to errors in the company's [] accounting before the review that ultimately led to the [anticipated] restatement." *Kohl's*, 266 F.3d at 1167. Courts regularly point to the absence of such

---

[1] Unless otherwise specified, references to "Ex." refer to the Exhibits attached to the Declaration of Wesley Horton in Support of Defendants' Motion to Dismiss. ECF No. 9.

9

allegations in dismissing complaints. *Id.*; *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (no scienter where "outside auditor[s] did not question [the company's] accounting practices"). Indeed, even if Congress had not enacted the Reform Act, Plaintiff's "labels and conclusions" and "formulaic recitation of the elements" would still fall short of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and 9(b). A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Kothari's placeholder is the opposite of a good faith attempt to satisfy the Reform Act's heightened pleading requirements.

### 3.      Kothari's Conclusory Allegations Cannot Stand In Place of Facts

Kothari's counsel knows full well, from his experience, that the placeholder's lack of facts is not cured by its speculative assertion "that defendants must have been aware of the misstatement based on their positions within the company." *In re Harley Davidson*, 660 F. Supp. 2d at 995 (quotation omitted); *Cf.* Compl. ¶ 76 ("Because of their senior positions, [the individual defendants] knew the adverse non-public information about the Company's business practice.") "[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which courts, on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3rd Cir. 1999).[2]

Kothari's counsel also knows, from his experience, that Kothari cannot rely on allegations that an individual defendant drafted or signed public disclosures. *See* Compl. ¶ 12, 69-70. Courts in this Circuit and elsewhere have repeatedly recognized that "signature[s] on the SEC filings and Sarbanes Oxley certifications" do "not suffice to allege scienter without allegations that . . . [the defendants were] . . . aware of the material weaknesses in [the company's] internal controls over financial reporting at the time [they] signed those statements or that such weaknesses were

---

[2] Kothari's counsel has litigated multiple cases rejecting reliance on executive positions as evidence of scienter. *See, e.g., Valdes v. Kandi Techs. Grp., Inc.*, 2024 LEXIS 58238, *23 (E.D.N.Y. 2024) (rejecting the claim that individual defendants must have known about the alleged fraud "because, as officers, they were tasked with ensuring [the Company's] compliance with GAAP and financial reporting requirements").

10

obvious." *Roth*, 527 F. Supp. 2d at 804.[3] Rather, "Plaintiff must state with particularity facts—known to the speaker at the time—that render the statement false or misleading." *Arazie Alizadeh v. Tellabs, Inc.*, 2015 U.S. Dist. LEXIS 15553, at *21 (N.D. Ill. 2015).

All of this matters. The "exacting pleading requirements" ignored by Kothari's lawyers are the control measures Congress included in the Reform Act "to stem the filing of frivolous federal securities lawsuits." *Appvion, Inc. v. Bluth*, 2022 U.S. Dist. LEXIS 161343, at *9 (E.D. Wisc. 2022) *citing Tellabs,* 551 U.S. at 313. As the Supreme Court has emphasized, "[p]rivate securities fraud actions . . . , if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to law." *Tellabs*, 551 U.S. at 313. "Congress enacted the [Reform Act] as a check against abusive litigation in private securities fraud actions." *Harley-Davidson*, 660 F. Supp. 2d at 983. Congress was trying to curtail "nuisance filings, targeting of deep-pocket defendants . . . and 'manipulation by class action lawyers of the clients whom they purportedly represent' [that] had become rampant in recent years." *Merrill Lynch*, 547 U.S. at 81. Kothari's ignored these exacting requirements in conformity with his counsel's playbook. Rule 11 sanctions are needed to dissuade future use of that playbook.

### E.     Reasonable Investigation Would Have Revealed False Fraud Allegations

Kothari now asserts, for the first time, that because "Defendants knew that the United Agreement was in dispute [,]. . . they could not recognize the revenue under ASC 606." Opp at 10. That new fraud theory is a belated effort to shift the Court's focus away from the factual deficiencies in the placeholder complaint and to a newly minted theory that is factually unfounded. As a threshold matter, ASC 606 does not actually prohibit the recognition of disputed receivables, it provides a complex framework for how and when to recognize such revenue. *See* Kim Decl. Ex.

---

[3] Kothari's counsel has litigated multiple cases rejecting reliance on Sarbanes Oxley certifications as sufficient to plead scienter. *See, e.g., Mei Pang v. Levitt*, 2023 LEXIS 227786, *43 (W.D. Tex. 2023) (rejecting the assertion "that defendants must have been aware of the misstatement based on their positions within the company" and reliance on "the fact that Defendants executed a statutorily-required Sarbanes-Oxley Act ('SOX') certification").

11

2. But even if ASC 606 prohibited the recognition of any disputed receivable, Kothari still has not alleged any facts that would convert that accounting error into fraud.

That is because he cannot. Rather, Kothari's complaint establishes that the Company disclosed both the dispute and the recognition of the disputed receivables to its external auditors, Grant Thornton, and to the public. According to disclosures cited by Kothari, throughout the putative Class Period—*i.e.*, before announcement of the anticipated restatement—the Company repeatedly told investors that it had "recognized all disputed amounts through March 31, 2022 in the consolidated financial statements[,]" and repeatedly warned that it could not, "with any degree of certainty, estimate the likely outcome of the arbitration including any potential award of the disputed amounts." Ex. 1 (Harbor's Form 10-Q (May 9, 2022)) at 19; Ex. 3 (Harbor's Form 10-Q (Nov. 21, 2022)) at 25.[4] Moreover, as established by Kothari's cited disclosures, after reviewing the ongoing dispute and associated accounting, Grant Thornton issued a clean audit opinion stating that the "financial statements present fairly, in all material respects, the financial position of the Company . . . in conformity with [GAAP]." Ex. 4 (Harbor's Form 10-K (December 31, 2022)) at 44, cited at Compl. ¶31. That opinion notes that the proper treatment of the disputed revenue involved "especially challenging, subjective, or complex judgments[,]" and summarized the procedures it used to confirm the Company's correct application of GAAP to that revenue, including:

- Gaining an "understanding of the relevant facts and circumstances related to matters in dispute, United's appeals with respect to amounts in dispute, Air Wisconsin's position and counterclaims, and the status of the related arbitration;"

- Reviewing "the relevant transaction and legal documents, including the [United Agreement] and related amendments, United's arbitration notice, Air Wisconsin's answer and counterclaims, and other letters between Air Wisconsin and United in connection with the ongoing dispute;"

---

[4] The recounted facts are from Kothari's complaint and the "documents incorporated therein by reference." *Harley-Davidson*, 660 F. Supp. 2d at 973.

- "[E]valuating responses to inquiry letters sent to internal and external legal counsel for additional information related to the dispute" and "the reasonableness of management's conclusions regarding the collectability of the disputed United receivables;" and,

- *"[A]ssessing the sufficiency of management's disclosures related to the disputed United receivables and related arbitration, including [the fact that] United's intent to meet its payment obligations is largely dependent upon the resolution of arbitration and that the disputed receivables may not be collectable."*

Ex. 4 (Harbor's Form 10-K (December 31, 2022)) at 45-46 (emphasis added). These facts are fatal to Kothari's new and only fraud theory. They establish that investors were fully informed of the dispute and the associated accounting, and that Harbor received a clean audit opinion that specifically addressed and validated the especially challenging, subjective, and complex accounting for the disputed receivables in each of the years subject to the anticipated restatement. This indicates that the Defendants were unaware of any accounting error at the time of the alleged misstatements. *See In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (no scienter where "outside auditor[s] did not question [the company's] accounting practices"); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 349 n.63 (D.N.J. 2007) ("[A] 'clean' audit provides certain grounds for Defendants' placid state of mind and advocates against [an] inference of scienter."). Yet Kothari alleges no facts supporting even a weak contrary inference. At a minimum, these facts constituted a "red flag" demanding further investigation. Kothari either did not look at the disclosures he cites or ignored what he found.

### F. Kothari's Failure to Investigate Resulted in False Market Efficiency Allegations

The placeholder's boilerplate efficient market allegations are identical, word-for-word, with allegations in dozens of complaints filed by Kothari's counsel. *See, e.g.*, *Straub v. Liveperson, Inc.*, No. 1:23-cv-03078, ECF No. 1 (E.D.N.Y. filed April 24, 2023); *Buqueras v. Sharecare, Inc.*, No. 2:24-cv-03225, ECF No. 1 (C.D. Cal. filed April 19, 2024). Kothari's lawyers copied the

13

entirety of paragraph 62 from their forms, with no confirmatory investigation, resulting in a placeholder replete with objectively false assertions. Kothari's counsel does not claim to have looked for, much less found, evidence supporting any of the facts alleged in paragraph 62 before filing the complaint. *See* Kim Decl., ¶ 6. He certainly never looked for, or found, "regularly disseminat[ed]" press releases issued by the Company or reports by issued analysts at "major brokerage firms[,]" documents whose purported existence form the basis of Kothari's attempt to plead an efficient market, and thus are plainly material to his placeholder. Compl. ¶ 62.

Kothari admits the entire falsity of his allegation that the "Company communicated with public investors . . . through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services." *Id*.; Opp at 18 ("Defendants are correct that Harbor itself did not issue press releases.") Kothari essentially admits the entire falsity of his allegation that the Company was followed by "a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available." Compl. at ¶ 62. No major brokerage firms follow Harbor, and no such reports exist.

Kothari nonetheless attempts to defend this second set of false allegations by dredging up "reports" from three purported "research firms" as some sort of substitute for what he falsely claimed to exist. Opp. at 17. These "reports" are AI generated bundles of nonsense dredged up long after counsel filed Kothari's placeholder. *See* Kim Decl. Ex. 4. For example, the first page of the first document identifies the industry group as "Airlines" but goes on to lists a peer group consisting of international pharma companies. Several "reports" *post*-date Kothari's complaint. Not one of these "reports" is from a "brokerage firm," much less "a major brokerage firm" as alleged, and not one is written by an "analyst." Rather than exonerate Kothari, they underscore the cavalier cynicism that resulted in this false allegation. They certainly do nothing to change the fact that Kothari made multiple material, factual misrepresentations because his counsel did not conduct any pre-suit investigation.

### G. Defendant's Motion To Dismiss Was Not Premature

Kothari takes issue with Defendants' vigorous response to his false accusations of fraud, claiming that Defendants' "premature motion to dismiss was filed in bad faith." Opp. at 12, 19. Nonsense. There is no such thing as a "premature" motion to dismiss a securities fraud complaint. The Reform Act is meant "to provide a filter *at the earliest stage* (the pleading stage) to screen out lawsuits that have no factual basis . . .[and] [t]o make it easier for innocent defendants to get cases against them dismissed *early in the process*." *In re Champion Enters. Sec. Litig.*, 145 F. Supp. 2d 871, 874 (E.D. Mich 2001) (quoting Conference Report to H.R. 1058/S. 240 (1995)) (emphasis added); *see Valerius v. Geraghty*, 2010 U.S. Dist. LEXIS 161540 at *3-*4 (E.D. Pa. 2010) (refusing to "defer ruling on any motion to dismiss" until after appointment of the lead plaintiff).

Kothari bases his accusation of bad faith on his assertion that "all parties knew the complaint would be amended." Opp. at 12. That is false. Kothari does not point to any agreement with Defendants, proposed stipulation, or statutory provision authorizing, much less presuming, any amendment. The only reason to amend would be to attempt to fix the defects in Kothari's placeholder identified by Defendants' pending motion to dismiss. If no such attempt is made, "no further delay will be allowed and the Court will proceed to decide the pending motion [to dismiss Kothari's placeholder]." Dkt. 29. Kothari's attempt to flip the script by accusing Defendants of bad faith demonstrates his disdain for the statutory framework that governs his cause of action.

### CONCLUSION

Kothari's shoot first, aim later approach is anathema to the Reform Act and the Federal Rules of Civil Procedure. His reliance on a frivolous complaint to secure an immediate and inexpensive ability to apply to be lead plaintiff—while providing minimal information to potential institutional lead plaintiff rivals—should not be validated by this Court.

15

Dated this 30th day of August, 2024.

By: */s/David R. Konkel*
John L. Kirtley
State Bar No. 1011577
David R. Konkel
State Bar No. 1097244
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: jkirtley@gklaw.com
Email: dkonkel@gklaw.com

Jason de Bretteville (*application for admission forthcoming*)
Wesley Horton (*application for admission forthcoming*)
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Fax: 949-725-4100
Email: jdebretteville@stradlinglaw.com
Email: whorton@stradlinglaw.com

*Attorneys for Defendants Harbor Diversified, Inc., Christine R. Deister, and Liam Mackay*

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on Phillip Kim, Kothari's counsel of record via the Court's electronic case filing system, on August 30, 2024:

Phillip Kim
The Rosen Law Firm
275 Madison Ave - 40th Fl
New York, NY 10016
212-686-1060
Fax: 212-202-3827
Email: philkim@rosenlegal.com

*Attorneys for Plaintiff Viral Kothari*

*/s/ David R. Konkel*
David R. Konkel
*Attorney for Defendants Harbor
Diversified, Inc., Christine R. Deister,
and Liam Mackay*

17