# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JON ARNE TOFT, Individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY

        Defendants.

No. 24-CV-00556 (WCG)

 

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
# TO DISMISS THE COMPLAINT

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

October 29, 2024

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.      Plaintiff's Fraud Theory Has No Basis In Fact................................................................2

II.     ASC 606 Is Not A Brightline Rule ................................................................................3

III.    Plaintiff Cannot Rely On Certifications, Signatures And Inapposite Pleading
        Doctrines In Place Of Particularized Allegations Of Fact ................................................7

        A.      SOX Certifications Cannot Support An Inference Of Scienter ............................7

        B.      Financial Statement Signatures Cannot Support An Inference
                Of Scienter ...................................................................................................9

        C.      The Core Operations Theory Does Not Relieve Plaintiff's Obligation
                to Plead Facts Supporting A Strong Inference Of Scienter ...............................10

        D.      Plaintiff Cannot Establish Corporate Scienter ......................................................12

IV.     Plaintiff's Allegations Negate A Finding Of Scienter .....................................................13

V.      Plaintiff Cannot Establish Loss Causation.....................................................................14

VI.     Plaintiff Cannot Establish A Section 20(A) Claim ..........................................................15

CONCLUSION.....................................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Oak St. Health, Inc.*,
2023 U.S. Dist. LEXIS 22933 (N.D. Ill. Feb. 10, 2023) ............................................................. 11

*Arazie Alizadeh v. Tellabs, Inc.*,
2015 U.S. Dist. LEXIS 15553 (N.D. Ill. 2015) ..................................................................... 8, 12

*Baxter Int'l Sec. Litig.*,
2012 U.S. Dist. LEXIS 5158 (N.D. Ill. Jan. 12, 2021) ................................................................ 12

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) .............................................................................. 13

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
673 F. Supp. 2d 718 (S.D. Ind. 2009) ......................................................................................... 13

*Chew v. Moneygram Int'l, Inc.*,
2024 U.S. Dist. LEXIS 177223 (N.D. Ill. Sep. 30, 2024) ........................................................... 12

*In re Diamond Foods, Inc., Sec. Litig.*,
2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) .............................................................................. 6

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ............................................................................................... 11, 14

*Francisco v. Abengoa, S.A.*,
559 F. Supp. 3d 286 (S.D.N.Y. 2021) ........................................................................................... 7

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ..................................................................................................... 7

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ........................................................................................... 8

*Hedick v. Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...................................................................... 6, 9, 10

*Hensley v. IEC Elecs. Corp.*,
2014 U.S. Dist. LEXIS 128102 (S.D.N.Y. Sept. 11, 2014) ........................................................ 10

*Hosack v. Utopian Wireless Corp.*,
2011 U.S. Dist. LEXIS 48687 (D. Md. May 6, 2011) ................................................................. 15

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ......................................................................................... 6

Case 1:24-cv-00556-WCG    Filed 10/29/24    Page 3 of 20    Document 45

*Lowry v. RTI Surgical Holdings, Inc.*,
    532 F. Supp. 3d 652 (N.D. Ill. Apr. 1, 2021)................................................................6, 9

*McNamara v. Pre-Paid Legal Servs., Inc.*,
    189 F. App'x 702 (10th Cir. 2006) ...........................................................................14

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ....................................................................................6

*Norfolk County Ret. Sys. v. Ustian*,
    2009 WL 2386156 (N.D. Ill. 2009) ...........................................................................6

*Payne v. DeLuca*,
    433 F. Supp. 2d 547 (W.D. Pa. 2006)........................................................................15

*Pension Trust Fund For Operating Eng. v. Kohl's Corp.*,
    266 F. Supp. 3d 1154 (E.D. Wis. 2017) ..........................................................5, 11, 15

*Puskala v. Koss Corp.*,
    799 F. Supp. 2d 941 (E.D. Wisc. 2011)......................................................................6

*Reilly v. U.S. Physical Therapy, Inc.*,
    2018 U.S. Dist. LEXIS 123324 (S.D.N.Y. July 23, 2018) ........................................7, 10

*Stark Trading & Shepherd Invs. Int'l, Ltd. v. Falconbridge Ltd.*,
    2008 U.S. Dist. LEXIS 2677 (E.D. Wis. 2008) ...........................................................14

*Van Noppen v. InnerWorkings, Inc.*,
    136 F. Supp. 3d 922 (N.D. Ill. 2015) ........................................................................6

**Statutes**

Reform Act....................................................................................3, 6, 7, 10, 15

Fed. R. Civ. P. 9 ...........................................................................................1, 6

Fed. R. Civ. P. 11 ...........................................................................................15

Rule 10b-5......................................................................................................15

iii

## INTRODUCTION

Plaintiff's Opposition ("Opp.") is most remarkable for what it concedes:

- The Company[1] disclosed the United Dispute, the Disputed Amounts, and the Company's accrual of, and payment of taxes on, those Disputed Amounts.

- The Company's outside auditor, after thoroughly reviewing the United Dispute, signed off on the Company's accrual of the Disputed Amounts.

- The FAC contains no facts indicating that anyone at the Company was aware of the alleged accounting error during the Class Period.

These admissions confirm that Plaintiff cannot not allege any fraud, much less do so with the particularity required by Rule 9(b) and the Reform Act. Nonetheless, Plaintiff persists.

Unable to identify facts in the FAC sufficient to plead a securities fraud, Plaintiff attempts to re-write the record by claiming that ASC 606 flatly prohibits recognition of any disputed payment obligation. But Plaintiff's characterization of ASC 606 as a brightline rule is inconsistent with the FAC's allegations, ASC 606 itself, and the outside auditor's approval of the accrual after an exhaustive review of the United Dispute. It also renders Plaintiff's fraud theory implausible: a fraud by means of an obvious error makes no sense.

Plaintiff then deploys a series of devices long held to be incapable of turning an alleged accounting error into an alleged fraud. Specifically, Plaintiff points to signatures on financial statements and Sarbanes-Oxley certifications ("SOX"), as if they could stand in place of the factual allegations required by Rule 9 and the Reform Act. They cannot. As innumerable courts have concluded, an accounting error resulting in a restatement is not evidence of fraud, and the baseline facts that Plaintiff relies on here – signatures on erroneous financial statements, SOX certifications,

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the opening brief ("Mot.").

and large accounting errors – are present in every case where a court has refused to treat an alleged accounting error as an alleged fraud. While Plaintiff also invokes the core operations theory and corporate scienter doctrine, they are equally unavailing: both have long been held incapable of turning an accounting error into fraud and neither has any application here.

Simply put, the Opposition is as frivolous as the FAC. Plaintiff cannot defend his failure to plead facts supporting even a *weak* inference of scienter. He also cannot explain away the FAC's admission that his claimed losses are attributable to the outcome of the United Dispute, not any accounting error. Because Plaintiff cannot establish scienter or loss causation, and because Plaintiff could not add a single material fact to the frivolous allegations of his predecessor, we ask the Court to dismiss the FAC with prejudice.

**ARGUMENT**

## I. Plaintiff's Fraud Theory Has No Basis In Fact

In his opposition, Plaintiff repeatedly describes his fraud theory as consisting of an allegation that "***Defendants failed to properly consider, or ignored, <u>United's stated intention</u> not to pay the disputed amounts and thus misstated the total amount of contract revenue the Company actually earned, thus violating ASC 606***." Opp. at 7 (emphasis in original). That theory fails because the notion that Harbor did not fully consider United's refusal to pay is contrary to Plaintiff's admitted facts.

As detailed in the Motion, Harbor's external auditor, Grant Thornton, issued a clean audit opinion covering the Class Period. In that opinion, Grant Thornton notes that the proper accounting treatment for the Disputed Amounts involved "especially challenging, subjective, or complex judgments," and describes its painstaking review of "the relevant facts and circumstances related to matters in dispute[,]" including United's view "with respect to the amounts in dispute" and the United Agreement itself. Ex. 4 at 45-46. Grant Thornton's work included "evaluating responses to inquiry letters sent to internal and external legal counsel for additional information related to the

2

dispute" and "the reasonableness of management's conclusions regarding the collectability of the disputed United receivables[.]" *Id.* Grant Thornton even noted that "United's intent to meet its payment obligations is largely dependent upon the resolution of arbitration and that the disputed receivables may not be collectable." *Id.* Nonetheless, Grant Thornton approved of the accrual.

Plaintiff's claim that Defendants ignored "United's stated intention not to pay the disputed amounts and thus knowingly or recklessly misstated the total amount of contract revenue the Company actually earned in violation of ASC 606 and falsely stated that the financial statements conformed with GAAP[,]" is an utter fabrication at odds with the facts alleged in the FAC. Opp. at 16 (emphasis omitted). Plaintiff plainly fails to state a viable fraud theory, much less meet his burden to "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

## II.     ASC 606 Is Not A Brightline Rule

Unable to allege any facts as to the knowledge of anybody at the Company, Plaintiff resorts to arguing that *everybody* must have known about an obviously erroneous application of ASC 606. *See, e.g.*, Opp. at 15. Plaintiff's attempt to reduce ASC 606 into a simple rule prohibiting the accrual of any portion of a disputed receivable is based solely on citations to inapposite provisions relating to the mere *identification* of a contract under ASC 606's "Step 1," not the recognition of revenue under "Step 5." FAC ¶¶ 45-48. These excerpts have nothing to do with how and when to record revenue in the event of a subsequent dispute. But even those citations belie his attempt at simplification, and state that the collectability assessment "is not necessarily based on the customer's ability and intention to pay the entire amount[.]" *See* Mot. at 25 (citing FAC ¶ 48).

As for the FAC's allegations regarding how ASC 606 informs the *recording* of revenue, they are incomprehensible. *See* FAC ¶¶ 49-54. In any event, the Opposition's characterization of

ASC 606's revenue recognition guidance as a simple prohibition is objectively false. Plaintiff completely ignores ASC 606, Example 9 of. *See* Mot. at 25. Example 9 illustrates a situation where revenue is properly recognized even though a customer refuses to pay, if entity determines that it has a legally enforceable right. In that example, the customer not only stated an intention not to pay, it *disputed* the claimed obligation to pay. Nonetheless, ASC 606 states that once the "entity assesses the legal basis of the claim and determines, on the basis of the underlying contractual terms, that it has enforceable rights[,]" it may proceed to accrue the receivable consistent with the remainder of the guidance. *See* ASC 606-10-55-134, 606-10-55-135. This directly contradicts Plaintiff's simplistic rule, and negates any inference that anyone, even someone intimately familiar with ASC 606's relevant provisions, must have understood that standard to prohibit accrual of the Disputed Amounts. It also contradicts Plaintiff's false claim that "Defendants provide *no explanation* in their Motion for why they purportedly believed they could recognize the disputed amounts as revenue under ASC 606[.]" Opp. at 17 (emphasis in original).

Notably, the FAC does not allege that any of the Individual Defendants were expert in the application of ASC 606 to disputed receivables. Plaintiff argues that "Defendants would have had to familiarize themselves with ASC 606 and thus would have known" of its provisions relating to disputed receivables, as part of remediating the pre-Class Period weakness. Opp. at 21. But the prior weakness had nothing to do with accounting for disputed receivables. See Ex.6 at 62. It concerned the application of other aspects of ASC 606 to lease revenue.[2] As for Plaintiff's assertion that the Individual Defendants signed documents confirming their understanding of the "variable

---

[2] *Id.* ("A portion of Air Wisconsin's compensation under the United capacity purchase agreement is designed to reimburse Air Wisconsin for certain aircraft ownership costs. . . . the consideration received for the use of the aircraft under the United capacity purchase agreement is reflected as lease revenue, inasmuch as the agreements identify the 'right of use' of a specific number of aircraft over a stated period of time. Under the application of ASC 840 for the year ended December 31, 2018, the Company is required to apply the allocation objective of the new revenue recognition standard (Topic 606) to the lease and nonlease components of the United capacity purchase agreement.").

4

constraint guidance under Topic 606" (Opp. at 14), that is nowhere to be found in the FAC.[3] Moreover, Plaintiff concedes that actual accounting experts, Grant Thornton, reviewed the Company's financial statements, including the details of the dispute with United, and concluded that accrual of the Disputed Amounts was proper. Opp. at 18; *See* Mot. at 11-12. Plaintiff does not argue that the outside auditors were misled or complicit in any failure to apply ASC 606. Clearly, Grant Thornton did not understand ASC 606 to prohibit the Company's accrual of the Disputed Amounts during the Class Period. That should be the end of this case.

Plaintiff instead resorts to prevarication, asserting that quarterly financials, as opposed to annual financials for the same period, were not audited. Opp. at 18. But Plaintiff does not, and cannot, claim that there were any differences in the accounting for the Disputed Amounts in the quarterly and annual reports covering the same period. Moreover, Plaintiff ignores the fact that Grant Thornton did in fact "review [the company's] quarterly financial statements." Ex. 4 at 86. It is true, as Plaintiff notes, that "management, not outside auditors, are responsible for the Company's financial statements[.]" Opp. at 18. But this truism does not change the fact that Plaintiff's inability "to allege that the company's auditor expressed concern undermines an inference of fraudulent intent." *Pension Trust Fund For Operating Eng. v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1167-68 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018).

Plaintiff's citations to inapposite cases do nothing to weaken this well-established precept, because all of them involve complicity on the part of the auditor, efforts to deceive the auditor, or lack any discussion of a clean audit opinion whatsoever. For example, in *Reves v. Ernst & Young*,

---

[3] This is one of several instances in which Plaintiff bolsters the FAC with facts that are not alleged in the FAC. For example, Plaintiff also asserts that the Individual Defendants "met with United monthly to reconcile provisional cash payments to actual completed flight activity[,]" but the FAC does not identify anyone who attended any such meetings. Opp. at 14. Plaintiff also claims that it is "<u>undisputed</u>" that the Individual Defendants "knew the disputed amounts would grow to over $52 million[,]" but the FAC never attributes such astonishing foresight to anyone. Opp. at 13 (emphasis in original).

5

the auditor allegedly "step[ped] out of its auditing shoes and into those of management." 507 U.S. 170, 190-91 (1993). As for *In re New Century*, the complaint alleged "both serious accounting violations by the Officer Defendants and serious auditing violations by KPMG" itself. 588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008). The FAC contains no such allegations of complicity against the outside auditor. Indeed, Plaintiff's citations on this point are so patently unhelpful as to call into question the candor of his counsel.[4]

In sum, Plaintiff asserts, nonsensically, that the alleged fraud consisted of openly violating a basic rule, without detection by Grant Thornton or anyone else, not even the third-party "analysts" who scrutinized the Company's financial disclosures. Unsurprisingly, this illogical theory is at odds with the facts. ASC 606 is not simple and the FAC does "not support the conclusion that application of the relevant revenue recognition accounting principles was necessarily obvious or straightforward." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 LEXIS 174096, at *16 (S.D.N.Y. 2014). Even if Plaintiff succeeded in alleging an obvious error, he would only further demonstrate that his fraud theory is implausible. The notion of an obvious fraud that will inevitability come to light "has no basis in logic or common experience" and cannot support a viable securities fraud claim. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 407 (9th Cir. 2020) ("[P]lausibility is no less relevant in the context of the heightened pleading standards of Rule 9(b) or the PSLRA").

---

[4] *See In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *23 (N.D. Cal. Nov. 30, 2012) (defendants "engaged in pre-audit reviews where the financial statements were 'scrubbed' prior to providing them to Deloitte."); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) (audit opinion "did not specifically discuss the time periods at issue."); *Lowry v. RTI Surgical Holdings, Inc.*, 532 F. Supp. 3d 652, 662 (N.D. Ill. Apr. 1, 2021) (defendants misled auditor by creating false orders in violation of company policy); *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at *9 (N.D. Ill. Aug. 11, 2021) (no discussion of any clean audit opinion); *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 951 (N.D. Ill. 2015) (no discussion of any clean audit opinion); *Norfolk County Ret. Sys. v. Ustian*, 2009 WL 2386156, at *39 (N.D. Ill. 2009) (defendants misled auditor); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941, 948 (E.D. Wisc. 2011) (defendant misled auditor by making "false accounting entries" to "conceal her theft").

6

**III.** **Plaintiff Cannot Rely On Certifications, Signatures And Inapposite Pleading Doctrines In Place Of Particularized Allegations Of Fact**

In place of facts speaking to the knowledge of anyone at the Company, Plaintiff argues – against well-established law – that signatures on financial disclosures and SOX certifications as to the Company's internal controls can support a strong inference of scienter. Opp. at 13. Plaintiff then tries to salvage his pleading by invoking the inapplicable core operations theory and corporate scienter doctrine. None of these ploys can transform disclosure of an accounting error into fraud. Indeed, each maneuver has long been rejected by the courts.

**A.** **SOX Certifications Cannot Support An Inference Of Scienter**

Plaintiff's reliance on Sarbanes-Oxley certifications is unavailing because the FAC does not offer any particularized allegations supporting an inference that any certifications "were not honestly and reasonably believed to be true when made." *In re Turquoise Hill*, 2014 LEXIS 174096, at *17. It is well-established that a plaintiff "cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 321 (S.D.N.Y. 2021). SOX certifications, without more, "add nothing substantial to the scienter calculus," as "allowing Sarbanes-Oxley certifications to create an inference of scienter in every case where there was an accounting error . . . by a public traded company would eviscerate the pleading requirements for scienter set forth in the PSLRA." *Reilly v. U.S. Physical Therapy, Inc.*, 2018 U.S. Dist. LEXIS 123324, at *18 (S.D.N.Y. July 23, 2018); *see Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) ("[A] Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements."). The FAC's failure to allege that

7

anyone had any knowledge of the error or any concomitant control weakness fatally undermines any allegation that any Individual Defendant knew that the SOX certifications were false.

Indeed, Plaintiff appears to concede that, at most, certifications may provide *additional* evidence of scienter where the certifications were false "and the defendant knew that, or was deliberately reckless in issuing the certifications." Opp. at 19. In other words, in order to rely on SOX certifications to support an inference of scienter, the FAC "must state with particularity facts – known to the speaker at the time – that render the statement false or misleading." *Arazie Alizadeh v. Tellabs, Inc.*, 2015 U.S. Dist. LEXIS 15553, at *21 (N.D. Ill. 2015). Plaintiff, however, does not even attempt to meet that mark.

Instead, Plaintiff conclusorily speculates, without any supporting factual allegations, that the Individual Defendants "each knew that a persistent material weakness in internal controls pertaining to ASC 606 enabled their improper recognition of the disputed amounts as revenue, yet publicly stated that the Company's internal control over financial reporting was effective for every quarter during the Class Period." Opp. at 20. The FAC, however, does not actually describe any specific deficiency in the Company's controls during the Class Period, much less plead facts indicating that any Individual Defendant was aware that any such deficiency survived their pre-Class Period remediation efforts. Mot. at 22. Plaintiff thus fails to "allege any particularized facts which would suggest that the actions articulated in the SOX Certifications were not undertaken by the Individual Defendants or for that matter any factual allegations concerning [the company's] financial reporting processes. . . [or] any facts pertaining to the Company's internal structure for financial controls." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 370 (E.D.N.Y. 2013). Moreover, Plaintiff's inability to explain how Grant Thornton failed to identify any such weakness again highlights the incoherence of Plaintiff's claim.

**B.       Financial Statement Signatures Cannot Support An Inference Of Scienter**

The same problems plague Plaintiff's legally-unfounded assertion that mere signatures on financial statements that turned out to be erroneous support an inference of scienter. Opp. at 22. Unsurprisingly, neither of Plaintiff's cases stands for such a proposition. In *Hedick*, the Court merely concluded that repeated references to synergies arising from a merger led to a conclusion that the executives monitored the issue, such that false statements about those synergies were likely intentional. 2021 WL 3566602, at *45. In *Lowry*, the Court concluded that misstatements surrounding a company's "most important" business segment, and one that it was preparing to sell, supported an inference that the top executives were aware of the status of that business segment and acted with scienter in making misrepresentations about it. 532 F. Supp. 3d at 663. Neither case suggests that awareness of a complex accounting error may be inferred from routine signatures on financial statements.

Here, the alleged misstatements have to do with the application of a complex accounting principle to a disputed receivable, not the underlying business. Plaintiff has no response for the long, uninterrupted line of case law demonstrating that, regardless of any signatures on financial statements, the mere fact of an accounting error, even a large one that relates to core operations, does not support an inference of scienter—particularly where the "Complaint does not allege that [the Company's] auditors disapproved of [the Company's] accounting practices or found any lack of internal controls prior to the restatement." *In re Turquoise Hill*, 2014 LEXIS 174096, at *19. "In short, although a restatement inherently acknowledges an error in a company's financial statements, the Complaint's allegations do not support an inference that this error was intentional or that Defendants furthered the error, condoned it or were even aware of it until steps to review

9

and ultimately correct it began." *Id.* at \*15; *see* Mot. at 19-20 (collecting cases). Plaintiff's counsel, Pomerantz, who served as lead counsel in *In re Turquoise Hill*, knows this well.

C. **The Core Operations Theory Does Not Relieve Plaintiff's Obligation to Plead Facts Supporting A Strong Inference Of Scienter**

Plaintiff, in an effort to distract from his inability to plead facts, also asserts that "courts in the Seventh Circuit assume that officers of a company are aware of matters central to that business's operation." Opp. at 23. This is yet another red-herring. Although it is not actually alleged, there is no dispute that the Individual Defendants were aware of the United Agreement, the United Dispute, the Disputed Amounts, the Company's accounting for the Disputed Amounts, and Grant Thornton's concurrence in the accounting for the Disputed Amounts. So, there is no need for Plaintiff to rely on the core operations doctrine to infer knowledge of these facts. But awareness of these operational facts does not equate to knowledge that the Company's accounting for the Disputed Amounts was somehow erroneous notwithstanding the blessings of Grant Thornton. The core operations doctrine cannot stand in place of such facts.

That is because the "accounting[,] . . . the source of the error that led to the restatement and the alleged false statements by [d]efendants—could not be described as (and, more to the point, is not alleged in the [c]omplaint to be) a 'core operation.'" *Hensley v. IEC Elecs. Corp.*, 2014 U.S. Dist. LEXIS 128102, at \*5 (S.D.N.Y. Sept. 11, 2014). In other words, the Company's core operations do not encompass, and are not even alleged to encompass, a "disputed technical accounting issue." *Reilly*, 2018 U.S. Dist. LEXIS 123324, at \*18. Plaintiff's reliance on the core operations doctrine in place of facts showing that anyone at the Company was aware of the accounting error, if accepted, would constitute a total subversion of the Reform Act, and upset dozens of contrary cases spanning decades all stating that a restatement is not evidence of fraud.

10

As Plaintiff's counsel knows from experience, the "fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published, particularly when the error was a matter of judgment." *In re Turquoise Hill*, 2014 LEXIS 174096, at \*19. That is because accounting errors, even ones involving "a large column of big numbers" cannot support a finding of fraudulent intent. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). SOX certifications and signed financial statements do not change this principle in any way. For instance, in *Roth v. OfficeMax, Inc.*, individual defendants signed both erroneous financial statements and SOX certifications related to the "company's core business." 527 F. Supp. 2d 791, 799-802 (N.D. Ill. 2007). The Court still held that "mere allegations of GAAP violations [or] the restatement of income . . . are not sufficient to demonstrate that those who made the statements committed securities fraud." *Id*. at 797. In *City of Brockton Retirement System v. Shaw Group, Inc.*, the individual defendants signed financial statements and SOX certifications that ended up misstating information related to a "core" aspect of the Company's business. 540 F. Supp. 2d 464, 467-68 (S.D.N.Y. 2008). That did not prevent the Court from holding that "it is well settled that the mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter." *Id*. at 472.

In sum, courts routinely hold that the "core operations" theory cannot sustain a finding of scienter in the absence of facts showing any knowledge of any accounting error anywhere within the company. *See, e.g., Allison v. Oak St. Health, Inc.*, 2023 U.S. Dist. LEXIS 22933, at \*36 (N.D. Ill. Feb. 10, 2023) ("the 'core operations' inference generally will not establish a strong inference of scienter by itself."); *Kohl's Corp.*, 895 F.3d at 937. The FAC contains no such facts.

### D. Plaintiff Cannot Establish Corporate Scienter

Plaintiff also tries to distract from his inability to plead facts by asserting that he has pled corporate scienter, as opposed to scienter on the part of any Individual Defendant, because the FAC alleges that the Company "misstated two years of contract revenue (which they have yet to restate), repeatedly misrepresented that the Company had effective internal controls, and falsely claimed to be GAAP compliant." Opp. at 29. But Plaintiff's assertion that one can infer corporate scienter from such an "announcement" is legally unfounded. Opp. at 28-29. Plaintiff's own cases demonstrate that pleading "corporate scienter" still requires alleging facts that support a strong of inference that *someone* at the Company maintained "an intent to deceive or a reckless indifference to whether the statements were misleading." *Tellabs*, 513 F.3d at 709; *see also Chew v. Moneygram Int'l, Inc.*, 2024 U.S. Dist. LEXIS 177223, at \*72 (N.D. Ill. Sep. 30, 2024) ("Tellabs III did not relieve securities fraud plaintiffs of their burden to allege particular facts that give rise to the strong inference that at least one individual acted with scienter.").

Once again, as discussed *supra*, Plaintiff does not allege facts suggesting that *anyone* at the company understood that ASC 606, as applied to the United Dispute, prohibited accrual of any portion of the Disputed Amounts. *Supra* Section II. Moreover, the Seventh Circuit only allows reliance on the corporate scienter doctrine "in extreme cases" of statements of "egregious and obvious falsity." *Moneygram Int'l, Inc.*, 2024 U.S. Dist. LEXIS 177223, at \*72-73. Plaintiff's allegations here, regarding the proper application of a highly-complex and subjective accounting standard fall far below that threshold. *Id.* In fact, courts have repeatedly held that allegations of a large GAAP violations are not even "in the same ballpark." *Baxter Int'l Sec. Litig.*, 2012 U.S. Dist. LEXIS 5158, at \*21 (N.D. Ill. Jan. 12, 2021). Moreover, even if Plaintiff could establish corporate scienter—he cannot—the doctrine would apply only to the Company,

and Plaintiff would still fail to state a claim as to the Individual Defendants. *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *24 (N.D. Ill. Apr. 19, 2012).

## IV.     Plaintiff's Allegations Negate A Finding Of Scienter

The Opposition boldly claims that there is "no plausible alternative inference, much less a more plausible competing inference that can defeat scienter." Opp. at 17. That assertion is laughable given that the FAC alleges no facts supporting even a *weak* inference that any Individual Defendant knew about any error in Harbor's accounting, or that the Company's outside auditors were either misled or complicit in any such error. For that reason alone, the only available inference is that Harbor's accounting staff and external auditor had difficulty applying complex accounting standards to the Disputed Amounts, made a mistake, and disclosed that mistake upon discovering it. Mot. at 23-24.

*First*, Plaintiff contests the relevance of the Company's stock repurchase program, under which the Company purchased shares on the open market throughout the Class Period at prices that Plaintiff claims were inflated by the supposed fraud. Plaintiff argues that the program was adopted by the Company's board, rather than the Individual Defendants, a year before the Class Period. Opp. at 24-25. But all stock repurchase programs must be approved, in advance, by a corporate board; if that negated their import then no court would look to them in analyzing scienter. *C.f.*, *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 749 (S.D. Ind. 2009). Moreover, Plaintiff's out-of-circuit authority (Opp. at 24) cannot overcome the fact that courts in the Seventh Circuit routinely hold that "[s]tock repurchase programs actually negate a finding of scienter, [because] it would have made no sense to purchase the stock if defendants knew the prices to be inflated." *Plumbers & Pipefitters*, 673 F. Supp. 2d at 749; *see also DiLeo*, 901 F.2d at 629 ("One who believes that another has

13

behaved irrationally has to make a strong case."). Other courts take the same approach. *See McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 718 (10th Cir. 2006).

*Second*, Plaintiff cannot avoid the fact that Defendants' efforts to investigate, rectify and disclose the technical accounting error further suggest that the Individual Defendants were acting in good faith. In response to these facts, Plaintiff asserts that the alleged violation was accomplished before the arbitration results were known. Opp. at 26. But that is precisely the point. The adverse outcome of the arbitration made clear that Harbor would not collect the $52 million receivable, and Defendants could have unwound the erroneously accrued revenue without ever acknowledging that recognition of the revenue had been a mistake. Mot. at 26. As courts have recognized, "[i]f the defendants possessed a fraudulent intent and arguably were aware of any errors, . . . the most reasonable response from the defendants would have been silence." *Stark Trading & Shepherd Invs. Int'l, Ltd. v. Falconbridge Ltd.*, 2008 U.S. Dist. LEXIS 2677, at *28 (E.D. Wis. 2008), aff'd 552 F.3d 568 (7th Cir. 2009). To this, Plaintiff has no reply.

*Third*, Plaintiff fails to explain away the fact that the Company paid taxes on the anticipated revenue constituting the Disputed Amounts. Mot. at 26-27. Again, the Company accrued the revenue even though doing so required the Company to pay out cash for taxes on the amounts it had not yet been paid—and that it ultimately never received. That behavior speaks loudly to the Company's good faith belief in the collectability of receivable and the accounting for that receivable, not fraud.

## V.     Plaintiff Cannot Establish Loss Causation

Plaintiff brushes aside the FAC's failure to allege loss causation, arguing that Defendants "mischaracterize the Complaint by citing one paragraph, ¶ 68, while ignoring others[.]" Opp. at 30. That is false. As discussed in the Motion, the presence of other, contradictory allegations

14

does not change the fact that paragraph 68 of the FAC alleges that the stock dropped as a result of the negative arbitral decision. *See* Mot. at 24. Plaintiff's unqualified allegation that the stock fell because of the arbitral outcome—*i.e.,* that the Company would not be able to collect $52 million—directly contradicts his claim that the stock fell because of the accounting error. Plaintiff simply ignores the cited cases stating that "allegations related to loss causation which are not merely offered in the alterative, but are self-contradictory, [are] a defect which is fatal to [the] claims." *Payne v. DeLuca*, 433 F. Supp. 2d 547, 612 (W.D. Pa. 2006); *Hosack v. Utopian Wireless Corp.*, 2011 U.S. Dist. LEXIS 48687, at *5 (D. Md. May 6, 2011) ("when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim.").

## VI.      Plaintiff Cannot Establish A Section 20(A) Claim

Because Plaintiff "fail[s] to state a claim under Section 10(b) or Rule 10b-5 as discussed above, there can be no liability under Section 20(a)." *Kohl's*, 266 F. Supp. 3d at 1169.

## CONCLUSION

Plaintiffs have not pled particularized facts giving rise to a strong inference that Defendants knew of, or consciously ignored, technical errors in Harbor's accounting. Plaintiff's filing of an amended complaint that does not even attempt to bolster his predecessor's non-existent scienter allegations with relevant facts shows utter disdain for well-established law, the harm inflicted by frivolous securities fraud complaints, the Reform Act, and Rule 11. This Court should dismiss the FAC with prejudice.

October 29, 2024                                    Respectfully submitted,


                                                   *s/David R. Konkel*
Jason de Bretteville (CA# 195069)        John L. Kirtley (WI# 1011577)
jdebretteville@stradlinglaw.com          jkirtley@gklaw.com
Wesley Horton (CA# 307567)               David R. Konkel (WI# 1097244)
whorton@stradlinglaw.com                 dkonkel@gklaw.com
STRADLING YOCCA CARLSON & RAUTH LLP   GODFREY & KAHN S.C.

15

660 Newport Center Drive, Suite 1600  833 East Michigan Street, Suite 1800
Newport Beach, CA 92660  Milwaukee, Wisconsin 53202
Telephone: (949) 725-4000  Telephone: (414) 273-3500
Facsimile: (949) 725-4100  Facsimile: (414) 273-5198

*Counsel for Defendant*

16