## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

JON ARNE TOFT, Individually and on behalf of all other similarly situated,

        Plaintiff,

    v.

HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY,

        Defendants.

Case No. 1:24-cv-00556-WCG

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 & U.S.C. § 78u-4

---

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

March 3, 2025

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................1

RULE 11 & THE PSLRA.....................................................................................................4

ARGUMENT.........................................................................................................................8

I.     RLF Violated Rule 11.................................................................................................8

II.    Pomerantz Violated Rule 11 ...................................................................................12

III.   RLF and Pomerantz Failed To Advance Any Plausible Theory Of Fraud ....................17

IV.   A Fee Award Against RLF and Pomerantz Is Warranted.............................................19

CONCLUSION....................................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allstate Corp. Secs. Litig.*,
966 F.3d 595 (7th Cir. 2020) ........................................................................................ 18

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2nd Cir. 2009) ........................................................................................ 7

*Auto. Indus. Pension Trust Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012) ............................................................................................ 6

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013) ............................................................................. 18

*Berwick Grain Co. v. Illinois Dep't of Agric.*,
217 F.3d 502 (7th Cir. 2000) ......................................................................................... 5

*Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*,
2014 WL 1847833 (N.D. Ill. May 8, 2014) ................................................................... 9

*Brown v. Fed'n of State Med. Boards of the U.S.*,
830 F.2d 1429 (7th Cir. 1987) ..................................................................................... 11

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) ....................................................................................................... 6

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ..................................................................... 8, 13

*City of Livonia Employees' Ret. Sys. v. Boeing Co.*,
306 F.R.D. 175 (N.D. Ill. 2014) ............................................................................... 6, 20

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ....................................................................................... 13

*In re First Marblehead Corp. Sec. Litig.*,
639 F. Supp. 2d 145 (D. Mass. 2009) ........................................................... 5, 7, 10, 18

*Fishoff v. Coty Inc.*,
634 F.3d 647 (2d Cir. 2011) ................................................................................... 14, 19

*Goldberg v. Household Bank, F.S.B.*,
890 F.2d 965 (7th Cir. 1989) ....................................................................................... 13

*In re Harley Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wisc. 2009) ......................................................................... 6

ii

*Huang v. Acterna Corp.*,
220 F.R.D. 255 (D. Md. 2004) ................................................................................................ 10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) ................................................................................................................... 7

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ................................................................................................... 6

*Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*,
297 F. Supp. 3d 451 (S.D.N.Y. 2018) ...................................................................... 16, 17, 19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ................................................................................................................. 10

*Miller v. Champion Enters.,* Inc.,
346 F.3d 660 (6th Cir. 2003) ................................................................................................. 10

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
427 U.S. 639 (1976) ................................................................................................................. 5

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ................................................................................................. 19

*Pension Trust Fund For Operating Eng. v. Kohl's Corp.*,
266 F. Supp. 3d 1154 (E.D. Wis. 2017) ................................................................................ 14

*River N. Equity LLC v. MPhase Techs.*,
2017 U.S. Dist. LEXIS 239268 (N.D. Ill. Sep. 12, 2017) ................................................... 16

*Roth v. OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) .................................................................................... 13

*Silverman v. Motorola, Inc.*,
798 F. Supp. 2d 954 (N.D. Ill. 2011) .................................................................................... 15

*In re Star Gas Sec. Litig.*,
745 F. Supp. 2d 26 (D. Conn. 2010) ..................................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ............................................................................................................... 20

*Thornton v. Wahl*,
787 F.2d 1151 (7th Cir. 1986) ............................................................................................... 11

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
475 F.3d 824 (7th Cir. 2007) ................................................................................................. 18

*Yousefi v. Lockheed Martin Corp.*,
70 F. Supp.2d 1061 (C.D. Cal. 1999) ................................................................................... 10

**Statutes**

15 U.S.C.S. § 78u-4(c) ...........................................................................................*passim*

PSLRA ....................................................................................................................*passim*

Sarbanes-Oxley Act ........................................................................................................ 9

**Other Authorities**

Fed. R. Civ. P. 9 ....................................................................................................*passim*

Fed. R. Civ. P. Rule 11 ..........................................................................................*passim*

H. R. Conf. Rep. No. 104-369 at 40, reprinted in 1995 U.S.C.C.A.N. 739 ...................... 11

S. Rep. No. 104-98, reprinted in 1995 U.S.C.C.A.N. 693 .............................................. 11

# INTRODUCTION

This case follows a familiar pattern. Harbor Diversified, Inc. ("Harbor" or the "Company") announced bad news. The Company's stock price dropped, and a securities litigation mill ("The Rosen Law Firm" or "RLF") raced to the courthouse to accuse the Company and its officers and directors of fraud in a conclusory complaint (the "RLF Complaint"). The RLF Complaint did not attempt to make particularized factual allegations as required by the Private Securities Litigation Reform Act (the "PSLRA"). To the contrary, RLF later admitted that it purposefully failed to draft a viable complaint in order to avoid the expense of drafting a "fulsome" complaint unless and until it was appointed lead counsel. RLF thus violated each and every requirement of Rule 11.

The RLF complaint was filed for an improper purpose—to secure lead counsel status without having to comply with the pleading requirements of Rule 9(b) and the PSLRA, and to avoid providing effective notice of its claim to Harbor's shareholders—in violation of Rule 11(b)(1). RLF's assertion of a securities fraud claim without any factual allegations supporting an inference of scienter was not warranted by existing law or by a nonfrivolous argument for extending or modifying existing law, in violation of Rule 11(b)(2). RLF's conclusory scienter allegations lacked any evidentiary support, and any reasonable likelihood of having evidentiary support after discovery, in violation of Rule 11(b)(3). Lastly, before filing the complaint, RLF failed to perform a reasonable inquiry, as required by Rule 11(b). This comprehensive failure to comply with Rule 11 makes the imposition of sanctions *mandatory* under the PSLRA, and creates a presumption that the appropriate sanction is an award of reasonable attorneys' fees to Harbor. *See* 15 U.S.C. §§ 78u-4-(c)(2), 78u-4(c)(3)(A)(ii).

The imposition of sanctions here not only is mandatory, it is warranted. A cursory pre-suit investigation by RLF would have revealed that its conclusory fraud allegations were not grounded

1

in fact. The alleged bad news, an accounting error, relates to the accrual of receivables that were the subject of a contract dispute between Air Wisconsin Airlines and United Airlines. Throughout the class period, Air Wisconsin's parent, Harbor, disclosed the dispute, the disputed amounts, the fact it was accruing and paying taxes on the disputed amounts, and that its external auditors, Grant Thornton, had reviewed the dispute and Harbor's accrual and signed off on Harbor's accounting.

Accordingly, to state a viable fraud claim, RLF had to allege facts supporting an inference that Defendants made the accounting error recklessly or knowingly despite: (i) Harbor's disclosure of the erroneous accounting treatment, and (ii) Grant Thornton's concurrence in the erroneous treatment. RLF, however, admits that it *purposefully* failed to look for, much less allege, any such facts. Dkt. 36 at 4. The result was predictable. The RLF Complaint forced the Company to retain counsel and defend against unfounded allegations that should never have been brought.

When Harbor put RLF on notice of the obvious deficiencies in the RLF Complaint by serving and then filing motions to dismiss and for sanctions under Rule 11, RLF did not dismiss or make a good faith attempt to investigate and plead a viable claim. Instead, RLF opposed the motion to dismiss, and applied to be class counsel on the basis of its defective pleading. RLF's flouting of Rule 11 only came to an end when a second firm showed up with a lead plaintiff candidate who claimed larger holdings of Company stock.

RLF's replacement, Pomerantz LLP ("Pomerantz"), treated its Rule 11 obligations with equal disdain. To the extent Pomerantz conducted any investigation, Pomerantz ignored what that investigation confirmed: that no facts supported RLF's allegations. Nonetheless, Pomerantz persisted in its false and unsubstantiated claims by filing a second complaint (the "Pomerantz Complaint"). The Pomerantz Complaint fails to allege a single fact indicating that any individual defendant was knowing or reckless in connection with the accounting error. It also fails to allege

any facts indicating that Harbor's external auditor, Grant Thornton, was misinformed or misled in connection with its approval of the Company erroneous application of the relevant accounting standard, ASC 606.

Unable to point to a single fact supporting any inference of scienter in its complaint, much less the requisite strong inference, Pomerantz doubled down on its bad faith strategy by resorting to objectively false claims, incomplete quotations from Grant Thornton's audit letter, and patent misstatements of law. For example, Pomerantz claimed that Defendants must have known of their mistake because, in Pomerantz's disingenuous telling, ASC 606 "unequivocally" prohibits accrual of any disputed receivable. This Court noted the objective falsity of this allegation, and that Pomerantz's line of argument runs straight into the Company's clean audit opinions from Grant Thornton. Moreover, because the Company's audits and disclosures openly discuss the dispute and the accrual, the purportedly obvious accounting error could *never* be evidence of any fraud: A plaintiff cannot claim to have been misled, or harmed, by an obvious accounting error that efficient markets are presumed to have recognized as incorrect.

Pomerantz's prevarications, and the fundamental implausibility of its fraud theory, confirm that Pomerantz did not, and could not, reasonably believe that its complaint, or its defense of its complaint, was warranted by existing law or by a nonfrivolous argument for extending or modifying existing law. This conduct, combined with the lack of evidentiary for its conclusory scienter allegations in its complaint, render Pomerantz's violations of Rule 11(b)(2)-(3) manifest.

Congress passed the PSLRA and Rule 11 to deter precisely this form of abusive litigation. In addition to heightened pleading requirements, Congress mandated that federal courts conduct a Rule 11 inquiry at the conclusion of federal securities cases to ensure that abusive practices were

3

answered with appropriate sanctions. Securities plaintiffs, however, have managed to eviscerate the efficacy of these requirements.

That is because corporate defendants almost invariably—and understandably—choose the financially expedient path. Defendants refrain from moving to dismiss the initial complaint given the likelihood that any such motion will be ignored by the court in deference to the presumption of future amendment. Once a defendant secures dismissal of a frivolous complaint without prejudice, it is under extraordinary pressure to agree to a mutual release—which is what Pomerantz proposed just days after the Court dismissed its complaint—rather than incur more cost and risk by pursuing adversarial motion practice relating to plaintiff's lack of compliance with Rule 11. But this expedient behavior in individual cases erodes any disincentive for frivolous allegations, and increases the systemic burden of bad faith filings.

In this case, however, Harbor has made it clear that it will not play by the cynical rules preferred by the plaintiffs' bar, and it remains resolute against the economic pressures that have historically undermined the efficacy of the PSLRA. Instead, Harbor has chosen to ask this Court to enforce the rules as written by Congress, most recently by rejecting Pomerantz's demand for a stipulation denying its violation of Rule 11 in exchange for a release. The Court is the beneficiary of Harbor's resolve, and is now empowered—and indeed required—to evaluate plaintiffs' and their counsels' compliance with Rule 11. We respectfully submit that the Court's evaluation will show that monetary sanctions are necessary and should be granted simultaneously with the entry of judgment, both to mitigate the harm inflicted in this case and to restore meaning to the PSLRA.

## RULE 11 & THE PSLRA

"Since its original promulgation, Rule 11 has provided for the . . . imposition of disciplinary sanctions to check abuses in the signing of pleadings." Fed. R. Civ. P. 11 (advisory committee's

note to 1983 amendment). Rule 11 is an attempt to address ongoing litigation abuses "by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation." *Id*.

The purpose of sanctions under Rule 11, both generally and in the context of the PSLRA, is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). "The very point of Rule 11 is to lend incentive for litigants 'to stop, think and investigate more carefully before serving and filing papers.'" *Berwick Grain Co. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990)).

Rule 11 imposes four requirements on attorneys and parties regarding pleadings and other court filings. *First*, a filing must "not be[] presented for any improper purpose, such as to harass" another party. Fed. R. Civ. P. 11(b)(1). *Second*, the claims must be "warranted by existing law or by a nonfrivolous argument for extending" or modifying existing law. Fed. R. Civ. P. 11(b)(2). *Third*, "the factual contentions [must] have evidentiary support or . . . [be] likely [to] have evidentiary support after" discovery. Fed. R. Civ. P. 11(b)(3). *Fourth*, before filing, the parties and their attorneys must undertake an "inquiry reasonable under the circumstances" to verify compliance with Rule 11's requirements. Fed. R. Civ. P. 11(b). If a party violates Rule 11, a court "may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).

The Seventh Circuit, in *Szabo Food Service, Inc. v. Canteen Corp.*, summarized these four strands of Rule 11 as follows:

There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact". The attorney filing the complaint or other paper must satisfy all four requirements.

823 F.2d 1073, 1080 (7th Cir. 1987); *see, also, City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180 (N.D. Ill. 2014) (citing *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("[A] court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.")

Rule 11 is time sensitive and imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law *before* filing, and . . . the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) (emphasis added). The PSLRA also considerably heightens these pre-filing obligations in securities fraud cases. Rule 11 "requires counsel to conduct a *more* diligent pre-filing investigation in cases involving securities fraud than in other contexts." *City of Livonia*, 306 F.R.D. at 180; *see also Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (the PSLRA "leaves a plaintiff's counsel with a *greater* than usual burden of investigation before filing a securities fraud complaint") (emphasis added).) In other words, "[b]ecause the [PSLRA] requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct *elaborate pre-complaint investigations*." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008) (emphasis added).

Congress passed the PSLRA "as a check against abusive litigation in private securities fraud actions." *In re Harley Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 982 (E.D. Wisc. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Indeed, "[t]he express congressional purpose of the PSLRA provision was to *increase the frequency of Rule 11 sanctions*

*in the securities context*, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2nd Cir. 2009) (emphasis added).

*First*, the PSLRA put private securities litigants on notice that their actions will be the subject of Rule 11 findings in every case, whether sought by the defendants or not. It provides that for any private action bringing federal securities claims, "the court *shall* include in the record specific findings regarding compliance by each party and each attorney" with Rule 11(b)'s requirements. 15 U.S.C. § 78u-4(c)(1) (emphasis added). The text of Rule 11 lacks such a requirement.

*Second*, the PSLRA requires imposition of sanction if any Rule 11 violation is found. The PSLRA instructs that the "court *shall* impose [Rule 11] sanctions." *Id.* § 78u-4-(c)(2) (emphasis added). The word "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). By contrast, in a non-PSLRA Rule 11 inquiry, a court "may" impose sanctions when parties violate the Rule.

*Third*, if the violation constitutes a "substantial failure of a[] complaint to comply" with Rule 11, the PSLRA creates "a presumption that the appropriate sanction . . . is an award to the opposing party of [] reasonable attorneys' fees." 15 U.S.C. § 78u-4(c)(3)(A)(ii). This presumption regarding the appropriate sanction also is absent from the application of Rule 11. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). The PSLRA thus heightens a securities fraud plaintiff's obligations and raises the stakes when he fails to meet them.

7

Lastly, the PSLRA also takes special aim at plaintiffs whose frivolous claims are not accompanied by other claims that satisfy the pleading requirements. When a complaint contains both frivolous and nonfrivolous claims, the court must determine whether the nonfrivolous claims are of a quality sufficient to make the suit as a whole non-abusive and the Rule 11 violation insubstantial. But where no such nonfrivolous claims are present, the statutory presumption of an award of fees under 15 U.S.C.S. § 78u-4(c)(3)(A) applies.

## ARGUMENT

### I.     RLF Violated Rule 11.

In filing the RLF Complaint, RLF represented that it conducted a reasonable inquiry prior to asserting their claims, and that their claims were well grounded in fact and law. *See* Fed. R. Civ. P. 11(b). It is evident from the face of the RLF Complaint, and RLF's admissions, that those representations were false. Sanctions are the appropriate and necessary remedy.

The RLF Complaint alleges no facts supporting the most fundamental element of its fraud claim—that the individual defendants knew, or were reckless in not knowing, that Harbor's accounting team had misapplied highly technical accounting principles to a disputed contract obligation. Instead, RLF merely pointed at two of the individual defendants' senior positions in the Company and asserted that they must have been aware of the technical accounting issue (*see* Initial Compl. ¶ 76). This formulation has been held legally deficient in dozens of decisions spanning decades, including other cases brought by RLF itself. *See, e.g., Valdes v. Kandi Techs. Grp., Inc.*, 2024 LEXIS 58238, *23 (E.D.N.Y. 2024) (rejecting RLF's claim that individual defendants must have known about the alleged accounting error "because, as officers, they were tasked with ensuring [the Company's] compliance with GAAP and financial reporting requirements"); *Mei Pang v. Levitt*, 2023 LEXIS 227786, *43 (W.D. Tex. 2023) (rejecting RLF's

assertion "that defendants must have been aware of the misstatement based on their positions within the company" and reliance on "the fact that Defendants executed a statutorily-required Sarbanes-Oxley Act ('SOX') certification").

Indeed, the names of the two individual defendants do not even appear outside of the introductory paragraphs of the RLF Complaint. As for the third, Defendant Garvey, the RLF complaint only includes him in the caption, and proceeds to make no other mention of him. In short, there was "no 'detail' elsewhere in the complaint that would give these allegations any hope of satisfying the PSLRA [and] no reasonable lawyer could believe that the original complaint satisfied the PSLRA." *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, 2014 U.S. Dist. LEXIS 63523, 2014 WL 1847833, at *5 (N.D. Ill. May 8, 2014).

The RLF Complaint also makes false factual assertions that show clear signs of having been adopted from TLF's other cases, rather than the results of a good-faith attempt to investigate this case, as required by Rule 11 and the PSLRA. For example, the RLF Complaint asserted that the Company "was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available." RLF Compl. ¶ 62. No such analyst coverage exists. The RLF Complaint also asserted that the Company regularly disseminated "press releases via major newswire services" (*id*.), when in reality Harbor had not issued a press release for more than a decade.

In opposing the initial motion for sanctions, RLF admitted that the deficiencies in the initial complaint were knowing and intentional, and even identified its improper purpose. In a rare moment of candor, it stated its preference for using a placeholder pleading to avoid the expense of conducting the required pre-suit investigation and drafting a "fulsome" complaint until after securing status as lead counsel. Dkt. 36 at 4. That explanation is a confession, not a defense. RLF

9

went on to defend its use of an abusive placeholder complaint on the ground that RLF and other firms have gotten away with this abusive strategy for years. *Id.* at 12-15. This rampant flouting of the PSLRA, Rule 9(b), and Rule 11, however, merely highlights the need for enforcement.

RLF's abusive practices harm the courts and capital markets because they turn the PSLRA on its head in two important ways. *First*, by transforming pre-filing obligations into post-filing obligations, plaintiffs prevent courts from quickly disposing of a baseless fraud complaint. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) ("The effort to deter or at least quickly dispose of those suits whose nuisance value outweighs their merits placed special burdens on plaintiffs seeking to bring federal securities fraud class actions."). "The [PSLRA's] pleading requirement is more than simply a line the plaintiffs must cross to get to discovery; it is the heart of the [PSLRA]. This stringent requirement [is meant to] operate[] to discourage baseless suits altogether. It evinces Congress's acknowledgment of the burden an allegation of securities fraud places on the innocent defendant even without discovery." *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 691 (6th Cir. 2003). Here, plaintiff's playbook avoided quick dismissal, and resulted in allegations that never should have been filed to survive for almost a year, despite the Court's prompt ruling on the second motion to dismiss.

*Second*, the filing of a securities fraud complaint is the mechanism by which *institutional investors* are supposed to receive notice of a potential claim, and is the basis on which they are supposed to decide whether to intervene. *See Huang v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) ("the publication requirement expresses Congress' intent that publication be reasonably calculated to reach, at the least, sophisticated and institutional investors."); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp.2d 1061, 1066 (C.D. Cal. 1999) ("Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff. As Congress and academics

have noted, institutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees."). Filing a boilerplate complaint provides little to no information to Congress' preferred prospective plaintiffs. Plaintiffs' firms thus deny institutional investors a meaningful opportunity to consider the merits of the claim, to assess their financial interests, and decide whether to seek to play a leadership role in any given action by securing status as lead plaintiff. This subverts a process Congress meant to be a core component of the PSLRA's reforms.

The instant motion requests relief consistent with Congress's intention that the PSLRA "impose upon courts the affirmative duty to scrutinize filings closely" and award sanctions for any substantial violation of Rule 11(b), (H. R. Conf. Rep. No. 104-369 at 40, reprinted in 1995 U.S.C.C.A.N. 739; *see also* S. Rep. No. 104-98 at 14, reprinted in 1995 U.S.C.C.A.N. 693), and with its desire to sanction abusive litigations severely. RLF is a volume-leader in securities litigation.[1] It surely knew the long list of cases—many of which it litigated unsuccessfully— explaining that the mere fact of an accounting error and a restatement is not evidence of fraud. "Although Rule 11 does not require 'scholarly exposition or exhaustive research,'' [counsel] failed to make the minimal amount of inquiry incumbent on a competent attorney." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1436 (7th Cir. 1987) (*citing Szabo Food Service*, 823 F.2d at 1081). Moreover, as the Seventh Circuit has stated, "[a]n empty head but a pure heart is no defense...[t]he point [of Rule 11] is that every lawyer must do the necessary work to find the law before filing the brief." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).

RLF's failure to conduct any meaningful pre-filing investigation or even attempt to draft a viable complaint, its specious defense of its placeholder complaint in opposition to Harbor's

---

[1] https://rosenlegal.com/news/rosen-law-firm-ranked-no-2-in-number-of-2021-securities-class-action-settlements-by-iss/

11

motion to dismiss, and its application to serve as class counsel on the basis of the RLF Complaint *each* constitute a "substantial failure of a[] complaint to comply" with Rule 11. This failure triggers the PSLRA's "presumption that the appropriate sanction . . . is an award to the opposing party of [] reasonable attorneys' fees." Id. § 78u-4(c)(3)(A)(ii). Accordingly, we ask the Court to sanction RLF by awarding Harbor the entirety of the fees incurred in moving to dismiss the RLF Complaint and moving for sanctions against RLF.

## II.      Pomerantz Violated Rule 11

Pomerantz entered this case with open eyes. It applied for and secured lead counsel status on the basis of the RLF Complaint, *after* Defendants had filed both a motion to dismiss the RLF Complaint and a motion for sanctions against RLF, both of which detailed the applicable law and the failings of the complaint. With the benefit of this briefing, Pomerantz was on notice of its obligation to conduct a detailed pre-suit investigation to determine if it could allege facts consistent with the requirements of Rule 9, Rule 11, and the PSLRA—notwithstanding the detailed clean audit letter. If Pomerantz ever looked, it certainly never found and never alleged any such facts. Nevertheless, Pomerantz filed a complaint that suffered from the same defects as its predecessor. The Pomerantz Complaint merely attempted to camouflage those defects with misdirection.

The mere fact that the Pomerantz Complaint is longer than its predecessor does not reflect, much less establish, good faith. The added bulk consists, in the main, of ten additional pages falsely asserting that ASC 606 is "straightforward" and "unequivocally" prohibits accrual of a disputed receivable, and four additional pages discussing a largely irrelevant 2019 disclosure relating to the adoption of ASC 606. *See* ECF No. 37 ("Pomerantz Complaint" or "FAC") at ¶¶ 41-54; 69-90. None of these pages allege facts supporting any inference of scienter, much less the requisite strong

12

inference. Indeed, the only new *fact* in the Pomerantz Complaint is the pre-class 2019 disclosure.[2] The complaint masquerades as an attempt to plead fraud but, like its predecessor, only describes an accounting error.

Pomerantz knew from experience that the "fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published, particularly when the error was a matter of judgment." *In re Turquoise Hill*, 2014 LEXIS 174096, at *19 (S.D.N.Y. 2014). If Pomerantz somehow forgot this established law, Harbor's prior motion to dismiss cited decades of decisions establishing that "the mere fact of a restatement of earnings does not support a strong, *or even a weak, inference of scienter*." *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) (emphasis added). Pomerantz thus was well aware that the Seventh Circuit has long held that "[r]estatements of earnings are common," *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir. 1989), and that "mere allegations of GAAP violations [or] the restatement of income . . . are not sufficient to demonstrate that those who made the statements committed securities fraud," *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 797 (N.D. Ill. 2007), and even "a large column of big numbers need not add up to fraud," *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ($4 billion financial restatement did not support inference of scienter).

Pomerantz also knew from experience, and from this district's decisions, that a plaintiff's inability "to allege that the company's auditor expressed concern undermines an inference of

---

[2] As the Court recognized, "Harbor's 2019 Annual Report disclosed a material weakness related to adoption of ASC 606—a new accounting standard that became effective only a year earlier. . . . So, Deister and Mackay's involvement in remediating the material weakness related to *adoption* of ASC 606 would not have had any significant impact on their ability to recognize a material weakness in *application* of ASC 606." Order at 18. Pomerantz could not have held a good faith belief that this 2019 disclosure, years before the Class Period even began, was capable of turning error into fraud, particularly in light of the clean audit letter from Grant Thornton.

13

fraudulent intent." *Pension Trust Fund For Operating Eng. v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1167-68 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018); *see In re Turquoise Hill*, 2014 LEXIS 174096, at *19 (dismissing Pomerantz's complaint for failure to "allege that [the Company's] auditors disapproved of [the Company's] accounting practices or found any lack of internal controls prior to the restatement."). Yet the Pomerantz Complaint failed even to mention Grant Thornton's clean audit letter, much less allege any fact tending to undermine the long-recognized import of such a letter.

Pomerantz thus knew that its complaint had no chance of success, not unless it could muddy the water as to the true contents of ASC 606, the true scope of Grant Thornton's audit letter, and the true state of the law. Its decision to prosecute claims with that knowledge is an act of bad faith, and a violation of Rule 11. *See Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands.") (internal citations omitted). Rather than acknowledge its inability to plead a viable fraud claim and voluntarily dismiss the RLF Complaint, Pomerantz attempted to mislead the Court with objectively false characterizations of ASC 606, deceptive excerpts from Grant Thornton's audit letter, and obvious misstatements of law, both in its complaint and in opposition to Harbor's motion to dismiss.

Pomerantz falsely asserted, repeatedly, that the application of ASC 606 is "straightforward" and "unequivocal[,]" and therefore Defendants must have been aware that the Company's application of ASC 606 was erroneous. *See* FAC 44-56; *see also* ECF No. 43 ("Opp.") at 15. That assertion is false, as the Court correctly observed. ASC 606 is neither "straightforward" nor "unequivocal" in its treatment of disputed receivables, "[a]nd while the specific language

14

[Pomerantz] quotes may seem relatively straightforward, ASC 606 includes far more than the quoted language." ECF No. 46 ("Order") at 14.

Pomerantz then tried to cure the silence of its complaint on the topic of the clean audit letter with sleight-of-hand. Pomerantz asserted that "Grant Thornton did not audit Harbor's "six quarterly financial statements at issue[,]" implying that the annual audits did not cover the same accounting for the same period. Opp. at 18. As the Court noted, however, Grant Thornton's audit of Harbor's 2021 and 2022 Annual Reports obviously included the erroneously recognized disputed amounts in Harbor's six preceding quarterly financial statements. Order at 16. Pomerantz's hope that this prevarication would confuse the Court is the antithesis of good faith.

In defending its complaint, Pomerantz also mischaracterized the law. Pomerantz cited eight cases as holding that "a 'clean audit' from an external accounting firm does not negate factual allegations of scienter." Opp. at 18-19. But none of those cases so hold. Rather, as the Court found, "each of the cited cases "involve[d] some form of irregularity in the audit or are otherwise inapposite." Order at 15. Pomerantz further claimed that "[at] best, the probative value of the auditor opinion raises an affirmative defense that is inappropriate at the motion to dismiss stage[,]" citing *Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 968-70 (N.D. Ill. 2011). Opp. at 19. Both are summary judgement decisions, and neither has anything to say on the subject. Moreover, Pomerantz knows full well that the PSLRA requires the weighing of competing inferences at the motion to dismiss stage—if the plaintiff alleges facts supporting any inference of scienter, which Pomerantz did not do here.

In addition, Pomerantz cherry picked incomplete quotes from the audit letter to make it appear as though Grant Thornton did not actually examine "management's conclusion that the amount in dispute with United [was] collectable." Order at 16. That was plainly false. As the Court

15

noted, Pomerantz left out the first half of the quoted sentence, which made it clear that Grant Thornton signed off on the Company's financial statements, and that the "audit report further recognizes that there was a 'high degree of complexity associated with evaluating management's conclusion that the amount in dispute with United [was] collectable[,]'" contradicting Pomerantz's false characterization of ASC 606 as "straightforward." *Id*.

Pomerantz thus not only failed to add a single factual allegation to cure the glaring deficiencies in the RLF Complaint, it revealed its bad faith resorting to sleight-of-hand and outright falsehoods. It is one thing to get the law wrong, it is another to mislead. Pomerantz's specious defense of its complaint with prevarication and misdirection confirms it knew that its complaint was frivolous. The Pomerantz Complaint itself and the briefing defending that filing are each substantial and knowing violations of Rule 11. *See, e.g.*, *Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*, 297 F. Supp. 3d 451, 462 (S.D.N.Y. 2018) ("Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents."); *see also River N. Equity LLC v. MPhase Techs.*, 2017 U.S. Dist. LEXIS 239268 (N.D. Ill. Sep. 12, 2017) (issuing monetary sanctions for a Rule 11 violation where "[a] reasonably competent lawyer would not have believed Plaintiff's Verified Complaint satisfied the elements of a fraud claim or a PSLRA claim."); *In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 35-36 (D. Conn. 2010) ("Plaintiffs pursued no novel legal argument that was not foreclosed by existing caselaw. Nor did Plaintiffs merely provide an insufficient factual basis for scienter or misrepresentation. Rather, Plaintiffs alleged facts that lacked any evidentiary support and could not have possibly given rise to liability . . . . Therefore, Plaintiffs' lead counsel violated both Rule 11(b)(2) and Rule 11(b)(3).").

Pomerantz will argue that its complaint is an ordinary, colorable attempt to plead a viable securities fraud case that is underserving of sanction by this court. As established above, that is

16

not true. Pomerantz did not merely provide an *insufficient* factual basis from which to infer scienter, Pomerantz provided *no* factual basis for any inference of scienter. Nor did it pursue any novel legal argument in defense of that failure. Instead, Pomerantz repeatedly attempted to mislead the Court, both legally and factually. Pomerantz thus plainly violated both Rule 11(b)(2) and Rule 11(b)(3). Monetary sanctions are the appropriate remedy.

**III.    RLF and Pomerantz Failed To Advance Any Plausible Theory Of Fraud**

RLF and Pomerantz also violated Rule 11 by advancing an utterly implausible theory of fraud. *See Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*, 297 F. Supp. 3d 451, 463-64 (S.D.N.Y. 2018) ("Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents."). RLF proffered no fraud theory whatsoever. Instead, RLF merely stated the fact of the error and labeled it "fraud." Pomerantz likewise failed to describe any motive or scheme, but it did offer the factually unfounded theory that ASC 606 so plainly bars the accrual of any disputed receivable that the individual defendants must have known of the error. But even if that objectively false factual premise was valid, Pomerantz's fraud claim would still fail.

Both ASC 606 and Harbor's accrual of the disputed receivable were public facts throughout the class period. As the Court recognized in its Order, "[i]n each of its SEC filings . . . Harbor described its dispute with United and the amount then at issue and explained that it had recognized the disputed amount in its consolidated financial statements." Order at 16-17. If ASC 606 was "straightforward, and "unequivocally" prohibited the recognition of any disputed receivable, as Pomerantz alleged, Harbor's error would have been obvious from the jump. That is not a viable fraud theory under Section 10(b) because, as a matter of law, a plaintiff cannot "plead an actionable §10(b) claim predicated on the concealment of information if that information was, in fact,

17

disclosed." *In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155 (D. Mass. 2009); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508 (D. Del. 2013) (same).

In addition, the "efficient market" alleged by Pomerantz presumptively assimilated any such obvious, public error, and Pomerantz's loss causation claim would therefore also fail. *In re Allstate Corp. Secs. Litig.*, 966 F.3d 595, 600 (7th Cir. 2020) (noting that the prices of "securities traded in efficient markets . . . reflect all publicly available information."). Notably, this is not the only loss causation problem endemic to Pomerantz's allegations. Plaintiffs are of course required to plead "a causal connection between [the alleged] material misrepresentation[s] and the loss, not simply that the misrepresentation touches upon a later economic loss." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007).

Pomerantz, like RLF, alleged misrepresentations regarding an accounting error. *See* FAC ¶¶ 3-12. But when Pomerantz tried to allege a corresponding loss in its complaint, it admitted that the Company's stock price fell in response to Air Wisconsin's defeat in its litigation with United Airlines, rather than the simultaneously disclosed accounting correction: "Shocked by the arbitral determination, investors fled the stock causing the Company's stock price to plummet more than 15% following the announcement." *Id*. ¶ 68. Thus, by Pomerantz's admission, the alleged damage to the Company's stock price was caused by the arbitrators' determination that United Airlines would not have to pay Air Wisconsin, not an accounting error. This too is fatal to Pomerantz's loss causation claim.

Notably, Pomerantz's fatal admission makes sense because the adverse arbitration award was the only material news: it meant that the Company would not be allowed to collect the Disputed Amounts from United Airlines. *See* Ex. 5 (Harbor's Form 8-K (Mar. 29, 2024)) at 2. Upon receipt of that bad news, the question whether GAAP permitted the Company's prior accrual

of some or all of the Disputed Amounts during the pendency of the dispute became purely academic—it was now clear that the Company would not collect *any* of the accrued amounts. Pomerantz's suggestion, elsewhere in its complaint, that the price of the company's stock dropped in response to an anticipated change in the historical accounting treatment of the Disputed Amounts, rather than the disappointing result of the dispute itself, is not remotely plausible.

In sum, Pomerantz's Complaint suffers from an implausible fraud theory that is self-defeating on its face and is not logically tethered to any corresponding loss. Because that Complaint "has no basis in logic or common experience[,]" it is not plausible and had no hope of success. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 407 (9th Cir. 2020) ("[P]lausibility is no less relevant in the context of the heightened pleading standards of Rule 9(b) or the PSLRA"). Pomerantz's persistence in advancing this hopeless theory, just like RLF's complete absence of any viable fraud theory, were not accompanied by any colorable legal or factual argument, and are an independent basis for sanctions under Rule 11(b)(3). *See Manchester Mgmt. Co., LLC*, 297 F. Supp. 3d at 463-64; *Fishoff*, 634 F.3d at 654 (holding that "legal position[s]" are sanctionable where they "have no chance of success").

## IV.     A Fee Award Against RLF and Pomerantz Is Warranted

RLF and Pomerantz's blasé treatment of Rule 11 and the PSLRA in this case conforms to a well-worn playbook. Their strategy begins with a defective complaint. That abuse works because courts typically ignore the initial complaint, and any motion to dismiss it, in anticipation of the filing of an amended complaint after conclusion of the lead plaintiff process—a dubious presumption borne of the fact that, where multiple complaints have been filed, the lead plaintiff must be given an opportunity to file a *consolidated* complaint. If the subsequent investigation is productive and results in a viable complaint, a court is unlikely to examine that initial breach.

19

If the investigation is unproductive, the plaintiff takes a shot at using the complexity of the subject matter and the novelty of the PSLRA's pleading standards to get by with an amended complaint. If the specious amendment fails, the plaintiff offers a voluntary dismissal accompanied by a stipulation agreeing that no Rule 11 violation has occurred—just as happened here. Unlike security litigation mills, companies are not repeat players, and have every reason to pursue a rapid exit and let plaintiff's counsel off the hook, and avoid the cost of further litigation and an appeal.

This practice has flourished, largely unchecked, because defendants in individual cases choose to minimize costs and risk by playing plaintiff's game. But not this time. Sadly, what distinguishes this case is Harbor's unusual willingness to incur expense and continued risk by repeatedly standing up for itself and the law. The Company is making this costly and risky effort because it matters to its controlling shareholders, and to its individual employees who are defendants in this action and who suffer under the stigma of these false allegations.

We respectfully remind the Court that allegations of securities fraud are a market-relevant events for all public companies. *See City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-181 (N.D. Il. 2014). The filing of a frivolous securities fraud complaint imposes a host of direct costs on innocent defendants, including the retention of counsel to defend themselves against the baseless accusations of fraud, implementation of a document hold, increased insurance premiums, and reputational harm. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions, . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law."). It is no less harmful to the individual defendants publicly accused of fraud. Companies routinely ask candidates about past litigation or fraud allegations. Companies do so to protect their own reputation by avoiding hiring individuals with a "troubled" past, even if the trouble arises

20

from false claims such as this against individuals who have done nothing wrong. Indeed, executives are routinely required to disclose such claims in licensing and loan applications, and when entering into business transactions. Thus, the stigma remains notwithstanding the dismissal of the complaint. Which is another reason why the deterrence of Rule 11 is so important here.

When it comes to determining *whom* the sanctions should be apportioned against, Plaintiffs or counsel, the Court must determine who is responsible for the Rule 11 violations. The text of Rule 11 makes clear that, depending on the circumstances, the Court may impose sanctions on the client, on counsel for the parties (including the law firms jointly and severally), or on a combination of client and counsel. For example, when the offending conduct concerns the scope or quality of the counsel's competence—especially when the material is beyond the understanding of the client or the client is unaware of the attorney's wrongful conduct—counsel alone should be sanctioned. Conversely, sanctions should fall on the client when the attorney has relied reasonably on the client's misrepresentations or the client failed to disclose relevant facts—provided that attorney's reliance is reasonable under the circumstances. 5A Charles Alan Wright & Arthur R. Miller, Fed. Practice and Proc., Civil § 1336.2 (3d ed. 2004) (internal citations omitted).

Here the offending conduct concerns the scope or quality of the counsel's competence and lack of good faith, not any direction from the client. The deficiencies in the pleadings and the cynical strategies underlying them stem from the attorneys' independent failure to comply with their professional obligations. Although the RLF Complaint is verified by the client, we have found no case holding that verification of a complaint necessarily imputes any sanctionable conduct to the client. Thus, we submit that the Court should impute the Rule 11 violations identified herein to the law firms that filed the RLF Complaint and the Pomerantz Complaint, not their respective clients.

21

Both RLF and Pomerantz are highly active firms lead by experienced lawyers who knew exactly what they were doing. RLF describes itself as "dedicated exclusively to recovering investment losses for investors[,]" and touts that it has "been ranked in the top 4 of securities class action firms nationwide [by volume] each year since 2013 by ISS Securities Class Action Services."[3] Pomerantz describes itself as the "oldest law firm in the world dedicated to representing the rights of defrauded investors[,]" and claims to be "at the cutting edge of securities litigation[.]"[4] They did what they did because they have gotten away with it before. They were following an established playbook—one that cannot be squared with Rule 11 and the PSLRA that persists because of the acquiescence of defendants and courts alike.

In sum, because both firms have violated Rule 11, 15 U.S.C. § 78u-4(c)(2) requires the Court to impose sanctions in accordance with Rule 11. We ask the court to award attorney's fees against RLF and Pomerantz.[5] Sanctions are appropriate to head off this destructive, and unlawful, process. Harbor's shareholders should not be forced to bear the cost of defending a specious action plainly barred by the PSLRA and prosecuted in bad faith. No one at Harbor misled anyone. The same cannot be said of these two firms.

**CONCLUSION**

RLF and Pomerantz filed patently defective complaints in knowing violation of Rule 11. Sanctions are necessary to protect defendants from such frivolous allegations of fraud, to protect courts from wasting precious judicial resources on complaints that do not comply with the PSLRA,

---

[3] https://rosenlegal.com/about/

[4] https://pomlaw.com/the-firm

[5] RLF should be responsible for attorney's fees arising out of the initial motion to dismiss and the Company's first motion for sanctions under Rule 11. Pomerantz should be responsible for attorney's fees arising out of the motion to dismiss the Amended Complaint, and this motion for sanctions under Rule 11. Should this motion be granted, Defendants will file an application for those fees.

22

and to send a message that securities plaintiffs and their counsel may not cast aside their Rule 11 duties with impunity.

March 3, 2025

Respectfully submitted,

_s/ David R Konkel_____

| | |
|---|---|
| Jason de Bretteville (CA# 195069) | John L. Kirtley (WI# 1011577) |
| jdebretteville@stradlinglaw.com | jkirtley@gklaw.com |
| Wesley Horton (CA# 307567) | David R. Konkel (WI# 1097244) |
| whorton@stradlinglaw.com | dkonkel@gklaw.com |
| STRADLING YOCCA CARLSON & RAUTH LLP | GODFREY & KAHN S.C. |
| 660 Newport Center Drive, Suite 1600 | 833 East Michigan Street, Suite 1800 |
| Newport Beach, CA 92660 | Milwaukee, Wisconsin 53202 |
| Telephone: (949) 725-4000 | Telephone: (414) 273-3500 |
| Facsimile: (949) 725-4100 | Facsimile: (414) 273-5198 |

*Counsel for Defendant*

23