| | |
|---|---|
| JON ARNE TOFT, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY,<br><br>Defendants, | Case No. 1:24-cv-00556-WCG<br><br>Judge: William C. Griesbach<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11 AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SANCTIONS** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY.................................................................................. 5

III. RULE 11 SANCTIONS ARE NOT WARRANTED............................................ 6

   A. Legal Standard ............................................................................................ 6

   B. The Initial Complaint was Filed For a Proper Purpose.......................... 8

   C. The Complaint Was Not Frivolous ........................................................... 9

   D. Plaintiff Counsel's Pre-filing Investigation was Adequate................... 14

   E. Immaterial, Isolated Mistakes do not Constitute a Rule 11 Violation. ............................ 15

   F. RLF Acted in Good Faith ......................................................................... 16

   G. The Cases Defendants Cite are Irrelevant to the Facts Here ............... 19

   H. Monetary Sanctions Against RLF are Not Warranted. ........................ 19

IV. RULE 11 SANCTIONS AGAINST DEFENSE COUNSEL ARE REQUIRED ................ 20

   A. Defendants' Rule 11 Motions Were Filed for an Improper Purpose, in Violation of Rule 11(b)(1) ............................................................................................. 20

   B. Defendants Make Repeated Factual Misrepresentations About RLF and its Complaint in Violation of Rule 11(b)(3). .................................................................. 23

   C. Relief Requested ....................................................................................... 26

V. CONCLUSION................................................................................................... 27

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y. 2008)...................................................................................... 10

*Allison v. Oak Street Health, Inc.*,
1:22-CV-00149 (N.D. Ill.) ..................................................................................................... 17

*Autumn Partners v. Remec, Inc.*,
No. 04-CV-1948 (S.D. Cal. Nov. 12, 2004) ........................................................................... 17

*Bettis v. Envision Healthcare Corporation*,
3:17-CV-01112 (M.D. Tenn.)................................................................................................. 18

*Birnbaum v. General Electric Company*,
1:19-CV-01013 (S.D.N.Y.).................................................................................................... 18

*Blossom v. Blackhawk Datsun, Inc.*,
120 F.R.D. 91 (S.D. Ind. 1988)................................................................................................ 4

*Boca Raton Firefighters' and Police Pension Fund v. DeVry, Inc.*,
2014 WL 1847833 (N.D. Ill. May 8, 2014) ............................................................................ 19

*Brandt v. Schal Assocs., Inc.*,
960 F.2d 640 (7th Cir. 1992) ................................................................................................. 26

*Burbige et al v. ATI Physical Therapy, Inc.*,
1:21-CV-04349 (N.D. Ill.) ..................................................................................................... 17

Casey v. Windmere-Durable Holdings, Inc.,
Case No. 98-CV-2273 (S.D. Fla. Dec. 9, 1998) ..................................................................... 17

*Chalverus v. Pegasystems, Inc.*,
59 F. Supp. 2d 226 (D. Mass. 1999) ...................................................................................... 13

*Chandler v. Ulta Beauty, Inc., et al.*,
1:18-CV-01577 (N.D. Ill.) ..................................................................................................... 17

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020)............................................................................. 11, 12

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)..................................................................................... 25

Case 1:24-cv-00556-WCG    Filed 03/31/25    Page 3 of 35    Document 56

*City of Fort Lauderdale General Employees' Retirement System, et. al. v. VeriSign, Inc.*,
1:13-CV-00060 (E.D.Va).................................................................................................. 17

*Construction Workers Pension Trust Fund -- Lake County and Vicinity v. Navistar International Corporation*,
1:13-CV-02111 (N.D. Ill.) .............................................................................................. 17

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)........................................................................................................ 22

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ......................................................................................... 10

*Davis v. SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) ............................................................................. 10

*Divane v. Krull Elec. Co.*,
200 F.3d 1020 (7th Cir. 1999) ....................................................................................... 19

*Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*,
690 F. Supp. 728 (N.D. Ill. 1988) ............................................................................ 20, 21

*Duncan v. Joy Global Inc., et al.*,
2:16-CV-01229 (E.D. Wis.)............................................................................................ 17

*Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co.*,
847 F.2d 440 (7th Cir. 1988) ......................................................................................... 21

*Fishoff v. Coty, Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ................................................................... 14

*Goldfinger v. Journal Commc'ns Inc.*,
2015 WL 13034986 (E.D. Wis. Aug. 4, 2015) ................................................................. 7

*Gumm v. Molinaroli*,
2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) ............................................................... 16

*Gumm, et al v. Molinaroli, et al.*,
2:16-CV-01093 (E.D. Wis.)............................................................................................ 17

*Gurary v. Winehouse*,
235 F.3d 792 (2d Cir. 2000)................................................................................... 8, 14, 16

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*,
9 F.3d 1263 (7th Cir. 1993) ......................................................................................... 7, 14

iii

*Hartmarx Corp. v. Abboud*,
  326 F.3d 862 (7th Cir. 2003) ...................................................................................... 7, 8

*Hedick v. Kraft Heinz Company*,
  2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ............................................................. 11

*Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*,
  167 F.3d 1170 (7th Cir. 1999) ...................................................................................... 6

*Huang v. Acterna Corp.,*
  220 F.R.D. 255 (D. Md. 2004)...................................................................................... 4

*Illinois Cent. R.R. Co. v. Belcher,*
  2023 WL 7161809 (N.D. Ind. Aug. 22, 2023).............................................................. 21

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004).......................................................................... 10

*In re Groupon, Inc. Sec. Litig.*,
  2013 WL 12284524 (N.D. Ill. Sept. 18, 2013) ............................................................ 13

*In re Resideo Technologies, Inc. Securities Litigation*,
  0:19-cv-02863 (D. Minn.)............................................................................................ 18

*In re REV Group, Inc. Securities Litigation*,
  2:18-CV-01268 (E.D. Wisc.)........................................................................................ 16

*In re Shopko Sec. Litig.*,
  2002 WL 32003318 (E.D. Wis. Nov. 5, 2002)............................................................. 12

*IUE-CWA Local 901 v. Spark Energy Gas LLC*,
  2021 WL 3124354 (N.D. Ind. July 23, 2021)............................................................. 8, 21

*Janssen v. Reschke*,
  2020 WL 6044284 , fn. 2 (N.D. Ill. Oct. 13. 2020) .................................................... 10

*Jean v. Dugan*,
  29 F. Supp. 2d 939 (N.D. Ind. 1998) ........................................................................... 23

*Kapco Mfg. Co. v. C & O Enterprises, Inc.*,
  886 F.2d 1485 (7th Cir. 1989) ..................................................................................... 26

*Koji IP, LLC v. Renesas Electronics America, Inc.,*
  2025 WL 917110 (N.D. Cal. Mar. 26, 2025)................................................................ 4

*Lanphere v. 1 Corp.*,
2012 WL 1965436 (N.D. Ill. Apr. 23, 2012) ................................................................ 22

*Lebovitz v. Miller*,
856 F.2d 902 (7th Cir. 1988) ........................................................................................ 20

*Loc. 106, Serv. Emps. Int'l Union v. Homewood Mem'l Gardens, Inc.*,
838 F.2d 958 (7th Cir. 1988) ........................................................................................ 20

*Luna v. Carbonite, Inc.*,
1:19-CV-11662 (D. Mass.) ........................................................................................... 17

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ......................................................................................................... 9

*Meeks v. Jewel Companies, Inc.*,
845 F.2d 1421 (7th Cir. 1988) ...................................................................................... 20

*Mei Pang v. Levitt*,
No. 1:22-cv-1191 (W.D. Tex. 2022) ............................................................................ 25

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ....................................................................................................... 19

*Miller v. Champion Enterprises Inc.*,
346 F.3d 660 (6th Cir. 2003) ....................................................................................... 19

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*,
8 F.3d 441 (7th Cir. 1993) ..................................................................................... 15, 25

*Moeck v. Pleasant Valley Sch. Dist.*,
844 F.3d 387 (3d Cir. 2016) ........................................................................................... 8

*Momo Enterprises, LLC v. Popular Bank*,
738 F. App'x 886 (7th Cir. 2018) ................................................................................. 22

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.,
et al.*, 2004 WL 524943 (N.D. Tex. March 17, 2004) ................................................. 17

*Outley v. City of Chicago*,
648 F. Supp. 3d 996 (N.D. Ill. 2022) ............................................................................. 8

*Pac. Dunlop Holdings, Inc. v. Barosh*,
22 F.3d 113 (7th Cir. 1994) ........................................................................................... 8

v

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
895 F.3d 933 (7th Cir. 2018) .................................................................................................. 14

*Plumbers & Pipefitters Local Union No, 630 Pension Annuity Trust Fund v. Kenexa Corp.*,
No. 09-CV-2642 (E.D. Pa.) ...................................................................................................... 17

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................................ 25

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ................................................................................................. 13

*Public Employees' Retirement System of Mississippi et al v. Roadrunner Transportation Systems Inc.*,
2:17-CV-00144 (E.D. Wis.)...................................................................................................... 17

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) ................................................................................................... 17

*Reed v. Great Lakes Companies, Inc.*,
330 F.3d 931 (7th Cir. 2003) ..................................................................................................... 9

*Religious Tech. Ctr. v. Gerbode,*
1994 WL 228607 (C.D. Cal. May 2, 1993) ............................................................................... 4

*Ross v. City of Waukegan*,
5 F.3d 1084 (7th Cir. 1993) ..................................................................................................... 19

*Safe-Strap Co. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003)...................................................................................... 22

*Senese v. Chicago Area I.B. of T. Pension Fund*,
237 F.3d 819 (7th Cir. 2001) ................................................................................................... 26

*Shanaphy v. Kohls Corporation*,
2:22-CV-01016 (E.D. Wis.)...................................................................................................... 17

*Singh v. Curry*,
69 F.3d 540 (7th Cir. 1995) ..................................................................................................... 14

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
852 F.2d 936 (7th Cir. 1988) ................................................................................................... 21

*Spiegal, et al. v. Tenfold Corp.*,
No. 00-CV-652 (D. Utah Jan. 3, 2001)..................................................................................... 17

Case 1:24-cv-00556-WCG    Filed 03/31/25    Page 7 of 35    Document 56

*Szabo Food Serv., Inc. v. Canteen Corp.*,
  823 F.2d 1073 (7th Cir. 1987) ................................................................................ 7

*Tellabs v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007)............................................................................................... 11

*Thompson v. Duke*,
  940 F.2d 192 (7th Cir. 1991) ................................................................................. 7

*Valdes v. Kandi Techs. Grp. Inc.*,
  2024 WL 1348697 (S.D.N.Y. March 29, 2024) ...................................................... 13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009)...................................................................... 13

*Walling v. Generac Holdings Inc.*,
  2:24-CV-00240 (E.D. Wis.).................................................................................... 16

*Yousefi v. Lockheed Martin Corp.*,
  70 F. Supp. 2d 1061 (C.D. Cal. 1999) .................................................................... 4

**Statutes**

15 U.S.C. § 78u–4(a) ..................................................................................................... 16

15 U.S.C. § 78u–4(b) ............................................................................................... 11, 16

15 U.S.C. § 78u-4(c) .................................................................................................. 6, 20

28 U.S.C. § 1927............................................................................................................. 6

**Rules**

Fed. R. Civ. P. 11................................................................................................... passim

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................... 15

**Regulations**

17 C.F.R. § 210.4-01(a)(1)............................................................................................ 10

**Other Authorities**

Kimberly A. Scott, *Proposed Amendments to Federal Rule of Civil Procedure 11: New, but Not Necessarily Improved*, 21 FLA. St. U. L. Rev. 111 (1993) ....................................... 8

## I.  INTRODUCTION

The crux of Defendants' renewed motion for sanctions and supporting brief (Dkt. Nos. 49-50) (the "Renewed Motion"), as it pertains to the initial complaint, is that The Rosen Law Firm, P.A. ("RLF")[1] should be sanctioned under Fed. R. Civ. P. 11 because the initial complaint (Dkt. No. 1) (the "Complaint") is frivolous and was brought for an improper purpose.

These arguments lack merit. Defendants, referencing their first motion to dismiss (the "First MTD") (Dkt. Nos. 7-8), argued in their first Rule 11 motion (the "First Motion") (Dkt. Nos. 30-31), that the Complaint was frivolous because it fails to plead two of the six elements of Plaintiff's Section 10(b) claim of the Securities Exchange Act of 1934 ("Exchange Act") — falsity and scienter. Putting aside the case authorities that hold that the failure of a complaint to state a claim is not grounds for sanctions, the Complaint adequately pleads falsity because Harbor Diversified, Inc. ("Harbor") admitted that $52.3 million in revenue recognized from a purchase agreement between a Harbor subsidiary and United Airlines, Inc. ("United") had to be restated due to a material accounting misstatement. Harbor also admitted that as a result, its internal controls were not adequate. It is well settled that a financial restatement is sufficient to allege falsity as to the financial statements. Likewise, when a company admits its internal controls are not adequate, that is sufficient to show that its statements about internal controls are false. In response to the amended complaint, which largely tracked the allegations in RLF's Complaint, Defendants did not contest falsity. *See generally* Dkt. No. 41.

---

[1] While the Motion document itself seeks sanctions against Mr. Kothari, the briefing indicates the Renewed Motion is directed against RLF, as Defendants seek monetary sanctions from RLF and not Mr. Kothari. Dkt. Nos. 49, 50 at 21-22. Given there is no specific briefing against Mr. Kothari, we interpret the motion as against RLF.

1

As to scienter, a holistic review of the facts alleged in the Complaint established a good-faith basis to allege that Defendants were aware or recklessly disregarded that the $52.3 million revenue should not be recognized. During the Class Period, Defendants were aware of a dispute with United that ultimately caused Harbor to issue two notices of termination. The dispute and termination called into question the collectability of revenue under the United agreement (the "Agreement"). In general, revenue cannot be recognized when collectability is not assured. Defendants acknowledge they were aware of the dispute and termination because they admitted so during the Class Period. Even though the Court eventually held the circumstances were not sufficient to adequately allege scienter, Dkt. No. 46 at 20, this is no basis for sanctions. RLF conducted a reasonable investigation under the circumstances, and identified a viable legal claim, which was expanded on by Lead Counsel Pomerantz LLP ("Pomerantz") in their amended complaint.

Defendants argued in the First Motion that the Complaint was filed for the improper purpose of somehow securing a settlement on an otherwise frivolous complaint. This argument is without merit. The Private Securities Litigation Reform Act of 1995 ("PSLRA") eliminated the "race to the courthouse" by determining leadership not through the first-filed rule, but through the Lead Plaintiff process. The PSLRA implemented a discovery stay so that unscrupulous plaintiffs could no longer file frivolous cases and use the threat and expense of discovery to secure a settlement. With the discovery stay, defendants are not required to respond to the initial complaint and will only need to respond to the operative complaint filed by a Lead Plaintiff. The PSLRA created a uniform procedure where litigants can obtain a ruling binding on the putative class in a straight-forward process. Plaintiff and RLF followed the same procedures that courts in this

2

District and around the nation follow. Therefore, Plaintiff and RLF's conduct was both objectively and subjectively reasonable.

Defendants now argue in their Renewed Motion that the Complaint was filed for the improper purpose of "secur[ing] lead counsel status without having to comply with the pleading requirements of Rule 9(b) and the PSLRA, and to avoid providing effective notice of its claim to Harbor's shareholders—in violation of Rule 11(b)(1)." (Dkt. No. 50 at 1) ("Renewed Br."). This argument is without merit. Under the PSLRA, the sufficiency of a complaint is tested after the appointment of lead plaintiff—not before. Additionally, the PSLRA process worked as intended, a different but larger investor—Jon Arne Toft ("Mr. Toft") —represented by a different law firm— Pomerantz— made a lead plaintiff motion and was appointed Lead Plaintiff.

Defendants' new argument that the PSLRA notice (the "Notice") was deficient because the Complaint was allegedly weak (because it did not attract institutional investors) is frivolous. That institutional investors did not come forward does not mean notice was deficient or that the case is weak. Harbor is a microcap company that is traded over-the-counter ("OTC"). Institutions generally do not invest substantially in OTC or micro-cap stocks.[2] Defendants conflate the mandatory PSLRA notice, with a complaint. Those are two separate things. In ruling on the lead plaintiff motion, the Court explained that a PSLRA notice had been issued and identified no

---

[2] According to data from *Bloomberg*, Harbor's market capitalization was nearly $72 million when the Complaint was filed. Declaration of Phillip Kim ("Kim Decl."), filed herewith, Exhibit 4 . The institutional ownership of Harbor's stock is minimal; at the time of filing this brief, 0.03%, for a total of 20,000 shares, in one position. *See* https://www.nasdaq.com/market-activity/stocks/hrbr/institutional-holdings. Lead Plaintiff Toft has almost the same number of shares as all institutional holdings with 20,000 shares. Dkt. No. 18-3.

3

problems with the notice. Therefore, Defendants, without saying as much, are arguing that the Court erred, when it clearly did not.[3]

As the idiom goes: when you are pointing your finger at someone, you have three pointing back at yourself. Throughout their briefing on the First and Renewed Motions, Defendants repeatedly disparage RLF to try and cast doubt on the merits of this case. In so doing, Defendants misled the Court by misrepresenting: (i) that RLF litigated cases that in fact it did not; and (ii) aspects of the Complaint, the law, as well as making other willful misrepresentations. This violates Rule 11.

Defendants' Renewed Motion should be denied, and sanctions against Defense counsel Stradling Yocca Carlson & Rauth LLP ("Stradling Yocca") should be imposed.[4]

---

[3] Defendants cases are off the mark. In *Huang v. Acterna Corp.,* 220 F.R.D. 255, 257-58 (D. Md. 2004), the court found that the PSLRA notice was deficient because, among other things, it was published in *The New York Times*, not a recognized press release service (as required by the PSLRA). *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999), actually holds that *Business Wire* is a "widely circulated national business-oriented … wire service" under the PSLRA. Similarly, in this case, RLF published notice on *Business Wire.* Dkt. No. 15-1.

[4] Stradling Yocca appears to be lead defense counsel. While Stradling Yocca attorneys did not sign the First or Renewed Motions, they may nonetheless be sanctioned for misrepresentations in those Motions under Rule 11(b) ("By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney [. . .] certifies [. . .]"). Further, the 1993 revision to Rule 11 included the advisory committee note that "[t]he revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation." Courts recognize that non-signing attorneys may be sanctioned. *See Blossom v. Blackhawk Datsun, Inc.,* 120 F.R.D. 91, 101-02 (S.D. Ind. 1988) (holding that attorney who did not "sign" the pleading but whose name appeared on the pleading, waived any objection that he did not "sign" the pleading forming the basis of Rule 11 sanctions where the attorney "ratified that everything in the case was done with his full knowledge and approval.") *See also, Koji IP, LLC v. Renesas Electronics America, Inc., ,* 2025 WL 917110 (N.D. Cal. Mar. 26, 2025) at *13 (citing *Blossom*, 120 F.R.D. 91, 101-102, *Religious Tech. Ctr. v. Gerbode,* 1994 WL 228607, at *5 (C.D. Cal. May 2, 1993) ("[T]he court has the authority to sanction a co-counsel law firm, as well as the primary offending firm, even though co-counsel did not sign the offending pleading.")

4

## II. PROCEDURAL HISTORY

This action was filed on May 7, 2024, against Harbor, Christine R. Deister ("Deister"), and Liam Mackay ("Mackay") ("Defendants") asserting violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. That same day, RLF issued a PSLRA notice advising class members of the pendency of the action and the July 8, 2024, deadline for class members to seek lead plaintiff status. Dkt. No. 12-1.

On June 7, 2024, Defendants filed the First MTD on only two grounds, that it failed to plead (i) falsity and (ii) scienter. (Dkt. No. 7 at 8-11) ("First MTD Br."). On June 28, 2024, RLF filed an opposition to the First MTD, asking the Court to deny it without prejudice as premature given that the Court had not yet appointed a Lead Plaintiff, who would be the appropriate person to file the operative complaint on behalf of all class members. Dkt. No. 11.

On July 8, 2024, Mr. Kothari and Mr. Toft separately filed lead plaintiff motions. Dkt. Nos. 13, 16. On July 10, 2024, Mr. Kothari withdrew his lead plaintiff motion because Mr. Toft had a larger financial interest and was therefore the presumptive lead plaintiff under the PSLRA. Dkt. No. 20. On July 11, 2024, the Court appointed Mr. Toft as Lead Plaintiff and approved Pomerantz as Lead Counsel (the "Lead Plaintiff Order") (Dkt. No. 23). The Court also held in abeyance the First MTD for 60 days, to allow Mr. Toft to file an amended complaint as he requested, and permit Defendants to move to dismiss that amended complaint.

Despite the Lead Plaintiff Order, on July 12, 2024, Defendants filed a reply in support of the First MTD as well as requested that the Court reconsider its Lead Plaintiff Order. Dkt. Nos. 24-25. On July 18, 2024, the Court denied Defendants' request for reconsideration, explaining that even if the Complaint would be dismissed, "Defendants concede that investors like the appointed lead plaintiff would remain free 'to initiate a case in good faith after conducting the required pre-

suit investigation.'" Dkt. No. 29 at 2. Therefore, the Court denied reconsideration in the interest of efficiency and saving judicial resources.

On July 18, 2024, Defendants filed the First Motion. Dkt. No. 30. RLF filed opposition papers on August 16, 2024. *See* Dkt. Nos. 34-35. Defendants filed a reply on August 30, 2024. Dkt. No. 36 ("Reply"). After being appointed Lead Counsel, Pomerantz filed an amended complaint (the "FAC") on September 10, 2024, and added Gregg Garvey ("Garvey") as a defendant. *See* Dkt. No. 37.

Defendants filed a motion to dismiss the FAC on September 24, 2024 (the "Second MTD") Dkt. Nos. 40-42. Pomerantz filed an opposition to the Second MTD on October 15, 2024. Dkt. Nos. 43-44. On October 29, 2024, Defendants filed a reply brief in support of the Second MTD. Dkt. No. 45. On January 31, 2025, the Court granted the Second MTD without prejudice and held that Mr. Toft may file a second amended complaint within 30 days of the order. If he chose not to do so, the Court held that the case would be dismissed and final judgment entered. Dkt. No. 46. The same day, the Court denied the First Motion without prejudice. Dkt. No. 47. On March 3, 2025, Mr. Toft filed a notice saying that he intended to appeal the Court's motion to dismiss decision. Dkt. No. 48. On the same day, Defendants filed their Renewed Motion. Dkt. Nos. 49-50.

## III.    RULE 11 SANCTIONS ARE NOT WARRANTED[5]

### A.    Legal Standard

The PSLRA does not alter the substantive Rule 11 inquiry "upon final adjudication of the action." 15 U.S.C. § 78u-4(c)(1). The PSLRA functions merely to reduce courts' discretion in

---

[5] In their First Motion, Defendants argued that RLF violated 28 U.S.C. § 1927. *See* Dkt. No. 31, at 13-15. RLF opposed Defendants' argument. (Dkt. No. 34 at 19-22, "Opp."). In their Renewed Motion, Defendants do not allege that RLF violated 28 U.S.C. § 1927. See Renewed Br. As such, Defendants have waived this argument. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999) ("Arguments not raised in an opening brief are waived.")

choosing whether to conduct the Rule 11 inquiry and whether and how to sanction a party if a violation is found. *Goldfinger v. Journal Commc'ns Inc.*, 2015 WL 13034986, at *2 (E.D. Wis. Aug. 4, 2015) ("Rule 11 standard of review is therefore the same as the PSLRA standard of review.") (referencing *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866 (7th Cir. 2003)).

Rule 11(b) provides, *inter alia*, that a party filing papers with the Court certifies:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4).

The Court is to employ a "objectively reasonable standard" in assessing whether there is a Rule 11 violation. *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991). "There must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well grounded in fact.'" *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). A court should not impose Rule 11 sanctions because "plaintiffs' case proved to be weak, plaintiffs' counsel should not be reprimanded for trying to protect their clients' interest. The court will not impose sanctions on a party merely for losing its case on the pleadings." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1267 (7th Cir. 1993).

7

"'Rule 11 motions … should not be employed … to test the sufficiency or efficacy of the allegations in the pleadings; *other motions are available for those purposes*[.]'" *IUE-CWA Local 901 v. Spark Energy Gas LLC*, 2021 WL 3124354, at * 4 (N.D. Ind. July 23, 2021) (quoting Fed.R.Civ.P. 11 Adv. Comm. Notes 1993)). Similarly, factual issues identified in a Rule 11 motion, are best resolved at summary judgment or trial. *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016). In considering Rule 11 sanctions in a PSLRA case, a court should examine whether an amendment could cure the alleged deficiencies of which defendants complained. *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Rule 11 sanctions "are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp.*, 326 F.3d at 868 (quoting *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994)).[6]

B.      **The Initial Complaint was Filed For a Proper Purpose**

Defendants make the baseless assertion that the Complaint was filed for an improper purpose. "Whether a filing was presented for an improper purpose is a subjective inquiry." *Outley v. City of Chicago*, 648 F. Supp. 3d 996, 1019 (N.D. Ill. 2022) (internal citations omitted). Defendants fail to identify any purpose for the Complaint other than to recover the decline in value of shareholders' investment in Harbor stock – a patently proper purpose. That RLF worked on a contingency fee basis and would not be paid unless there was a successful recovery, is not an improper purpose. Defendants cite no case to the contrary. Indeed, were it so, all contingency fee

---

[6] Defendants assert in their Renewed Motion that "Congress *passed the PSLRA and Rule 11* to deter precisely *this form* of abusive litigation." Renewed Br. at 3. (Emphasis added). Congress did not pass Rule 11, much less do so to deter securities lawsuits, or along with the PSLRA, as Defendants insinuate. Proposed civil procedure rules are promulgated by the United States Supreme Court and become part of the Federal Rules of Civil Procedure unless vetoed by Congress. Notably, Rule 11 predates the PSLRA by decades. *See* Kimberley A. Stott, Comment, *Proposed Amendments to Federal Rule of Civil Procedure 11: New, but Not Necessarily Improved*, 21 FLA. St. U. L. Rev. 111 (1993), at 117 ("The original Rule 11, adopted in 1938 [. . .]").

8

cases would be brought for an improper purpose. The absence of an improper purpose is demonstrated by the fact that RLF has never been sanctioned under Rule 11. Kim Decl., ¶5. *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 936 (7th Cir. 2003) (recidivism is a relevant factor a court should consider in assessing sanctions).

### C. The Complaint Was Not Frivolous

The Complaint was not frivolous. The elements of a securities claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011). Defendants moved to dismiss the Complaint on the first two elements—falsity and scienter. *See* First MTD Br. at 8-14. Defendants did not move, and thus effectively conceded, that Plaintiff adequately alleged the other elements of the claim.

While Defendants make conclusory allegations that Plaintiff did not conduct a reasonable investigation into the facts and that the Complaint was filed for an improper purpose, they offer no basis for such assumptions. Instead, Defendants' Rule 11 Motions are based on the purported inability of the Complaint to state a claim as set forth in their first MTD. *See* Defendants' First Rule 11 Brief, Dkt. No. 31 "Def. Br.") at 6. Defendants' first MTD and the First Motion cite only two bases for dismissal: falsity and scienter. Def. Br. at 6-7; First MTD Br. at 8-14. These arguments are without merit. In moving to dismiss the FAC, which was based on the same underlying allegations as the Complaint, Defendants did not allege that the falsity element had not been satisfied, effectively abandoning this argument. Dkt. No. 41.

Falsity: To adequately allege falsity under Rule 9(b) and the PSLRA, a plaintiff must identify: (i) the false statement; (ii) when it was made; (iii) by whom; and (iii) why it is false. *See*

9

*Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) ("To satisfy Rule 9(b)'s particularity standard, a complaint must 'state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'") (internal quotation omitted). The Complaint does that and much more. The alleged securities fraud is based on Harbor's financial restatement. ¶¶52-55.[7] The Complaint identifies the specific false financial statements (*id.,* at ¶¶16, 19, 21, 24, 26, 29, 31, 34, 36, 39, 41, 44, 46, 49), when they were made (*id.,* at ¶¶16, 21, 26, 31, 36, 41, 46), who signed them (*id.,* at ¶¶16, 21, 26, 31, 36, 41, 46), and explained why they were false (*id.,* at ¶¶20, 25, 30, 35, 40, 45, 50, 51).

The Financial Accounting Standards Board ("FASB")[8] defines a restatement as a revision of a previously issued financial statement to correct an error. FASB 154, Accounting Standards Codification 250. Restatements are required when a previous statement contains a "material" inaccuracy. *Id.*; *see also,* U.S. Securities and Exchange Commission ("SEC") Regulation S-X, 17 C.F.R. § 210.4-01(a)(1) (financial statements filed with the SEC that are not prepared in compliance with Generally Accepted Accounting Principles ("GAAP") are presumed to be misleading and inaccurate). A complaint adequately alleges false financial statements where, as here, the defendant company restates its financial statements. *See e.g., In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("[the] fact that financial results were restated is sufficient basis for pleading that those statements were false when made"); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008) (same); *Davis*

---

[7] References to "¶_" or "¶¶_" are to paragraphs in the Complaint.

[8] Courts routinely take judicial notice of applicable accounting rules and regulations in considering the sufficiency of a complaint. *See Janssen v. Reschke*, 2020 WL 6044284, at * 3 , fn. 2 (N.D. Ill. Oct. 13. 2020) (citing cases).

10

*v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005) (finding that a company's subsequent restatement of its financial statements to be evidence of the statements' falsity).

Plaintiff also alleged that Harbor's statements about its internal controls were false. *See* ¶¶18, 23, 27, 32, 37, 42, and 47. Plaintiff adequately identified the statements based on Harbor's admissions that its internal controls were weak due to the circumstances that caused the restatement. *Id*. These allegations were well grounded in fact and law. *See Hedick v. Kraft Heinz Company*, 2021 WL 3566602, at * 7 (N.D. Ill. Aug. 11, 2021) ("Kraft Heinz's SEC filings during the Class Period certified that [its] internal controls were effective and provided reasonable assurances regarding the reliability of the [its] financial reports. [It] later admitted that its internal controls were deficient and had material weaknesses… That is enough to satisfy the falsity requirement at this stage.") (internal references omitted).

Scienter: To adequately allege scienter, a complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). "Misstatements or omissions made with reckless disregard of a substantial risk of falsity are also made with scienter." *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1055 (E.D. Wis. 2020). In assessing whether a complaint gives rise to a strong inference of scienter, the Court must accept the allegations in the complaint as true as well as other sources such as items subject to judicial notice. *Id.,* (citing *Tellabs v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007)). The Court must weigh plausible competing inferences of culpability and non-culpability. *Tellabs*, 551 U.S. at 323-34. "The inference favoring the plaintiff's claim 'need not be irrefutable, ... of the 'smoking-gun' genre, or even the most plausible of competing inferences.'" *A.O. Smith Corp.*, 468 F. Supp.3d at 1056 (quoting *Tellabs*, 551 U.S. at 324.)). A complaint survives if a "reasonable person would deem the inference of scienter cogent

11

and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.*

The allegations in the Complaint created a good faith basis to allege scienter. Defendants improperly recognized revenue from the disputed Agreement that Harbor terminated. In the restatement announcement, Harbor admitted it had improperly recognized $52.3 million in revenue in violation of Accounting Standards Codification Topic 606, Revenue from Contracts with Customer ("ASC 606"). Kim Decl., Ex. 2; ¶53. Harbor's internal revenue recognition policy also purported to comply with GAAP. While Harbor did not explain specifically how it violated ASC 606 (*Id.*), the revenue should not have been recognized based on the simple and known fact that United and Harbor had a dispute regarding the amounts owed to Harbor. *See* Kim Decl., Ex. 1 (10-Q and 10-K excerpts Harbor issued during the Class Period.).[9]

In December 2022 and February 2023, Harbor served notices terminating the Agreement. Kim Decl., Ex. 1, at 9. Under ASC 606, revenue cannot be recognized unless, among other things, "[i]t is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer…" *See* ASC 606, Kim Decl., Ex. 2, at 4. "In evaluating whether collectability of an amount of consideration is probable, an entity shall consider only the **customer's [United's] ability and intention to pay that amount of consideration when it is due**. …" (emphasis added.). ASC 606-10-25-1. Because Defendants knew that the Agreement was in dispute and subsequently terminated, the argument that they could not recognize the disputed revenue under ASC 606 was not frivolous. Defendants knew the Agreement was in dispute and terminated because they admitted to it during the Class

---

[9] Courts routinely take judicial notice of SEC filings referenced in a complaint in assessing the sufficiency of a complaint. *See In re Shopko Sec. Litig.*, 2002 WL 32003318, at * 2 (E.D. Wis. Nov. 5, 2002) (citing numerous cases).

Period. *See* Kim Decl., Ex. 1. *See e.g., In re Groupon, Inc. Sec. Litig.*, 2013 WL 12284524, at * 2 (N.D. Ill. Sept. 18, 2013) (finding scienter adequately alleged to improper revenue recognition claim based on defendants' position within company, and their access to truthful information about the revenue); *see also, Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 234-35 (D. Mass. 1999) (explaining that courts have held that violation of a company's own internal revenue recognition policy supports an inference of scienter) (citing *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996) (denying summary judgment on scienter issue because the defendant allegedly violated GAAP and its own revenue recognition policies)).

Additionally, Defendants admitted that their prior statements about the adequacy of Harbor's internal controls were false as a result. ¶53. These internal controls were specifically evaluated by Deister and Mackay (*id.,* at ¶¶16-17, 21-22, 26-27, 31-32, 36-37), which they later admitted their statements to be false when made as a result of the restatement. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (holding that scienter requirement was met where GAAP violations led to restatement and individual defendants were aware of "weak internal controls").[10]

As the Court acknowledged in its order granting Defendants' motion to dismiss the FAC, "[w]hile the allegations in the FAC could suggest [Defendants] knowingly or recklessly misled

---

[10] Defendants cite *Valdes v. Kandi Techs. Grp. Inc.*, 2024 WL 1348697, at * 7 (S.D.N.Y. March 29, 2024) ("*Valdes*") claiming that the court rejected RLF's arguments of scienter based on an officer being tasked with ensuring the company's compliance with accounting rules. RLF did not commence the *Valdes* action nor file any pleadings in that case. RLF and its client sought, but were not appointed, a leadership position in *Valdes. See Valdes* Docket, Dkt. Nos. 1, 48, 60. *Valdes* is distinguishable, as that case involved an allegation first reported by a short seller, that defendants failed to disclose related party transactions under accounting rules, even though there was no accompanying allegations of a restatement. *Id.*, at * 9, fn. 8 ("Plaintiffs never allege that Kandi issued restatements conceding that it misreported related party transactions, even after publication of the Hindenburg Report. In fact, Plaintiffs acknowledge that Kandi expressly denied the allegations contained in the report.").

investors, they more plausibly suggest that [Defendants] were at worst negligent in their oversight." Dkt. No. 46 at 20. The Court then gave Pomerantz an opportunity to amend the FAC. *Id.* at 21. As such, the Complaint identified a case theory that, while unsuccessful, was not frivolous.

Even if the Complaint did not adequately allege a strong inference of scienter, a plaintiff's failure to allege scienter on his or her first attempt does not warrant Rule 11 sanctions. *See Singh v. Curry*, 69 F.3d 540 (7th Cir. 1995) (Rule 11 "[s]anctions are not appropriate merely because a claim failed"); *Kemper Fin. Servs., Inc.*, 9 F.3d at 1267 (same). "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) (internal quotation omitted); *Fishoff v. Coty, Inc.*, 2010 WL 305358, at * 2 (S.D.N.Y. Jan. 25, 2010) (refusing to sanction investor due to his failure to properly allege scienter, as it is the most difficult aspect of a securities fraud claim); *see also Gurary*, 235 F.3d at 801, 802 (holding that since it was possible that plaintiff could amend his complaint to allege the specificity required by the PSRLA, sanctions were not warranted under Rule 11).

### D. Plaintiff Counsel's Pre-filing Investigation was Adequate

RLF conducted an adequate investigation into the facts and law prior to filing the Complaint. RLF reviewed and analyzed, among other things, Harbor's SEC filings, public statements about Harbor, Harbor's restatement, and applicable accounting rules and guidance. *See* Dkt. No. 35 at ¶6. RLF determined sufficient facts existed for securities fraud claims. Among other things, RLF determined that because Harbor admitted it overstated revenue by $52.3 million based on an "accounting error" and issued admittedly false internal control statements—the falsity element would be satisfied. *Id.* RLF also believed that the scienter element could be met given the nature of the restatement and the totality of circumstances, such as that Defendants were aware of

14

the disputed Agreement and so were on notice of the problem with collectability—prohibiting them from recognizing the revenue they did. *Id.* RLF believed that there would be further evidentiary support for these facts after further investigation or discovery. *Id.* Sanctions would therefore be inappropriate.

### E.    Immaterial, Isolated Mistakes do not Constitute a Rule 11 Violation.

As RLF has conceded, immaterial mistakes were made in the Complaint stating that Defendants issued press releases, and in one instance saying that Harbor stock traded on a national exchange. Opp. at 18. These errors did not affect the theory that Harbor stock traded in an efficient market. *Id.* Despite arguing that RLF made affirmative factual misrepresentations to the Court, Defendants have effectively conceded that these were simple errors. *See* Def. Br. at 8 ("[RLF] knows better than to cut and paste boilerplate from prior complaints without checking the veracity of those allegations. But that is exactly what it did here."). Errors such as these can be remedied by the filing of an amended complaint under Fed. R. Civ. P. 15(a)(1)(B) and are not sanctionable. *See Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 451 (7th Cir. 1993) (Even a "glaring" factual error that should have been discovered did not warrant sanctions as it did not undermine the legal theory).

By failing to argue substantively about the lack of reliance in their motions to dismiss, Defendants have effectively conceded that the issue is immaterial. *See* Dkt. Nos. 8, 41. As such, Defendants are doing nothing but wasting Court time and resources to harass RLF on a point that they did not deem important enough to include in a Rule 12(b)(6) motion. As RLF pointed out, certain of Defendants' other assertions regarding purported inaccuracies, such as on trading volume or analyst reports, are inaccurate or are disputed. Opp. at 17-18.

15

### F.  RLF Acted in Good Faith

RLF acted in good faith. As discussed above, Harbor's restatement of its financial statements whereby it eliminated $52.3 million of revenue from a ***knowingly*** disputed contract is sufficient factual predicate for a securities fraud claim.

That RLF and Defendants expected that the Complaint would be amended following appointment of a lead plaintiff and the completion of further investigation does not evidence bad faith. Rather, it shows that Defendants' premature First MTD was filed in bad faith, as all parties knew the Complaint would be amended by the lead plaintiff, and that the First MTD was improper.[11] *See, Gurary*, 235 F.3d at 801, 802 ("It simply cannot be said at such an early stage in the proceedings that [plaintiff's] claims [. . . ] would have completely lacked evidentiary support because [plaintiff] was never afforded the opportunity to pursue discovery.") (holding that since it was possible the plaintiff could amend his complaint to allege the specificity required by the PSLRA, Rule 11 sanctions were not warranted); *see also, Walling v. Generac Holdings Inc., et al*, 2:24-CV-00240 (E.D. Wis.) (accepting motion to dismiss briefing after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); *In re REV Group, Inc. Securities Litigation*, 2:18-CV-01268 (E.D. Wisc.) (court vacating response deadline until after

---

[11] "[T]he filing of a securities class action complaint triggers a cascade of deadlines under the PSLRA: (1) the plaintiffs have twenty days to publish a notice of the action informing class members of the deadline to file a motion to serve as lead plaintiff (§ 78u–4(a)(3)(A)(i)); (2) potential class members then have sixty days from the date of the notice to file lead plaintiff motions with the court (§ 78u–4(a)(3)(A)(i)(II)); and finally (3) within ninety days of the date of the notice, the court must consider any motions filed and appoint a lead plaintiff (§ 78u–4(a)(3)(B)(i))."*Gumm v. Molinaroli*, 2016 WL 6680462, at *2 (E.D. Wis. Nov. 14, 2016). Here, the PSLRA early notice was issued on May 7, 2024. (Dkt. No. 12-1). Lead Plaintiff motions were due on July 8, 2024. 15 U.S.C. § 78u–4(a)(3)(A). Under the PSLRA, the Lead Plaintiff has the authority act on behalf and bind the putative class. 15 U.S.C. § 78u–4(a)(3)(B). Any putative class member can make a lead plaintiff motion in response to the notice. *Id.* The PSLRA also contemplates that when related actions are filed during the 60-day notice period, they should be consolidated prior to a court's consideration of Lead Plaintiff motions. *Id.* Discovery is stayed upon the filing of a motion to dismiss. 15 U.S.C. § 78u–4(b)(3)(B).

lead plaintiff motions resolved and the parties entered a schedule for an amended complaint); *Shanaphy v. Kohls Corporation, et al.,* 2:22-CV-01016 (E.D. Wis.) (same); *Duncan v. Joy Global Inc., et al.,* 2:16-CV-01229 (E.D. Wis.) (deciding motion to dismiss after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); *Gumm, et al v. Molinaroli, et al.*, 2:16-CV-01093 (E.D. Wis.) (same); *Public Employees' Retirement System of Mississippi et al v. Roadrunner Transportation Systems Inc., et al.*, 2:17-CV-00144 (E.D. Wis.) (same); *see also, Allison v. Oak Street Health, Inc., et al.*, 1:22-CV-00149 (N.D. Ill.) (same); *Chandler v. Ulta Beauty, Inc., et al.*, 1:18-CV-01577 (N.D. Ill.) (same); *Burbige et al v. ATI Physical Therapy, Inc.*, 1:21-CV-04349 (N.D. Ill.) (same); *Construction Workers Pension Trust Fund -- Lake County and Vicinity v. Navistar International Corporation et al*, 1:13-CV-02111 (N.D. Ill.) (same); *Pugh v. Trib. Co.*, 521 F.3d 686, 692 (7th Cir. 2008) ("Pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), the court appointed a lead plaintiff and lead counsel in the securities case. At that point, an amended consolidated class action complaint was filed.").[12]

---

[12] Courts in other Circuits are in accord. <u>Fifth Circuit</u>: *Oscar Private Equity Investments v. Allegiance Telecom, Inc., et al*., 2004 WL 524943 (N.D. Tex. March 17, 2004) (denying defendants' motion to dismiss filed prior to appointment of lead plaintiff and lead plaintiff counsel as moot because plaintiff entitled to amend complaint); <u>Tenth Circuit</u>: *Spiegal, et al. v. Tenfold Corp., et al.*, No. 00-CV-652 (Dkt. No. 36) (D. Utah Jan. 3, 2001) (denying defendants' motions to dismiss as a "waste of judicial resources" because a lead plaintiff had yet to be appointed); <u>Eleventh Circuit</u>: *Casey v. Windmere-Durable Holdings, Inc., et al*., Case No. 98-CV-2273(Dkt. Nos. 15, 17) (S.D. Fla. Dec. 9, 1998) (holding that no response to the defendant's motion to dismiss would be required until after the conclusion of the lead plaintiff process); <u>Fourth Circuit</u>: *City of Fort Lauderdale General Employees' Retirement System, et. al. v. VeriSign, Inc*. *et al.*, 1:13-CV-00060 (E.D.Va) (same); <u>Ninth Circuit</u>: *Autumn Partners v. Remec, Inc.,* No. 04-CV-1948 (Dkt. No. 20) (S.D. Cal. Nov. 12, 2004) (removing defendants' motions to dismiss three related actions off the calendar and deferring a decision on the pending motions to dismiss until the lead plaintiff(s) and lead counsel were determined by the court); <u>Third Circuit</u>: *Plumbers & Pipefitters Local Union No, 630 Pension Annuity Trust Fund v. Kenexa Corp., et al.*, No. 09-CV-2642 (Dkt. No. 25) (E.D. Pa.) (deciding motion to dismiss after the completion of lead plaintiff-related motion practice and the filing of an amended complaint); <u>First Circuit</u>: *Luna v. Carbonite, Inc., et al*., 1:19-

17

This procedure makes sense as it provides litigants an outcome on a pleading that has binding or preclusive effect on behalf of the putative class. At the same time, all discovery is stayed and Defendants are not required to respond to the initial complaint. Resources are conserved until the operative complaint is filed by the lead plaintiff. At the same time, the lead plaintiff will conduct additional and more in-depth investigations to file a more fulsome amended complaint. Indeed, as noted Plaintiff's first opposition and refiled herewith is a table of cases from 2023 showing that amended complaints filed by lead plaintiffs are substantially lengthier and more detailed. *See* Kim Decl., Ex. 3; Dkt. No. 35-3.

RLF followed these well-accepted authorities and procedures—making its conduct in this regard objectively and subjectively reasonable. Contrary to Defendants' assertion, neither RLF nor any other law firm in the plaintiffs' securities bar has an incentive to file a frivolous complaint in order to secure a position as lead counsel. The PSLRA put an end to the "race to the courthouse." Before the PSLRA, litigants hurried to be the first to file lawsuits in order to take control of securities litigation. As there was no discovery stay, some litigants then leveraged the threat of expensive discovery to secure settlements in otherwise frivolous cases. Now, none of this is possible under the PSLRA. Class members are afforded the right to move to be appointed as lead plaintiff within sixty days following mandatory public notice of the pendency of the class action. Moreover, since discovery is stayed until the Court sustains a complaint, no leverage to extract a settlement through the threat of expensive discovery exists. Defendants' entire theory of improper motive is wrong on its face.

---

CV-11662 (Dkt. No. 30) (D. Mass.) <u>Second Circuit</u>: *Birnbaum v. General Electric Company et al*, 1:19-CV-01013 (Dkt. No. 62) (S.D.N.Y.) (same); <u>Sixth Circuit</u>: *Bettis v. Envision Healthcare Corporation et al.*, 3:17-CV-01112 (Dkt. No. 28) (M.D. Tenn.) (same); <u>Eighth Circuit</u>: *In re Resideo Technologies, Inc. Securities Litigation*, 0:19-cv-02863 (Dkt. No. 16) (D. Minn.)

### G.  The Cases Defendants Cite are Irrelevant to the Facts Here

Defendants' Renewed Motion cites *Boca Raton Firefighters' and Police Pension Fund v. DeVry, Inc.*, 2014 WL 1847833 (N.D. Ill. May 8, 2014) to argue that the Complaint does not discuss Defendant Garvey. Renewed Br. at 9. As RLF argued in opposing the First Motion, this case is irrelevant to the facts of this matter. Opp. at 15-16. That is even more the situation now. As discussed in greater detail below, RLF did not sue Garvey. *See* Dkt. No. 1.

Defendants' citation of both *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) and *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 666 (6th Cir. 2003) are irrelevant because in neither case were the courts considering a Rule 11 motion.

### H.  Monetary Sanctions Against RLF are Not Warranted.

In levying sanctions under Rule 11, this Court is granted great discretion as to its form or severity.  *See Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993). Here, because RLF has not violated Rule 11, there is no basis for any form of sanctions, including monetary sanctions.

To the extent that such a violation could be found, however, the resulting sanction should take the form of a censure, because "the deterrent purpose of the rule should be served by impos[ing] a sanction that fits the inappropriate conduct." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999) (internal citations omitted). Here, because Defendants would have to respond to the amended complaint regardless, RLF has not caused Defendants to expend any additional resources.[13] Monetary sanctions are not warranted.

---

[13] In so ordering, the Court noted that "even if Defendants' motion to dismiss would be granted, Plaintiff would be given leave to amend… Moreover, Defendants concede that investors like the appointed lead plaintiff would remain free 'to initiate a case in good faith after conducting the required pre-suit investigation.'" Dkt. No. 29 at 2.

IV.     **RULE 11 SANCTIONS AGAINST DEFENSE COUNSEL ARE REQUIRED**

The PSLRA's mandatory Rule 11 inquiry applies to all parties, including Defendants. *See* § 78u–4(c)(1) ("[i]n any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance *by each party and each attorney* representing *any party* with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to *any complaint, responsive pleading, or dispositive motion*.") (Emphasis added).

Courts shall issue sanctions for any Rule 11 violation in a PSLRA case. Rule 11 applies to any paper submitted to the Court; pertinently, "an unwarranted motion for Rule 11 sanctions is itself sanctionable." *Lebovitz v. Miller*, 856 F.2d 902, 907 (7th Cir. 1988) (citing *Loc. 106, Serv. Emps. Int'l Union v. Homewood Mem'l Gardens, Inc.*, 838 F.2d 958, 961 (7th Cir. 1988)); *Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) (holding that "[a]ny frivolous motion, pleading, or request is subject to sanctions, including a motion or request for sanctions.").

Here, Defendants have violated Rule 11(b) subparts (1) and (3) (*see supra* at 7) through their submissions to this Court. As such, the Court is empowered to issue sanctions for any one of these violations.

### A.     Defendants' Rule 11 Motions Were Filed for an Improper Purpose, in Violation of Rule 11(b)(1)

The keystone example of improper purpose is where a paper is put forth in order to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The First and Renewed Motions were calculated to do just that.

*First,* "Rule 11 is not a toy. A lawyer who transgresses the rule abuses the special role our legal system has entrusted to him." *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988). Rule 11 violations are "a serious thing, and an accusation of such

wrongdoing is equally serious." *Id.* "A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter." *Fed. Deposit Ins. Corp. v. Tekfen Const. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988). As such, "[e]ven in a case where the parties disagree profoundly, allegations of professional misconduct require 'utmost care and caution." *Illinois Cent. R.R. Co. v. Belcher,* 2023 WL 7161809, at \*4 (N.D. Ind. Aug. 22, 2023)*, report and recommendation adopted*, 2023 WL 7161685 (N.D. Ind. Sept. 8, 2023) (citing *Federal Deposit Ins. Corp,* 847 F.2d at 444).

In requesting sanctions against RLF despite the lack of evidence of sanctionable conduct, Defendants do not treat Rule 11 sanctions with the gravity that they should. Parties are expected to give much consideration to the appropriateness of a sanctions motion before filing. *Cf. SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 946 (7th Cir. 1988) ("We expect counsel to give considerable thought to whether an appeal is frivolous before requesting Rule 38 sanctions.") Defendants, in contrast, turned to Rule 11 as a first resort, leveraging the Rule to pursue dismissal of the Complaint. In so utilizing Rule 11, Defendants have "abuse[d] the special role our legal system has entrusted to [them]" (*Draper & Kramer,* 690 F. Supp. at 732) and violated Fed. R. Civ. P. 11(b)(1), and they should be sanctioned accordingly.

*Second,* "'Rule 11 motions … should not be employed … to test the sufficiency or efficacy of the allegations in the pleadings; other motions are available for those purposes." *IUE-CWA Local 901*, 2021 WL 3124354, at \* 4 (*quoting* Fed. R. Civ. P. 11 Adv. Comm. Notes 1993)). Defendants' Rule 11 briefs contain much legal argumentation regarding the merits of Plaintiff's scienter allegation; however, a Rule 11 motion is not the proper venue for doing so. *See id.* Rather, Rule 11 is intended to "deter abusive litigation tactics." *Momo Enterprises, LLC v. Banco Popular*

21

*of N. Am.,* 2017 WL 4357390, at *1 (N.D. Ill. Sept. 30, 2017), *aff'd sub nom. Momo Enterprises, LLC v. Popular Bank*, 738 F. App'x 886 (7th Cir. 2018).

Using a Rule 11 motion to test a complaint's sufficiency is not a novel tactic and is generally considered to be inappropriate. *See e.g., Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407 (S.D.N.Y. 2003) (characterizing a Rule 11 motion as a "*de facto* motion for summary judgment"). In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Defendants' repeated invitations to the Court to do so – to wade into issues of law more appropriate for dispositive motion practice – are an inappropriate use of a Rule 11 motion. *See Lanphere v. 1 Corp.,* 2012 WL 1965436, at *3 (N.D. Ill. Apr. 23, 2012), *report and recommendation adopted as modified*, 2012 WL 1966010 (N.D. Ill. May 31, 2012) ("Rule 11 ordinarily should not be used as a proxy to litigate the merits of a case. If claims lack merit on their face as a matter of law, then a motion to dismiss is appropriate."). Defendants' motion is therefore well-characterized as one put forth for an improper purpose, in violation of Rule 11(b)(1).

In making baseless, vitriolic, statements about RLF, in blatant violation of Rule 11, Defendants have evinced a desire to harass. Defendants posit that RLF has engaged in tactics that are "abusive," that it engages in "rampant flouting of the PSLRA, Rule 9(b), and Rule 11," and that it is furthering a "destructive, and unlawful process." *See* Renewed Br. at 10, 22. These claims, potent though they may be, are wholly unsupported by evidence. There is no justification in calling RLF a "securities litigation mill" or questioning the competence of RLF's personnel, or for implying that RLF has been actively misleading the Court. *See* Renewed Br. at 1, 20-22. Bearing neither relevance to the matter at hand nor grounding in truth, these points can only have been

presented to harass; as such, they violate Rule 11(b)(1). *See Jean v. Dugan*, 29 F. Supp. 2d 939, 941 (N.D. Ind. 1998).

Further, Defendants have previously argued that "[RLF] prides themselves on filing dozens of lawsuits alleging violations of Section 10(b) each year[.]" (citing https://rosenlegal.com/news/rosen-law-firm-ranked-no-2-in-number-of-2021-securities-class-action-settlements-by-iss) Def. Br. at 7. In making that argument, Defendants conflate *filing* lawsuits with a ranking for the number of settlements obtained. Defendants double down on this argument in the Renewed Motion, arguing that RLF "touts that it has 'been ranked in the top 4 of securities class action firms nationwide [by volume] each year since 2013 by ISS Securities Class Action Services.'" Renewed Br. at 22 (alteration in original). Again, Defendants conflate filing a complaint, with achieving settlements (including in cases where RLF did not file the initial complaint). Given the rigorous PSLRA process, settlements are not achieved with frivolous cases. Indeed, Defendants have not presented any case the RLF has settled that was found to be frivolous—there are none.

RLF has conceded that immaterial mistakes were made in the Complaint. In contrast to innocent, easily remedied factual mistakes, Defendants have submitted briefing with drafted language about RLF, which clearly was not mistakenly included and is rife with factual misrepresentations.

**B.    Defendants Make Repeated Factual Misrepresentations About RLF and its Complaint in Violation of Rule 11(b)(3).**

Fed. R. Civ. P. 11(b)(3) requires that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." In support of their First and Renewed Motions, Defendants run afoul of this requirement multiple times.

23

In their latest briefing, Defendants misled the Court about who RLF sued. RLF sued Harbor, Deister, and Mackay. *See* Dkt. No. 1. Defendants presumably know this, because their First Motion has a caption with those same Defendants. *See* Def. Br. Mr. Garvey was first named as a defendant with the filing of the FAC by Pomerantz almost two months later. *See* Dkt. No. 37.

Despite this, Defendants now argue that "the names of the two individual defendants do not even appear outside of the introductory paragraphs of the RLF Complaint. ***As for the third, Defendant Garvey, the RLF complaint only includes him in the caption, and proceeds to make no other mention of him***." Renewed Br. at 9. (Emphasis added). Defendants argue that, "[i]n short, there was "no 'detail' elsewhere in the complaint that would give these allegations any hope of satisfying the PSLRA [and] no reasonable lawyer could believe that the original complaint satisfied the PSLRA." *Id*. In short, Defendants argue the Complaint was deficient because it only mentions a defendant in the caption, and did not discuss him in the body, when RLF *did not actually sue that individual defendant*. Additionally, contrary to Defendants' representations to the Court, Deister and Mackay were mentioned outside of the introductory paragraphs of the Complaint. *See* ¶¶ 16, 21, 26, 31, 36, 41, 46.

Even worse, Defendants have repeatedly represented that RLF litigated certain cases in support of their motion. The issue is that RLF did not litigate those cases, and Defendants have continued at times to argue as much, even after being informed that RLF was uninvolved. In their First Motion, Defendants suggest that RLF brought and litigated *Valdes* and that that court rejected RLF's claims. Renewed Br. at 8. This is false. RLF did not file a complaint in that matter, was not appointed lead counsel, and other than putting forth a (unsuccessful) lead plaintiff motion, did not claim anything at all. Kim Decl., ¶11. As RLF explained in its opposition to the First Motion, it

24

was not involved in *Valdes*. Opp. at 10, fn 3. Despite this, Defendants continue to argue in their latest motion that RLF had "brought" *Valdes.* Renewed Br. at 8.

This is not an isolated example. In their reply in support of its First Motion, Defendants claim that RLF litigated *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618 (S.D.N.Y. 2015) and *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008). Reply at 8-9. RLF did not file any complaint in either *Orthofix*, or *Shaw Grp*. Nor was RLF appointed Lead Counsel in those cases and was not involved in the litigation of those cases. Kim Decl., ¶12.

Further, in the First Motion Defendants argue that RLF filed the case and negotiated a stipulation, in *Mei Pang v. Levitt*, No. 1:22-cv-1191 (W.D. Tex. 2022), which is simply untrue. (Def. Br. at 11). RLF did not file that case and did not negotiate or file the stipulation at issue. A different law firm commenced that case and signed the stipulation. *See id.*

Defendants also misrepresented one of RLF's exhibits, which was filed with its opposition to the First Motion as Exhibit 4. Dkt. No. 35-4. In discussing this exhibit, which contained analyst reports, Defendants claimed that "[s]everal 'reports' *pos*t-date Kothari's complaint." Reply at 14. This is false. The Complaint was filed on May 7, 2024. Dkt. No. 1. The last report in that exhibit is dated March 28, 2024, before the end of the Class Period and well before RLF filed the Complaint. *See* Dkt. No. 35-4.

Isolated factual errors do not necessarily warrant the imposition of sanctions, even when such an error is clear and obvious. *See Milwaukee Concrete Studios, Ltd.*, 8 F.3d at 451. However, due to the context in which the falsities above occur, sanctions are appropriate in this case. Defendants' misreprepresentations cited above – including claiming that RLF participated in cases that it did not, and fabricating a supposed pleading mistake by RLF wholesale – display, at best, a

cavalier attitude toward the effect that Rule 11 sanctions would have on RLF. Because of the lack of care in putting forth these misrepresentations, and because such misrepresentations are partially load-bearing for Defendants' motion, Plaintiff respectfully submits that defense counsel Stradling Yocca should be sanctioned for putting forth factual contentions that lack evidentiary support, in violation of Rule 11(b)(3).

### C. Relief Requested

"The decision of what constitutes an appropriate sanction rests within the sound discretion of the district court." *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1496 (7th Cir. 1989). It is within the Court's discretion to award a party attorney's fees for its time incurred on a Rule 11 motion *See Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 651 (7th Cir. 1992). Here, Plaintiff submits that an appropriate sanction would come in the form of attorney's fees for all time spent by RLF in responding to Defendants' frivolous Motion for Sanctions, in both initial and renewed forms, and all time spent by RLF pursuing counter sanctions. Such a sanction is necessary to deter future filings such as the Rule 11 motions put forth by Defendants, which have transgressed the bounds of vigorous advocacy and veered toward the sensationalist and markedly inappropriate.

Finally, Rule 11 sanctions may be imposed on lawyers, parties, or both. *See Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001). Sanctions should be imposed on Stradling Yocca. RLF believes that Stradling Yocca is largely responsible for the misrepresentations to the Court about RLF, which have led to a waste of the Court's time and RLF's resources. The premature First MTD had a declaration made by a Stradling Yocca attorney. Dkt. No. 9. Further, RLF was served with the First Rule 11 Motion by a Stradling Yocca attorney. Def. Br. at 17.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion should be denied, and the Cross-Motion for Sanctions against Defendants should be granted.

Dated: March 31, 2025                                   Respectfully submitted,


                                                        **THE ROSEN LAW FIRM, P.A.**

                                                        /s/ Phillip Kim
                                                        275 Madison Avenue, 40th Floor
                                                        New York, NY 10016
                                                        Telephone: (212) 686-1060
                                                        Facsimile: (212) 202-3827
                                                        Email: philkim@rosenlegal.com

                                                        *Counsel for Plaintiff Viral Khotari*

27