UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JON ARNE TOFT, Individually
and on behalf of all others
similarly situated,

      Plaintiff,

      v.

HARBOR DIVERSIFIED, INC.,
CHRISTINE R. DEISTER, LIAM
MACKAY, and GREGG
GARVEY.

      Defendants.

**Case No: 1:24-cv-00556-WCG**

**LEAD PLAINTIFF'S
MEMORANDUM OF LAW IN
OPPOSITION TO
DEFENDANTS' MOTION FOR
SANCTIONS**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  PROCEDURAL HISTORY ........................................................................................ 2

III.   ARGUMENT ............................................................................................................. 6

  A)  Legal Standard ....................................................................................................... 6

  B)  Lead Counsel is in Compliance With Rule 11 ...................................................... 8

     1.   Lead Counsel Had a Good Faith Basis for the Scienter Allegations ............................... 8

     2.   Lead Counsel Had a Good Faith Basis for the Loss Causation Allegations .................. 18

     3.   Lead Counsel Conducted a Reasonable Inquiry ............................................................ 20

  C)  The Sanctions Motion Distorts the Purpose of the PSLRA and Rule 11 ........................... 21

IV.  CONCLUSION ........................................................................................................ 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AnchorBank, FSB v. Hofer*,
2010 U.S. Dist. LEXIS 157459 (W.D. Wis. Nov. 23, 2010)......................................................18

*Asher v. Baxter Int'l, Inc.*,
377 F.3d 727 (7th Cir. 2004) ...................................................................................................17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................................19

*Brice v. Hoffert*,
2019 U.S. Dist. LEXIS 132749 (E.D. Pa. Aug. 7, 2019)............................................................7

*Clark v. Sun Elec. Corp.*,
1995 U.S. Dist. LEXIS 4008 (N.D. Ill. Mar. 22, 1995)............................................................21

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
2018 U.S. Dist. LEXIS 45676 (S.D.N.Y. Mar. 20, 2018) .........................................................19

*Costas v. Ormat Techs., Inc.*,
2019 U.S. Dist. LEXIS 211349 (D. Nev. Dec. 6, 2019)............................................................14

*Dr. R.C. Samanta Roy Inst. of Sci. & Tech., Inc. v. Lee Enters.*,
2006 U.S. Dist. LEXIS 53922 (E.D. Wisc. Aug. 2, 2006) .....................................2, 6, 22, 23

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................................18

*Fintel v. A.P. Members, LLC*,
2004 U.S. Dist. LEXIS 13551 (N.D. Ill. Jul. 15, 2004).........................................7, 10, 23, 24

*Fishoff v. Coty Inc.*,
634 F.3d 647 (2d Cir. 2011)........................................................................................................7

*FM Prods. v. Classic Gears & Machining Inc.*,
2020 U.S. Dist. LEXIS 180427 (E.D. Wisc. Sept. 30, 2020) ..............................................2, 17

*Harding Univ. v. Consulting Servs. Group, L.P.*,
48 F. Supp. 2d 765 (N.D. Ill. 1999) .........................................................................21, 22, 23

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*,
9 F.3d 1263 (7th Cir. 1993) .....................................................................................................22

ii

*Hartmarx Corp. v. Abboud*,
  326 F.3d 862 (7th Cir. 2003) ......................................................................6, 7, 9

*Hedick v. Kraft Heinz Co.*,
  2021 U.S. Dist. LEXIS 151343 (N.D. Ill. Aug. 11, 2021)........................................8

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ..................................................................14

*In re Diamond Foods, Inc.*,
  2012 U.S. Dist. LEXIS 170704 (N.D. Cal. Nov. 30, 2012)....................................15

*In re Inotiv, Inc. Sec. Litig.*,
  2024 U.S. Dist. LEXIS 57688 (N.D. Ill. May 7, 2012) ........................................20

*In re Proshares Tr. II Sec. Litig.*,
  2021 U.S. Dist. LEXIS 116315 (S.D.N.Y. June 22, 2021)....................................17

*In re Sibanye Gold Ltd. Sec. Litig.*,
  2020 U.S. Dist. LEXIS 210099 (E.D.N.Y. Nov. 10, 2020)....................................17

*In re Turquoise Hill Res. Ltd.*,
  2014 LEXIS 174096 (S.D.N.Y. Dec. 16, 2014) ....................................................13

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
  2011 U.S. Dist. LEXIS 66745 (E.D. Wisc. Jun. 22, 2011)....................................21

*Kinsella v. Bureau of Ocean Energy Mgmt.*,
  2024 U.S. Dist. LEXIS 229966 (E.D.N.Y. Dec. 19, 2024) ....................................7

*Kraemer v. Grant Cnty.*,
  892 F.2d 686 (7th Cir. 1990) ............................................................................22

*Last Atlantis Cap. LLC v. AGS Specialist Partners*,
  2018 U.S. Dist. LEXIS 88864, . (N.D. Ill. May 29, 2018) ....................................23

*Mars Steel Corp. v. Cont'l Bank N.A.*,
  880 F.2d 928 (7th Cir. 1989) ..............................................................................7

*Megly v. Turquoise Hill Res. Ltd.*,
  No. 13-cv-08846, ECF Nos. 45, 50 ....................................................................13

*O'Meara v. Shift4 Payments, Inc.*
  2025 U.S. Dist. LEXIS 37009 (E.D. Pa. Mar. 3, 2025)........................................10

*Pac. Dunlop Holdings, Inc. v. Barosh*,
  22 F.3d 113 (7th Cir. 1994) ..............................................................................22

iii

*Rabin v. Nasdaq Omx Phlx LLC*,
2016 U.S. Dist. LEXIS 94346 (E.D. Pa. July 20, 2016)..................................................6

*Silverman v. Motorola, Inc.*,
2008 U.S. Dist. LEXIS 76799 (N.D. Ill. Sept. 23, 2008) ............................................19

*Super Pawn Jewelry & Loan, LLC v. Am. Env't Energy, Inc.*,
2014 U.S. Dist. LEXIS 125459 (N.D. Ill. Sept. 9, 2014) ........................................9, 20

*Szabo Food Serv., Inc. v. Canteen Corp.*,
823 F.2d 1073 (7th Cir. 1987) ....................................................................................22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..................................................................................................9, 11

*Toft v. Harbor Diversified, Inc.*,
2025 U.S. Dist. LEXIS 18213 (E.D. Wisc. Jan. 30, 2025)............................................6

*Ulbricht v. Ternium S.A.*,
2020 U.S. Dist. LEXIS 167702 (E.D.N.Y. Sept. 14, 2020)........................................18

*Urban v. Brinkman*,
2024 U.S. Dist. LEXIS 147382 (E.D. Wisc. Aug. 19, 2024) ..................................2, 22

**Statutes**

15 U.S.C. §78j(b) ............................................................................................... *passim*

15 U.S.C. §78t(b) ..........................................................................................1, 2, 5, 8

15 U.S.C. § 78u-4 ................................................................................................1, 6

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

17 C.R.F. § 240.10b-5....................................................................................................2, 5

Fed. R. Civ. P. 7............................................................................................................4

Fed. R. Civ. P. 8............................................................................................................18

Fed. R. Civ. P. 11 ................................................................................................ *passim*

Fed. R. Evid. 408 ............................................................................................................23

**Other Authorities**

Manual for Complex Litigation § 31.4 (4th Ed. 2004) ..................................................3

Case 1:24-cv-00556-WCG     Filed 03/31/25     Page 5 of 29     Document 61

## I. PRELIMINARY STATEMENT

The AC[1] is replete with well-pled allegations demonstrating that Lead Plaintiff Jon Arne Toft ("Lead Plaintiff") and Lead Counsel Pomerantz LLP ("Pomerantz") comprehensively researched and investigated the securities fraud claims asserted therein. Indeed, by challenging only scienter and loss causation, Defendants conceded in their Motion to Dismiss that the AC adequately pleads *four out of the six elements* of a Section 10(b) claim, *including falsity*. Moreover, the Court dismissed the AC *without prejudice* solely on scienter grounds, implicitly rejecting Defendants' loss causation arguments. Order at 20-21. The Court ruled that the AC asserts plausible allegations but determined after weighing competing inferences that Defendants' story "better fits the facts alleged." Order at 13, 20. The foregoing *incontrovertible facts* establish that Lead Counsel had a non-frivolous basis under existing securities laws (i.e., §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act")) for filing the AC following "an inquiry reasonable under the circumstances" and for opposing the Motion to Dismiss, thus satisfying Rule 11. *See* Fed. R. Civ. P. 11(b); Weinrib Decl. ¶¶7-10.

Defendants nonetheless vexatiously seek sanctions against Lead Counsel, heedlessly hurling unfounded inflammatory accusations of "bad faith" and "disdain" for Rule 11 obligations, with an error-ridden Sanctions Motion that demonstrates those very attributes. However,

---

[1] "AC" refers to the Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on September 10, 2024 (ECF No. 37); all "¶_" references are to the AC. "Motion to Dismiss" refers to Defendants' Memorandum of Law in Support of Their Motion To Dismiss Plaintiff's First Amended Complaint, filed on September 24, 2024 (ECF No. 41). "Order" refers to the Decision and Order Granting Defendants' Motion to Dismiss," issued on January 31, 2025 (ECF No. 46). "Sanctions Motion" and "Br." references are to Defendants' Memorandum of Law in Support of Their Renewed Motion for Sanctions Under Federal Rule of Civil Procedure 11 & U.S.C. 78u-4, filed on March 3, 2025 (ECF No. 50). "Weinrib Decl." refers to the Declaration of Tamar A. Weinrib in Support of Lead Plaintiff's Memorandum of Law in Opposition to Defendants Motion for Sanctions, filed herewith.

Defendants' thinly veiled attempt to distort the PSLRA's mandatory review of *all parties'* compliance with Rule 11 into a "loser pays" fee-shifting statute, under the guise of a crusade against the well-accepted procedures set by the PSLRA, cannot stand. As this Court has recognized in more than once instance, that is not the purpose of Rule 11; it is not meant to "shift the cost of a lawsuit to the victor," *Dr. R.C. Samanta Roy Inst. of Sci. & Tech., Inc. v. Lee Enters*., 2006 U.S. Dist. LEXIS 53922, at *6 (E.D. Wisc. Aug. 2, 2006) (J. Griesbach), and "cannot be allowed to thoroughly undermine zealous advocacy," *Urban v. Brinkman*, 2024 U.S. Dist. LEXIS 147382, at *25 (E.D. Wisc. Aug. 19, 2024) (J. Griesbach). *See also FM Prods. v. Classic Gears & Machining Inc.*, 2020 U.S. Dist. LEXIS 180427, at *4 (E.D. Wisc. Sept. 30, 2020) (J. Griesbach).

Notably, Defendants characterize their motion for sanctions as a "renewed motion," ECF No. 49, though the first motion for sanctions they prematurely filed *prior to the filing of the AC* solely targeted The Rosen Law Firm P.A. ("RLF"), ECF No. 30. This purportedly "renewed motion" does not refer to either RLF or Lead Counsel by name, instead stating generically that Defendants seek "sanctions against plaintiffs and their counsel" collectively. *Id.* However, in assessing *Lead Counsel's* Rule 11 compliance in accordance with the PSLRA, the Court can only consider the documents that *Lead Counsel* signed or filed, as well as *Lead Counsel's* conduct during the course of this litigation. *See* Fed. R. Civ. P. 11.

## II.     PROCEDURAL HISTORY

On May 7, 2024, RLF filed the original securities fraud class action complaint in this action on behalf of Plaintiff Viral Kothari asserting claims pursuant to Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. ECF No. 1. The Private Securities Litigation Reform Act ("PSLRA") dictates that within twenty days after filing a securities fraud class action complaint, plaintiff must issue notice advising potential class members of the

pendency of the action and providing sixty days for class members to seek lead plaintiff status. RLF issued the notice on the same day plaintiff filed the original complaint, setting a July 8, 2024 deadline for lead plaintiff motions. Under the PLSRA, after the court appoints a lead plaintiff, the lead plaintiff is then responsible for pursuing the putative class's claims and typically files an amended complaint that supersedes the initial complaint as the operative pleading. *See* Manual for Complex Litigation § 31.4 (4th Ed. 2004). Nevertheless, in direct disregard of this well-accepted PSLRA process and with no care for judicial resources, Defendants filed a motion to dismiss the original complaint on June 7, 2024, arguing that the complaint failed to plead falsity and scienter. ECF No. 8.

On June 28, 2024, RLF filed an opposition to Defendants' motion to dismiss asking the Court to deny it without prejudice as premature given that the Court had not yet appointed a lead plaintiff, and there would be a new operative complaint following that appointment. ECF. No. 11. On July 8, 2024, Mr. Kothari and Mr. Jon Arne Toft filed competing motions for appointment as lead plaintiff. ECF Nos. 13, 16. On July 10, 2024, Pomerantz LLP filed a letter with the Court on behalf of Mr. Toft outlining the PSLRA process and requesting that the Court therefore deny the motion to dismiss as moot pending the appointment of lead plaintiff and the filing of an amended complaint without prejudice to Defendants' right to move to dismiss any amended complaint. ECF No. 22. That same day, Mr. Kothari withdrew his lead plaintiff motion given Mr. Toft's larger financial interest, which qualified Mr. Toft as the presumptive lead plaintiff pursuant to the PSLRA. ECF No. 20. On July 11, 2024, the Court appointed Mr. Toft as lead plaintiff ("Lead Plaintiff") and Pomerantz as Lead Counsel. ECF No. 23. The Court also held Defendants' motion to dismiss in abeyance for sixty days, to allow Lead Plaintiff to file an amended complaint. *Id.* Nevertheless, the following day, disregarding the Court's order, Defendants filed a reply brief in

support of their motion to dismiss the original complaint. ECF No. 24. Also on July 12, 2024, Defendants filed a letter motion for reconsideration in violation of Fed. R. Civ. P. 7(b)(1)-(2) accusing the Court of "enabl[ing] [a] subversion of Congress' intent," accusing RLF and Pomerantz of collusion with no supporting evidence, characterizing RLF and Pomerantz's adherence to the PLSRA process as "unethical and improper," and requesting the Court to "consider the arguments set forth in the now fully briefed motion to dismiss without delay." ECF No. 25 at 2. The Court denied the motion to reconsider on July 18, 2024. ECF No. 29. Undeterred, Defendants filed a motion for sanctions that same day against RLF and Plaintiff Kothari, in violation of both the PSLRA (which provides for an assessment of Rule 11 compliance only upon "final adjudication" of the action) and Rule 11 (which requires that a party serve a motion for sanctions *and then wait twenty one days* before filing the motion to provide the respondent an opportunity to withdraw or otherwise correct the challenged document; Defendants did not follow this procedure). ECF No. 30. RLF opposed on August 16, 2024. ECF No. 34.

On September 10, 2024, Lead Plaintiff filed the AC following a comprehensive investigation. ECF No. 37. The thorough factual investigation Lead Counsel undertook, which encompassed commonly accepted investigatory methods for prosecuting securities fraud class actions, included, *inter alia*: (i) obtaining and reviewing public documents, including United States Securities and Exchange Commission ("SEC") filings and press releases by Harbor Diversified, Inc. ("Harbor"), analyst reports evaluating Harbor, news articles and other publications about Harbor, Air Wisconsin Airlines LLC ("Air Wisconsin"), and United Airlines, Inc. ("United")[2]; (ii)

---

[2] While Lead Counsel's investigatory efforts generally include a review of earnings call transcripts, Harbor does not conduct earnings conference calls. As a company with a class of securities not registered under Section 12 of the Exchange Act, Harbor is not required to comply with certain disclosure requirements typically applicable to public reporting companies, including the holding of earnings calls.

retaining and overseeing the services of investigators at On Point Investigations to identify additional relevant information about Harbor, Air Wisconsin, and United related to the allegations in this Action; and (iii) consulting and overseeing the services of a forensic accountant at Arcadia Consulting, LLC,[3] who assisted in researching the accounting claims and the potential defenses thereto, in addition to relevant SEC and FASB/ASC accounting guidance. Weinrib Decl. ¶7. Lead Counsel based the AC, which alleges violations of Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, on the facts developed through this thorough investigation.

Six days after Lead Plaintiff filed the AC, the Court entered an order denying Defendants' motion to dismiss as moot. ECF No. 39. On September 24, 2024, Defendants filed the Motion to Dismiss the AC, challenging only scienter and loss causation, thereby conceding that the AC adequately pleads the remaining elements of a Section 10(b) claim, including falsity which they challenged in their first motion to dismiss. ECF No. 41. Lead Plaintiff opposed the Motion to Dismiss with a brief filed on October 15, 2024 that set forth the nonfrivolous bases for the AC's claims, cited to forty eight cases in support, and set forth the relevant statutes and regulations. ECF No. 43 ("Opp. Br."). On January 31, 2025, the Court entered the Order granting the Motion to Dismiss *without prejudice solely on scienter grounds*—without addressing (and thus seemingly rejecting) Defendants' loss causation arguments-- and issued a separate order denying the motion for sanctions against RLF. ECF Nos. 46, 47. In the Order, the Court made clear however, that while the AC's allegations could plausibly suggest scienter and that the relevant provision of ASC

---

[3] Lead Counsel consulted Arcady Zaydenverg, CPA, CFE, the founder of Arcadia Consulting, LLC. According to his website, Mr. Zaydenverg is a Certified Public Accountant and Certified Fraud Examiner, with over 25 years of experience in both public and private accounting. Mr. Zaydenverg has assisted attorneys at the SEC in dealing with complex financial accounting and reporting matters, including the interpretation and application of accounting standards.

606 "may seem relatively straightforward," it found that the non-culpable inference "better fits the facts alleged" and "more plausibly suggest[s]" that Defendants "were at worst negligent in their oversight." Order at 13, 14, 17, 20. On March 3, 2025, Lead Plaintiff filed a Notice Regarding Decision and Order Granting Defendants' Motion to Dismiss, informing the Court that it would not file a second amended complaint and instead intends to file a Notice of Appeal upon entry of Judgment. ECF No. 48. Six hours later, Defendants filed the instant Sanctions Motion, this time against both RLF and Pomerantz. ECF No. 49.

## III. ARGUMENT

### A) Legal Standard

The PSLRA requires a court, "upon final adjudication of the action," to make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). *See also Toft v. Harbor Diversified, Inc.*, 2025 U.S. Dist. LEXIS 18213, at *1-2 (E.D. Wisc. Jan. 30, 2025) (J. Griesbach). While the PSLRA mandates a Rule 11 review, it does not change the substantive requirements of Rule 11. *See Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866 (7th Cir. 2003); *Rabin v. Nasdaq Omx Phlx LLC*, 2016 U.S. Dist. LEXIS 94346, at *5 (E.D. Pa. July 20, 2016) (explaining the PSLRA serves merely to reduce the court's discretion in addressing Rule 11 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009))). Although PSLRA sanctions are mandatory when warranted, sanctions under the PSLRA, like all Rule 11 sanctions, "are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp.*, 326 F.3d at 867 (citation and internal quotation marks omitted); *Lee Enters.*, 2006 U.S. Dist. LEXIS 53922, at *6 (J. Griesbach).

6

The focus of the PSLRA mandated inquiry is on "whether the conduct was reasonable under the circumstances." *Fintel v. A.P. Members, LLC*, 2004 U.S. Dist. LEXIS 13551, at *7 (N.D. Ill. Jul. 15, 2004). Rule 11 provides guidance as to conduct that is considered reasonable: "The presence of an attorney's signature on a complaint is a certificate that he has read the pleading that to the best of his knowledge, information is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation." *Id.* at *7-8 (citation omitted). Claims are not frivolous simply because they are dismissed and courts do not view an attorney's actions with 20/20 hindsight. *Hartmarx Corp.*, 326 F.3d at 867; *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931-32 (7th Cir. 1989). The Court can only impose sanctions if it determines that this an "exceptional circumstance" where the claim had "no chance of success." *Brice v. Hoffert*, 2019 U.S. Dist. LEXIS 132749, at *8 (E.D. Pa. Aug. 7, 2019) (Leeson, Jr., J.)("[s]anctions are to be applied only 'in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous.'")(quoting *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010)). Even "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (holding "[t]he operative question is whether . . . the legal position has no chance of success").

Moreover, when conducting a Rule 11 assessment, courts must resolve all doubts in favor of the signer. *Kinsella v. Bureau of Ocean Energy Mgmt.*, 2024 U.S. Dist. LEXIS 229966, at *12 (E.D.N.Y. Dec. 19, 2024). Additionally, courts are only permitted to assess a law firm's Rule 11 compliance with regard to documents that particular law firm signed or filed; a law firm cannot be held accountable for deficiencies in another law firm's filings. *See* Fed. R. Civ. P. 11.

Lead Counsel has easily satisfied its obligations under Rule 11.

**B) Lead Counsel is in Compliance With Rule 11**

To conclude that the Sanctions Motion has no merit, despite its sanctimonious bluster, the Court need look no further than Defendants' own Motion to Dismiss. The AC asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act. The Section 10(b) claim has six elements: (1) a material misrepresentation or omission; (2) in connection with a purchase or sale of a security; (3) made with scienter; (4) reliance; (5) economic loss; and (6) loss causation. *Hedick v. Kraft Heinz Co.*, 2021 U.S. Dist. LEXIS 151343, at *9 (N.D. Ill. Aug. 11, 2021). Of those six elements, *Defendants challenged only two – scienter and loss causation--* conceding that the AC adequately pleads the remaining four. Tellingly, when moving to dismiss the original complaint, Defendants also challenged falsity but dropped that challenge in the Motion to Dismiss. In other words, Defendants have already conceded that Lead Counsel had a good faith basis for alleging that Defendants made material misrepresentations or omissions in connection with a purchase or sale of securities, which Lead Plaintiff and the proposed class relied upon, and that Lead Plaintiff and the class suffered an economic loss. Defendants' concessions should moot the Sanctions Motion. Moreover, as set forth below and in the Weinrib Decl., Lead Counsel conducted a comprehensive investigation prior to filing the AC and had a good faith basis for asserting each allegation asserted therein.

**1. Lead Counsel Had a Good Faith Basis for the Scienter Allegations**

While Defendants challenged two elements of the Section 10(b) claim in the Motion to Dismiss, the Court's Order only addressed *one of those elements*, scienter, noting that "[t]here are two competing inferences at play that frame the court's analysis" but concluding that "the inference proffered by Defendants better fits the facts alleged." Order at 12-13. It is an epic chasm

8

Defendants attempt to leap in asking this Court to impose sanctions because the Court found Defendants' version of the facts a "better fit." *See Hartmarx Corp.*, 326 F.3d at 868 ("[A]s long as Lincoln was taking a reasonable legal position on the meaning of the rule, it should not be sanctioned even if the district court concluded that Hartmarx had the better reading.").

The Court based its ruling largely on the lack of a smoking gun, i.e., that the AC does not allege: 1) that Defendants "received any internal communications or documents that explicitly put them on notice that the company's financial disclosures may not be GAAP compliant;" or 2) that Defendants "themselves ever made a statement indicating they believed as much." Order at 13. However, the Supreme Court made clear that smoking gun allegations are not required to plead scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) (the scienter inference "need not be irrefutable, i.e., of the smoking gun genre, or even the most plausible of competing inferences" (citation and internal quotation marks omitted)). Their absence thus hardly renders the AC frivolous. That is particularly so because these types of smoking gun allegations are "more realistically [] obtained in the discovery phase of litigation," *Super Pawn Jewelry & Loan, LLC v. Am. Env't Energy, Inc.*, 2014 U.S. Dist. LEXIS 125459, at *12-13 (N.D. Ill. Sept. 9, 2014). Moreover, after acknowledging the "exacting pleading requirements" of the PSLRA, the Court accepted Defendants' arguments regarding the complexity of ASC 606, the clean annual audits by Grant Thornton, and Defendants' disclosures regarding the ongoing dispute, and concluded:

> While the allegations in the FAC could suggest Diester, Mackay, and Garvey knowingly or recklessly misled investors, they more plausibly suggest that Diester, Mackay, and Garvey were at worst negligent in their oversight.

Order at 20. Defendants repeat these three arguments in their Sanctions Motion and ask the Court to impose sanctions and shift responsibility for their fees to Lead Counsel, ***even though the Court has already stated that it found the AC's scienter allegations plausible*** and only dismissed because it found the opposing inference "more plausibl[e]." *Id.* The Court's clear ruling as to the

9

plausibility of the AC's scienter allegations should have preempted Defendants' accusations that the AC had "no chance of success" and that "Pomerantz provided no factual basis for any inference of scienter." Br. at 14, 16, 17, 19. Though not in this Circuit, the recent decision in *O'Meara v. Shift4 Payments, Inc*., is on point:

> This suit ultimately turned on the scienter element, the arguments on which, across all filings, were simply not frivolous. Indeed, the Court found that Plaintiffs adduced *some* evidence tending to suggest scienter. While the claim fell well short on the holistic Tellabs analysis, it did not fall so short as to warrant sanctions. Rather, this was a well-litigated case in which the scope and clarity of the parties' briefings helped the Court narrow the points at issue.

2025 U.S. Dist. LEXIS 37009, at *6 (E.D. Pa. Mar. 3, 2025) (internal citation omitted).

In any event, even "the mere fact that an argument is meritless does not subject its proponent to sanctions." *Fintel*, 2004 U.S. Dist. LEXIS 13551, at *7 (citation omitted). "Failure on merits is not synonymous with frivolousness." *Id.* (citation omitted).

Intent on reprisal, Defendants nonetheless argue that Lead Counsel violated Rule 11 by "falsely asserting that ASC 606 is 'straightforward' and 'unequivocally' prohibits accrual of a disputed receivable." Br. at 12, 14-15. That is not what the AC alleges. The AC alleges that ASC 606 unequivocally prohibits companies from recognizing disputed receivables when, as here, ***the customer (i.e. United) explicitly stated it would not pay***.[4] ASC 606 is categorical in that regard. Under ASC 606, a company is not permitted to recognize revenue unless "[i]t is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for

---

[4] Indeed, Defendants attempted to demonstrate the complexity of ASC 606 in their Motion to Dismiss by citing Example 9 in ASC 606 which outlines an instance where a company can accrue a disputed receivable based on a determination that it has a legally enforceable right. ECF No. 41 at 25. However, what Defendants omit is that Example 9 is limited to where there is an "[u]napproved [c]hange in [s]cope and [p]rice" in a contract for construction. *See* Weinrib Decl. Ex. 2. Defendants do not, and cannot cite, any "Example" in ASC 606 stating that a company can recognize revenue where a customer states an intention not to pay; unsurprisingly given that ASC 606 prohibits this outright (as Defendants have already admitted).

10

the goods or services that will be transferred to the customer … In evaluating whether collectability of an amount of consideration is probable, an entity shall consider only the customer's ability ***and intention to pay that amount of consideration when it is due***." ¶¶5, 46. The Court agreed that this provision "seem[s] relatively straightforward" but then rejected Lead Plaintiff's contention that it is "unequivocal"—not because the foregoing cited language is ambiguous (which is all that should have been relevant)- but because another auditor, KPMG, noted that ASC 606 *as a whole* "requires significant judgment, estimation, and disclosures" and because GAAP *generally* is "far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions." Order at 14-15. Yet neither Defendants nor the Court identify a single word or phrase from the above-quoted language that is complex or unclear. Allowing Defendants to hide behind the complexity of ASC 606 or GAAP generally, with no regard for whether the actual provisions at issue are complex, sets an untenable precedent where defendants can never be held accountable for fraudulent misrepresentations based on GAAP or other accounting standard violations. Moreover, while Defendants seek sanctions by hurling nonspecific accusations of false assertions in the AC, citing to ¶¶41-54; 69-90, neither Defendants nor the Court identify any accounting standard that is misquoted or miscited in the AC.

As such, while the Court ultimately held that ASC 606's revenue recognition provisions *generally* are not sufficiently "unequivocal" to support a strong inference of scienter under *Tellabs*, it was far from frivolous for the AC to allege that Defendants' failure to comport with the "relatively straightforward" provision at issue led to an inference of scienter. Indeed, the Court agreed that the AC sets forth a plausible inference of scienter but nonetheless concluded that the non-culpable inference "better fits the facts alleged" and "more plausibly suggest[s]" that Defendants "were at worst negligent in their oversight." Order at 13, 14, 17, 20.

11

Further establishing that the AC's allegations are far from frivolous, Defendants *admitted* that ASC 606 prohibited them from recognizing the disputed amounts. Specifically, they admitted that their financial disclosures contained "misstatements," that their "decision to recognize all of the approximately $52.3 million in … disputed amounts … was not consistent with [ASC] 606 (*see* ECF No. 42-5 at 3 of 5), and that they "should have constrained a portion of the Disputed Amounts …. ***irrespective of the actual outcome of the dispute with United***"[5] (*see* Weinrib Decl. Ex. 1 at 2). Defendants cannot escape their own admissions.

Given the *plain language of ASC 606* stating that a company cannot recognize revenue from a customer who does not intend to pay, which Lead Counsel confirmed by consulting with an accounting expert that provided a comprehensive analysis prior to the filing of the AC (Weinrib Decl. ¶7 n.5), Defendants' *admissions* that they issued misstatements by recognizing the disputed revenue which was "not consistent with [ASC] 606," Defendants' *undisputed* contemporaneous awareness of United's intention not to pay the disputed amounts, and Defendants' *admission* that their beliefs as to the likely outcome of the arbitration with United should have been irrelevant when they improperly recognized the disputed amounts under ASC 606, there should be no question that Lead Counsel had a good faith basis for alleging that Defendants recklessly issued misstatements claiming that they had a right to recognize the disputed revenue, claiming they complied with GAAP, claiming they had effective internal control over financial reporting, failing to disclose that the disputed amounts would soar to over $52 million, and failing to disclose that the Company would continue to perform the services at issue under the CPA despite the dispute.

---

[5] This admission proves that it was impermissible for Defendants to recognize the disputed amounts whether or not they assumed the arbitration would resolve in Harbor's favor; it did not first become impermissible once it became "clear" post arbitral determination that "the Company would not collect any of the accrued amounts." Br. at 18-19.

At the very least, Lead Counsel had a good faith basis for alleging that it was reckless for Defendants not to warn investors of the material risk that their revenue recognition practices did not comport with ASC 606.

Defendants further argue that sanctions are warranted because Pomerantz should have known from its experience in *In re Turquoise Hill Res. Ltd.*, 2014 LEXIS 174096, at \*19 (S.D.N.Y. Dec. 16, 2014) that an accounting error alone does not suffice to plead scienter and that a clean audit letter undermines the inference of scienter. Br. at 13-14. Specifically, Defendants falsely state that the *Turquoise Hill* court "dismiss[ed] ***Pomerantz's*** complaint for failure to "allege that [the Company's] auditors disapproved of [the Company's] accounting practices or found any lack of internal controls prior to the restatement." *Id.* (emphasis added). Had Defendants taken even a cursory glance at the *Turquoise Hill* docket before filing the Sanctions Motion, they would have known that Pomerantz did not serve as Lead Counsel in that case; both the amended complaint and brief filed in opposition to defendants' motion to dismiss are signed solely by Bernstein Liebhard LLP. *See Megly v. Turquoise Hill Res. Ltd.*, No. 13-cv-08846, ECF Nos. 45, 50. Defendants also mischaracterize the AC, which does not allege scienter solely based on their "accounting error" or resulting need for a restatement. *See* ¶¶169-77; Opp. Br. at 13-23. The AC alleges scienter (for statements Defendants admit were false) based on several *undisputed facts*. It is <u>undisputed</u> that: Defendants each knew about the disputed amounts, each knew that United did not intend to pay, each knew the disputed amounts would grow to over $52 million, each knew that ASC 606 prohibited recognition of the disputed amounts because United had stated it had "no intention to pay the amount of consideration when it [was] due" (*see* ASC 606-10-25-1), each knew that they had nonetheless recognized the full disputed amounts as revenue each quarter of the Class Period, each should have known as a result that the financial statements therefore did not

13

conform to GAAP, and each should have known that persistent deficiencies in internal controls pertaining to ASC 606 enabled their fraudulent dissemination of false and misleading financial statements. *See* ¶¶169-77; Opp. Br. at 13-19. The AC additionally alleges scienter based on: 1) the Sarbanes Oxley certifications the Defendants signed, demonstrating they had designed and supervised Harbor's internal control over financial reporting, and Defendants' later admission that a material deficiency in those internal controls facilitated the misstatements (Defendants also previously fired an auditor that had revealed a weakness pertaining to Harbor's adoption of ASC 606 in the 2019 Form 10-K); 2) Defendants' signatures on the misleading financial statements attesting to the accuracy of the information set forth therein; 3) the number of quarters during which Defendants issued misstatements; 4) the core operations doctrine because the tens of millions at issue concerned the CPA with United from which the Company earned *all of its revenue*, which contract subsequently terminated following the dispute; and 5) the auditor reports that accompanied the annual Forms 10-K, which made clear that management held the responsibility for the contents of the financial statements. *See* ¶¶169-77; Opp. Br. at 19-23.

Regardless, Pomerantz *has* served as Lead Counsel in countless cases where courts have ruled that the existence of an accounting error/restatement at minimum *contributes (and in some instances could suffice on its own) to establishing the scienter inference. See, e.g.*, *Costas v. Ormat Techs., Inc.*, 2019 U.S. Dist. LEXIS 211349, at \*17 (D. Nev. Dec. 6, 2019) (finding that there is "no per se rule that restatements are insufficient to demonstrate scienter"); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 819-20 (N.D. Ill. 2017) (finding scienter where GAAP violated and restatement required)[6]. Moreover, to demonstrate that the fact of a clean audit letter does not automatically negate scienter, Lead Counsel cited to numerous cases where an auditor issued a

---

[6] Lead Counsel can provide many more examples if it would assist the Court's analysis.

clean audit letter for financials that contained misstatements and the court still found scienter. Opp. Br. at 18. The Court rejected these citations as distinguishable (and Defendants wrongly accuse Lead Counsel of mischaracterizing the law) because some "involve some form of irregularity in the audit or are otherwise inapposite." Order at 15-16, Br. at 15. However, there is no question here that the Grant Thornton's audit suffered "irregularities" because, despite its purported audit, the Forms 10-K they signed off upon were not in fact "clean."[7] There is also no dispute that Grant Thornton explicitly stated in the audit letters that "[t]hese financial statements are the responsibility *of the Company's management*." *See* ¶176 (emphasis added). In other words, while an auditor assesses compliance with, and applicability of, accounting standards, *it bases that assessment on representations from management.* That is precisely why the probative value of an auditor opinion is not appropriately resolved at the pleading stage, and its existence is certainly no basis for a finding of frivolity or the imposition of sanctions. *In re Diamond Foods, Inc.*, 2012 U.S. Dist. LEXIS 170704, at *23 (N.D. Cal. Nov. 30, 2012) ("In order to know how much reasonable reliance should be accorded the audit opinion, we will eventually have to evaluate what communications passed between the company and the auditor as well as what, if anything, was hidden from the auditor."); *See also* Opp. Br. at 19 (citing summary judgment cases to illustrate that the pleading stage is not the appropriate juncture at which to consider whether an audit opinion is exculpatory because involves a factual assessment of what management told the auditor).

---

[7] Indeed, following the arbitral determination, Defendants brought in "multiple additional accounting and legal advisors" *aside from Grant Thornton* to conduct a belated "detailed analysis of the complex accounting treatment leading to the recognition of certain disputed revenues and interest income." Weinrib Decl. Ex. 1 at 2. Defendants provide no explanation as to why they did not undertake this level of analysis *before* recognizing the revenue in the first place, if they found ASC 606 so inherently "complex."

15

Defendants also falsely state that Lead Counsel did not "mention" the audit opinion at all. Br. at 14. Lead Counsel referred to the audit letter in the AC, *see* ¶176, and in the Opp. Br., *see* Opp. Br. at 18. Defendants then falsely accuse Lead Counsel of "sleight-of-hand" in arguing that "Grant Thornton did not audit Harbor's 'six quarterly financial statements at issue[,]'" thereby "implying that the annual audits did not cover the same accounting for the same period." Br. at 15 (citing Opp. Br. at 18). Lead Counsel neither stated nor implied any such thing. The Opp. Br. acknowledges *three separate times* – including on the very page Defendants cite – that the *annual* financial statements are audited, though arguing those audit opinions are not exculpatory, and *never* implies or suggests in any way that the annual statements encompass different quarters than those at issue in this case. Opp. Br. at 3, 18, 22. Launching another baseless attack, Defendants accuse Lead Counsel of falsely stating that Grant Thornton identified the "collectability of disputed receivable balances from United Airlines," as a "critical audit matter," *though it did precisely that*, because in the first half of the sentence Grant Thornton also stated that "[t]he communication of critical audit matters does not alter in any way our opinion on the financial statements." Order at 16; Br. at 15-16. As stated, Lead Counsel never disputed the existence of the clean audit opinion but argued in good faith, citing caselaw, that it does not negate scienter and further argued, based on undisputed fact, that ultimate responsibility for the financial statements falls upon management.

Next in their arsenal of unfounded inflammatory accusations, Defendants demand the imposition of sanctions because "ASC 606 and Harbor's accrual of the disputed receivable were public facts throughout the class period." Br. at 17. The AC does not allege that Defendants misled investors by hiding the dispute with United or hiding the existence of ASC 606. The AC alleges *inter alia*, that "Defendants misstated contract revenue by including the disputed amounts and, while acknowledging the existence of the dispute and the Company's recognition of the disputed

16

amounts in the financial statements, Defendants did not disclose that they had recognized the amounts in dispute as revenue in contravention of ASC 606 despite United's stated intention not to pay, did not disclose that its belief that it would collect the disputed amounts from United had no reasonable basis, did not disclose that their recognition of disputed revenue created a material risk that the Company would have to restate its financials for every quarter in which they recognized disputed revenue." *See, e.g.*, ¶¶116, 124, 132, 140, 148, 156.[8] ***Defendants conceded the viability of this fraud theory because they did not (and cannot) contest falsity***. Their request for sanctions on this basis is thus unfathomably egregious.

Though relying heavily on the Order, the fact that this Court granted Defendants' Motion to Dismiss on scienter grounds does not *ipso facto* mean that Lead Counsel violated Rule 11. As this Court has previously held, even if "Plaintiff's positions [are] ultimately unsuccessful, they are not sanctionable under Rule 11" unless they are completely "devoid of arguable merit." *FM Prods.*, 2020 U.S. Dist. LEXIS 180427, at *4 (J. Griesbach). Having conceded that the AC adequately pleads four of the six elements of a Section 10(b) claim, Defendants' cannot credibly argue that the AC is devoid of any arguable merit. Courts in other Circuits have also routinely denied imposing sanctions when complaints are dismissed. *See, e.g.*, *In re Proshares Tr. II Sec. Litig.*, 2021 U.S. Dist. LEXIS 116315, at *4 (S.D.N.Y. June 22, 2021) (Rule 11 sanctions denied where plaintiffs explained their theory was supported by several publicly available sources); *In re*

---

[8] They also argue that if ASC 606 is so straightforward then the accounting error should have been obvious to investors "from the jump." Br. at 17. It is patently unreasonable and inappropriate to hold average investors to the same standard as corporate insiders who acknowledged familiarity with ASC 606, and claimed to have analyzed its applicability, and is patently unreasonable and inappropriate to ask investors to read past management's representations to discover the falsity of their disclosures. Moreover, this truth on the market argument is inappropriate at the pleading stage much less an appropriate basis for sanctions. *See Asher v. Baxter Int'l, Inc.*, 377 F.3d 727, 734 (7th Cir. 2004) ("A 'truth-on-the-market' defense is available in principle . . . but not at the pleading stage.").

*Sibanye Gold Ltd. Sec. Litig.*, 2020 U.S. Dist. LEXIS 210099, at \*66-67 (E.D.N.Y. Nov. 10, 2020) (no violation of Rule 11 despite the fact plaintiffs' conclusory allegations of false and misleading statements failed to state a claim and lacked factual support); *Ulbricht v. Ternium S.A.*, 2020 U.S. Dist. LEXIS 167702, at \*38 n.11 (E.D.N.Y. Sept. 14, 2020) (no sanctions where all factual contentions had evidentiary support or were reasonably based on belief or a lack of information); *AnchorBank, FSB v. Hofer*, 2010 U.S. Dist. LEXIS 157459, at \*8 (W.D. Wis. Nov. 23, 2010) (no sanctions where court found plaintiffs' theory for liability under federal securities laws was novel but not frivolous).

### 2. Lead Counsel Had a Good Faith Basis for the Loss Causation Allegations

Fed. R. Civ. P. 8's "short and plain statement" standard applies to loss-causation allegations. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005). The AC easily satisfies this standard by alleging that Harbor's stock plummeted 14.25% in response to Defendants' revelations that they violated ASC 606 by recognizing $52.3 million in disputed revenue, had a material weakness in internal control relating to ASC 606, and would thus need to restate seven financial statements (including the 1Q22, 2Q22 and 3Q22 Forms 10-Q, the 2022 Form 10-K, and the 1Q23, 2Q23, and 3Q23 Forms 10-Q). ¶¶163-66.

Defendants did not challenge loss causation in their motion to dismiss the original complaint, but mischaracterized the facts and the law to challenge loss causation in the Motion to Dismiss. Seemingly rejecting Defendants' arguments, the Court did not address loss causation in the Order. Nevertheless, Defendants seek sanctions based on the well-pled loss causation allegations, which easily satisfy Fed. R. Civ. P. 8, demonstrating a lack of comprehension (and a failure to conduct basic research before filing the Sanctions Motion) as to how the elements of loss causation and reliance differ. Specifically, Defendants argue that because the AC alleges an

18

"efficient market," that somehow negates loss causation. Br. at 18. The efficient market hypothesis (also known as the fraud on the market theory) is a means of demonstrating class-wide *reliance,* not loss causation. *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Moreover, though the AC clearly alleges that Defendants failed to disclose their "accounting error" (i.e. it was not known to the public during the Class Period) and though Defendants have argued that they did not knowingly or recklessly issue misstated financials with an accounting error, they nonsensically flip their argument entirely and state that their "obvious, public error" would have been "presumptively assimilated" into the market price so there could not be any loss causation. They do not (and cannot) explain how information they claim to not have known themselves was so public that in an efficient market it had to have already been incorporated into Harbor's market price. Mischaracterizing the AC, they next argue as they did in their Motion to Dismiss that Lead Counsel "admitted that the Company's stock price fell in response to Air Wisconsin's defeat in its litigation with United Airlines, rather than the simultaneously disclosed accounting correction." Br. at 18. Once again, their efforts to separate the announcement of the arbitral decision from the announcements of their accounting violations and internal control deficiencies fall flat, as they are clearly and inextricably intertwined. As a result of the arbitral decision, Defendants had no choice but to reveal that they had improperly recognized the disputed amounts as revenue in violation of ASC 606, and would therefore need to restate because these material errors (¶73) meant their financial statements did not comply with GAAP (¶¶165, 167). In any event, plaintiffs are not required to rule out other causes for a decline to satisfy the low pleading burden for loss causation. *See Silverman v. Motorola, Inc.,* 2008 U.S. Dist. LEXIS 76799, at *44 (N.D. Ill. Sept. 23, 2008); *Cohen v. Kitov Pharms. Holdings, Ltd*., 2018 U.S. Dist. LEXIS 45676, at *18 (S.D.N.Y. Mar. 20, 2018). Further, Defendants' characterization of the disclosure that Harbor would need to restate as

19

a disclosure of "an anticipated change in the historical accounting treatment of the Disputed Amounts" is disingenuous and misleading. Br. at 19. Until the end of the Class Period, investors had no inkling that Defendants had violated ASC 606 and that Harbor would need to restate multiple financial statements as a result. The AC's allegations suffice to plead loss causation and provide no basis for the vengeful sanctions Defendants seek. *See also In re In re Inotiv, Inc. Sec. Litig.,* 2024 U.S. Dist. LEXIS 57688, at *99 (N.D. Ill. May 7, 2012) ("Proving [loss causation] is often  a complex and fact-intensive exercise  that  typically  requires  expert  testimony…But "pleading loss causation requires no proof, just plausible allegations…")(internal quotation marks omitted).

In any event, again, even if the Court had determined that the loss causation allegations lack merit (which they clearly do not), "[m]eritless is not frivolous." *Super Pawn*, 2014 U.S. Dist. LEXIS 125459, at *11 ("Meritless is not frivolous, and — without more than Defendant's suspicion and an unsuccessful opposition brief—the Court cannot deem Katz's opposition brief to be the latter.").

### 3.  Lead Counsel Conducted a Reasonable Inquiry

Prior to filing the AC, Lead Counsel undertook a comprehensive investigation, which included reviewing public documents, SEC filings, analyst reports and advisories regarding Harbor, retaining and overseeing a third-party investigator with substantial experience conducting investigations in the securities fraud context to probe the factual predicate for claims alleged, and consulting with a forensic accounting expert who provided Lead Counsel with a thorough analysis of the applicable accounting standards and Defendants' violations thereof. *See* Weinrib Decl. ¶7. Indeed, Lead Counsel has collectively spent over 500 hours investigating, researching, and litigating this action. Courts in this Circuit have made clear that there is no Rule 11 violation where

20

"counsel performed a reasonable investigation prior to filing the complaint" into whether "factual contentions have evidentiary support." *Harding Univ. v. Consulting Servs. Group, L.P*., 48 F. Supp. 2d 765, 768-69 (N.D. Ill. 1999) (citation omitted). *See also Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 U.S. Dist. LEXIS 66745, at \*15 (E.D. Wisc. Jun. 22, 2011) (J. Griesbach) ("K-C's investigation and analysis, as revealed in the record, do not reflect the kind of recklessness and inattention to detail that Rule 11 is intended to address.") Based on this diligent investigation, Lead Counsel had a good faith basis for believing that Defendants issued false and misleading statements with scienter that caused the economic damages of Lead Plaintiff and the proposed class. Lead Counsel filed the AC in this matter for the sole and proper purpose of seeking to hold Defendants liable for those economic damages. Additionally, as described above, Lead Counsel further protected the interests of the proposed class by filing an opposition to the Motion to Dismiss reflecting good faith arguments rooted in existing precedent.

### C) The Sanctions Motion Distorts the Purpose of the PSLRA and Rule 11

The Court should see the Sanctions Motion for what it is—Defendants' thinly veiled attempt to distract the Court with self-righteous bluster (*see, e.g.,* "Harbor has made it clear that it will not play by the cynical rules preferred by the plaintiffs' bar," "The Court is the beneficiary of Harbor's resolve," Br. at 4) and distort Rule 11 into a fee shifting statute where "loser pays," with no care for the reputational harm that their inflammatory and error-ridden accusations could cause. The Seventh Circuit has emphasized that Rule 11 is not a fee shifting statute requiring the loser to pay. *Harding*, 48 F. Supp. 2d at 772 (citing *Mars Steel*, 880 F.2d at 933); *Clark v. Sun Elec. Corp*., 1995 U.S. Dist. LEXIS 4008, at \*9 (N.D. Ill. Mar. 22, 1995) (citing Seventh Circuit decisions finding that "Rule 11 is not wholesale fee-shifting but correction of litigation abuses. The Rule must not be used as an *automatic* penalty against an attorney" (internal citation and quotation

marks omitted)). Indeed, this Court has recognized that "the Rule is not to be used to improperly shift the cost of a lawsuit to the victor in violation of the otherwise applicable American rule under which each party bears its own costs." *Lee Enters*., 2006 U.S. Dist. LEXIS 53922, at \*6 (J. Griesbach). Rule 11 focuses on conduct rather than result. *Harding*, 48 F. Supp. 2d at 772.

Moreover, the Seventh Circuit has made clear that the Court must be mindful that "[w]hile the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution" because of the devastating impact it can have on a lawyer's reputation. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (quoting *FDIC v. Tekfen Constr. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988)). Given the effect of sanctions "beyond the merits of the individual case" and "on both the attorney's reputation" and "the vigor and creativity of advocacy by other members of the bar," sanctions should be imposed sparingly. *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994); *Lee Enters*., 2006 U.S. Dist. LEXIS 53922, at \*6 (J. Griesbach).

An overemphasis on compensation and punishment as goals would distort the purpose of the legislation and inhibit the filing of legitimate claims. Imposing sanctions and awarding fees simply because a complaint did not ultimately succeed would have the disastrous consequence of deterring zealous advocacy and deterring parties from bringing meritorious claims if there is no absolute guarantee of success. As this Court has recognized, the Seventh Circuit has cautioned that "a court must take care not to penalize arguments for legal evolution," *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987), and that "Rule 11 cannot be allowed to thoroughly undermine zealous advocacy," *Kraemer v. Grant Cnty.*, 892 F.2d 686, 690 (7th Cir. 1990)." *Urban*, 2024 U.S. Dist. LEXIS 147382, at \*25 (J. Griesbach). *See also Lee Enters.*, 2006 U.S. Dist. LEXIS 53922, at \*6 (J. Griesbach).

As described above and in the Weinrib Decl., Lead Counsel has complied with its obligations under Rule 11 by conducting a comprehensive investigation and basing the AC and Opp. Br. on securities fraud statutes and ample case law. Courts in this Circuit have declined to impose sanctions or find violations of Rule 11 even in cases where, unlike here, "Plaintiffs' management of their case left much to be desired" and "Counsel seemed to have little regard for the rules of evidence or this Court's orders." *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 2018 U.S. Dist. LEXIS 88864, at *8-9. (N.D. Ill. May 29, 2018). *See also Fintel*, 2004 U.S. Dist. LEXIS 13551, at *8 (declining to apply sanctions where plaintiff mistakenly applied a three year statute of limitations because "Rule 11 is meant to punish frivolity, not mistakes" (citation omitted)).[9]

## IV. CONCLUSION

The Sanctions Motion is merely one part of a continuing course of conduct Defendants have pursued, repeatedly hurling unfounded and *ad hominem* attacks against Lead Plaintiff and Lead Counsel (and the securities class action bar writ large) to distract from a determination of

---

[9] In a blatant violation of Federal Rule of Evidence 408, which protects communications pertaining to "compromise offers and negotiations," Defendants' attempt to vilify Lead Counsel by improperly revealing an offer to resolve this Action via a voluntary dismissal with prejudice and *mutual* releases (i.e. that *neither party* violated Rule 11 and that *each side* would bear its own costs). Br. at 4, 20. Defendants provide no support, because there is none, for their contention that Lead Counsel's offer was in any way improper. However, it *is* improper to distort the PSLRA and Rule 11 into a retaliatory tool to shift costs, *Lee Enters.*, 2006 U.S. Dist. LEXIS 53922, at *6 (citation and internal quotation marks omitted) (J. Griesbach), and it *is* improper to violate the Federal Rules of Evidence. Defendants' attack is all the more egregious because, as a basis for sanctions, they falsely state in the notice of motion accompanying their brief that "plaintiffs and their counsel…refus[ed] to withdraw their frivolous complaints within the safe harbor period following notice of this Rule 11 Motion." ECF No. 49. Defendants provided no such notice to Lead Counsel and, regardless, Lead Counsel nonetheless offered to voluntarily dismiss this case despite continued belief in its merit. Defendants' rejection of that offer and the instant Sanctions Motion demonstrate that Defendants seek to "eat their cake … and to have it too." *Harding*, 48 F. Supp. 2d at 773.

23

this Action on its merits. In their zeal to cast aspersions, Defendants have hastily proffered an error laden motion which provides *no evidence* that Lead Counsel displayed bad faith or a lack of diligence in investigating the claim, or that that Lead Counsel made any filings with an improper purpose, because there is none. *See Fintel*, 2004 U.S. Dist. LEXIS 13551, at \*8. The same cannot be said for the Sanctions Motion. The Sanctions Motion should thus be denied, with a reminder the defense counsel that the PLSRA mandate and Rule 11 are intended to deter abusive frivolous litigation, not to exact revenge and cause reputational harm to opposing counsel.

Dated: March 31, 2025                                            **POMERANTZ LLP**


By: *s/ Tamar A. Weinrib*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:     (212) 661-1100
Facsimile:     (917) 463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

24