**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| JON ARNE TOFT, Individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY<br><br>                Defendants. | No. 24-CV-00556 (WCG) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 & 15 U.S.C. § 78u-4**

John L. Kirtley
David R. Konkel
GODFREY & KAHN S.C.
833 East Michigan Street,
Suite 1800
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

Jason de Bretteville
Wesley Horton
STRADLING YOCCA CARLSON &
RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

*Counsel for Defendants*

April 14, 2025

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      RLF Admits Violating Rule 11...................................................................................3

        A.      The PSLRA Act Does Not Authorize RLF's Failure To Comply With Rule 11 .3

        B.      RLF Filed A Frivolous Placeholder Complaint ......................................................5

        C.      A Fee Award Against RLF Is Congressionally Mandated ...................................9

II.     Pomerantz Also Violated Rule 11 By Filing A Frivolous Complaint. ............................9

        A.      Pomerantz Did Not Allege Any Facts Supporting Any Inference Of Scienter ..10

        B.      Pomerantz Is Not Entitled To Ignore The Contents Of ASC 606.......................12

        C.      Pomerantz Knew Its Claim Was Frivolous...........................................................12

        D.      A Fee Award Against Pomerantz Is Congressionally Mandated........................14

CONCLUSION.....................................................................................................................16

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ................................................................................... 13

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
    579 F.3d 143 (2nd Cir. 2009) ........................................................................................... 5, 15

*In re Aust. & New Zealand Banking Grp. Ltd. Sec. Litig.*,
    12 F. Supp. 2d 255 (S.D.N.Y. 2010) ................................................................................... 5

*Browmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ............................................................................................. 12

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
    468 F. Supp. 3d 1048 (E.D. Wis. 2020) .............................................................................. 7

*City of Livonia Employees' Ret. Sys. v. Boeing Co.*,
    306 F.R.D. 175 (N.D. Il. 2014) ........................................................................................... 9

*Clark v. Sun Elec. Corp.*,
    1995 U.S. Dist. LEXIS 4008 (N.D. Ill. Mar. 22, 1995) .................................................. 15

*Divane v. Krull Elec. Co.*,
    200 F.3d 1020 (7th Cir. 1999) ............................................................................................. 9

*Dr. R.C. Samanta Roy Institute of Science & Technology, Inc. v. Lee Enterprises*
    2006 U.S. Dist. LEXIS 53922 (E.D. Wisc. Aug. 2, 2006) ............................................... 15

*Goldberg v. Household Bank, F.S.B.*,
    890 F.2d 965 (7th Cir. 1989) ............................................................................................... 6

*In re Harley Davidson, Inc. Sec. Litig.*,
    660 F. Supp. 2d 969 (E.D. Wisc. 2009) .............................................................................. 6

*O'Meara v. Shift4 Payments, Inc.*,
    2025 U.S. Dist. LEXIS 37009 (E.D. Pa. Mar. 3, 2025) .............................................. 11, 15

*Pension Trust Fund For Operating Eng. v. Kohl's Corp.*,
    266 F. Supp. 3d 1154 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018) ...... 8, 10, 14

*Roth v. OfficeMax, Inc.*,
    527 F. Supp. 2d 791 (N.D. Ill. 2007) .................................................................................. 6

*In re Star Gas Secs. Litig.*,
   745 F. Supp. 2d 26 (D. Conn. 2010) ...................................................................................... 9

*Thompson v. RelationServe Media, Inc.*,
   610 F.3d 628 (11th Cir. 2010) ............................................................................................... 5

*In re Turquoise Hill*,
   2014 U.S. Dist. LEXIS 174096 (S.D.N.Y. Dec. 16, 2014) ................................................. 13

**Statutes**

15 U.S.C. § 78u–4 .................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................................... 3

Fed. R. Civ. P. 11 ..............................................................................................................*passim*

Fed. R. Civ. P. 12(a)(1)(A) ....................................................................................................... 3

Geoffrey Miller, Pleading After Tellabs, 2009 Wis. L. Rev. 507,
   532 (2009) ............................................................................................................................... 1

H.R. Rep. No. 104-369 (1995) ................................................................................................ 15

Matthew Tokson, Judicial Resistance and Legal Change,
   82 U. Chi. L. Rev. Dialogue 901 (2015) .............................................................................. 14

William K. Sjostrom Jr., The Intersection Of Fee-Shifting Bylaws And Securities
   Fraud Litigation, 93 Wash. U. L. Rev. 379 ......................................................................... 14

**INTRODUCTION**

Congress passed the Private Securities Litigation Reform Act (the "PSLRA") to prevent and punish the filing of frivolous securities complaints that impose enormous costs on innocent defendants and deter use of public capital markets. As part of that effort, the PSLRA requires the District Courts to conduct a Rule 11 review at the conclusion of securities cases. That review should be employed here to identify and sanction Plaintiffs' persistent efforts to circumvent the gatekeeping requirements of the PSLRA—abuses that are not unique to this case.

The first abuse occurs at the start, when the securities law firm runs into court, ostensibly on behalf of an individual plaintiff, making reckless accusations of fraud based on nothing more than an announcement of bad news and a corresponding stock drop. The second, concomitant abuse is the failure to conduct the required factual investigation of the claim unless and until the securities law firm secures status as lead counsel, and with it the prospect of remuneration. The third abuse is the practice of persisting with the claim after failing to find facts supporting any inference of fraud, hoping instead to overwhelm the court with convoluted allegations and disingenuous mischaracterization of entire lines of authority. Each tactic was used here, and each damaged Defendants precisely in the manner that the PSLRA and Rule 11 are meant to prevent.

It is uncomfortable to ask for, much less to impose, monetary sanctions. But reluctance to sanction these abuses allows plaintiffs' attorneys carry on wantonly filing deficient complaints without concern for the financial and reputational harm inflicted upon innocent defendants. It gives plaintiffs' attorneys an incentive to do what Plaintiffs did here, file a frivolous placeholder, and when subsequent investigation fails to develop evidence of scienter, "throw every available bit of favorable information into the complaint in hopes that the judge will be induced by the sheer number of paragraphs to conclude that the complaint has alleged fraud with specificity." Geoffrey Miller, Pleading After Tellabs, 2009 Wis. L. Rev. 507, 532 (2009). The Court, by imposing sanctions, will

1

punish wrongful conduct and curtail rampant abuse, just as Congress intended.

**ARGUMENT**

The Rosen Law Firm's ("RLF") complaint evidences no attempt to allege a viable securities fraud claim. It consists of little more than wholesale copies of the company's disclosure of an accounting error. RLF filed this placeholder pleading with the admitted purpose of avoiding, or at least deferring, the expense of complying with *pre*-filing obligations imposed by Rule 11 and the PSLRA. *See* RLF Opp. at 12-14. This conduct is a direct attack on the PSLRA's gatekeeping provisions and requires repudiation.

RLF claims that use of a placeholder complaint is a common device that, in its self-serving estimation, "makes sense." *Id*. at 14. But frequent violation does not forge an exception to Rule 11. RLF does not—and cannot—point to any provision of the PSLRA that exempts securities fraud complaints from Rule 11's pre-filing obligations. Nor can RLF cite to a single case supporting its proposition that "[u]nder the PSLRA, the sufficiency of a complaint is tested after the appointment of lead plaintiff—not before." RLF Opp. at 3. That is because the PSLRA is explicitly designed to deter the filing of frivolous complaints. RLF's claim that it is allowed to file a frivolous complaint, and defer compliance with its pre-filing investigatory and pleading obligations until it knows the outcome of the lead plaintiff contest is anathema to both the letter and spirit of the PSLRA.

Here, Pomerantz LLP ("Pomerantz") followed suit by continuing to allege a fraud claim in the absence of any facts from which an inference of scienter could be drawn, pointing to nothing more than the Company's determination that it "should have constrained a portion of the Disputed Amounts" under GAAP. Pom. Opp at 12. Pomerantz did so despite Defendants' motion to dismiss the RLF complaint and motion for Rule 11 sanctions, which set forth in detail the legal standards for a viable complaint. Pomerantz also knew that the Company's outside auditors had described the complexity of the governing accounting rule, and had confirmed the accuracy of the Company's

2

accounting determination. *See* Mot. at 17-19. Unable to identify facts evidencing even a weak inference of scienter, Pomerantz had a duty to dismiss the action or request time for additional investigation. Instead, Pomerantz continued to rely on a formulation long held incapable of sustaining a securities fraud complaint, and falsely claimed that established law says otherwise. Pomerantz knew its complaint had "no chance of success" unless it confused the Court as to the law or facts. Pom. Opp. at 7. So it mischaracterized the law and the facts. That is the antithesis good faith.

## I. RLF Admits Violating Rule 11.

RLF's Opposition confirms that RLF intentionally filed its placeholder complaint on the assumption that it would investigate and amend later. RLF Opp. at 12-14. That is a plain violation of Rule 11. The firm does not—and cannot—identify any portion of the Federal Rules of Civil Procedure or the PSRLA that would allow it to defer compliance with its Rule 11 obligations until it secured appointment as lead counsel. That should end the Court's inquiry.

### A. The PSLRA Act Does Not Authorize RLF's Failure To Comply With Rule 11

RLF claims that its use of a placeholder complaint was justified because it "expected that the Complaint would be amended following appointment of a lead plaintiff and the completion of further investigation[.]" RLF Opp. at 16. The fact that RLF would make such an admission, explicitly and unapologetically, is breathtaking. It underscores the dire need of sanctions in this case. Sanctions would be necessary and appropriate based on the filing of a patently defective complaint alone. But the facts here are much worse. RLF's admits that it filed the placeholder complaint to secure lead counsel status without first doing the work to plead a viable claim consistent with the pleading requirements of Rule 9(b) and the PSLRA—in violation of Rule 11(b)(1). *See* Mot. at 9-10. RLF has no entitlement to defer avoid conducting an "in-depth investigation" (Opp. at 18) and attempting to properly plead a fraud claim until it is appointed lead counsel.

RLF attacks Defendants for following the Rule 12(a)(1)(A) deadline for filing a responsive

3

pleading, rather than a modified deadline that RLF never even requested. In making its argument, RLF repeatedly gets the law wrong. For example, RLF falsely claims that its complaint triggered the PSLRA's discovery stay. RLF Opp. at 14. But RLF knows full well that the PSLRA's discovery stay was triggered by Defendants' motion to dismiss, not filing of the complaint, which is why it "made sense" for Defendants to file it without delay. *See id*. at 13, n.5 ("Discovery is stayed upon the filing of a motion to dismiss.") (citing 15 U.S.C. § 78u–4(b)(3)(B)).

Despite RLF's repeated claims, there is no provision in the PSLRA that allows a plaintiff to defer complying with the Rule 11 obligations attendant to filing a securities fraud complaint until after the "lead plaintiff [] conduct[s] additional and more in-depth investigations to file a more fulsome amended complaint." Opp. at 18. That is false. The only tether RLF's argument has to the PSLRA is that "when related actions are filed during the 60-day notice period, they should be *consolidated* prior to a court's consideration of Lead Plaintiff motions." Opp. at 16, n. 11 (emphasis added) (citing 15 U.S.C. § 78u–4(a)(3)(B)). In other words, when multiple complaints are filed by competing plaintiffs—which did not happen here—there is a need to file a consolidated complaint after appointment of the lead plaintiff. But the filing of a complaint is not a prerequisite for appointment as lead plaintiff, and multiple complaints are an exception, not a rule: Pomerantz did not file an "initial" complaint in this very case. Nothing in the PSLRA excuses an initial complaint from review under Rule 11 just because an amended complaint may become appropriate. RLF may be callously indifferent to the damage a frivolous complaint can cause, but Congress is not.

To the contrary, the "PSLRA makes plain ... that the sanctions inquiry applies to 'any complaint, responsive pleading, or dispositive motion.' Plaintiff's counsel have identified no authority for the proposition that the filing of an amended complaint overwrites a Rule 11 violation contained in an original pleading and thereby prevents the imposition of sanctions under the

4

PSLRA." *In re Aust. & New Zealand Banking Grp. Ltd. Sec. Litig.*, 12 F. Supp. 2d 255, 266 (S.D.N.Y. 2010) (emphasis and citations omitted). As that court explained:

> It also cannot be ignored that the initial complaint is the vehicle that invokes a court's jurisdiction and sets the litigation in motion. In this case, upon the filing of the Original Complaint, the defendants were forced to retain counsel and conduct an initial investigation into the allegations contained in the Original Complaint in preparation for defending the lawsuit, and later, for participating in court-ordered mediation.

*Id.* The fact that securities fraud complaints are often filed quickly in the proverbial "rush to the courthouse" and later amended, does not somehow weigh against applying Section 78u-4(c) or Rule 11 to "original pleadings." The history and contents of the PSLRA flatly contradict any such reading.

Even the filing of a *viable* amendment "does not grant a get-out-of-jail-free card—one nonfrivolous complaint does not immunize the earlier filing of frivolous complaints." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 664 (11th Cir. 2010). "Because Congress extended [Rule 11] to 'any' complaint, when a plaintiff files multiple complaints, each must be scrutinized." *Id*. Here, RLF did not even attempt to draft a viable complaint. That cannot be reconciled with the PSLRA. "The express congressional purpose of the Reform Act provision was to increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2nd Cir. 2009). Deterrence is desperately needed here.

**B.      RLF Filed A Frivolous Placeholder Complaint**

RLF admits, repeatedly, that it failed to conduct an "in-depth" investigation before filing its complaint, because it hoped to draft a "fulsome amended complaint[,]" if it was selected as lead counsel. Opp. at 17-18; ECF No. 34 at 14 ("[T]he lead plaintiff will conduct additional and more in-depth investigations to file a more fulsome amended complaint."). In fact, RLF claims the *right* to impose this approach. Despite these admissions, RLF claims to have inadvertently drafted a non-frivolous complaint. Opp. at 9-14. That is false.

5

First, RLF's complaint is devoid of even the beginnings of any fraud theory, or even an explanation of what Defendants got wrong. Now, in defense of its woefully deficient complaint, RLF manufactures allegations that are not in its pleading. For example, RLF claims that the restated "revenue should not have been recognized based on the simple and known fact that United and Harbor had a dispute regarding the amounts owed to Harbor." Opp. at 13. That false allegation, borrowed from Pomerantz, is not in RLF's complaint. The only time ASC 606 even appears in RLF's complaint is in a single paragraph containing excerpts from the Company's disclosures—the complaint never mentions the contents of ASC 606, much less alleges that ASC 606 flatly bars recognition of a disputed receivable. RLF Compl., ¶53. The RLF complaint is devoid of any fraud theory whatsoever, not even the frivolous one later advanced by Pomerantz.

Second, RLF made no attempt to plead scienter. The only facts relating to the individual defendants plead by RLF are the individuals' positions within the company (Compl. ¶ 76), and signatures on public disclosures (*id*. ¶¶ 12, 69-70), neither of which can support an inference of scienter, as a matter of law. *See In re Harley Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 995 (E.D. Wisc. 2009); *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 804 (N.D. Ill. 2007). That leaves the announcement of an anticipated restatement resulting from an accounting error as the sole basis on which to make any inference of scienter on the part of any individual. But, as RLF knew well, and as noted in the prior Rule 11 briefing, "[r]estatements of earnings are common," *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir. 1989), and "mere allegations of GAAP violations [or] the restatement of income . . . are not sufficient to demonstrate that those who made the statements committed securities fraud," *Roth*, 527 F. Supp. 2d at 797. RLF has never asserted that this established law is wrongly decided.

Third, the RLF complaint is so thoroughly defective that it even fails to plead falsity, despite the ease of doing so in this case. But RLF could not be bothered to identify specific misstatements.

6

Instead, RLF copied entire tables from the Company's financial statements and flatly declared them to be "materially misstated as a result of improper revenue recognition." *See, e.g.*, Compl ¶¶ 19-20. The complaint does not identify which figures were misstated, to what extent, or why any figure is incorrect under GAAP, but simply—and impermissibly—"cites a dozen paragraphs and leaves it to [the Court] to pick out the allegedly false statements." *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1059 (E.D. Wis. 2020).

Fourth, RLF took the same approach with respect to the Company's certifications that its "disclosure controls and procedures were effective at the reasonable assurance level." Compl. ¶¶ 17-18; ECF No. 8 at 8. RLF copied and pasted them into the complaint, and then flatly declared them to be false "because the Company lacked adequate internal controls." *Id*. RLF plead no facts regarding the state of the Company's internal controls, much less facts that might begin to establish the falsity of these certifications. Thus, RLF's assertion that its complaint evidences a good faith attempt to state a viable fraud claim is belied by its own admissions and the complaint itself, even aside from the objectively false allegations made in its pleading.

Fifth, RLF's failure to conduct any meaningful investigation, or make a good faith attempt to plead a viable claim, is further established by RLF's admission that it cut and pasted false allegations into its pleading, including entirely false allegations of press releases, coverage by analysts at major brokerage firms, and a listing on a national exchange, which it now characterizes as "simple errors." Opp. at 15. But each falsehood was an effort to establish a required element of RLF's securities fraud claim, namely loss-causation and reliance. These falsehoods were therefore material, and RLF admits that these falsities were not the mistaken products of an "adequate" attempt to investigate Defendants conduct, but were cut and pasted by RLF from prior cases. *See* Opp. at 14-15.

RLF's admitted deferral of its investigative efforts, aside from its failure even to attempt to draft a viable complaint in the hope that it would only have to do that work if it secured status as lead

counsel, is an independent violation of Rule 11. ECF No. 34 at 12 ("RLF and Defendants expected that the Complaint would be amended following appointment of a lead plaintiff, and the completion of further investigation."); ECF No. 56 at 16 (same). RLF nonsensically asserts that Defendants "offer no basis" for concluding that "Plaintiff did not conduct a reasonable investigation into the facts"—but RLF's admissions and its thoroughly defective complaint say otherwise. Opp. at 9.

RLF nonetheless insists that its investigation was adequate because it "reviewed and analyzed, among other things, Harbor's SEC filings, public statements about Harbor, Harbor's restatement, and applicable accounting rules and guidance." Opp. at 14. If RLF actually conducted that review and analysis, it knew that the documents do not contain facts capable of supporting a securities fraud claim. For example, because those documents do not contain, and RLF did not plead, any facts indicating that any "senior executives at [Harbor] would have been so familiar with those rules so as to see a problem in the company's accounting before their auditors did[,]" the securities claim was doomed to fail. *Pension Trust Fund For Operating Eng. v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1167 (E.D. Wis. 2017) *aff'd*, 895 F.3d 933 (7th Cir. 2018); *See* Order at 14. RLF either did not conduct the meager investigation it claims, or it ignored the investigation's results.

RLF says that this is a simple instance of a plaintiff failing "to allege scienter on his or her first attempt." Opp. at 14. Not so. This is an instance of expert counsel making no such attempt, and instead purposefully disregarding its pre-filing obligations in order to minimize its up-front investment in the case. RLF bet that Defendants and the Court would look the other way upon the filing of an amended complaint. A choice it should have backed away from when Defendants provided RLF with their Rule 11 motion for sanctions twenty-one days in advance of filing it. None of the decisions cited by RLF as weighing against the imposition of sanctions addresses remotely analogous circumstances. The question before the Court is simple: Is a securities law firm allowed to file a frivolous complaint simply because it has not yet secured status as lead counsel? We

8

respectfully submit that that answer is no.

### C. A Fee Award Against RLF Is Congressionally Mandated

RLF asserts that any sanction should take the form of censure, and that monetary sanctions are not warranted because "RLF has not caused Defendants to expend any additional resources." Opp. at 19. This argument is so patently unfounded as to further evidence the need for a fee award. First, RLF's own case law approves of the award of monetary sanctions in the amount of "legal costs [that] are the direct result of sanctionable conduct[.]" *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999). Indeed, the PSLRA "establishes a presumption that, for substantial failure of any complaint to comply with any requirement of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and costs." *In re Star Gas Secs. Litig.*, 745 F. Supp. 2d 26, 38 (D. Conn. 2010) (internal quotations and citations omitted). Moreover, the notion that RLF's use of a placeholder complaint imposed no costs on Harbor is belied by the record of this case, common sense, and prior decisions in this circuit. At a minimum, Defendants were forced to hire counsel and litigate against public allegations of fraud, and courts recognize that such allegations are market relevant events. *See, e.g., City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180-181 (N.D. Il. 2014) ("The reason for these requirements includes the fact that the mere filing of a broad, class action securities complaint is a market relevant event for any reputable company.")

### II. Pomerantz Also Violated Rule 11 By Filing A Frivolous Complaint.

Pomerantz spends the majority of its opposition arguing that it advanced a colorable fraud claim, ignoring the fact that it relied on the same set of deficient allegations advanced by RLF. These allegations are of a nature that have long been held incapable of supporting any inference of scienter. Pomerantz added to this misbehavior by advancing a mischaracterization of ASC 606 that, even if accurate, was legally incapable of bolstering RLF's baseless complaint. Pomerantz is a highly experienced and specialized firm who had the benefit of extensive prior briefing in this case. Its

lawyers know that an accounting error, even a purportedly obvious accounting error, is not sufficient to state a claim for securities fraud, particularly where an outside auditor has examined and concurred in the accounting error. Pomerantz has no excuse for its persistent reliance on deficient factual allegations, much less its mischaracterizations of law and fact made in defense of its pleading.

Even now, Pomerantz's continues to resort to prevarication. For example, Pomerantz falsely claims that "[i]t is undisputed that: Defendants . . . each knew that ASC 606 prohibited recognition of the disputed amounts because United had stated it had 'no intention to pay the amount of consideration when it [was] due.'" Pom. Opp. at 13. This is blatantly false. Defendants' outside auditors publicly described the complexity of the revenue recognition issue related to the dispute, approved the inclusion of the revenue in the Company's audited results, and later stated that only a "portion" of the disputed receivables should have been constrained. Pom. Opp at 12. Pomerantz's complaint does not contain any facts indicating that, despite this plainly contrary record, any individual defendant has ever *known* "that ASC 606 prohibited recognition of the disputed amounts."

A.     **Pomerantz Did Not Allege Any Facts Supporting Any Inference Of Scienter**

As discussed above, absent facts speaking to an individual defendant's knowledge of the accounting error during the class period, and addressing the outside auditors' clean audit letter, there was no basis for any inference of scienter as a matter of law—much less the requisite strong inference—and the complaint had no chance of success. This bright line has existed for decades. *See, e.g., Kohl's Corp.*, 266 F. Supp. 3d at 1167-68. Pomerantz could not distinguish this law or identify a single case indicating that the factual allegations in its complaint were viable. Nor did Pomerantz argue for any change in the existing law. Instead, Pomerantz resorted to sleight of hand and outright prevarication in order to blur the bright line drawn by the courts.

Pomerantz also mischaracterizes the Court's order of dismissal as a finding that its claim was not frivolous, asserting that the Court "only dismissed because it found the opposing inference 'more

10

plausibl[e].'" Opp. at 9. Not so. The Court's "more plausible" language merely tracks the PSLRA's requirements that the court weigh competing inferences; it does not imply that Pomerantz's proffered inference was even remotely plausible, much less potentially capable of supporting the requisite "strong" inference. *See* Order at 12. The Court did not have to weigh competing inferences because Pomerantz did not offer facts supporting even a weak inference of scienter. Nothing in the Court's order would prevent it from finding Pomerantz's complaint to be frivolous.

Pomerantz's cited case law is equally unhelpful to its cause. *See, e.g.,* Opp. at 10 *citing O'Meara v. Shift4 Payments, Inc.*, 2025 U.S. Dist. LEXIS 37009, at *6 (E.D. Pa. Mar. 3, 2025). That case was part of the court's mandatory PSLRA evaluation, rather than the result of a litigated motion for Rule 11 sanctions. The court noted that, unlike here, "Defendants do not contend Plaintiffs or their counsel have violated their Rule 11 obligations." *Id.* at *6. The court also noted that, unlike here, "all filings advanced claims, defenses, and other legal contentions [were] warranted by existing law." *Id.* at *5. Indeed, that court "sided with Plaintiffs on two of the three contested elements." *Id*. Here, the Court did not adopt Plaintiff's position with respect to any contested element, and did not find a factual basis for any inference of scienter, much less the requisite strong inference.

Pomerantz argues otherwise, but Defendants do not seek sanctions merely because Pomerantz was unsuccessful on its claims. This motion is brought because Pomerantz knowingly filed a complaint whose viability depended on Pomerantz misleading the Court as to the facts or the law. Pomerantz's repeated claim that a mere accounting error could suffice as evidence of fraud— even where the outside auditor specifically concurred in the erroneous accounting treatment—is precluded by mountains of contrary law. Pomerantz had the benefit of the prior briefing in this case, including a motion to dismiss and a motion for sanctions. That briefing, and its own extensive experience, made it obvious that the fraud claim had no chance of success under established law. Pomerantz's knowing persistence makes it subject to mandatory sanctions under PSLRA.

**B. Pomerantz Is Not Entitled To Ignore The Contents Of ASC 606**

Pomerantz tries to justify its mischaracterization of ASC 606 with waves of double-speak. For example, Pomerantz denies having described ASC 606 as unequivocally prohibiting recognition of a disputed receivable. Pom. Opp. at 10-11. At the same time, Pomerantz admits having alleged "that ASC 606 unequivocally prohibits companies from recognizing disputed receivables when, as here, the customer (i.e. United) explicitly stated it would not pay. ASC 606 is categorical in that regard." *Id*. at 10 (emphasis omitted). In any event, the Court rightly rejected this false hyper-simplification of ASC 606. Order at 14. Indeed, as noted above, the Company's corrective disclosures announcing the restatement indicate that it, and its outside auditors, continue to believe that ASC 606 permits the recognition of at least a portion of the disputed receivables, *i.e.*, that the Company's prior error was limited to its failure to constrain "a portion of the Disputed Amounts." Pom. Opp at 12. Pomerantz's continued insistence that ASC 606 is "categorical" in prohibiting recognition of any disputed receivable is contradicted by the factual record it cites.

As this Court previously held, the only "fact" Pomerantz offered in support of its mischaracterization is a single sentence it lifted from ASC 606. Incredibly, Pomerantz now faults the Court for looking beyond its cherry-picked quote. But when Pomerantz asserts that the quoted portions of ASC 606 are "all that should have been relevant[,]" it again misstates the law. The Court properly considered the entirety of an accounting provision liberally cited in the complaint. *See Browmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Pomerantz's objection to Defendants "hid[ing] behind the complexity of ASC 606[,]" should be seen for what it is: an admission that Pomerantz intentionally omitted portions of ASC 606 that contradict its false characterizations of that rule. Opp. at 14.

**C. Pomerantz Knew Its Claim Was Frivolous**

Even if ASC 606 could be properly characterized as unequivocally barring the accrual of the

12

disputed United receivables (and it cannot), Pomerantz's complaint still had no chance of success under established law. Grant Thornton's clean audit letter, which is incorporated into Pomerantz's complaint by reference, is "unequivocal" in stating that application of ASC 606 to the disputed receivables involved a highly complex judgment call, a judgment call that Grant Thornton examined in great detail before validating the Company's accounting treatment. ECF 42-4. Nothing in Pomerantz complaint addresses, much less contradicts, the audit letter's characterization of this specific application of ASC 606 as highly complex.

As Pomerantz knows full well, the "fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published, particularly when the error was a matter of judgment." *In re Turquoise Hill*, 2014 U.S. Dist. LEXIS 174096, at *19 (S.D.N.Y. Dec. 16, 2014).[1] This well-established law was plainly fatal to Pomerantz's complaint, and was thoroughly reviewed in the prior briefing. Pomerantz's contrary claim that "the existence of an accounting error/restatement at minimum contributes (and in some instances could suffice on its own) to establishing the scienter inference" is both so general as to be meaningless, and at odds with each of the decisions it cites for this proposition. *Id.* at 14. None of Pomerantz's cited cases found that the alleged accounting error could alone support the requisite strong inference of scienter. To the contrary, each decision explicitly points to facts speaking to scienter beyond the accounting error, facts that are wholly absent from, and without analog in, the Pomerantz complaint. *See , e.g., In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 819-20 (N.D. Ill. 2017) (finding a compelling inference of scienter where, among other things, "[t]hree independent auditing firms concluded that [the company's] internal controls were ineffective, but Defendants dismissed the first two firms instead of remediating the weaknesses that those firms uncovered[.]").

---

[1] Pomerantz complains that it did not serve as lead counsel in *In re Turquoise Hill*, but does not claim to have been ignorant of the decision, to have withdrawn, that it failed to receive notice of the decision from the court, or that it failed to keep its client apprised of the status of the litigation. Opp. at 13.

13

Pomerantz again misstates the law by claiming to have "cited to numerous cases where an auditor issued a clean audit letter for financials that contained misstatements and the court still found scienter." Opp. at 14-15. As Pomerantz concedes, however, the Court previously discounted each of these misleadingly cited cases because they all "involve some form of irregularity in the audit or are otherwise inapposite." Opp. at 15 *citing* Order at 15-16. So, Pomerantz resorts to a circular argument that the audit letter must have suffered irregularities because the financial statements had to be restated. *Id*. But Pomerantz's bad logic runs headlong into widespread judicial recognition of the fact that accounting mistakes happen, even with respect to seemingly straightforward accounting rules, without detection by outside auditors, absent any irregularity, and therefore do not support a fraud claim. *See, e.g., Kohl's Corp.*, 266 F. Supp. 3d at 1167-68.

**D.      A Fee Award Against Pomerantz Is Congressionally Mandated**

Pomerantz claims, ironically and without legal basis, that Defendants' attempts to enforce Rule 11 and the PSLRA are an attempt to "distort Rule 11 into a fee shifting statute . . . with no care for the reputational harm that their inflammatory and error-ridden accusations could cause." Opp. at 21-23. Not so. Congress intended the Rule 11 inquiry, as incorporated into the PSLRA, to function as a fee-shifting mechanism under the circumstances present here, and installed in the PSLRA a presumption in favor of fee awards as the appropriate form of sanction. *See* William K. Sjostrom Jr., The Intersection Of Fee-Shifting Bylaws And Securities Fraud Litigation, 93 Wash. U. L. Rev. 379 ("The changes, among other things, impose fee-shifting, a notion disfavored by Rule 11."). Unfortunately, there has been judicial reluctance to embrace Congress' mandate. *See* Matthew Tokson, Judicial Resistance and Legal Change, 82 U. Chi. L. Rev. Dialogue 901 (2015) ("[J]udges are not conducting the statute's mandatory sanctions inquiries in the vast majority of cases decided under the PSLRA.") But that is not a to refrain from following Congress's command.

After noisily protesting against Congress' explicit intent, Pomerantz cites a number of cases standing for the unremarkable proposition that Rule 11 does not automatically apply against the losing side. *See* Opp. at 21 citing *Harding University v. Consulting Servs. Grp., L.P.*, 48 F. Supp. 2d

14

765, 772 (N.D. Ill. 1999); *Clark v. Sun Elec. Corp.*, 1995 U.S. Dist. LEXIS 4008, at *9 (N.D. Ill. Mar. 22, 1995). But Defendants do not seek sanctions merely because Pomerantz lost. Rather, Defendants seek sanctions because Pomerantz: (i) relied upon factual allegations that courts have found, without exception and for decades, do not suffice to state a securities fraud claim, (ii) ignored extensive prior briefing in which this law was painstakingly reviewed and applied to the factual record presented in Pomerantz's complaint, (iii) fought to prevent the Court from reviewing the patent deficiencies in the complaint filed by RLF so that it could secure status as lead plaintiff on the basis of that frivolous complaint, and (iv) mischaracterized the law and the facts.

Pomerantz cites several cases in support of the generic notion that Rule 11 sanctions should be imposed "sparingly." Opp. at 22. None suggests that this Court should shy away from issuing sanctions here. As one example, Pomerantz cites this Court's decision in *Dr. R.C. Samanta Roy Institute of Science & Technology, Inc. v. Lee Enterprises*, but ignores the Court's admonition that while "the primary purpose of a Rule 11 sanction is to punish the party or attorney who violates the rule, it also serves to spare an innocent party the cost of responding to frivolous suits by shifting costs and attorneys fees to the responsible party." *Id*. at *5-6. Pomerantz likewise ignores the fact that the PSLRA was meant to "increase the frequency of Rule 11 sanctions in securities litigation[.]" *ATSI Comms.*, 579 F.3d at 152; 15 U.S.C.§ 78u-4(c)(1). As the conference report explains:

> Existing Rule 11 has not deterred abusive securities litigation. ***Courts often fail to impose Rule 11 sanctions even where such sanctions are warranted***. When sanctions are awarded . . . the amount of the sanction is limited to an amount that the court deems sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the costs imposed on the victim by the violation. [Asa result], ***courts have been unable to apply Rule 11 to the complaint in such a way that the victim of the ensuing lawsuit is compensated for all attorney's fees and costs incurred in the entire action*** …. ***The Conference Committee intends this provision to impose upon courts the affirmative duty to scrutinize filings closely and to sanction attorneys or parties whenever their conduct violates Rule 11(b)***.

H.R. Rep. No. 104-369, at 39-40 (1995) (Conf. Rep.) (footnote omitted).

**CONCLUSION**

Wide-spread failure to curtail frivolous securities litigation by imposing sanctions provides plaintiffs' firms with impunity, and contributes to the fact that, even after passage of the PSLRA, RLF and Pomerantz find it cost-effective to file as many strike suits as possible, even where a factual basis is lacking. A fee award is the statutorily specified and appropriate remedy.

April 14, 2025                                                  Respectfully submitted,

_s/ David R. Konkel_____

Jason de Bretteville (CA# 195069)         John L. Kirtley (WI# 1011577)
jdebretteville@stradlinglaw.com           jkirtley@gklaw.com
Wesley Horton (CA# 307567)                David R. Konkel (WI# 1097244)
whorton@stradlinglaw.com                  dkonkel@gklaw.com
STRADLING YOCCA CARLSON &                 GODFREY & KAHN S.C.
RAUTH LLP                                 833 East Michigan Street, Suite 1800
660 Newport Center Drive, Suite 1600      Milwaukee, Wisconsin 53202
Newport Beach, CA 92660                   Telephone: (414) 273-3500
Telephone: (949) 725-4000                 Facsimile: (414) 273-5198
Facsimile: (949) 725-4100

*Counsel for Defendant*