UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JON ARNE TOFT, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY. <br><br>     Defendants. | **Case No: 1:24-cv-00556-WCG** <br><br> **LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SANCTIONS** |

**<u>TABLE OF CONTENTS</u>**

ARGUMENT ........................................................................................................................... 1

    A.    The Motion Complies with the PSLRA Mandate and 28 U.S.C. §1927 ...................... 2

        1)    There is no Safe Harbor Requirement Under the PSLRA, 15 U.S.C. §78u-4(c)(1) ...................................................................................................... 2

        2)    The PSLRA Mandate Covers Each of Defendants' Sanctionable Filings ........ 3

        3)    There is no Safe Harbor Requirement Under 28 U.S. Code § 1927 ................. 4

    B.    Defendants Should be Sanctioned for Violating Rule 11(b) and 28 U.S. Code § 1927 ........................................................................................................................ 5

        1)    Defendants Should be Sanctioned for Their Premature MTD .......................... 6

        2)    Defendants Should be Sanctioned for Their Reconsideration Letter ............... 8

        3)    Defendants Should be Sanctioned for Their Sanctions Motion ...................... 10

CONCLUSION .................................................................................................................... 15

i

**Page(s)**

**Cases**

*Bielfeldt v. Graves*,
  2018 U.S. Dist. LEXIS 8862 (C.D. Ill. Jan. 19, 2018) ...............................................................3

*Costas v. Ormat Techs., Inc.*,
  2019 U.S. Dist. LEXIS 211349 (D. Nev. Dec. 6, 2019).........................................................10

*DirecTV, LLC v. Spina*,
  2016 U.S. Dist. LEXIS 72510 (S.D. Ind. June 3, 2016) .........................................................4

*Gorman v. Coogan*,
  2004 U.S. Dist. LEXIS 24861 (D. Me. Nov. 24, 2004)..........................................................4

*In re Champion Enters. Sec. Litig.*,
  145 F. Supp. 2d 871 (E.D. Mich. 2001)..................................................................................7

*In re Diamond Foods, Inc.*,
  2012 U.S. Dist. LEXIS 170704 (N.D. Cal. Nov. 30, 2012).....................................................13

*In re Nora*,
  778 F.3d 662 (7th Cir. 2015) ..................................................................................................11

*In re Turquoise Hill*,
  2014 LEXIS 174096 (S.D.N.Y. 2014)....................................................................................10

*Miller v. Champion Ent Inc., et al.*,
  2:99-cv-74231-JF (E.D. Mich.) ..............................................................................................7

*O'Meara v. Shift4 Payments, Inc.*,
  2025 U.S. Dist. LEXIS 37009 (E.D. Pa. Mar. 3, 2025)..........................................................14

*Pension Trust Fund for Operating Eng'r v. Kohl's Corp.*,
  266 F. Supp. 3d 1154 (E.D. Wisc. Jul. 20, 2017) ..........................................................12, 13

*Promier Prods., Inc. v. Orion Cap. LLC*,
  708 F. Supp. 3d 1376 (N.D. Ill. Dec. 22, 2023)....................................................................4

*Retired Chicago Police Ass'n v. City of Chicago*,
  76 F.3d 856 (7th Cir. 1996) ....................................................................................................4

*Valerius v. Geraghty*,
  2010 U.S. Dist. LEXIS 161540 (E.D. Pa. 2010) ..........................................................7, 9, 15

Case 1:24-cv-00556-WCG    Filed 04/28/25    Page 3 of 20    Document 65

*Weeks v. Samsung Heavy Indus. Co.*,
1996 U.S. Dist. LEXIS 17832 (N.D. Ill. Nov. 27, 1996)....................................................11, 12

**Statutes**

15 U.S.C. §78u-4 ..................................................................................................1, 2, 3, 4

28 U.S.C. §1927................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 7......................................................................................................8

Fed. R. Civ. P. 11 ............................................................................................. *passim*

E.D. Wis. Civ. R. 7 ...............................................................................................5, 8

E.D. Wis. Gen. R. 83(f) ...........................................................................................8

**Other Authorities**

7th Cir. Standards for Prof. Conduct, *Lawyer's Duties to Other Counsel* .....................................11

Case 1:24-cv-00556-WCG     Filed 04/28/25     Page 4 of 20     Document 65

## ARGUMENT[1]

Defendants' opposition to this Motion simply underscores why sanctions against them are warranted. The Motion makes clear that Defendants unreasonably and vexatiously multiplied proceedings by filing the Premature MTD, Reconsideration Letter, and Sanctions Motion, each rife with false statements of law and fact, for the improper purpose of seeking to end this litigation via intimidation and procure retribution against counsel for claims pursued in good faith. Rather than address the detailed recitations of their sanctionable filings or the egregious falsities presented to the Court therein, they defend themselves against the Motion with numerous fallacies: (i) Plaintiffs' counsel *collectively* had no right to "rely upon" the "defective" initial complaint, though *Pomerantz* did not draft, sign, or file the initial complaint, and notwithstanding the fact that the initial complaint has no bearing on the frivolity or vexatious nature of Defendants' sanctionable filings; (ii) Plaintiffs' counsel *collectively* failed to comply with the "safe harbor" notice requirement of Rule 11(c)(2), though *Pomerantz* filed its Motion pursuant to 15 U.S.C. §78u-4(c)(1) and 28 U.S.C. §1927, neither of which contain a notice requirement; (iii) Defendants have every right to participate in the Court's mandatory review of Plaintiffs' Rule 11(b) compliance but

---

[1] "AC" refers to the Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on September 10, 2024 (ECF No. 37); all "¶_" references are to the AC. "Premature MTD" refers to Defendants' Motion to Dismiss, filed on June 7, 2024 (ECF No. 7). "Motion to Dismiss" refers to Defendants' Memorandum of Law in Support of Their Motion To Dismiss Plaintiff's First Amended Complaint, filed on September 24, 2024 (ECF No. 41). "Reconsideration Letter" refers to Defendants' Letter Motion for Reconsideration, filed on July 12, 2024 (ECF No. 25). "Order" refers to the Decision and Order Granting Defendants' Motion to Dismiss," issued on January 31, 2025 (ECF No. 46). "Sanctions Motion" and "Br." references are to Defendants' Memorandum of Law in Support of Their Renewed Motion for Sanctions Under Federal Rule of Civil Procedure 11 & U.S.C. 78u-4, filed on March 3, 2025 (ECF No. 50). "Motion" refers to Lead Plaintiff's Memorandum of Law in Support of Motion for Sanctions, filed on March 31, 2025 (ECF No. 59). "Opp." Refers to Defendants' Opposition to Plaintiffs Motions for Sanctions, filed on April 14, 2025 (ECF No. 63). "Reply" refers to Defendants' Reply in Support of Motion for Sanctions Under Federal Rule of Civil Procedure 11 & 15 U.S.C. §78u-4, filed on April 14, 2025 (ECF No. 64). "RLF" refers to The Rosen Law Firm P.C.

1

are not subject to that review themselves, though 15 U.S.C. §78u-4(c)(1) requires the Court to assess compliance as to "*all parties and all attorneys;*" and (iv) Defendants have every right to hurl accusations of collusion and frivolity at Plaintiffs' counsel, but do not need to support those accusations with accurate legal and factual support. Defendants' self-righteously declare they have shown "rare courage" in "boldly" standing up for "innocent companies who dare access the capital markets." Opp. at 14. But what Defendants have actually shown is troubling apathy toward truth, indifference to the law, and carelessness in attacking well-respected counsel. Their misconduct should be sanctioned.

### A. The Motion Complies with the PSLRA Mandate and 28 U.S.C. §1927

As the PSLRA requires, and in the interests of judicial efficiency, Lead Plaintiff waited until "final adjudication" to file the Motion pursuant to both 15 U.S.C. §78u-4(c)(1), which requires the Court to assess whether "*all parties and all attorneys* have complied with each of the certification elements of Rule 11(b)," and 28 U.S.C. §1927, which empowers the Court to sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The Motion makes clear that Defendants' Premature MTD, Reconsideration Letter, and Sanctions Motion are each frivolous, littered with false statements of fact and law, filed for the improper purpose of intimidating Plaintiffs and their counsel, and unnecessarily multiplied the proceedings in this case. In accordance with 15 U.S.C. §78u-4(c)(1) and 28 U.S.C. §1927, Defendants should thus be sanctioned. Attempting a bait and switch, Defendants accuse Plaintiffs' counsel *collectively* of failing to provide "safe harbor" notice, though that requirement is limited to Rule 11(c)(2).

### 1) There is no Safe Harbor Requirement Under the PSLRA, 15 U.S.C. §78u-4(c)(1)

Defendants argue that the Court should not hold them or their counsel accountable for sanctionable filings because they did not receive twenty-one days' notice of this Motion pursuant

2

to Rule 11(c)(2)'s safe harbor requirement. However, as Defendants concede, the PSLRA does not incorporate Rule 11(c)(2)'s safe harbor requirement. Opp. at 2; *See also Bielfeldt v. Graves*, 2018 U.S. Dist. LEXIS 8862, *7 ("Given the mandatory nature of the inquiry contained within the [PSLRA], courts have held that the "safe harbor' provision contained within Rule 11 is inapplicable"). Attempting to skirt this undisputed fact, Defendants inappropriately ask this Court to limit its mandatory PSLRA review to the "Plaintiffs' Firms," Reply at 2-3, and instead apply Rule 11(c)(2) to preclude adjudication of the Motion. Unfortunately for Defendants, the Court cannot and should not disregard the plain language of the statute, which explicitly directs courts to "include specific findings in the record as to whether *all parties and all attorneys* have complied with each of the certification elements of Rule 11(b)." 15 U.S.C. §78u-4(c)(1).

Incredibly, after first arguing that Plaintiff should have given safe harbor notice and thus filed the Motion *too soon*, Defendants then argue two paragraphs later than Plaintiff should have moved for sanctions "at an earlier point in the litigation," and thus filed the Motion *too late* (though they simultaneously acknowledge that the PLSRA mandated review cannot occur until the "end of a litigation"). Opp. at 3-4. This incoherent argument is yet another example of how logic, fact, and law play no part in Defendants' vexatious filings. Indeed, even after this Court clearly ruled that it "cannot decide [whether sanctions are appropriate] until final adjudication of the case," Defendants still applaud themselves for filing their initial motion for sanctions against RLF prematurely. Opp. at 3-4, ECF No. 47.

**2) The PSLRA Mandate Covers Each of Defendants' Sanctionable Filings**

In the alternative, Defendants argue without a single supporting cite that even if the Court considers the Motion under the PSLRA mandatory review provision, that mandate is limited to "any complaint, responsive pleading, or dispositive motion" and thus only covers their Premature

MTD. Reply at 3. *See* 15 U.S.C. §78u-4(c)(1). Not so. The PSLRA mandate encompasses the Reconsideration Letter and the Sanctions Motion as well.

There is no dispute that requests for dismissal are dispositive. There is also no dispute that in the Reconsideration Letter Defendants asked this Court to rule on their Premature MTD and dispose of this litigation. ECF No. 25. The PSLRA mandatory review provision thus encompasses the Reconsideration Letter. The PLSRA mandatory review provision also covers the Sanctions Motion. *See Gorman v. Coogan*, 2004 U.S. Dist. LEXIS 24861, *70 (D. Me. Nov. 24, 2004) (holding that the PSLRA mandatory review includes sanctions motions). *See also DirecTV, LLC v. Spina*, 2016 U.S. Dist. LEXIS 72510, *7 (noting that "[t]he Seventh Circuit Court of Appeals has instructed that motions for sanctions [] whether brought pre- or post-trial, are dispositive…"); *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 868-69 (7th Cir. 1996)(finding that a motion for Rule 11 sanctions, *even when filed post dismissal*, is a dispositive motion). Further, Defendants filed the Sanctions Motion after Lead Plaintiff made clear that he intends to appeal the Order. ECF No. 48. Though the Sanctions Motion is baseless, it directly impugns the merits of the case by arguing that the AC had "no chance of success." Br. at 14; Reply at 3, 10, 11, 13. *See, e.g., Promier Prods., Inc. v. Orion Cap. LLC,* 708 F. Supp. 3d 1376, 1382 (N.D. Ill. Dec. 22, 2023)(recognizing that a motion for sanctions can be dispositive). Indeed, Defendants have plainly conceded that their primary motivation in improperly filing the first motion for sanctions was to end this litigation even prior to the filing of the AC. Br. at 12; Reply at 2.

### 3) There is no Safe Harbor Requirement Under 28 U.S. Code § 1927

In any event, *each* of Defendants' frivolous filings is sanctionable under 28 U.S. Code § 1927. Defendants do not dispute that 28 U.S. Code § 1927, like the PSLRA, has no safe harbor requirement. Moreover, Defendants do not dispute that 28 U.S. Code § 1927 applies to *any* filing

4

that "multiplies the proceedings in any case unreasonably and vexatiously" and empowers the Court to require the responsible party "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. Thus, even if this Court determines that the PSLRA does not cover the Reconsideration Letter or Sanctions Motion, the Court can still impose sanctions for Defendants improper filings under 28 U.S. Code § 1927.[2]

Defendants filed their Premature MTD without a care for judicial resources or statutory procedure to intimidate Plaintiffs and to prevent the natural progression of the case in accordance with the PSLRA toward the filing of an amended complaint post lead plaintiff appointment. Even after the Court ruled that that it would hold the Premature MTD in abeyance in light of that PSLRA procedure (ECF No. 23), Defendants improperly "multiplie[d] the proceedings…unreasonably and vexatiously" by filing their Reconsideration Letter in direct disregard of the Court's ruling, in violation of E.D. Wis. Civ. R. 7, and in violation of 28 U.S. Code § 1927.

**B. Defendants Should be Sanctioned for Violating Rule 11(b) and 28 U.S. Code § 1927**

The Court's mandatory review of Defendants' Premature MTD, Reconsideration Letter, and Sanctions Motion can only lead to one conclusion: Defendants filed these error ridden

---

[2] Regardless, while the safe harbor does not shield Defendants from sanctions under the PSLRA's mandatory review provision or 28 U.S. Code § 1927, it is clear that any notice given would have been futile. Indeed, even after the Court ruled that it would hold the Premature MTD in abeyance given the appointment of lead plaintiff and the anticipated filing of an amended complaint (ECF No. 23), Defendants still filed the Reconsideration Letter, i.e., they had no intention of withdrawing the Premature MTD despite the PSLRA process. Moreover, even after Plaintiff filed this Motion outlining the frivolity of and improper purpose behind the Sanctions Motion, Defendants persisted and filed the Reply, i.e. they had no intention of withdrawing the Sanctions Motion. Nevertheless, though notice would have clearly been futile, and would only delay the inevitable (*see* ECF No. 29, where this Court determined it could "overlook" a "technical defect… in its desire to cut to the chase"), Plaintiff respectfully requests leave to refile this Motion twenty-one days after its initial filing should the Court determine that Rule 11(c)(2)'s safe harbor applies. Alternatively, under Rule 11(c)(3), the Court can order Defendants to show cause why conduct specifically described in the order has not violated Rule 11(b) (though Defendants response to an order to show cause would undoubtedly mirror the Opp.).

5

documents for the improper purpose of ending this litigation via intimidation, with complete apathy for the truth and careless indifference to the law.

### 1) Defendants Should be Sanctioned for Their Premature MTD

Defendants filed the Premature MTD for the improper purpose of intimidating aggrieved Harbor investors and Plaintiffs' counsel so none would pursue this case, despite knowing that the Court would follow the mandatory procedures of the PSLRA to appoint a lead plaintiff who would then investigate and file an amended complaint. Unreasonably filing the Premature MTD for that improper purpose, which required Plaintiffs' counsel and the Court to needlessly waste time and resources addressing a motion that would soon be moot, ran afoul of both Rule 11(b) and 28 U.S. Code § 1927.

The Court and Pomerantz both cited statutory procedure in taking the position that the Court should not adjudicate the Premature MTD knowing that a court-appointed lead plaintiff would have the right to file an amended complaint that would supersede the initial complaint. Defendants call this "Pomerantz's…preferred order of operation." Opp. at 8. However, it is statutorily informed and typically followed by plaintiffs, defendants, and courts in *every* circuit because, as this Court noted, "it makes no sense for the Court to expend the time and effort to decide and issue an opinion as to whether a complaint, which is certain to be replaced, states a claim." ECF No. 29 at 2.

Defendants confusingly shift between arguing that they had every right to file the Premature MTD and arguing that the "Plaintiffs' Firms" collectively cannot argue that filing an amended complaint insulates initial complaints that violate Rule 11. Opp. at 8-9.

The former presumes Defendants are permitted to view the federal rules of civil procedure in a vacuum with no consideration to the PLSRA or judicial efficiency. They are not. Indeed, the

6

only cases they cite are inapposite. Opp. at 9. The court in *Valerius* confirmed that "it is true…that motions to dismiss are routinely filed in PSLRA cases only *after* the lead plaintiff files a consolidated complaint," but determined that case to be an exception because, unlike here, "not a single class member has moved to serve as lead plaintiff." *Valerius v. Geraghty*, 2010 U.S. Dist. LEXIS 161540, at **4-5 (E.D. Pa. 2010). Here, when Defendants filed the Premature MTD, the deadline for lead plaintiff filings had not yet passed. Ultimately, both Viral Kothari and Jon Arne Toft filed competing motions, the Court appointed Toft who was not the initial plaintiff, both Plaintiffs' firms reminded Defendants of the PSLRA process in separate filings, and the Court made clear it would thus hold the Premature MTD in abeyance in anticipation of an amended complaint filing. Nonetheless, *the following day*, Defendants filed a reply in support of the Premature MTD and also filed the Reconsideration Letter. *In re Champion* also does not hold that courts should consider premature motions to dismiss in PSLRA cases. *In re Champion Enters. Sec. Litig.*, 145 F. Supp. 2d 871 (E.D. Mich. 2001). In fact, consistent with the PSLRA process, defendants in *In re Champion* did not file any motion to dismiss until after the court had appointed a lead plaintiff. *Miller v. Champion Ent Inc., et al.*, 2:99-cv-74231-JF (E.D. Mich.) ECF No. 7 (lead plaintiff order); ECF No. 13 (motion to dismiss).

The latter presumes Defendants are permitted to lump Pomerantz and RLF together for the purpose of determining whether sanctions are warranted. They are not. Under Rule 11(b), attorneys are only responsible for documents they sign, file, or submit. Neither Pomerantz nor Lead Plaintiff filed the initial complaint. Indeed, the initial complaint (24 pages, 79 paragraphs, ECF No. 1) and the AC (72 pages, 208 paragraphs) are not comparable pleadings. The AC is the result of a comprehensive investigation that included: (i) obtaining and reviewing public documents, including SEC filings and press releases by Harbor Diversified, Inc., analyst reports evaluating

7

Harbor, news articles and other publications about Harbor, Air Wisconsin Airlines LLC, and United Airlines, Inc.; (ii) retaining and overseeing the services of investigators at On Point Investigations to identify additional relevant information about Harbor, Air Wisconsin, and United related to the allegations in this Action, including identifying and conducting interviews with former employees of Harbor and Air Wisconsin; and (iii) consulting and overseeing the services of a forensic accountant at Arcadia Consulting, LLC, who assisted in researching the accounting claims asserted in the Action and the potential defenses thereto, in addition to relevant SEC accounting guidance. The Motion explains how Defendants' filing of the Premature MTD, rife with grammatical, factual, and legal errors, violates both Rule 11(b) and 28 U.S. Code § 1927, but takes no position on the initial complaint.

Defendants' utter disregard of the PSLRA in filing the Premature MTD before the time expired for potential class members to file lead plaintiff motions, before the court had the opportunity to consider competing lead plaintiff motions, and before Lead Plaintiff filed an amended complaint, reflected an improper purpose and an unreasonable, vexatious, and unnecessary multiplication of proceedings. The Premature MTD, including the reply brief in support filed one day after this Court made clear it would hold the motion in abeyance, included egregious errors in both fact and law. Defendants should thus be sanctioned.

**2) Defendants Should be Sanctioned for Their Reconsideration Letter**

Though put on notice by both Plaintiffs' firms as to the impropriety of filing the Premature MTD (ECF Nos. 11, 22), and despite the Court's ruling holding the motion in abeyance pending the filing of an amended complaint, Defendants nonetheless filed the Reconsideration Letter in violation of E.D. Wis. Civ. R. 7 and Fed. R. Civ. P. 7(b)(1) and 7(b)(2). *See also* E.D. Wis. Gen. R. 83(f) (empowering the court to "impose appropriate sanctions on any party or attorney who fails

to comply with a Local Rule"). Defendants call the Reconsideration Letter "an isolated procedural misstep." Opp. at 10. However, that "misstep" is not "isolated" but rather yet another example of how Defendants sacrifice adherence to legal process and factual accuracy in their zeal to besmirch and intimidate Plaintiffs' counsel. Not only did they disregard the local rules and the PSLRA, but they also failed to identify any "manifest errors of law or facts" to support reconsideration, instead vexatiously accusing Plaintiffs' counsel of collusion and the Court of "enabl[ing a] subversion of Congress' intent." ECF No. 25. Defendants' egregious indifference to fact and law is sanctionable.

In their defense, Defendants again trot out the *Valerius* decision, and argue the Reconsideration Letter newly alerted the Court to Defendants' "concern that the scheduling order risked furthering Plaintiffs' subversion of the PSLRA, and would not result in efficiency in this case, just as the court found in *Valerius*." Opp. at 10. As explained *infra*, the facts of this case are not comparable to *Valerius*, an outlier ruling from Pennsylvania. Additionally, the Reconsideration Letter is the antithesis of a request for efficiency as the Court aptly noted. ECF No. 29 ("it makes no sense for the Court to expend the time and effort to decide and issue an opinion as to whether a complaint, which is certain to be replaced, states a claim"). Moreover, what Defendants once again characterize as a "subversion of the PSLRA" is actually Pomerantz and this Court's *adherence* to the PSLRA process that Defendants so callously disregard. Indeed, Defendants' repeated attempts to accuse Pomerantz of collusion simply because Pomerantz followed the PSLRA process by filing a lead plaintiff motion and amended complaint following a comprehensive investigation on behalf of Lead Plaintiff, is baseless, inflammatory, and another example of why Defendants should be sanctioned. Indeed, by Defendants' logic, this Court also "colluded" with Pomerantz by following the PSLRA and implementing its statutory process.

### 3) Defendants Should be Sanctioned for Their Sanctions Motion

To convince the Court that the Sanctions Motion is not sanctionable, Defendants falsely state that Plaintiff misstated the law and that the Court indicated as such in the Order, though they identify no such misstatement and neither cite to nor quote from the Order. Opp. at 12. This brand of unsupported accusation underscores the impropriety of the Sanctions Motion.

Defendants then admit that they lied to the Court in the Sanctions Motion wherein they stated that the *Turquoise Hill* court "dismissed Pomerantz's complaint," Sanctions Motion at 14, now acknowledging that Pomerantz held no active role in that case, Opp. at 12. Yet they persist in arguing that the *Turquoise Hill* ruling is "stunningly on point" and that Pomerantz thus should have known that "this case had no hope of success…" Opp. at 12. *Turquoise Hill,* decided more than ten years ago in another circuit, states that the fact of a restatement does not itself establish scienter. *In re Turquoise Hill*, 2014 LEXIS 174096, at **15, 19 (S.D.N.Y. 2014). Putting aside that there are other cases holding that a restatement alone can suffice, *Costas v. Ormat Techs., Inc.*, 2019 U.S. Dist. LEXIS 211349, at *17 (D. Nev. Dec. 6, 2019) (holding there is "no per se rule that restatements are insufficient to demonstrate scienter" in a case where Pomerantz served as lead counsel), and putting aside the fact that, regardless, the AC contains numerous *additional* allegations of scienter, the *Turquoise Hill* court also acknowledged that if defendants "furthered the error," that would support an inference of scienter. *In re Turquoise Hill*, 2014 LEXIS 174096, at *15. As noted below, Grant Thornton made clear that its "clean" audit opinion relied on management's representations as to the collectability of the disputed amounts (and Defendants admitted that their beliefs regarding the arbitration should not have factored into their assessment, ECF No. 61, at 12; ECF No. 62-1, at 2). Defendants furthered the error by making representations

10

to the auditor that led the auditor to issue a clean audit letter though they had improperly recognized disputed revenue and failed to reveal how high the disputed amounts could grow.

Unable to credibly defend their Sanctions Motion, Defendants once again resort to lumping Plaintiffs' counsel together and launching unsupported accusations of collusion. *See* Opp. at 13. They argue, "Pomerantz ignores the fact that RLF has repeatedly admitted that it purposefully refrained from conducting the requisite investigatory and pleading effort. Pomerantz does so because it is complicit in this plainly unlawful stratagem, one which it regularly employs itself, and in which it has a profound monetary interest in vigorously protecting for future use." *Id.* Pomerantz is not responsible for nor required to address RLF's conduct, but that did not stop Defendants from inventing a collusion conspiracy for which they can offer no factual basis. Indeed, Defendants carelessly accuse Pomerantz of "regularly" employing an "unlawful stratagem" but cannot provide a scintilla of support for their slanderous accusation. *Id.* Brazenly levelling such an accusation without even an attempt at substantiation is itself an unethical demonstration of bad faith, a violation of the standards of professional misconduct in the 7th Circuit, and certainly sanctionable. *See* 7th Cir. Standards for Prof. Conduct, *Lawyer's Duties to Other Counsel* at ¶4 ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety."); *id.* at ¶5 ("We will not seek court sanctions without first conducting a reasonable investigation and unless fully justified by the circumstances and necessary to protect our client's lawful interests"); *In re Nora*, 778 F.3d 662, 666 (7th Cir. 2015) ("This bandying about of serious accusations without basis in law or fact is unacceptable and warrants sanctions"); *Weeks v. Samsung Heavy Indus. Co.,* 1996 U.S. Dist. LEXIS 17832, *15 (N.D. Ill. Nov. 27, 1996)("counsel's willingness to accuse opposing counsel of unethical behavior without any factual foundation is sanctionable conduct.")

11

They further argue that "Pomerantz also ignores the fact that it had the rare benefit of extensive briefing regarding the necessary factual predicate for an accounting fraud claim" and "chose to press on." *Id.* In other words, Defendants lay bare their motivation in filing the Premature MTD- to bully Pomerantz or any other plaintiff's firm into not investigating or pursuing this case further. Defendants' Premature MTD, riddled with errors and prematurely filed to seek dismissal of a complaint Pomerantz did not draft, with no consideration to the PLSRA process, holds no relevance to the AC Pomerantz filed following a comprehensive investigation that supports its good faith basis for pursuing the claims.

Moreover, Defendants' Reply in support of the Sanctions Motion (filed the same day as their Opp.) further exemplifies their ongoing sanctionable misconduct. Therein, Defendants argue that there is "widespread judicial recognition" that accounting misstatements that necessitate a restatement do not demonstrate that the clean audit letters that accompanied the misstated financials suffered irregularities. Reply at 14. Yet they cite only one case, and that proposition is nowhere to be found. *See Pension Trust Fund for Operating Eng'r v. Kohl's Corp.*, 266 F. Supp. 3d 1154 (E.D. Wisc. Jul. 20, 2017).

Defendants then mischaracterize Grant Thornton's audit letter to argue that Pomerantz should have known the AC had no chance of success because "the outside auditors had described the complexity of the governing accounting rule." Reply at 2, 10, 13. That is not what the audit letter states. Grant Thornton stated in the letter that ASC 606 requires an assessment of "collectability" to determine whether revenue is recognizable. ECF No. 42-4, at 45. After making clear up front that "[t]hese financial statements are the responsibility of the Company's management," *id.* at 44, Grant Thornton then stated that it based its opinion regarding recognition of the disputed amounts on "management's conclusion," *id.* at 45. Grant Thornton did not state

12

that *ASC 606* is highly complex but rather that there was a "high degree of complexity" involved in "evaluating *management's conclusion* that the amounts in dispute with United are collectable." *Id.* Indeed, as Plaintiff made clear, this is precisely why the probative value of an auditor opinion is not appropriately resolved at the pleading stage, and its existence is certainly no basis for a finding of frivolity or the imposition of sanctions. *In re Diamond Foods, Inc.*, 2012 U.S. Dist. LEXIS 170704, at *23 (N.D. Cal. Nov. 30, 2012) ("In order to know how much reasonable reliance should be accorded the audit opinion, we will eventually have to evaluate what communications passed between the company and the auditor as well as what, if anything, was hidden from the auditor.").[3]

The Reply brief also mischaracterizes this Court's ruling on scienter and the plausibility of the AC's scienter allegations. Defendants argue that the Order's "'more plausible'" language merely tracks the PSLRA's requirements that the court weigh competing inferences" but "does not imply that Pomerantz's proffered inference was even remotely plausible." Reply at 11. The Order does not "imply" that the AC plausibly alleged scienter; it states this outright: "the allegations in the FAC *could suggest* Diester, Mackay, and Garvey knowingly or recklessly misled investors…" Order at 20 (emphasis added). While the Court ultimately held that the facts "more plausibly" allege that Defendants "were at worst negligent in their oversight," *id.*, it did not hold that the AC "did not offer facts supporting even a weak inference of scienter." Reply at 11.

---

[3] Additionally, Grant Thornton "expressed concern" by making clear that "collectability" is the "principal consideration" in determining whether ASC 606 prohibited recognition of the disputed revenue amounts, and then emphasizing the "high degree of complexity" involved in its assessment of "management's conclusion" regarding collectability. ECF No. 42-4, at 45. According to *Kohl's*, this concern suggests an "inference of fraudulent intent." *Kohl's,* 266 F. Supp. 3d at 1168.

Defendants then mischaracterize their own Sanctions Motion to convince the Court that *O'Meara v. Shift4 Payments, Inc.*, 2025 U.S. Dist. LEXIS 37009 (E.D. Pa. Mar. 3, 2025) is not applicable. Specifically, though Defendants repeatedly state that their Sanctions Motion is part of the Court's mandatory PSLRA evaluation, (Sanctions Motion at 1; Reply at 1, 14, 15), they now argue in the Reply that *Shift4* is distinguishable because "[t]hat case was part of the court's mandatory PSLRA evaluation, rather than the result of a litigated motion for Rule 11 sanctions." Reply at 11. In fact, one paragraph later Defendants argue that "Pomerantz's knowing persistence makes it subject to mandatory sanctions under [*sic*] PSLRA." *Id.* Though the court's mandatory assessment in *Shift4* did not include a baseless inflammatory sanctions motion like the one filed here, its holding that even where a complaint falls "well short on the holistic Tellabs analysis," that does not equate to frivolity, is still apt (although the Court here did not find that such allegations fell "well short" of *Tellabs'* dictates). *Shift4,* 2025 U.S. Dist. LEXIS 37009, at *6.

Ironically, Defendants next falsely state that the AC is sanctionable because Pomeranz cited "a single sentence it lifted from ASC 606," which it refers to as "cherry-picked." Reply at 12. In reality, the AC comprehensively laid out *every* relevant provision of ASC 606 in ten paragraphs across six pages. ¶¶44-54. Indeed, Pomerantz included so much relevant detail from ASC 606 that Defendants referred to the recitation in their Motion to Dismiss as "mind-numbing." ECF No. 41 at 24. They also continue to misstate the AC as alleging that ASC 606 categorically prohibits recognition of any disputed revenue, though the AC makes clear that ASC categorially prohibits recognition of disputed revenue *when the customer states an intention not to pay the disputed receivable*, as here. *See, e.g.,* ¶¶5, 46-48, 63, 89, 102, 112, 121, 129, 132, 137, 140, 145, 148, 153, 156, 161, 171. Defendants cannot "cherry-pick" or mischaracterize facts to suit their vengeful narrative, particularly given their admission in the corrective disclosure that ASC 606 did in fact

14

prohibit their recognition of over $50 million in disputed amounts as revenue, regardless of their subjective beliefs at the time regarding the outcome of the arbitration, because United had made clear it did not intend to pay. Defendants argue that ASC 606's complexity cuts against the inference of scienter and that they "continue to believe that ASC 606 permits the recognition of at least a portion of the disputed receivables." Reply at 12. Yet, they cannot identify any aspect of the *relevant* provisions of ASC 606 that is complex nor can they identify any aspect of ASC 606 that justifies their recognition of *any* disputed revenue *that United made clear it would not pay*. Moreover, in the Company's 2023 10-K filed on October 24, 2024, Defendants admitted *again* that their "prior determination to recognize all of the Disputed Amounts was inconsistent with the technical requirements of Accounting Standards Codification Topic 606, *Revenue from Contracts with Customers* ("ASC 606")." ECF No. 62-1, at 2. The Sanctions Motion is riddled with falsities intentionally presented to this Court for the improper purpose of securing unwarranted sanctions against Pomerantz and is thus sanctionable.[4]

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court enter an order sanctioning Defendants and their Counsel, and requiring Defendants and their Counsel to pay the attorneys' fees and costs associated with responding to Defendants' Reconsideration Letter and Sanctions Motion.

Dated: April 28, 2025                                   **POMERANTZ LLP**

By: *s/ Tamar A. Weinrib*
Jeremy A. Lieberman

---

[4] In addition to legal and factual fallacies, Defendants' Opp., like their other careless filings, is plagued by grammatical errors. *See, e.g.,* "…provisions also appear extend…," Opp. at 3; "It bears emphasizing that letter brief did not a request…," Opp. at 10; "promised amended compliant," *id.;* "have demonstrated in the prudence of the *Valerius* decision," Opp. at 11.

Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:      (212) 661-1100
Facsimile:      (917) 463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

*Lead Counsel for Lead Plaintiff and the Class*

16

Case 1:24-cv-00556-WCG    Filed 04/28/25    Page 20 of 20    Document 65