| | |
|---|---|
| JON ARNE TOFT, Individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY,<br><br>       Defendants, | Case No. 1:24- cv-00556-WCG<br><br>Judge: William C. Griesbach<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF VIRAL KOTHARI'S CROSS MOTION FOR RULE 11 SANCTIONS AGAINST DEFENSE COUNSEL** |

# **TABLE OF CONTENTS**

I.  Introduction ........................................................................................................... 1

II.  The Rule 11(c)(2) Safe Harbor Does Not Apply ................................................... 2

III.  Stradling Yocca Brought Its Sanctions Motion for an Improper Purpose ............. 3

IV.  Stradling Yocca Does Not Dispute That it Has Put Forth Misrepresentations to the Court .. 4

    A.  Stradling Yocca Doubles Down on Misrepresentations About Cases in Which RLF Was Not Involved ........................................................................................... 4

    B.  Stradling Yocca Admits It Falsely Accused RLF of Suing Gregg Garvey ......... 6

    C.  Stradling Yocca Falsely Claimed That Analyst Reports Post-Dated the Complaint ........... 7

    D.  Stradling Yocca Mischaracterizes Plaintiff's Cross Motion ............................... 7

    E.  Stradling Yocca's Latest Briefs Further Support a Pattern of Bad Faith and Misstatements ........................................................................................... 8

V.  Conclusion ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
 540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................................. 4, 5

*City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
 711 F.3d 754 (7th Cir. 2013) ................................................................................................... 2

*CMG Worldwide, Inc. v. Glaser*,
 92 F. Supp. 3d 839 (S.D. Ind. 2015) ....................................................................................... 2

*Eon-Net LP v. Flagstar Bancorp*,
 249 F. App'x 189 (Fed. Cir. 2007) ........................................................................................... 2

*Mei Pang v. Levitt*,
 No. 1:22-cv-01191 (W.D. Tex. 2022) ....................................................................................... 5

*Myers v. Thoman*,
 2010 WL 3944654 (S.D. Ind. Oct. 6, 2010) ............................................................................ 3

*Palmer v. Marion County*,
 327 F.3d 588 (7th Cir. 2003) ................................................................................................... 3

*Patelco Credit Union v. Sahni*,
 262 F.3d 897 (9th Cir. 2001) ................................................................................................... 2

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
 89 F. Supp. 3d 602 (S.D.N.Y. 2015) ....................................................................................... 4

*United States ex rel. Chepurko v. e-Biofuels, LLC*,
 2019 WL 162607 (S.D. Ind. Jan. 10, 2019) ............................................................................ 3

*Valdes v. Kandi Techs. Grp. Inc.*,
 2024 WL 1348697 (E.D.N.Y. Mar. 29, 2024) ......................................................................... 4

**Statutes**

15 U.S.C. § 78u–4(c)(1) ............................................................................................................... 2

The Rosen Law Firm, P.A. ("RLF") respectfully submits this reply memorandum on behalf of Plaintiff Viral Kothari ("Plaintiff" or "Mr. Kothari"), in support of his Cross-Motion for Rule 11 sanctions against counsel for Defendants, Stradling Yocca Carlson & Rauth LLP ("Stradling Yocca").

## I. Introduction

The instant brief is, presumably, the final volley in a saga that stretches back to July 18, 2024, when, by filing a motion for sanctions against RLF, Stradling Yocca embarked on a quixotic quest to redefine the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the common law procedures followed by plaintiffs, defendants, and courts nationwide. Many offramps have been presented to Stradling Yocca to walk back its misrepresentations and meritless arguments. Instead, Stradling Yocca has doubled-downed on its misrepresentations or has shifted its meritless arguments to other meritless arguments.

Additionally, all of Stradling Yocca's briefs against RLF contain more instances of vitriol and invective than there are citations to caselaw, and more accusations flung than there are facts presented. Stradling Yocca has repeatedly and vigorously run afoul of Rule 11 and fundamental rules of practice that caution advocates to act with candor to the tribunal, to show respect toward opposing counsel and the function of the judicial system, and to act good faith in their dealings before the Court.

Rather than squarely address the issues RLF raised in its cross motion, Stradling Yocca resorts to distracting the Court with baseless attacks against RLF. Stradling Yocca ignores that there is no caselaw supporting its argument that RLF should be sanctioned for drafting a complaint based on a disputed theory of scienter and notably ignores that there is no evidence suggesting that RLF intended to mislead the Court. Stradling Yocca disregards that RLF has followed accepted procedure under the PSLRA to the letter. Stradling Yocca further ignores that it has put forth

1

multiple falsities before this Court, including alleging that RLF has litigated cases that it did not, that it sued defendants that it has not, and that it has coordinated with Pomerantz LLP ("Pomerantz") in an effort to evade the provisions of the PSLRA. Stradling Yocca may have attempted to obfuscate these realities in its briefs, but it should not be allowed to elide the fact that these falsehoods violate the provisions of Rule 11, and it should not be allowed to avoid the consequences that follow.

Mr. Kothari's Cross-Motion for Sanctions against Stradling Yocca should therefore be granted in full.

## II. The Rule 11(c)(2) Safe Harbor Does Not Apply

The Rule 11(c)(2) safe harbor does not apply here for two distinct and independently sufficient reasons. <u>First</u>, a "party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001); *Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 197 (Fed. Cir. 2007), *aff'd sub nom. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (holding same).

<u>Second</u>, under the PSLRA, "the safe harbor provision does not apply to the court's Rule 11 analysis, as the PSLRA *mandates* a Rule 11 finding." *CMG Worldwide, Inc. v. Glaser*, 92 F. Supp. 3d 839, 844 (S.D. Ind. 2015) (citing *City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 761 (7th Cir. 2013)). The PSLRA mandates a Rule 11 review at the close of every case brought under the statute. *See* 15 U.S.C. § 78u–4(c)(1). As such, Defendants here are (or should be) on statutory notice of the possibility of sanctions, thereby obviating the need for Plaintiff to file a motion pursuant to Rule 11(c)(2). Indeed, this Court explained its obligation to conduct the statutory Rule 11 inquiry in its January 31, 2025, order deferring consideration of Defendants' sanctions motion until the conclusion of the matter. *See* Dkt. No. 47.

2

In sum, the Rule 11 safe harbor does not apply because RLF has made a cross-motion for sanctions and/or the PSLRA does not require this inquiry.

### III.    Stradling Yocca Brought Its Sanctions Motion for an Improper Purpose

"The Seventh Circuit has clearly held that a party who fails to respond to points… concedes those points." *Myers v. Thoman*, 2010 WL 3944654, at *4 (S.D. Ind. Oct. 6, 2010) (citing *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003)). Here, Defendants have not responded to RLF's contention that Stradling Yocca violated Rule 11(b)(1) by filing its sanctions motion for an improper purpose. As such, Stradling Yocca has conceded the point that it has put forth its motion for an improper purpose, and therefore, Stradling Yocca should be sanctioned accordingly.

In its opening cross-motion brief, RLF argued that Stradling Yocca has put forth its motion for sanctions for three independently improper reasons in violation of Rule 11(b)(1): (a) by utilizing Rule 11 as a first resort to obtain dismissal; (b) to harass Plaintiff and RLF; and (c) as a proxy to litigate the merits of the claim. Dkt. No. 56 at 20-22. While Stradling Yocca spills a fair amount of ink discussing "(a)," it does not respond to the other two arguments at all. *See generally* Dkt. No. 63 at 5-6. The inquiry should therefore end there as it is long settled within the Seventh Circuit that failure to respond to an argument is to concede it. *See United States ex rel. Chepurko v. e-Biofuels, LLC,* 2019 WL 162607, at *8 (S.D. Ind. Jan. 10, 2019) (collecting cases). This concession, on its own, mandates a finding that Stradling Yocca has violated Rule 11(b)(1) by: putting forth papers intended to harass Plaintiff and RLF; utilizing Rule 11 inappropriately; and putting forth a motion for sanctions intended as a proxy to litigate the merits of the claim.

3

**IV.** **Stradling Yocca Does Not Dispute That it Has Put Forth Misrepresentations to the Court**

    **A.** **Stradling Yocca Doubles Down on Misrepresentations About Cases in Which RLF Was Not Involved**

In its Opposition to Plaintiff's Motion for Sanctions (Dkt. Nos. 63 at 6), Stradling Yocca doubles down on its misrepresentations to the Court. RLF documented how Stradling Yocca repeatedly claimed that RLF litigated cases which it did not, including that RLF "brought" *Valdes v. Kandi Techs. Grp. Inc.*, 2024 WL 1348697 (E.D.N.Y. Mar. 29, 2024) (which Stradling Yocca continued to do even after being informed that this was false)[1], and had litigated both *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) and *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618 (S.D.N.Y. 2015). *See* Dkt. No. 56 at 24-25.

In response, instead of walking back its misstatements, Stradling Yocca continues to mislead. Stradling Yocca argues that "RLF complains that Defendants should not have imputed any knowledge of a case to RLF just because RLF appeared as counsel of record for a plaintiff in that case." Dkt. No. 63 at 6. This point seemingly refers to *Valdes* or *Orthofix*, because of the three aforementioned cases above, those were the only ones where RLF had any involvement whatsoever (filing unsuccessful lead plaintiff motions). As RLF has explained, it was not substantively involved in either of those cases. RLF did not file either action (or a related action), and was not counsel of record for any party listed on the initial or amended complaints. *See Valdes* Dkt. No. 1 at 18-19, and Dkt. No. 60 at 61; *Orthofix*, Dkt. No. 1, at 26-27, Dkt No. 40 at 73-74. By contrast, RLF had no involvement whatsoever in *Shaw*. That Stradling Yocca continues to press

---

[1] In the cross-motion (Dkt. No. 56, Fn. 10), *Valdes* was mistakenly cited as being in the Southern District of New York; the case was litigated in the Eastern District of New York.

this false narrative to Court further supports the underlying request for sanctions under Rule 11(b)(3).

Stradling Yocca further argues that "RLF asserts that, despite being counsel of record, it 'did not litigate' and was 'uninvolved' in certain [of] these *cases*. This is, at best, embarrassing hair splitting. [. . . ] Notably, those decisions consist of dismissals that destroyed the claims of RLF's *clients* in those actions, *clients* to whom it owed a duty to keep apprised of the developments therein." Dkt. No. 63 at 6. By referring to "cases," and "clients," Stradling Yocca doubles down on the false assertion that RLF litigated these cases (including *Shaw,* in which RLF did not file a lead plaintiff motion or a complaint). Doubling down on the falsity of these assertions after being apprised of its misstatements evinces Stradling Yocca's clear bad faith.

Stradling Yocca now claims that the "substantive point" in citing those cases was "that RLF knew about the instructive decisions in those cases." Dkt. No. 63 at 6. Putting aside the black letter law that failure to plead a claim is not a basis for Rule 11 sanctions (*See* Dkt. No. 56 at 14), this is a blatant attempt by Stradling Yocca to gloss over its false allegations, which were designed to harass and put RLF in a bad light. In its First Rule 11 Motion, Stradling Yocca raised *Valdes* to argue that the Court had rejected RLF's purported claim about knowledge that individuals may have had. Dkt. No. 31 at 7. On reply, Stradling Yocca cited *Orthofix* and *Shaw* primarily to mislead the Court about RLF being involved in those cases, when RLF was not involved. *See* Dkt. No. 36 at 8-9 (arguing that "Kothari's own counsel has litigated multiple cases in which courts rejected the plaintiff's reliance on a restatement as evidence of scienter[.]").

Additionally, Stradling Yocca falsely claims that RLF negotiated the stipulation accepting service and deferring a response in *Mei Pang v. Levitt,* No. 1:22-cv-01191 (W.D. Tex. 2022) even though RLF did not. Dkt. No. 56 at 25. Stradling Yocca now argues that RLF does "not deny

5

litigating that case pursuant to the stipulated schedule, or the fact that it routinely employs the same type of stipulation [. . . ]," which it alleges protects the initial complaint from scrutiny. *See* Dkt. No. 63 at 6-7. This argument would be laughable if it was not based on a misrepresentation to the Court. Moreover, the stipulation in *Pang* actually undermines Stradling Yocca's baseless argument that RLF should be sanctioned because it believed that the initial complaint would soon be amended by a lead plaintiff with a more fulsome amended complaint. That another law firm and other defense counsel in *Pang*, filed and a court approved, such a stipulation is consistent with the empirical data RLF submitted (Dkt. Nos. 35-3 and 57-3) and the case authorities RLF submitted. Dkt. No. 34 at 12-14 (citing cases).

> **B.      Stradling Yocca Admits It Falsely Accused RLF of Suing Gregg Garvey**

Stradling Yocca admits that it falsely accused RLF of suing Gregg Garvey but claims that this misrepresentation is "immaterial." Dkt. No. 63 at 6. Despite acknowledging its misstatement, Stradling Yocca argues that RLF's "purpose in making these accusations appears to be purely performative, namely, to indicate that mistakes happen and emphasize the fact that not all mistakes merit sanctions." *Id*. at 5-6. Stradling Yocca now argues that RLF "ignore[es] the truth of Defendants' substantive assertion: that neither complaint contains any particularized factual allegations regarding the scienter of *any* individual defendant." *Id*. at 6. This response is a distraction. RLF previously demonstrated that Stradling Yocca's argument regarding the individual defendants RLF did sue – Defendants Deister and Mackay – supposedly not "appeari[ng] outside of the introductory paragraphs of the RLF Complaint" (Dkt. No. 50 at 9), was false. *See* Dkt. No. 56 at 24 (citing paragraphs in the Complaint mentioning Deister and Mackay). Whether RLF's Complaint alleged enough detail to adequately allege scienter is a separate issue from whether Stradling Yocca has license to mislead the Court about RLF's Complaint. It does not.

6

**C. Stradling Yocca Falsely Claimed That Analyst Reports Post-Dated the Complaint**

In its opposition to the First Rule 11 Motion, RLF explained that "[a]nalysts did issue research reports about Harbor during the Class Period. There were at least 18 reports issued by research firms." Dkt. No. 34 at 17. RLF attached the reports as an exhibit. Dkt. No. 35-4. Among the reports cited were some from Wright Investors' Service, Inc., which describes itself as "an internationally recognized investment management and financial advisory firm[.]"[2]

In its reply in support of the First Rule 11 Motion, Stradling Yocca falsely claimed that RLF submitted reports which "*post*-date Kothari's complaint." Dkt. No. 36 at 14. Stradling Yocca does not deny this error. Dkt. No. 63 at 7. Stradling Yocca attempts to shrug off its misstatement by suggesting it may have misread some dates. *See id.* However, there is no double standard with Rule 11. It applies equally to RLF and Stradling Yocca. Contrary to Stradling Yocca, the totality of the circumstances and the pattern of Stradling Yocca's misrepresentations to the Court and its responses, show these misstatements were made in bad faith and warrant sanctions under Rule 11(b)(3).

**D. Stradling Yocca Mischaracterizes Plaintiff's Cross Motion**

Plaintiff did not make the decision to file the cross-motion lightly. Contrary to Stradling Yocca's argument, Plaintiff's cross-motion is not a distraction or a repackaging of RLF's opposition to Defendants' sanctions motion. Dkt. No. 63 at 1. Plaintiff's cross-motion is fundamentally about the litany of falsehoods that, over the course of nearly a year, Stradling Yocca has made about RLF. As part of the Court's mandatory Rule 11 review of all parties' submissions to the Court, RLF made the difficult decision to seek sanctions because of, among other things, the

---

[2] *See* https://www.wrightinvestorsservice.com/our-history

7

numerous untruths, meritless arguments, harassment, and lack of civility outlined above and in RLF's opening papers.

###### E. Stradling Yocca's Latest Briefs Further Support a Pattern of Bad Faith and Misstatements

Stradling Yocca argues that RLF's and Pomerantz's motions for sanctions are a "coordinated attempt [. . . ] to distract from their own conduct and punish Defendants' counsel for participating in the Court's mandatory Rule 11 analysis." Dkt. No. 63, at 1. This is false. RLF separately and independently decided to pursue sanctions against Stradling Yocca.

This is not the first time Stradling Yocca has levied these personal and baseless attacks against RLF in relation to Pomerantz. In response to the lead plaintiff order (Dkt. No. 23), Stradling Yocca improperly (which the Court noted) filed a letter making the absurd argument that Pomerantz's filing a lead plaintiff motion "looks suspiciously like another member of the plaintiff's bar trying to rescue his colleague from the inevitable consequences of filing a frivolous complaint. No such slight [sic] of hand should be allowed by this Court[.]" Dkt. No. 25, at 1. Stradling Yocca argued at that stage, before Pomerantz even filed its amended complaint, that "both plaintiffs are attempting to subvert the Reform Act in the same manor [sic]." *Id.* at 2. Putting aside that the argument is nonsensical given that the PSLRA worked as intended (as competing motions were filed) and the investor with the largest financial interest was appointed as lead plaintiff, this argument is completely false.

Stradling Yocca argues that RLF and Pomerantz "find it cost-effective to file as many strike suits as possible, even where a factual basis is lacking." Dkt. No. 64 at 16. Aside from the inherent offensiveness of this argument (particularly considering the lack of any factual basis), it is frivolous. It is a desperate attempt to reiterate a point that RLF debunked in opposition (Dkt. No. 56 at 23), but without defending against RLF's response. Stradling Yocca does not present any

evidence or data in support because, as RLF has shown, Stradling Yocca does not care about presenting a fact-based argument to the Court. It is solely concerned with harassing RLF, even when evidence points to the falsity of its position.

Over decades of litigating PSLRA cases, RLF has never been sanctioned. Stradling Yocca has shown that it intends to harass RLF by making the offensive characterization of RLF as a "securities litigation mill" (Dkt. No. 50 at 1), and by arguing that "[RLF] prides themselves on ***filing dozens*** of lawsuits alleging violations of Section 10(b) each year," (emphasis added) but then citing media about RLF discussing the number of settlements in a given year. *See* Dkt. No. 31 at 7. Given the PSLRA's procedure, the mere filing of a suit does not trigger discovery and force a defendant to settle a suit. *See* Dkt. No. 56, at 2-3. Nor does filing a suit ensure a leadership role in the case. *Id*. at 2. This action proves this point as Plaintiff and RLF were not appointed lead plaintiff and lead counsel. Stradling Yocca argued that RLF "touts that it has 'been ranked in the top 4 of securities class action firms nationwide [by volume] each year since 2013[.]" Dkt. No. 50 at 22 (alteration in original). As RLF pointed out, this is misleading because the ranking by Institutional Shareholder Services was for investor recoveries, not the number of filings. Dkt. No. 56 at 23.

V.      **Conclusion**

For the foregoing reasons, Defendants' Renewed Motion for Sanctions (Dkt. No. 49) should be denied, and Plaintiff's Cross-Motion for Sanctions (Dkt. No. 55) should be granted.

Dated: April 28, 2025                                Respectfully submitted,

                                                     **THE ROSEN LAW FIRM, P.A.**

                                                     /s/ Phillip Kim
                                                     Phillip Kim
                                                     275 Madison Avenue, 40th Floor

Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff Viral Khotari*