# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

JON ARNE TOFT, Individually and on behalf of all other similarly situated,

Plaintiff,

v.

HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY, and GREGG GARVEY

Defendants.

Case No. 1:24-cv-00556-WCG

## PETITION OF HARBOR DIVERSIFIED, INC., CHRISTINE R. DEISTER, LIAM MACKAY AND GREGG GARVEY FOR AN ATTORNEYS' FEES AND COSTS AWARD PURSUANT TO COURT ORDER GRANTING THEIR MOTION FOR SANCTIONS

Defendants Harbor Diversified, Inc., Christine R. Deister, Liam Mackay and Gregg Garvey (collectively "Defendants") by and through their counsel, and pursuant to this Court's DECISION AND ORDER ON PARTIES' MOTION FOR SANCTIONS dated December 3, 2025, Dkt. No. 67 (the "Order"), hereby apply for recovery of their reasonable attorneys' fees and costs incurred in connection with the filing of the original complaint by the Rosen Law Firm, P.A. ("RLF"). In support of this Petition, Defendants rely upon the accompanying Declaration of Wesley J. Horton (the "Horton Decl."), David Konkel (the "Konkel Decl.") and the accompanying Exhibits.

I. **INTRODUCTION**

The Court's Order recognizes that an award of attorneys' fees and costs incurred in defending against a frivolous complaint is a necessary disincentive for litigants who prioritize their own economic interests over compliance with Rule 11 and the Private Securities Litigation Reform Act (the "PSLRA"). (Order at 6.) Here, RLF intentionally filed a deficient complaint (the "RLF Complaint") to avoid the expense of complying with its Rule 11 and PSLRA obligations unless and until it could secure appointment of lead counsel. Defendants respectfully submit that only a substantial sanctions award – one that realigns RLF's economic incentives by making it *fully* accountable for the fees and expenses incurred as a direct result of the RLF Complaint – can force RLF and other repeat players to "stop, think and investigate more carefully before serving and filing papers." (*Id*.) (citation omitted). Accordingly, as directed in the Order, Defendants submit this comprehensive "fee petition, with billing records, establishing [Defendants'] fees and costs attributable to RLF's original complaint." (*Id*. at 18.)

The Order correctly states that "the sanction should not include fees or expenses" that "cannot reasonably be attributed to RLF's conduct." (*Id*.) Defendants have taken care, therefore, to exclude from this petition any such fees and expenses, including for example any fees and costs associated with moving to dismiss the first amended complaint (the "Pomerantz Complaint" of "FAC"), (Horton Decl. ¶¶ 3-9.) The resulting total amount of Defendants'

1

reasonable attorneys' fees and costs directly "related to the filing of RLF's original complaint" through the filing of this pleading total $580,482.29. (*Id.*)

This total includes $478,552.02 incurred in connection with the preparation and drafting of the *initial* dismissal and sanctions briefing on the RLF Complaint. The total also includes $59,801.17 incurred in preparing the *renewed* sanctions briefing related to the RLF Complaint and responding to the portions of the cross-motions for sanctions relating to the RLF Complaint, and $42,129.00 incurred in the preparation and drafting of the instant Petition. Notably, because of RLF's request that the Court defer consideration of Rule 11 violations relating to the RLF Complaint until after entry of final judgment, these latter amounts necessarily were incurred after the Pomerantz firm filed the FAC. (Opp'n to Defs.' Motion for Sanctions Under Rule 11, Dkt. 34, at 5-6; July 12, 2024 Letter to Judge Griesbach, Dkt. 25, at 1-2). Defendants respectfully submit that these fees and expenses result directly from RLF's purposeful decision to file a frivolous complaint in violation of its pre-filing obligations, and therefore merit inclusion. (*See* Order at 8, 10.)

As the Order notes, "even the most basic of pre-suit investigations would have made clear that [RLF's] complaint was groundless on the facts alleged." (*Id.* at 8.) Defendants, upon observing the gross deficiencies in the RLF Complaint, promptly served Rule 11 briefing on RLF. (Dkt. 30.) When RLF failed to amend or dismiss the RLF Complaint, Defendants moved for dismissal and the imposition of sanctions. In opposing these motions, *RLF requested that the Court defer any consideration of its Rule 11 violations until after the entry of final judgment,* which the Court granted. (Opp'n to Defs.' Motion for Sanctions Under Rule 11, Dkt. 34, at 5-6; July 12, 2024 Letter to Judge Griesbach, Dkt. 25, at 1-2.) Because RLF requested delay, and because RLF and Pomerantz then brought retaliatory cross-motions for sanctions based principally on Defendants' motion to dismiss the RLF Complaint, fees and expenses attributable to the renewed sanctions briefing, the cross-motions for sanctions, and the instant Petition necessarily were incurred after the filing of the FAC, but remain directly attributable to the RLF Complaint.

2

RLF should not now be given relief from fees and costs incurred as a direct result of its purposeful decision to file the frivolous RLF Complaint, at the expense of Harbor's shareholders, merely because of the *timing* that resulted from RLF's own request for delay. Accordingly, and because the Order's rationale for awarding sanctions speaks to inclusion of the *full* amount of the attributable fees and expenses, rather than strict application of any particular cutoff date, Defendants include these post-FAC fees and expenses in the instant submission. In doing so, Defendants note that RFL *admitted* that it did not conduct the necessary inquiry, instead purposefully filing the placeholder RLF Complaint in order to avoid the expense of drafting a "fulsome" complaint unless and until it was appointed lead counsel, and explicitly demanded that the Court defer any Rule 11 inquiry until after the filing of the FAC. (*See* Dkt. 34 at 14; Dkt. 56 at 12-14; Opp'n to Defs.' Motion for Sanctions Under Rule 11, Dkt. 34, at 5-6; July 12, 2024 Letter to Judge Griesbach, Dkt. 25, at 1-2.)

In sum, RLF employed an "abusive litigation" tactic that the PSLRA is intended to prevent, went so far as to claim entitlement to that tactic, sought to insulate its use of that tactic through delay, and compounded the wrongful injury inflicted on Defendants by filling a procedurally improper and substantively deficient cross-motion for sanctions based solely on Defendants' briefing on the RLF Complaint. Defendants respectfully submit that restricting the award of attorneys' fees to amounts incurred before the filing of the FAC would artificially grant RLF a discount of more than $101,930.17, leaving expenses resulting directly from RLF's abusive tactics to be borne entirely by Harbor's innocent shareholders. Nothing in the Order, Rule 11, or the PSLRA suggests that the Court should insulate RLF from the direct consequences of RLF's abusive and retaliatory tactics, much less disincentivize future victims of these tactics from invoking the protections of Rule 11.

## II.   THE LEGAL STANDARD

The Court has found that RLF filed a complaint that failed to plead any facts supporting scienter, let alone facts sufficient to satisfy the PSLRA's heightened pleading standard, and RLF has admitted that it did so purposefully—*i.e.*, in an effort to avoid or at least defer the cost of

3

<code>
</code>

drafting a more "fulsome" pleading. Predictably, as a result of RLF's deliberate "failure to conduct a reasonable pre-suit investigation and subsequently fil[ing] an untenable complaint, a company that [is] conforming with the law [was] forced to incur substantial costs," the litigation costs arising from the defense against that untenable complaint, and the market repercussions resulting from the mere fact of the filing. (Order at 9, citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).) The sole issue now before the Court is the total "amount of the reasonable attorneys' fees and other expenses incurred in defending against RLF's original complaint." (Order at 18.)

Courts in the Seventh Circuit employ the "lodestar method" to calculate reasonable attorneys' fees, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Paz v. Portfolio Recovery Assocs.*, 924 F.3d 949, 954 (7th Cir. 2019); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). "The lodestar approach forms the centerpiece of attorneys' fee determinations, and [t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett*, 664 F.3d at 639 (internal citations omitted). When assessing a fee petition, the Court need not undertake a line-by-line analysis of the petition as it would be unrealistic to expect a court to evaluate and rule on every entry in a fee petition. *See Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031, 1038 (N.D. Ill. 2011).

While the "district court has considerable discretion in establishing the appropriate amount of a fee award[,]" *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 C 00206, 2020 U.S. Dist. LEXIS, at *5 (N.D. Ill. Sept. 2, 2020), the Court "may not arbitrarily reduce the number of hours requested; if it reduces hours it should provide a concise but clear explanation." *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir.1992) (citation omitted); *see also Heiar v. Crawford County*, 746 F.2d 1190, 1204 (7th Cir.1984) (a court must "do more than eyeball the [fee] request and if it seems excessive cut it down by an arbitrary percentage"). Moreover, the sanction must be "adequate to serve the purpose[s]" of Rule 11—deterring

4

4905-8724-5952v17/101468-0015
Case 1:24-cv-00556-WCG    Filed 01/02/26    Page 5 of 13    Document 69

litigants and their counsel from filing "frivolous litigation" and engaging in "abusive practices," and compensating the parties injured by the improper conduct. *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429, 1437-8 (7th Cir. 1987) (internal quotations omitted).

### III. DEFENDANTS ARE ENTITLED TO AN AWARD OF ALL ATTORNEYS' FEES INCURRED AS A RESULT OF RLF'S FRIVOLOUS COMPLAINT.

#### A. Defendants' Counsel Spent a Reasonable Amount of Time Preparing and Drafting Defendants' Briefing Related To RLF's Frivolous Complaint.

No precise formula exists to determine how much time is "reasonable" for an attorney to spend on specific matters. *See Large ex rel. S.L. v. Colvin*, No. 12 C 50101, 2014 U.S. Dist. LEXIS 4037, at *4 (N.D. Ill. Jan. 13, 2014). Rather, "if counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Here, the detailed narratives included in counsel's invoices, which are attached as exhibits to the Horton and Konkel declarations, contain descriptions of the work performed on specific dates, the time spent in increments of 1/10 of an hour, the name of the attorney performing the work, the hourly rate and the amount charged to Defendants, and demonstrate both lean and efficient staffing on this matter. *See generally* Horton Decl.; Konkel Decl. The invoices contain more than sufficient information to support Defendants' Petition.

#### B. The Hourly Rates Charged by Defendants' Counsel Reflect Market Rates.

Under the typical lodestar analysis, Courts look to the market rate, which is the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). The starting point is the "attorney's actual billing rate for comparable work," which is "presumptively appropriate to use as the market rate." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (quotation marks omitted); *see also Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) ("The best evidence of an attorney's market rate is his or her actual billing rate for similar

work."); *McCabe v. Tire Web, LLC*, No. 23-cv-459, 2024 U.S. Dist. LEXIS 232781, at *4 (E. D. Wisc. Dec. 25, 2024) (same).

This case involved a specialized area of the law—the federal securities laws—and presented a significant risk to Defendants. Defendants, therefore, retained counsel with experience in litigating against similar allegations of securities fraud, including a similar action brought by RLF. *See Nguyen v. Endologix*, Inc., 962 F.3d 405 (9th Cir. 2020). Courts regularly award securities defense counsel market fees far in excess of those sought here, and RLF has itself sought to collect fees charged at commensurate rates. *See, e.g.*, *City of Taylor General Employees Retirement System v. Astec Industries, Inc. et al.*, No. 1:19-cv-00024-CEA-CHS (E.D. Tenn. Aug. 2024, Dkt. 125) (RLF seeking fees as follows: Partner: $1,150 - $1,250; Counsel: $850; Associate: $450 - $800; Staff Attorney: $450; Paralegal: $300); *see also* Mimi Lamarre, Andrew Maroney, *Senior Partners Approach $3,000 an Hour, As More Billing Rate Hikes Expected in 2025*, Law.com, ttps://www.law.com/americanlawyer/2024/09/24/senior-partners-approach-3000-an-hour-as-more-billing-rate-hikes-expected-in-2025/?slreturn=20251230083129 (Sep. 24, 2024) (listing associate rates of over $1,000 per hour). The Horton and Konkel declarations thus describe *below-market* billing rates charged by Defendants' counsel in this case. The "actual billing rate" reflected in defense counsel's invoices is therefore the *minimum* appropriate market rate for purposes of the Court's sanctions order.

C. **Defendants Will Never Be Made Whole From RLF's Frivolous Complaint.**

Even a comprehensive fee award, one that includes every penny sought in this Petition, will not make Defendants whole from either the litigation costs or the broader injury inflicted by RLF's frivolous complaint. This Court already noted that "the filing of a class action securities complaint has market repercussions in and of itself." (Order at 9 (citing *City of Livonia Emps. Ret. Sys. v. Boeing Co.,* 306 F.R.D. 175, 180-81 (N.D. Ill. 2014)).) Where—as here—"an attorney fails to conduct reasonable pre-suit investigation and subsequently files an untenable complaint, a company that may in fact be conforming with the law will be forced to incur substantial costs." (*Id*. (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313

6

(2007)).) RLF's misconduct in filing a frivolous complaint caused Defendants to expend hundreds of thousands of dollars in legal fees and subjected Defendants to the spectacle of being publicly accused of fraud, damaging both the individuals' and Harbor's reputation and goodwill. The latter is a direct harm from which Defendants can never be made whole.

In addition, RLF's wrongful and irresponsible conduct kickstarted a meritless litigation campaign that persisted for more than 18 months. That campaign included (i) RLF's refusal to amend or dismiss its initial complaint after being served with dismissal and sanctions briefing, (ii) RLF's insistence that the Court defer any Rule 11 inquiry until after the entry of final judgement, (iii) RLF's post-FAC retaliatory cross-motion for sanctions, and (iv) Pomerantz's companion cross-motion for sanctions based on Defendants' defense against the RLF Complaint. The only post-FAC briefing that does *not* relate to the RLF Complaint consists of the motion to dismiss the FAC, the portion of the motion for sanctions seeking sanctions against Pomerantz, and the portion of the Pomerantz cross motion for sanctions that relates to the FAC, none of which are included in the instant fee application. Moreover, it is not a stretch to imagine that but for RLF's contrary insistence, the Court would have considered and granted the initial sanctions motion, and Pomerantz never would have attempted to dress up an erroneous accounting treatment—one in which the company's outside auditor specifically concurred—as a purported fraud by falsely claiming that ASC 606 plainly barred accrual of the disputed United Airlines receivable.

Moreover, Pomerantz's procedurally improper and plainly retaliatory cross-motion for sanctions, like RLF's companion cross-motion for sanctions, *related to Defendants' briefing on the RLF Complaint*. As noted in the Order, "Toft points to four separate papers that he claims demonstrate sanctions are warranted: (1) Defendants' motion to dismiss the *original complaint*, Dkt. No. 7; (2) Defendants' letter motion for reconsideration of the court's decision to hold Defendants' motion to dismiss the *original complaint* in abeyance, Dkt. No. 25; (3) Defendants' *original motion for sanctions*, Dkt. No. 30; and (4) Defendants' instant, *renewed* motion for sanctions." (Order at 11-12) (emphasis added). The portions of Pomerantz's cross-motion for

7

sanctions discussing (1)-(3) above are directly attributable to the RLF Complaint. With respect to the portion of the cross-motion discussing Defendants' renewed motion for sanctions, at least half of that section also is directly attributable to the RLF Complaint. As a result, approximately $1/8^{th}$ (12.5%) of the Pomerantz cross-motion is not directly and entirely attributable to the RLF Complaint. The post-FAC briefing in defense of the retaliatory cross-motions for sanctions thus related directly – and almost entirely – to the RLF Complaint. As such, Defendants seek 100% of the fees and expenses incurred in response to RLF's cross-motions for sanctions, but exclude the cost of defending against the $1/8^{th}$ (12.5 %) portion of the briefing on Pomerantz's cross-motion directed at the FAC, thereby seeking a total of 87.5% of the fees and expenses incurred in defending against Pomerantz's cross-motion for sanctions (Horton Decl. ¶¶ 7-8.) As a result of this discounting, even if the Court awards all of the fees sought in this motion, including those incurred after the filing of the FAC, Defendants will not be made whole from the legal expense resulting from RLF's misconduct, much less the marketplace and reputational repercussions.

> **D. A Substantial Fee Award Is Necessary To Deter Further Misconduct And Incentivize Litigants To "Stop, Think And Investigate More Carefully" Before Filing Suit.**

A substantial fee award will impact a repeat player in this space, and potentially prevent a large number of frivolous complaints from being filed by litigants who favor volume, and portfolio theory economics, to the filing of colorable claims. *See Eberhard v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024) ("The purpose of Federal Rule of Civil Procedure 11 sanctions is to deter baseless filings in the district court."); *Salamon v. Messina*, 1991 U.S. Dist. Lexis 6118, at *2-3 (N.D. Ill. May 1, 1991) ("Rule 11 sanctions are designed to serve three purposes: (1) to compensate litigants who incur expenses as a result of their opponent filing documents which violate Rule 11; (2) to punish the litigants who violate Rule 11; and (3) to deter those being sanctioned and others from violating Rule 11 in the future.").

RLF is a highly active firm in this type of securities litigation. RLF touts itself as having "been ranked in the top 4 of securities class action firms nationwide [by volume] each year since

8

4905-8724-5952v17/101468-0015

Case 1:24-cv-00556-WCG    Filed 01/02/26    Page 9 of 13    Document 69

2013 by ISS Securities Class Action Services."[1] The significant fees RLF (and other members of the plaintiffs' bar) stand to recover from filing private securities actions, the considerable cost of conducting adequate pre-filing investigations and pleading a colorable securities fraud claim, and the powerful disincentives that prevent defendants from bringing RLF's use of abusive placeholder complaints to the attention of the courts indicate that only a substantial sanctions award will meaningfully deter this misconduct. A sizeable fee award is therefore necessary to "lend incentive" for RLF (and its brethren) to stop employing a pervasive and highly lucrative practice. (Order at 6, *citing Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000).)

      Defendants have previously discussed the use of placeholder complaints by members of the plaintiffs' bar. The tactic begins with filing a defective complaint, based on nothing more than a company's own disclosure, and conducting little or no pre-filing investigation. That abuse works because, even if a defendant is so bold as to file a motion to dismiss the initial complaint, courts are likely to ignore the initial complaint and any attendant motion to dismiss in anticipation of the filing of an amended complaint after conclusion of the lead plaintiff process, *even where only one initial complaint is filed and there is no need for consolidation*, just as happened here. Moreover, once a motion to dismiss the amended complaint is granted with prejudice, or the case is otherwise resolved, defendants have little incentive to invest in sanctions briefing and the risk of an appeal, rather than simply walk away. So, almost invariably, defendants instead enter into a stipulation disavowing any Rule 11 violation, and Defendants are not aware of any court that has revisited whether initial complaints complied with Rule 11 in the absence of adversarial briefing, notwithstanding the PSLRA's contrary instructions. That is why this moment is of critical importance.

      Here, not only was RLF's complaint deficient in failing to allege *any* facts to support scienter, let alone to satisfy the heightened pleading standard of the PSLRA, RLF's "abusive

---

[1] https://rosenlegal.com/about/

9

4905-8724-5952v17/101468-0015

Case 1:24-cv-00556-WCG    Filed 01/02/26    Page 10 of 13    Document 69

litigation" tactics are particularly egregious because RLF *knew* that: (i) its conclusory scienter allegations were contradicted by the fact that Grant Thorton had carefully reviewed and signed off on the specific accounting practice in question, and had issued a series of clean audit reports stating that Habor's accounting controls were functioning properly (*see e.g.*, Compl. ¶¶ 31, 53; *see also* Dkt. 9-4, (Harbor's Form 10-K (December 31, 2022) at 44, Dkt 9-95 (Harbor's Form 8-K (Mar. 29, 2024)) at 2; Compl. ¶¶ 31, 53). RLF also knew that this auditor approval negated any inference of scienter, much less a wholly unsupported inference. *See, e.g., In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 349 n.63 (D.N.J.2007 ("[A] 'clean' audit provides certain grounds for Defendants' placid state of mind and advocates against [an] inference of scienter."); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (no scienter where "outside auditor[s] did not question [the company's] accounting practices").

Nonetheless, RLF chose to ignore both the law and facts contradicting its conclusory allegations of scienter, stood firm on that strategy even after Defendants *served* a motion for sanctions under Rule 11 on those grounds, and then joined Pomerantz in an attempt to punish Defendants for daring to speak up by filing retaliatory cross-motions for sanctions attacking Defendants' successful briefing—*all to preserve a franchise founded on gross and repeated violations of Rule 11*. Because Defendants were atypically willing to police their rights in the face of powerful disincentives, and because this Court had the patience to careful review Defendants' briefing after dismissal, the Court now has an exceedingly rare opportunity to give real meaning to its determination that the PSLRA does not allow securities plaintiffs to file frivolous complaints in violation of their basic Rule 11 obligations. *See generally*, Order at 7-10. The Court should therefore take the next step, and award Defendants their full fee request, as is necessary to deter further abusive conduct.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court enter an order as follows:

1. RLF shall fully compensate Defendants for the legal fees and costs set forth herein in the amount of $580,482.29.

2. Grant other and further relief that this Court deems just and proper.

Dated: January 2, 2026                              Respectfully submitted,

*/s/ David R. Konkel*

| | |
|---|---|
| Jason de Bretteville (CA# 195069) | John L. Kirtley (WI# 1011577) |
| jdebretteville@stradlinglaw.com | jkirtley@gklaw.com |
| Wesley Horton (CA# 307567) | David R. Konkel (WI# 1097244) |
| whorton@stradlinglaw.com | dkonkel@gklaw.com |
| STRADLING YOCCA CARLSON & RAUTH LLP | GODFREY & KAHN S.C. |
| 660 Newport Center Drive, Suite 1600 | 833 East Michigan Street, Suite 1800 |
| Newport Beach, CA 92660 | Milwaukee, Wisconsin 53202 |
| Telephone: (949) 725-4000 | Telephone: (414) 273-3500 |
| Facsimile: (949) 725-4100 | Facsimile: (414) 273-5198 |

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on January 2, 2026.

      /s/ *David R. Konkel*
      David R. Konkel